FILED

1  SEDGWICK LLP
   PAUL RIEHLE (STATE BAR NO. 115199)
2  NORA WETZEL (STATE BAR NO. 287773)
   333 Bush Street, 30th Floor
3  San Francisco, CA 94104-2834
   Telephone: 415.781.7900
4  Facsimile: 415.781.2635
   Email: paul.riehle@sedgwicklaw.com
5         nora.wetzel@sedgwicklaw.com

6  SEDGWICK LLP
   JAMES NELSON (STATE BAR NO. 181256)
7  801 S. Figueroa St., 18th Floor
   Los Angeles, California 90017
8  Telephone: (213) 615-8056
   Facsimile: (213) 426-6921
9  Email: james.nelson@sedgwicklaw.com

10 Attorneys for Defendant
   NISSAN NORTH AMERICA, INC.
11

13 JAN 31 PH 1:19

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

12              UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

14

15 KOBE FALCO, individually, and on        CV13-00686- DDP(MANx)
   behalf of all other similarly situated   Case No.
16 individuals,

17                                          DEFENDANT NISSAN NORTH
                                            AMERICA, INC.'S NOTICE OF
18              Plaintiff,                   REMOVAL

19    v.                                    [28 USC §§ 1446 (a) & 1453]

20 NISSAN NORTH AMERICA, INC.;             Complaint Filed: December 27, 2012
   and NISSAN MOTOR CO., LTD., a           Complaint Served: January 4, 2013
21 Japanese company, and DOES 1-10
   inclusive,
22              Defendants.

23

24

25

26

27

28

Defendant Nissan North America, Inc.'s Notice of Removal

1    Pursuant to 28 U.S.C. §§ 1446 and 1453, Defendant Nissan North America,
2    Inc. ("NNA") hereby removes the above-captioned action from the Superior Court
3    of the State of California in and for the County of Los Angeles to the United States
4    District Court for the Central District of California. In support of its Notice of
5    Removal, NNA states as follows.

6    **TIMING OF REMOVAL**

7    1.    On December 27, 2012, Plaintiff Kobe Falco commenced this action
8    in the Superior Court of the State of California in and for the County of Los
9    Angeles by filing a Class Action Complaint ("Complaint") Los Angeles Superior
10   Court No. BC 498238. The Summons and Complaint were served on NNA on
11   January 4, 2013; therefore, this Notice of Removal is being filed within thirty (30)
12   of receipt by NNA of the Summons and Complaint pursuant to 28 U.S.C. §
13   1446(b).

14   **COMPLAINT ALLEGATIONS**

15   2.    Plaintiff's claims relate to alleged defects in 2005-2010 model years
16   of Pathfinder, Xterra, or Frontier versions of Nissan vehicles equipped with the
17   VQ40 engine – ("Putative Class Vehicle(s)"). Complaint ¶ 1.

18   3.    According to the Complaint, the action arises "out of a defect in
19   'timing chain,' an important engine component in Class Vehicles." Complaint ¶ 2.
20   As alleged in the Complaint, "[t]he Timing Chain Defect is widespread, costs
21   thousands of dollars to repair, presents a safety hazard, and, on information and
22   belief, was known or should have been known to Defendants prior to sale or lease
23   of the Class Vehicles in 2005." *Id.*

24   4.    Despite this lawsuit being about Plaintiff's 2005 Pathfinder, the
25   complaint says very little about his personal experience. Plaintiff alleges that he
26   resides in Irvine, California and in 2005 he purchased a new Pathfinder in Seattle
27   Washington. Complaint ¶ 16. He further claims that, in November 2011, "with
28   approximately 40,663 miles on the odometer," he took his vehicle to an authorized

1

Sedgwick

1    Nissan dealer.  The repair order "for Mr. Falco's November 9 service visit
2    indicates 'metallik [sic] rattle noise coming [sic] from the engine area on start up'
3    and 'timing chain whining.'"  Complaint at ¶17.  Plaintiff paid $510.60 to replace
4    the secondary timing chains and both tensioner shoes."  *Id.* ¶ 17.  Finally, Plaintiff
5    alleges that he has "driven his vehicle [sic] intended to be used, and in
6    circumstances and for purposes that were foreseeable."  *Id.* ¶ 18.  Nothing more is
7    alleged about his personal experience.

8        5.    Plaintiff alleges that the Putative Class Vehicles contain "one or more
9    design and/or manufacturing defects that cause the timing chains to wear away
10   their protective contact surfaces" and that his experience is typical of the entire
11   class.  Complaint ¶¶ 27, 48.

12       6.    Plaintiff asserts claims for alleged violation of California's Consumer
13   Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*, Unfair Competition Law,
14   Cal. Bus. & Prof. Code §§ 17200, *et seq.*, and Song-Beverly Consumer Warranty
15   Act, Cal. Civ. Code §§1792, 1791.91, *et seq.*  Complaint ¶¶ 52-87.

16       7.    The prayer for relief in the Complaint seeks, *inter alia,* "an order to
17   enjoin Defendants from further deceptive distribution, sales, and lease practices
18   with respect to Class Vehicles, and to remove and replace Plaintiff and prospective
19   class members' timing chain systems with a suitable alternative product"
20   (Complaint 23:3-6), "an award to Plaintiff and the Class for compensatory,
21   exemplary, and statutory damages, including interest, in an amount to be proven at
22   trial . . . equitable and injunctive relief with respect to his claims under California's
23   Consumer Legal Remedies Act, California Civil Code section 1750 *et seq.*" (*id.*
24   23:7-11), "[a]ny and all remedies provided pursuant to the Song-Beverly Act,
25   including California Civil Code section 1794" (*id.* 23:12-13), a "declaration that
26   Defendants must disgorge, for the benefit of the Class, all or part of the ill gotten
27   profits they received from the sale or lease of its Class vehicles, or make full
28   restitution to Plaintiff and class members" (*id.* 23:14-17), "attorneys' fees and

2

Defendant Nissan North America, Inc.'s Notice of Removal

1   costs, as allowed by law" (*id.* 23:18), "attorneys' fees and costs pursuant to

2   California Code of Civil Procedure § 1021.5" (*id.* 23:19-20), an "award of pre-

3   judgment and post-judgment interest, as provided by law" (*id.* 23:21-22), and

4   "[s]uch other equitable relief as may be appropriate under the circumstances"

5   (Complaint 23:25).

6           8.    Plaintiff seeks to litigate his claims on behalf of himself and a

7   proposed class defined as follows:

8         Nationwide Class: All individuals in the United States

9         who purchased or leased any 2005 through 2010 Nissan

10        Pathfinder, Xterra, or Frontier vehicles.

11        California Sub-Class: All members of the Nationwide

12        Class who reside in the State of California.

13        Implied Warranty Sub-Class: All Members of the

14        Nationwide Class who purchased or leased their vehicles

15        in the State of California.

16

17        Excluded  from  the  Class  and  Sub-Class  are:  (1)

18        Defendants, any entity or division in which Defendants

19        have a controlling interest, and their legal representatives,

20        officers, directors, assigns, and successors; (2) the Judge

21        to whom this case is assigned and the Judge's staff; and

22        (3) those persons who have suffered personal injuries as a

23        result of the facts alleged herein.  [Complaint ¶¶ 44, 45

24        (emphasis in original)]

25          9.    As demonstrated below, this Court has jurisdiction over Plaintiff's

26  action and it is properly removed to this Court.

27  //

28

Sedgwick<sub>LLP</sub>

**BASIS OF FEDERAL JURISDICTION UNDER CLASS ACTION FAIRNESS ACT**

10.   This action is removable to this Court because federal diversity jurisdiction, 28 U.S.C. § 1332, exists over Plaintiff's claims pursuant to the Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (2005) ("CAFA"), codified in various sections of Title 28 of the United States Code including 28 U.S.C. §§ 1332(d) & 1453.

11.   CAFA became effective on February 18, 2005, and applies to any civil action commenced on or after that date.   This action was commenced on December 27, 2012 and CAFA therefore applies to it.

12.   Congress enacted CAFA to enlarge federal jurisdiction over proposed class actions.  CAFA provides that a class action against a non-governmental entity may be removed to federal court if:  (1) the number of proposed class members is not less than 100; (2) any member of the proposed class is a citizen of a state different from any defendant; and (3) the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.   *See* 28 U.S.C. §§ 1332(d)(2), 1332(d)(5) & 1453(b).  As set forth below, all of the requirements for removal are satisfied here.

**CLASS SIZE**

13.   CAFA's first requirement, that the proposed class contain at least 100 members, 28 U.S.C. § 1332(d)(5), is satisfied here.  Plaintiff alleges that he seeks to represent a nationwide class of individuals who purchased or leased six model years of three Nissan vehicles: 2005, 2006, 2007, 2008, 2009 and 2010 Nissan Pathfinder, Nissan Xterra, and Nissan Frontier vehicles.  Plaintiff further alleges that in California and Nationwide, "Nissan has sold . . . thousands of Class Vehicles." Complaint ¶ 26.

14.   NNA's records reflect that between December 2004 and September 2010, a total of 768,333 Putative Class Vehicles were sold at retail by Nissan

4

dealers or for which NMAC purchased a lease from Nissan dealers throughout the United States.  Declaration of Eva Ribman in Support of Nissan North America, Inc.'s Notice of Removal ("Ribman Decl.") ¶ 4.  This figure does not include resales of Putative Class Vehicles by original buyers.  Because Nissan vehicles are often resold or leased, 768,333 is the *minimum* number of class members, and likely understates the number of current and former owners or lessees of Putative Class Vehicles.

15.    Plaintiff has thus alleged a proposed class with at least 100 members.

## **MINIMAL DIVERSITY OF CITIZENSHIP**

16.    CAFA's second requirement, that any one member of the proposed class be a citizen of a state different from any defendant, 28 U.S.C. § 1332(d)(2), is also satisfied here.  Plaintiff alleges that he is a resident of Irvine, California. Complaint ¶ 16.  Plaintiff further alleges that NNA's corporate headquarters are in "Franklin, Tennessee."  *Id.* ¶ 21.  NNA is a citizen of California, as it was incorporated in California.  *Id.*  Defendant Nissan Motor Co., Ltd. is a "corporation organized under the laws of Japan."  *Id.* ¶ 20.

17.    Plaintiff purports to bring this case on behalf of a nationwide class. *Id.* ¶¶ 42, 44.  Plaintiff and all members of the proposed class are diverse from Nissan Motor Co., Ltd., a Japanese corporation.  All proposed class members who are not citizens of California or Tennessee are diverse from NNA.  Therefore, diversity of citizenship exists, as "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2).

## **AMOUNT IN CONTROVERSY**

18.    CAFA's third requirement, that the aggregate amount in controversy exceed $5 million, exclusive of interest and costs, 28 U.S.C. § 1332(d)(2), is satisfied as well.

19.    Although NNA disputes liability and damages, it is evident that Plaintiff purports to allege claims for himself and the proposed class for monetary

Sedgwick™

SF/3700902v1

1  relief that, if granted, would in the aggregate well exceed CAFA's $5 million
2  requirement.

3       20.   The Complaint seeks an "award to Plaintiff and the Class for
4  compensatory, exemplary, and statutory damages, including interest, in an amount
5  to be proven at trial." Complaint 23:7-8.

6       21.   Plaintiff alleges that the defect "necessitates costly repairs."
7  Complaint ¶ 3.  Plaintiff alleges that repairs to his 2005 Nissan Pathfinder cost
8  "$510.60." Complaint ¶¶ 16, 17.  Plaintiff alleges that "[m]any prospective class
9  members have paid Nissan dealers or third party repair facilities approximately
10  $1,500 to $2,500 to repair and replace the Class Vehicles' defective timing chains
11  and related components." Complaint ¶ 7.  The Complaint also claims that the
12  alleged defect "is widespread [and] cost thousands of dollars to repair." *Id.* ¶ 2.

13       22.   At least 768,333 Putative Class Vehicles have been sold to consumers
14  as of the date this action was commenced. Ribman Decl. ¶ 4.  According to the
15  Complaint, every one of these vehicle contains a defect like the one experienced by
16  Plaintiff.   Complaint ¶ 27.   Plaintiff alleges repairs to replace the allegedly
17  defective timing chain cost approximately $1,500 to $2,500. *Id.* ¶ 7. Multiplying
18  the minimum number of Putative Class Vehicles by the midpoint of the alleged
19  repair costs, $2,000, results in an amount in controversy of $1,536,666,000.  Using
20  Plaintiff's cost of repair of $510.60 and multiplying it by the minimum number of
21  Putative Class Vehicles, the amount in controversy would be $392,310,829.80.
22  Even if one uses Plaintiff's cost of repair, the $5 million amount in controversy
23  threshold for removal would still would easily be met.  Indeed, given the number
24  of Putative Class Vehicles, if the repair cost were as little as $6.51, the $5 million
25  amount in controversy requirement would be satisfied.  Here, Plaintiff alleges that
26  the defect "necessitates costly repairs" (*id.* ¶ 3) and each repair costs "thousands of
27  dollars ." *Id.* ¶ 2.

28  ///

SF/3700902v1

Sedgwick...

23. If Plaintiff's claims for exemplary and statutory, restitution, or disgorgement damages were included in the calculation of the amount in controversy, the amount in controversy would be even higher. Complaint 23:7, 14-17.

24. Plaintiff has plainly alleged an amount in controversy that exceeds $5 million, exclusive of interest and costs.

## NO EXCEPTION TO CAFA JURISDICTION APPLIES

25. Once the proponent of federal jurisdiction satisfies its initial burden of establishing jurisdiction under section 1332(d)(2), the party objecting to federal jurisdiction bears the burden of proof as to any statutory exception under sections 1332(d)(4)(A) and (B). *Serrano v. 180 Connect, Inc.,* 478 F.3d 1018, 1024 (9th Cir. 2007). Any effort by Plaintiff to establish that an exception to CAFA jurisdiction exists here will fail.

26. Neither the home state exception nor the local controversy exception applies if more than one-third of the proposed class members reside outside of California. 28 U.S.C. § 1332(d)(4). The Complaint seeks to assert a nationwide class. *See* Complaint ¶ 44. Plaintiff will not be able to meet his burden of proving that two-thirds of the putative class members reside in California, so neither the home state exception nor the local controversy exception apply.

27. The local controversy exception also does not apply if a class action asserting the same or similar factual allegations against any of the defendants on behalf of the same persons has been filed during the three year period preceding the filing of the removed action. 28 U.S.C. § 1332(d)(4)(A)(ii). No such case is pending.

## REMOVAL PROCEDURE

28. True and correct copies of the Summons, Complaint, Declaration of Jordan Lurie in Support of Plaintiff's Selection of Venue for Trial of Claims Arising Under the California Consumer Legal Remedies Act, Civil Case Cover

7

Defendant Nissan North America, Inc.'s Notice of Removal

Sedgwick℠

1   Sheet, Notice of Case Assignment, Alternative Dispute Resolution Information
2   Packet, Stipulation to Participate in Alternative Dispute Resolution form, and
3   Voluntary Efficient Litigation Stipulations, and California Consumer Legal
4   Remedies Act demand letter, which constitute "all process, pleadings, and orders
5   served upon" NNA on, are attached hereto as **Exhibit A**. *See* 28 U.S.C. § 1446(b).

6       29.   A copy of this Notice of Removal is being filed with the Clerk of the
7   Superior Court of the State of California in and for the County of Los Angeles, and
8   is being served on counsel of record pursuant to 28 U.S.C. §§ 1446(a) & (d).

9       **CONCLUSION**

10      30.   For all of the foregoing reasons, this action is properly removed to this
11  Court pursuant to CAFA.

12  DATED: January 31, 2013  SEDGWICK LLP

13
14                              By: _____\S\ Paul Riehle_____
                                    Paul Riehle
15                                  Attorneys for NISSAN NORTH AMERICA,
                                    INC.
16
17
18
19
20
21
22
23
24
25
26
27
28

                                    8
                Defendant Nissan North America, Inc.'s Notice of Removal

Sedgwick LLP

# EXHIBIT A

# EXHIBIT A

**SUM-100**

## SUMMONS
### (CITACION JUDICIAL)

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

NISSAN NORTH AMERICA, INC., a California Corporation,
[Additional Parties form is attached]

**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

DEC 27 2012

KOBE FALCO, individually, and on behalf of a class of similarly situated individuals

John A. Clarke, Executive Officer/Clerk
By Amber Hayes, Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Los Angeles Superior Court

Stanley Mosk Courthouse, 111 N. Hill St. Los Angeles CA 90012

| CASE NUMBER: | |
| --- | --- |
| *(Número de Caso):* | C 4 9 8 2 3 8 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Jordan Lurie (130013) Capstone Law APC, 1840 Century Park East, Ste. 450, LA, CA 90067, (310) 556-4811

| DATE: December 27, 2012 *(Fecha)* | John A. Clarke | Clerk, by *(Secretario)* | Amber Hayes | Deputy *(Adjunto)* |
| --- | --- | --- | --- | --- |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

DEC 27 2012

3. ☒ on behalf of *(specify):* NISSAN NORTH AMERICA, INC., a California Corporation

under: ☒ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
☐ other *(specify):*

4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

SUM-200(A)

| SHORT TITLE: | CASE NUMBER. |
|---|---|
| Falco v. Nissan North America, Inc., et al. | |

**INSTRUCTIONS FOR USE.**

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff    ☑ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

[Continued from Summons]

NISSAN MOTOR COMPANY, LTD., a Japanese Company, and DOES 1-10, inclusive,

Page _____ of _____

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

Conformed Copy

1 | Jordan L. Lurie (SBN 130013)
Jordan.Lurie@capstonelawyers.com

2 | David L. Cheng (SBN 240926)
David.Cheng@capstonelawyers.com

3 | Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com

4 | Capstone Law APC
1840 Century Park East, Suite 450

5 | Los Angeles, California 90067
Telephone: (310) 556-4811

6 | Facsimile: (310) 943-0396

7 | Attorneys for Plaintiff Kobe Falco

**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

DEC 27 2012

John A. Clarke, Executive Officer/Clerk
By Amber Hayes, Deputy

9 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

10 | FOR THE COUNTY OF LOS ANGELES

12 | KOBE FALCO, individually, and on behalf

13 | of a class of similarly situated individuals,

14 | Plaintiff,

15 | v.

16 | NISSAN NORTH AMERICA, INC., a
California corporation, NISSAN MOTOR

17 | COMPANY, LTD., a Japanese company, and
DOES 1-10, inclusive,

18 | Defendants.

BC498238

Case No.:

**CLASS ACTION COMPLAINT**

(1) Violations of California Consumer
Legal Remedies Act §§ 1750, *et seq.*
(2) Violations of Unfair Business Practices
Act §§ 17200, *et seq*
(3) Breach of Implied Warranty pursuant to
Song-Beverly Consumer Warranty Act
§§ 1792 and 1791.1, *et seq.*

**Jury Trial Demanded**

CLASS ACTION COMPLAINT

1     1.    Plaintiff Kobe Falco ("Plaintiff") brings this action for himself and on behalf of

2 all persons in the United States who purchased or leased any 2005-2010 model-year Nissan

3 Pathfinder, Xterra, or Frontier vehicles equipped with the VQ40 engine (collectively, "Class

4 Vehicles"), and alleges as follows:

5                              **INTRODUCTION**

6     2.    This action arises out of a defect in "timing chain," an important engine

7 component in the Class Vehicles. The timing chain ensures that the engine valves are

8 synchronized. Fast moving and sharp edged, the timing chains have protective surfaces

9 intended to prevent both harmful metal-on metal-contact and "slack" in the chain. Due to a

10 defect in the timing chain system, these protective surfaces are subject to premature

11 degradation, which may lead to catastrophic engine failure; without notice, under any driving

12 conditions, and at any speed ("Timing Chain Defect"). The Timing Chain Defect is

13 widespread, costs thousands of dollars to repair, presents a safety hazard, and, on information

14 and belief, was known or should have been known to Defendants prior to sale or lease of the

15 Class Vehicles in 2005.

16     3.    The Class Vehicles' timing chain consists of one primary and two secondary

17 timing chains. The timing chains rotate sprockets that, in turn, control the movement of the

18 engine valves. The fast-moving, metal timing chains are held at the proper tension and

19 position by protective coverings on the tensioner "shoes" and guides. However, the Timing

20 Chain Defect causes the timing chains to wear away their protective contact surfaces, leading

21 to improper chain positioning, metal-on-metal contact, improper "slack" in the chain, and the

22 risk of severe engine damage. The Timing Chain Defect necessitates costly repairs.

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

4.     The generic illustration above shows a typical timing chain system (not configured precisely as the Class Vehicles' timing chain). The tensioners and guides are on the periphery, supporting the large triangular timing chain and the two secondary chains on the sides.

5.     Internal combustion engines contain valves and cylinders that work in concert to convert air and fuel into exhaust and torque. This precise and synchronized coordination of the engine valves is achieved by the use of timing belts, or, as in the Class Vehicles, a system of three timing chains. A properly functioning timing belt or timing chain system is essential to safe and reliable engine function, and improper timing can cause the vehicle to stall.

6.     As the Timing Chain Defect progresses, the degradation of the protective surfaces leads to an incorrect fit between the timing chain and its guides and tensioners. Among other problems, damaging metal-on-metal contact can occur between the fast-rotating metal timing chain and its associated metal components. This improper positioning and metal-on-metal contact can lead to a loss of proper chain tension, which can cause the timing chain to skip teeth on the sprockets, stretch, or otherwise deteriorate over time, which can, in turn, lead to sudden, catastrophic engine failure.

1    7.    The costs of the Timing Chain Defect to consumers have been exorbitant.
2  Many prospective class members have paid Nissan dealers or third party repair facilities
3  approximately $1,500 to $2,500 to repair and replace the Class Vehicles' defective timing
4  chains and their related components.

5    8.    The Timing Chain Defect presents a safety hazard because it can cause engines
6  to fail while Class Vehicles are in operation. Engine failure attributable to the Timing Chain
7  Defect can happen in any driving condition and at any speed. Such catastrophic failure can
8  cause traffic accidents and can result in personal injury or death.

9    9.    Plaintiff is informed and believes, and on that basis alleges that Defendants
10  knew or should have known that the Class Vehicles are defective and not fit for their intended
11  purpose of providing consumers with safe and reliable transportation. Nevertheless,
12  Defendants have actively concealed and failed to disclose this defect from Plaintiff and class
13  members at the time of purchase or lease and thereafter.

14    10.    In 2007, as a result of the Timing Chain Defect, Nissan issued a Technical
15  Service Bulletin ("TSB") to its dealers in the United States, acknowledging to its dealers that
16  the secondary timing chains and their associated parts for the Class Vehicles are defective and
17  malfunction. The TSB, entitled "BUZZING/ WHINING NOISE FROM TIMING CHAIN
18  AREA," instructs dealers to "replace **both** secondary timing chains and **both** secondary
19  timing chain tensioner 'shoes'" on vehicles exhibiting "high frequency buzzing / whining
20  noise coming from the secondary timing chain system."

21    11.    In 2009, Nissan released another TSB to its dealers in the United States, once
22  again acknowledging that the secondary timing chains and their associated parts for the Class
23  Vehicles are defective and malfunction. This TSB was also entitled "BUZZING/ WHINING
24  NOISE FROM TIMING CHAIN AREA," and applies to all 2005-2010 Pathfinder vehicles
25  with the VQ40 engine, 2005-2010 Xterra vehicles, and 2005-2010 Frontier vehicles with the
26  VQ40 engine. As evidenced by the 2009 TSB, the Class Vehicles share common components
27  and engines, including the secondary timing chain and their associated parts.

28    12.    Despite releasing these TSBs to its dealers, Nissan failed to fully and truthfully

1    disclose to its customers the true nature of the inherent defect in a crucial component of the

2    Class Vehicles. In fact, rather than disclosing the Timing Chain Defect, Nissan falsely

3    represented in its press releases that the Class Vehicles were equipped with a "silent timing

4    chain." Below, for example, is an excerpt from Nissan's press release for the 2009 Nissan

5    Xterra, *a Class Vehicle released approximately one (1) year after Nissan's initial release of*

6    *the timing chain service bulletin acknowledging the defect*:

7        Like others in the VQ family, the 4.0-liter version includes such advanced design
         features as lightweight aluminum block and cylinder heads, Continuous Valve Timing
8        Control (CVTCS), Nissan variable Induction Control System (NICS), **silent timing
         chain** and microfinished camshaft and crankshaft surfaces.
9

10   *2009 Nissan Xterra Press Kit*, http://nissannews.com/en-US/nissan/usa/channels/us-united-
     states-nissan-models-xterra/presskits/2009-nissan-xterra-press-kit-3) (Oct. 9, 2012) (emphasis
11   added)

12   On information and belief, the press releases for the other Class Vehicles also tout the timing

13   chain as "silent."

14       13.    Defendants knew of and concealed the Timing Chain Defect, and knew or .

15   should have known about the attendant safety hazards and associated repair costs.

16   Furthermore, Plaintiff and class members would not have purchased the Class Vehicles or

17   would have paid less for them if they had known about these defects at the time of sale or

18   lease.

19       14.    As a result of their reliance on Defendants' omissions and/or

20   misrepresentations, Plaintiff and the prospective class members have suffered ascertainable

21   loss of money, property, and/or the value of their Class Vehicles.

22       15.    Plaintiff and class members have been harmed and suffered actual damages

23   from the Timing Chain Defect in that the Class Vehicles and their timing chain systems have

24   failed or are substantially certain to fail before their reasonably expected useful life has

25   elapsed.

26                                    **PARTIES**

27   **Plaintiff Kobe Falco**

28       16.    Plaintiff Kobe Falco is a California citizen who resides in Irvine, California. In

1    2005, Mr. Falco purchased a new 2005 Nissan Pathfinder in Seattle, Washington.

2    17.    On or around November 9, 2011, with approximately 40,663 miles on the

3    odometer, Plaintiff took his vehicle to an authorized Nissan dealer. The repair order for Mr.

4    Falco's November 9 service visit indicates "metalick [sic] rattle noise comming [sic] from the

5    engine area on start up" and "timing chain whining." The dealer told Mr. Falco that the

6    "timing chain whining" noted on the repair order meant his secondary timing chains and

7    tensioner shoes had to be replaced. Plaintiff paid $510.60 to replace the secondary timing

8    chains and both tensioner shoes.

9    18.    At all times, Mr. Falco has, like the prospective class members, driven his

10    vehicle it was intended to be used, and in circumstances and for purposes that were

11    foreseeable.

12    **Defendants**

13    19.    Defendants Nissan North America, Inc., and Nissan Motor Company, Ltd.

14    (collectively "Nissan"), are automobile design, manufacturing, distribution, and/or servicing

15    corporations doing business in all 50 of the United States. Defendants design, manufacture,

16    distribute, market, service, repair, sell and lease passenger vehicles, including the Class

17    Vehicles, nationwide.

18    20.    Defendant Nissan Motor Company, Ltd. is an automobile design,

19    manufacturing, sale, leasing, distribution, and servicing corporation organized under the laws

20    of Japan. Nissan Motor Company, Ltd., the parent corporation, owns 100% of Nissan North

21    America, Inc.

22    21.    Defendant Nissan North America, Inc. ("NNA") is a corporation organized

23    under the laws of the State of California and is registered with the California Department of

24    Corporations to conduct business in California. NNA's corporate headquarters were located

25    at Gardena, California, until approximately 2007. In or about 2007, NNA moved its corporate

26    headquarters from California to Franklin, Tennessee. NNA is the distributor and warrantor of

27    the Class Vehicles in the United States.

28    22.    At all times relevant herein, Defendants, and each of them, are and have been

engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and other motor vehicles and motor vehicle components in Los Angeles County and throughout the United States of America.

## JURISDICTION

23.     This Court has jurisdiction over this action pursuant to California Code of Civil Procedure § 410.10. Personal jurisdiction over Nissan is proper because Nissan has purposefully availed itself of the privilege of conducting business activities in California, including, but not limited to, designing, marketing, distributing and/or selling Class Vehicles to Plaintiff and prospective class members.

24.     This class action is brought pursuant to California Code of Civil Procedure § 382. Plaintiff is a California resident, and all prospective class members are California residents, as well. The monetary damages and restitution sought by Plaintiff and the prospective class members exceed the minimal jurisdiction limits of the Superior Court and will be established according to proof at trial.

## VENUE

25.     Venue is proper in this Court pursuant to California Code of Civil Procedure §§ 395, 395.5, and California Civil Code § 1780. Attached hereto as Exhibit 1 is the Declaration of Plaintiff's Counsel attesting to the fact that Defendants are doing business in Los Angeles County, California.

## FACTUAL ALLEGATIONS

26.     For years, and including all time periods relevant to this action. Nissan has designed, manufactured, distributed, sold, and leased the Class Vehicles.  Nissan has sold, directly or indirectly, through dealers and other retail outlets, thousands of Class Vehicles in California and Nationwide.

27.     The Class Vehicles contain one or more design and/or manufacturing defects that cause the timing chains to wear away their protective contact surfaces, leading to improper chain positioning, metal-on-metal contact, improper "slack" in the chain, and the risk of severe engine damage, and necessitating costly repairs.

1    28.    Nissan has a duty to disclose the Timing Chain Defect and the associated out-

2  of-pocket repair costs to Class Vehicle owners because, among other reasons, the defect poses

3  an unreasonable safety hazard, and because Nissan had and has exclusive knowledge or access

4  to material facts about the Class Vehicles and their timing chain systems that were and are not

5  known or reasonably discoverable by its customers.

6    29.    Many purchasers and lessees of the Class Vehicles have experienced problems

7  with the timing chain system. Complaints filed by consumers with the National Highway

8  Traffic Safety Administration ("NHTSA") demonstrate that the defect is both widespread and

9  expensive to correct. Furthermore, the complaints indicate Defendants' awareness of the

10  Timing Chain Defect and its potential danger.

11    NHTSA Complaints (spelling and grammar mistakes remain as found in the original)

12    (Safecar.gov, *Search for Complaints* (October 09, 2012), http://www-

13    odi.nhtsa.dot.gov/complaints/):

14    (a)    I OWN A 2005 NISSAN PATHFINDER AND HAVE BEEN DOING ALL
15           THE REQUIRED MAINTENANCE ON IT IN A VERY TIMELY MANNER.
              IT IS A VERY WELL MAINTAINED SUV AND HAD ONLY 49,997 MILES
16           ON IT. I GOT A SAFETY RECALL NOTICE ON IT FOR THE ECM RELAY
              ISSUED AND TOOK IT TO THE DEALER. I WAS ALSO EXPERIENCING
17           SOME WHINING NOISES. THE SERVICE DEALER ADVISOR AT THE
              DEALERSHIP TOLD ME THAT MY TIMING CHAINS HAD A PROBLEM
18           AND NEEDED TO BE REPLACED. HE SAID THIS WAS A SERIOUS
19           ISSUE AND COULD LEAD TO ENGINE DAMAGE AND IS A
              POTENTIAL ROAD HAZARD. HE ALSO SAID IT NEEDED TO BE FIXED
20           IMMEDIATELY, AS THIS WAS A KNOWN PROBLEM, THAT HAD
              BEEN EXPERIENCED BY A NUMBER OF OTHER CUSTOMERS AND
21           THAT NISSAN MOTOR CO. HAD ISSUED A SERVICE BULLETIN
22           NTB09-128 REGARDING THIS PROBLEM . . . . *BF

23    (b)    THIS COMPLAINT RELATES TO A WIDESPREAD MANUFACTURING
              DEFECT IN NISSAN PATHFINDER AND FRONTIER MODELS IN
24           PRODUCTION AND SALE PRIOR TO 2008. THE ISSUE IS THE FAILURE
25           OF TIMING CHAIN MECHANISMS DUE TO INFERIOR QUALITY
              PLASTIC GUIDES THAT HAVE FAILED ON A HUGE SCALE
26           WORLDWIDE. NISSAN'S RECOGNITION OF THIS PROBLEM WAS
              REFLECTED IN TSB NOS. NTB07-042 AND NTB07-042A. RECOGNIZING
27           THE DESIGN FLAW, NISSAN CHANGED THE PARTS IN 2008 AND
28           FORWARD. OUTSIDE OF WARRANTY TIMES, NISSAN REFUSES TO

1   REPAIR OR REPLACE THE RELEVANT PARTS AND, APPARENTLY, HAS NOT NOTIFIED CUSTOMERS OF THE POTENTIAL PROBLEM OF

2   CATASTROPHIC ENGINE FAILURE THAT COULD RESULT IN ACCIDENTS INVOLVING SERIOUS INJURY OR DEATH AS A RESULT

3   OF SUDDEN ENGINE FAILURE. AS DOCUMENTED ON THE INTERNET, MANY FAILURES OF THESE COMPONENTS ARE

4   OCCURRING POST-WARRANTY AND MOST CONSUMERS HAVE NO

5   KNOWLEDGE OF THE IMPENDING DANGERS BECAUSE NISSAN APPEARS TO HAVE NOT PUBLICLY ACKNOWLEDGED THE

6   PROBLEM. FOR THOSE CUSTOMERS WHO DO BECOME AWARE OF THE PROBLEM POST-WARRANTY, THEY ARE FACING REPAIR

7   COSTS OF APPROXIMATELY $2500.00 WHICH IS AN ECONOMIC

8   BURDEN PLACED UPON THEM BY NISSAN EMANATING FROM . NISSAN'S OWN INTERNALLY-RECOGNIZED DESIGN FLAW.

9

10   (c)   [2005 Pathfinder] PREMATURE WEAR OF TIMING CHAIN AND TIMING CHAIN GUIDES. IN THE NISSAN PATHFINDER 4.0L V6 ENGINES, THE

11   TIMING CHAIN AND TIMING CHAIN GUIDES ARE WEARING OUT PREMATURELY. OUR VEHICLE WAS IDENTIFIED BY NISSAN

12   DEALER SERVICE AT 62,000 MILES AND THE REQUIRED FIX ACTION WAS TO REPLACE THE TIMING CHAIN AND TIMING CHAIN QUIDES

13   OUT OF WARRANTY AT A COST OF $1500.00. THESE PARTS DO NOT HAVE A RECOMMENDED SERVICE INTERVAL AS THEY ARE

14   SUPPOSED TO LAST THE LIFE OF THE VEHICLE HOWEVER NISSAN

15   HAS IDENTIFIED THIS AS A PROBLEM IN THE PATHFINDER AND OTHER NISSAN VEHICLES THAT USE THE SAME ENGINE AND HAS

16   ISSUED TWO SEPARATE SERVICE BULLETINS TO CORRECT THE PROBLEM AT CUSTOMER EXPENSE. THIS APPEARS TO BE AN

17   ENGINEERING DEFICIENCY AND SHOULD BE ADDRESSED BY NISSAN AT THEIR EXPENSE. *TR

18

19   (d)   [2005 Pathfinder] THE DEALER POINTED OUT THAT THERE WAS A BUZZING / WHINING NOISE COMING FROM ONE OR BOTH

20   SECONDARY TIMING CHAINS AND CAMSHAFT SPROCKET AREAS. I HAD TO REPLACE BOTH SECONDARY TIMING CHAINS AND BOTH

21   SECONDARY TIMING CHAIN TENSIONERS AT 61,000 MILES. COST:

22   $2,148.00. PLEASE SEE NISSAN TECHNICAL SERVICE BULLETIN: CLASSIFICATION: EM07-001 NTB07-042. REFERENCE: DATE: JULY 17,

23   2007. I BELIEVE THIS ITEM SHOULD BE A RECALL. THIS IS OBVIOUSLY A MISTAKE ON NISSAN¿S BEHALF WHEN THEY USED

24   INAPPROPRIATE AND UNSAFE PARTS. I ASKED NISSAN TO COVER

25   THIS ITEM UNDER WARRANTY, WHICH THEY QUICKLY REFUSED. I WAS 1,000 MILES PAST MY DRIVE TRAIN WARRANTY BUT THIS

26   HAD BEGUN WAY BEFORE THAT POINT. I FIND IT BOTH AMUSING AND CONVENIENT THAT NISSAN NEVER MENTIONED THIS

27   PROBLEM TO ITS CUSTOMERS, AND ME SPECIFICALLY UNTIL I WAS

28   OUT OF WARRANTY; THE SERVICE REPORT IS DATED JULY 17, 2007, EXACTLY ONE YEAR PRIOR TO MY VEHICLE NEEDING REPAIR. I

Page 8

1    · BELIEVE THIS IS A CLEAR ADMITTANCE OF GUILT ON BEHALF OF NISSAN. *TR

2

3    (e) I AM WRITING TO COMPLAIN ABOUT MY 2005 NISSAN XTERRA. OTHERWISE A VERY SOUND CAR, I HAVE BEEN INFORMED BY THE DEALERSHIP THAT THE TIMING CHAIN GUIDE IS WEARING DOWN AND WILL EVENTUALLY FAIL. THE DEALER INFORMED ME THIS IS COMMON IN NISSAN AND MY RESEARCH CONCURS. MY CAR ONLY HAS 85,000 MILES ON IT AND THIS REPAIR IS ESTIMATED TO COST ME $1900.00. I FEEL THIS SHOULD BE A SAFETY RECALL ITEM AS THERE HAS ALREADY BEEN NUMEROUS SAFETY BULLETINS ON THIS ISSUE. *TR

4

5

6

7

8    (f) TL* THE CONTACT OWNS A 2005 NISSAN XTERRA. THE CONTACT STATED WHILE DRIVING 40 MPH THE VEHICLE SUDDENLY SHUT OFF. SHE PULLED THE VEHICLE TO THE SIDE OF THE ROAD AND HAD IT TOWED TO A DEALER. THE DEALER INSPECTED THE ENGINE AND STATED THE TIMING CHAIN BROKE AND THE ENTIRE ENGINE NEEDS TO BE REPLACED. THE CONTACT HAD THE VEHICLE TOWED TO A LOCAL MECHANIC FOR A SECOND OPINION. THE LOCAL MECHANIC INFORMED THE CONTACT THE ENGINE DOES NEED TO BE REPLACED. THE FAILURE MILEAGE WAS 131,000. THE VIN WAS UNAVAILABLE.

9

10

11

12

13

14

15    (g) THE ENGINE IN MY 2005 NISSAN XTERRA (4WD) BEGAN MAKING A SLIGHT WHINING NOISE. I WAS NOTIFIED THAT THE NOISE WAS A DRIVE BELT. AFTER REPLACING THAT ITEM, A SLIGHT KNOCKING COULD BE HEARD. AS I WAS TRAVELING ALONG A MAJOR HIGHWAY MY VEHICLE SHUT OFF AND FORCED ME TO AVOID A COLLISION AND COAST OFF THE ROADWAY. I LEARNED THAT THE NOISE WAS FROM A TIMING CHAIN INSIDE MY ENGINE. THE MECHANIC ADVISED MULTIPLE NISSAN VEHICLES HAD BEEN GETTING THE TIMING CHAIN REPLACED, AND THAT THIS WAS VERY UNUSUAL FOR A VEHICLE LIKE MINE WITH ONLY 70,000 MILES. THE REPAIRS FOR THIS COST OVER $1000 INCLUDING A TOW CHARGE, RENTAL CAR ETC. *TR

16

17

18

19

20

21

22    (h) TIMING BELT TENSIONER GUIDE FAILURE ON A 2005 NISSAN FRONTIER. LESS THAN 60K MILES. THE TENSIONER CAN FAIL AND LEAD TO ENGINE FAILURE AT ANY TIME. NISSAN CONFIRMS AS THERE IS A TSB ISSUED FOR 2005-2010 TRUCKS, BUT THERE IS NO RECALL AT THIS TIME. *TT

23

24

25

26    (i) I HAVE A 2005 NISSAN FRONTIER. DURING THE RECENT COLD MORNINGS I HAVE NOTICED A BUZZING/WHINNING NOISE WHEN I STARTED MY TRUCK. I TOOK THE VEHICLE INTO THE DEALERSHIP AND LATER FOUND OUT I NEEDED A NEW TIMING CHAIN. THIS WAS A HUGE SURPRISE SINCE I FOLLOWED ALL OF THE

27

28

Page 9

1   MAINTENANCE REQUIREMENTS AND ONLY HAVE 59,000 MILES. I
    ALSO FOUND OUT THAT THIS IS A KNOWN PROBLEM WITH MY
2   MODEL YEAR AND UNFORTUNATELY I WAS LESS THAN 20 DAYS
    OUTSIDE OF MY WARRANTY PERIOD AND NISSAN WOULD NOT
3   PICK UP THE COST WHICH WERE ESTIMATE TO BE $1,300. I CALLED
4   NISSAN CORPORATE TO SEE IF THEY WOULD STILL HONOR THE
    WARRANTY SINCE IT WAS A KNOWN PROBLEM, HOWEVER, THEY
5   SAID THEY WERE STRICT WITH THEIR WARRANTIES AND SINCE I
    WAS TECHNICALLY OUTSIDE OF THE WARRANTY THEY WOULD
6   NOT PICK UP THE COSTS OR HELP OUT. THE SERVICE I RECEIVED
7   WAS TERRIBLE AND AFTER DOING SOME RESEARCH IT SOUNDS
    LIKE THERE ARE MANY OTHER PEOPLE OUT THERE THAT HAVE
8   HAD SOME SAME ISSUE WITH THE MODEL YEAR VEHICLE I HAVE.
    ALL NISSAN TOLD ME I COULD DO WAS SAVE MY RECEIPTS
9   INCASE THERE WAS A RECALL IN THE FUTURE. *TR

10  (j)   [2006 pathfinder] THE TIMING CHAIN BROKE IN HALF WHILE
11        DRIVING DOWN THE HIGHWAY. THIS PROBLEM CAUSED THE
          VEHICLE TO SHUT DOWN IN THE MIDDLE OF A HIGHWAY LANE
12        ALMOST CAUSING A WRECK. THE VEHICLE NEEDS A NEW TIMING
          CHAIN AND GUIDES BUT NO REPAIRS HAVE BEEN MADE. *TR
13

14  (k)   [2006 Pathfinder] MY BRAND NEW TIMING CHAIN FAILED,
          DESTROYING MY ENGINE AND COSTING ME OVER $8000 IN
15        REPAIRS IN ADDITION TO THE COST OF THE TIMING CHAIN ($1100).
          *TR
16

17  (l)   TL*THE CONTACT OWNS A 2006 NISSAN PATHFINDER. WHILE
          DRIVING APPROXIMATELY 40 MPH, THE CONTACT ATTEMPTED TO
18        ACCELERATE FURTHER AND NOTICED THAT THE VEHICLE DID
          NOT HAVE AS MUCH POWER AS IT USUALLY DID. THE CONTACT
19        HEARD A WHINING NOISE FROM THE ENGINE. THE VEHICLE WAS
          TAKEN TO AN AUTHORIZED DEALER WHERE THE CONTACT WAS
20        INFORMED THAT THE TIMING CHAIN NEEDED TO BE REPLACED.
          THE VEHICLE WAS REPAIRED.
21

22  (m)   [2006 Pathfinder] FAILURE OF TIMING CHAIN AND TIMING CHAIN
          GUIDES. *KB
23

24  (n)   TL* THE CONTACT OWNS A 2006 NISSAN FRONTIER. WHILE
          DRIVING AT 10 MPH, THE CONTACT NOTICED A SOFT WHINING
25        NOISE COMING FROM THE ENGINE. THE VEHICLE WAS TAKEN TO
          THE DEALERSHIP WHERE THE TIMING BELT TENSION ASSEMBLY
26        WAS REPLACED. THE FAILURE MILEAGE WAS APPROXIMATELY
          50,000. THE CURRENT MILEAGE WAS APPROXIMATELY 82,000. . .
27

28  (o)   TL*THE CONTACT OWNS A 2006 NISSAN FRONTIER. THE CONTACT
          STATED THAT WHILE DRIVING AT VARIOUS SPEEDS OR WHILE

1   JUST IDLING IN PARK, HE WOULD HEAR A LOUD NOISE. THE
    VEHICLE WAS INSPECTED BY A DEALER AND ADVISED HIM THAT
2   THE TIMING CHAIN NEEDED TO BE REPLACED AND INFORMED HIM
3   THAT THERE WERE NO RECALLS ON THIS MODEL. THE VEHICLE
    HAD NOT BEEN REPAIRED. THE FAILURE MILEAGE WAS
4   APPROXIMATELY 70,000. THE VIN WAS UNAVAILABLE.

5   (p)   [2006 Xterra] SECONDARY TIMING CHAIN SHOE FAILURE. KNOWN
          PROBLEM WITH MULTIPLE NISSAN VEHICLES DUE TO INFERIOR
6         QUALITY PRODUCT, AS EXPLAINED BY SERVICE TECHNICIAN.
          TECHNICIAN STATED THAT MULTIPLE NISSAN VEHICLES COME IN
7         TO THE SHOP WEEKLY WITH THIS ISSUE. IT OCCURS SO OFTEN,
8         THE SERVICE TECHNICIAN HAD EXAMPLES OF THE INFERIOR AND
          WORN PARTS IN THE CABINET TO SHOW CUSTOMERS. EXPENSIVE
9         AND TIMELY ISSUE TO FIX. IF LEFT UNFIXED, WILL CAUSE
          SERIOUS DAMAGE TO ENGINE. *TR
10

11  (q)   [2006 Xterra] THE VEHICLE HAS A WHINING NOISE. WHEN TAKEN TO
          THE DEALERSHIP, IT WAS DIAGNOSED AS A WORN DOWN
12        TENSIONER FOR THE TIMING CHAIN. IF NEGLECTED IT COULD
          CAUSE ENGINE DAMAGE AND MALFUNCTION. THE DEALER
13        CLAIMS THE REPAIR INCLUDES REMOVING THE TENSIONER AND
          REPLACING WITH AN UPGRADED PART AS THEY KNOW THE
14        ORIGINAL PART IS FAULTY. NISSAN IS AWARE OF THE ISSUE AND
15        ISSUED A SERVICE BULLETIN IN 2009 NTB07-042A, BUT REFUSES TO
          FIX THIS PART IN THEIR VEHICLES. THIS SHOULD BE RECALLED!
16        *TR

17  (r)   [2006 Xterra] AT 64,765 MILES, MY TIMING CHAINS NEED TO BE
          REPLACED, PER MY NISSAN DEALER. I WAS TOLD WHEN I
18        PURCHASED THE VEHICLE, BRAND NEW, THAT THIS WOULD
19        NEVER BE AN ISSUE. *TR

20  (s)   TL* THE CONTACT OWNS A 2007 NISSAN PATHFINDER. THE
          CONTACT STATED WHILE DRIVING THE ENGINE MADE A WHINING
21        NOISE. THE VEHICLE WAS TAKEN TO THE DEALER WHO
          PERFORMED A DIAGNOSTIC TEST THAT LOCATED THE FAILURE
22        WITHIN THE TIMING CHAIN. THE MANUFACTURER DENIED
23        ASSISTANCE WITH THE REPAIR. THE VEHICLE WAS NOT REPAIRED.
          THE FAILURE MILEAGE WAS 32,000 AND THE CURRENT MILEAGE
24        WAS 64,000.

25  (t)   MY CAR 2007 NISSAN XTERRA STARTED TO MAKE A REVVING
          NOISE UNDER THE HOOD ON SUNDAY 10/2/2011. THE NEXT DAY I
26        WAS ON THE HIGHWAY ON MY WAY HOME FROM WORK WHEN
27        THE CHECK ENGINE LIGHT CAME ON. I CAUTIOUSLY DROVE THE
          MIN SPEED LIMIT TO THE MID-CITY NISSAN DEALERSHIP WHICH
28        WAS LESS THAN 2 MILES AWAY AT THIS POINT. THE NEXT DAY,

MID-CITY NISSAN INFORMED ME THAT I NEEDED THE TIMING CHAIN REPAIRED ASAP.

(u)    [2009 Xterra] TIMING CHAIN GUIDES ARE WORN AND ARE NOW UNSTABLE AND CAN CAUSE THE TIMING CHAIN TO BREAK WHICH WILL RUIN ENGINE. NISSAN KNOWS ABOUT THIS PROBLEM AND HAS CHANGED TO A NEW PART IN 2010. IT IS RIDICULOUS THAT THEY ARE TRYING TO CHARGE ME 1500 DOLLARS TO REPLACE A PART THAT COST 2 DOLLARS WHEN THEY KNEW ABOUT IT WHEN I BROUGHT IT IN SO MANY TIMES TO DIAGNOSE!!!!! THERE ARE COUNTLESS TIMING CHAIN ISSUES WITH OTHER OWNERS THENEWX.ORG YOU WILL FIND TONS OF COMPLAINTS. *TR

## Nissan Has Exclusive Knowledge of the Timing Chain Defect

30.    Nissan had superior and exclusive knowledge of the Timing Chain Defect and knew or should have known that the defect was not known or reasonably discoverable by Plaintiff and prospective class members before they bought or leased the Class Vehicles.

31.    Plaintiff is informed and believes and based thereon alleges that Nissan acquired its knowledge of the Timing Chain Defect prior to 2005 through sources not available to prospective class members, including, but not limited to, pre-release testing data and early consumer complaints to Defendants and their dealers about the Timing Chain Defect in the Class Vehicles, testing conducted in response to reported complaints, aggregate data from Nissan dealers, such as dealer repair orders, high warranty reimbursement rates that can cost up to several thousand dollars for each class vehicle, post warranty claims, replacement parts sales date, and other internal sources. Nissan also acquired its knowledge of the Timing Chain Defect as early as 2005, if not before, from earlier model year versions of such vehicles.[1]

32.    The existence of the Timing Chain Defect would be considered material by a reasonable consumer deciding whether to purchase or lease a vehicle. Had Plaintiff and the prospective class members known that the Class Vehicles were equipped with defective timing chain systems, they would not have purchased the Class Vehicles or would have paid less for them.

---

[1] For example, the 2004 Nissan Maxima, equipped with a similar timing chain system to that of the Class Vehicles, was covered in a TSB for a similar timing chain system defect.

1  33.  Reasonable consumers, like Plaintiff and the prospective class members, expect
2  and assume that a vehicle's engine and its timing system is safe, will function in a manner that
3  will not pose a safety hazard, and is free from defects. Plaintiff and prospective class
4  members further expect and assume that Nissan would not sell or lease vehicles with known
5  safety defects, such as the Timing Chain Defect, and would disclose any such defects to its
6  consumers when it learns of them. They would not expect Nissan to fail to disclose the
7  Timing Chain Defect to them, persistently deny the defect, and to charge thousands of dollars
8  to repair defective timing chain systems.

9  **Nissan Has Actively Concealed the Timing Chain Defect**

10  34.  While Nissan has been fully aware of the Timing Chain Defect in the Class
11  Vehicles, it has actively concealed the existence and nature of the defect from Plaintiff and
12  prospective class members at the time of purchase, lease or repair and thereafter. Specifically,
13  Nissan has failed to disclose or actively concealed at and after the time of purchase, lease, or
14  repair:

15          (a)  any and all known material defects or material nonconformity of the
16                  Class Vehicles, including the defects relating to the timing chain
17                  system;

18          (b)  that the Class Vehicles, including their timing chain systems, were not
19                  in good in working order, were defective, and were not fit for their
20                  intended purposes; and

21          (c)  that the Class Vehicles and their timing chain systems were defective,
22                  despite the fact that Nissan learned of such defects through alarming
23                  failure rates, customer complaints, as well as through other internal
24                  sources, as early as 2005, if not before.

25  35.  Nissan has caused Plaintiff and Members of the Class to expend money at its
26  dealerships to repair or replace the Class Vehicles' timing chain systems, despite Defendants'
27  knowledge of the Timing Chain Defect.

28  36.  When consumers present the Class Vehicles to an authorized Nissan dealer for

1    repair of the timing chain system, consumers are typically told that they must pay for the
2    repair.

3       37.    To this day, Nissan still has not notified Plaintiff and the prospective class
4    members that the Class Vehicles contain a systemic defect that causes the timing chain system
5    to malfunction.

6                    **TOLLING OF THE STATUTE OF LIMITATIONS**

7       38.    Because the defects in the design or manufacturer of the Class Vehicles and
8    their timing chain systems cannot be detected until the defect manifests itself, Plaintiff and the
9    prospective class members were not reasonably able to discover the problem until after
10   purchasing or leasing the Class Vehicles, despite their exercise of due diligence.

11      39.    Plaintiff and the prospective class members had no realistic ability to discern
12   that the timing chain systems were defective until the timing chain systems prematurely failed.
13   Therefore, the discovery rule is applicable to the claims asserted by Plaintiff and the
14   prospective class members.

15      40.    Plaintiff is informed and believes and based thereon alleges that Nissan has
16   known of the Timing Chain Defect since 2005, if not earlier, and has concealed from or failed
17   to alert owners and lessees of the Class Vehicles of the defective nature of their timing chain
18   systems.

19      41.    Any applicable statute of limitation has therefore been tolled by Nissan's
20   knowledge, active concealment, and denial of the facts alleged herein. Nissan is further
21   estopped from relying on any statute of limitation because of its concealment of the defective
22   nature of the Class Vehicles and their timing chains.

23                    **CLASS ACTION ALLEGATIONS**

24      42.    Plaintiff brings this lawsuit as a class action on behalf of himself and all others
25   similarly situated as members of the proposed Plaintiff Classes under California Code of Civil
26   Procedure § 382.

27      43.    All claims alleged herein arise under California law for which Plaintiff seek
28   relief authorized by California law.

44. · The Nationwide Class and Sub-Class are defined as:

   Nationwide Class: All individuals in the United States who purchased or leased any 2005 through 2010 Nissan Pathfinder, Xterra, or Frontier vehicles.

   California Sub-Class: All members of the Nationwide Class who reside in the State of California.

   Implied Warranty Sub-Class: All Members of the Nationwide Class who purchased or leased their vehicles in the State of California.

45. Excluded from the Class and Sub-Class are: (1) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiff reserves the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that the Class and Sub-Class should be expanded or otherwise modified.

46. There is a well-defined community of interest in the litigation and each subclass is readily ascertainable.

47. Numerosity: Although the exact number of prospective class members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of prospective class members' claims in a single action will provide substantial benefits to all parties and to the Court. The prospective class members are readily identifiable from information and records in Defendants' possession, custody, or control, as well as from records kept by the departments of motor vehicles of the various states.

48. Typicality: The claims of the representative Plaintiff are typical of the claims of the all prospective class members in that the representative Plaintiff and the prospective class members purchased and leased a Class Vehicle designed, manufactured, and distributed by Nissan and equipped with a defective timing chain system. The representative Plaintiff, like all prospective class members, has been damaged by Defendants' misconduct in that he has

1  incurred or will incur the cost of repairing or replacing the defective timing chain system.

2  Furthermore, the factual bases of Nissan's misconduct are common to all prospective class

3  members and represent a common thread resulting in injury to all prospective class members.

4  49.  Commonality: There are numerous questions of law and fact common to

5  Plaintiff and the prospective class members that predominate over any question affecting

6  individual prospective class members. These common legal and factual issues include the

7  following:

8       (a)  Whether Class Vehicles contain defects relating to the timing chain

9            system;

10      (b)  Whether the defects relating to the timing chain system constitute an

11           unreasonable safety risk;

12      (c)  Whether Defendants knew about the defects relating to the timing chain

13           system and, if so, how long Defendants have known of the defect;

14      (d)  Whether the defective nature of the timing chain system constitutes a

15           material fact;

16      (e)  Whether Defendants have a duty to disclose the defective nature of the

17           timing chain system to Plaintiff and prospective class members;

18      (f)  Whether Plaintiff and the prospective class members are entitled to

19           equitable relief, including but not limited to a preliminary and/or

20           permanent injunction;

21      (g)  Whether Defendants knew or reasonably should have known of the

22           defects relating to the timing chain system before it sold and leased

23           Class Vehicles to prospective class members;

24      (h)  Whether Defendants should be declared financially responsible for

25           notifying all prospective class members of the Timing Chain Defect and

26           for the costs and expenses of repairing and replacing the defective

27           timing chain systems;

28      (i)  Whether Defendants are obligated to inform prospective class members

Page 16

1                 of their right to seek reimbursement for having paid to diagnose, repair,

2                 or replace their defective timing chain systems; and

3               (j)    Whether Defendants breached the implied warranty of merchantability

4                    pursuant to the Song-Beverly Act.

5        50.    Adequate Representation: Plaintiff will fairly and adequately protect

6 prospective class members' interests. Plaintiff has retained attorneys experienced in

7 prosecuting class actions, including consumer and product defect class actions, and Plaintiff

8 intends to prosecute this action vigorously.

9        51.    Superiority: Plaintiff and the prospective class members have all suffered and

10 will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful

11 conduct. A class action is superior to other available methods for the fair and efficient

12 adjudication of the controversy. Absent a class action, prospective class members would

13 likely find the cost of litigating their claims prohibitively high and would therefore have no

14 effective remedy at law. Because of the relatively small size of the individual prospective

15 class members 'claims, it is likely that only a few prospective class members could afford to

16 seek legal redress for Defendants' misconduct. Absent a class action, prospective class

17 members will continue to incur damages, and Defendants' misconduct will continue without

18 remedy. Class treatment of common questions of law and fact would also be a superior

19 method to multiple individual actions or piecemeal litigation in that class treatment will

20 conserve the resources of the courts and the litigants and will promote consistency and

21 efficiency of adjudication.

22                            **FIRST CAUSE OF ACTION**

23             **(Violation of California's Consumer Legal Remedies Act,**

24                **California Civil Code §§ 1750, et seq.)**

25        52.    Plaintiff hereby incorporates by reference the allegations contained in the

26 preceding paragraphs of this Complaint.

27        53.    Plaintiff brings this cause of action on behalf of himself and on behalf of the

28 Nationwide Class, or, in the alternative, on behalf of the California Sub-Class, against all

1  Defendants.

2  54.  Defendants are "persons" as defined by California Civil Code § 1761(c).

3  55.  Plaintiff and prospective class members are "consumers" within the meaning of

4  California Civil Code § 1761(d).

5  56.  By failing to disclose and concealing the defective nature of the timing chain

6  system from Plaintiff and prospective class members, Defendants violated California Civil

7  Code § 1770(a), as they i) represented that the Class Vehicles and their timing chain systems

8  had characteristics and benefits that they do not have, ii) represented that the Class Vehicles

9  and their timing chain systems were of a particular standard, quality, or grade when they were

10  of another, and iii) advertised goods and services with intent not to sell them as advertised.

11  *See* Cal. Civ. Code §§ 1770(a)(5), (7), and (9).

12  57.  Defendants' unfair and deceptive acts or practices occurred repeatedly in

13  Defendants' trade or business, were capable of deceiving a substantial portion of the

14  purchasing public, and imposed a serious safety risk on the public.

15  58.  Defendants knew that the Class Vehicles and their timing chain systems

16  suffered from an inherent defect, were defectively designed or manufactured, would fail

17  prematurely, and were not suitable for their intended use.

18  59.  Defendants were under a duty to Plaintiff and the prospective class members to

19  disclose the timing chain systems' defective nature and/or the associated repair costs because:

20      (a)  Defendants were in a superior position to know the true state of facts

21          about the safety defect in the Class Vehicles' timing chain systems;

22      (b)  Plaintiff and the prospective class members could not reasonably have

23          been expected to learn or discover that their timing chain systems had a

24          dangerous safety defect until manifestation of failure; and

25      (c)  Defendants knew that Plaintiff and the prospective class members could

26          not reasonably have been expected to learn or discover the safety defect.

27  60.  In failing to disclose the defective nature of the timing chain system,

28  Defendants have knowingly and intentionally concealed material facts and breached their duty

Page 18

1    not to do so.

2    61.    In fact, instead of disclosing the Timing Chain Defect, Defendants' falsely
3    represented in their press releases that the Class Vehicles' timing chains were "silent."

4    62.    The facts concealed or not disclosed by Defendants to Plaintiff and the
5    prospective class members are material in that a reasonable consumer would have considered
6    them to be significant in deciding whether or not to purchase the Class Vehicles or pay a
7    lesser price. Had Plaintiff and other prospective class members known that the Class
8    Vehicles' timing chain systems were defective, they would not have bought the Class
9    Vehicles, -or would have paid less for them. Likewise, the prospective class members who
10    leased would have paid less.

11    63.    Plaintiff and the prospective class members are reasonable consumers who do
12    not expect the timing chain systems installed in their vehicles to fail prematurely. This is the
13    reasonable and objective consumer expectation relating to vehicle engines and timing chain
14    systems.

15    64.    As a result of Defendants' conduct, Plaintiff and prospective class members
16    have been harmed and suffered actual damages in that the Class Vehicles have undergone and
17    will continue to undergo premature timing chain system failures.

18    65.    As a direct and proximate result of Defendants' unfair or deceptive acts or
19    practices, Plaintiff and prospective class members have suffered and will continue to suffer
20    actual damages.

21    66.    Plaintiff and the prospective class members are entitled to equitable relief.

22    67.    Plaintiff has provided Defendants with notice of their alleged violations of the
23    CLRA pursuant to California Civil Code § 1782(a). If, within 30 days, Defendants fail to
24    provide appropriate relief for their violations of the CLRA, Plaintiff will amend this
25    Complaint to seek monetary, compensatory, and punitive damages, in addition to the
26    injunctive and equitable relief that he seeks now.

27    ///

28    ///

| | |
|---|---|
| 1 | **SECOND CAUSE OF ACTION** |
| 2 | **Violation of California Business & Professions Code §§ 17200, *et seq.*** |
| 3 | **(Against All Defendants)** |
| 4 | 68. Plaintiff hereby incorporates by reference the allegations contained in the |
| 5 | preceding paragraphs of this Complaint. |
| 6 | 69. Plaintiff brings this cause of action on behalf of himself and on behalf of the |
| 7 | Nationwide Class, or, in the alternative, on behalf of the California Sub-Class against all |
| 8 | Defendants. |
| 9 | 70. California Business & Professions Code § 17200 prohibits acts of "unfair |
| 10 | competition," including any "unlawful, unfair or fraudulent business act or practice" and |
| 11 | "unfair, deceptive, untrue or misleading advertising." |
| 12 | 71. Plaintiff and prospective class members are reasonable consumers who do not |
| 13 | expect their timing chain systems to prematurely fail. |
| 14 | 72. Defendants knew the Class Vehicles and their timing chain systems suffered |
| 15 | from inherent defects, were defectively designed or manufactured, would fail prematurely, |
| 16 | and were not suitable for their intended use. |
| 17 | 73. Defendants were under a duty to Plaintiff and the prospective class members to |
| 18 | disclose the defective nature of the Class Vehicles and their timing chain systems because: |
| 19 | (a) Defendants were in a superior position to know the true state of facts |
| 20 | about the safety defect in the Class Vehicles' timing chain systems; |
| 21 | (b) Defendants made partial disclosures about the quality of the Class |
| 22 | Vehicles without revealing the defective nature of the Class Vehicles |
| 23 | and their timing chain systems; and |
| 24 | (c) Defendants actively concealed the defective nature of the Class Vehicles |
| 25 | and their timing chain systems from Plaintiff and the Class. |
| 26 | 74. In failing to disclose the defects in the timing chain, Defendants have |
| 27 | knowingly and intentionally concealed material facts and breached their duty not to do so. |
| 28 | 75. The facts concealed from, or not disclosed to Plaintiff and the prospective class |

1  members by Defendants are material in that a reasonable person would have considered them
2  to be important in deciding whether to purchase Class Vehicles. Had Plaintiff and other
3  prospective class members known that the Class Vehicles' timing chain systems were
4  defective, Plaintiff and the other prospective class members would not have purchased Class
5  Vehicles or would have paid less for them.

6      76.     Defendants continued to conceal the defective nature of the Class Vehicles and
7  their timing chain systems even after prospective class members began to report problems.
8  Indeed, Defendants continue to cover up and conceal the true nature of the defect.

9      77.     By their conduct, Defendants have engaged in unfair competition and unlawful,
10  unfair, and fraudulent business practices.

11      78.     Defendants' unfair or deceptive acts or practices occurred repeatedly in
12  Defendants' trade or business and were capable of deceiving a substantial portion of the
13  purchasing public.

14      79.     As a direct and proximate result of Defendants' unfair and deceptive practices,
15  Plaintiff and class members have suffered and will continue to suffer actual damages.

16      80.     Defendants have been unjustly enriched and should be required to make
17  restitution to Plaintiff and prospective class members, pursuant to Cal. Bus. & Prof. Code §§
18  17203 and 17204.

19                              **THIRD CAUSE OF ACTION**

20      **(Breach of Implied Warranty pursuant to Song-Beverly Consumer Warranty Act,**

21              **California Civil Code §§ 1792 and 1791.1, *et seq.*)**

22      81.     Plaintiff hereby incorporates by reference the allegations contained in the
23  preceding paragraphs of this Complaint.

24      82.     Plaintiff brings this cause of action on behalf of himself and on behalf of the
25  members of the Implied Warranty Sub-Class.

26      83.     Defendants were at all relevant times the manufacturer, distributor, warrantor,
27  and/or seller of the Class Vehicles. Defendants knew or had reason to know of the specific
28  use for which the Class Vehicles were purchased.

84. Defendants provided Plaintiff and prospective class members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles and their timing chain systems suffered from an inherent defect at the time of sale and thereafter are not fit for their particular purpose of providing safe and reliable transportation.

85. Defendants impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, *inter alia*: (i) a warranty that the Class Vehicles and their timing chain systems were manufactured, supplied, distributed, and/or sold by Nissan were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their timing chain systems would be fit for their intended use while the Class Vehicles were being operated.

86. Contrary to the applicable implied warranties, the Class Vehicles and their timing chain systems at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and class members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including but not limited to the defective design and manufacture of their timing chain systems.

87. Defendants' actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

## RELIEF REQUESTED

88. Plaintiff, on behalf of himself and all others similarly situated, requests that the Court enter judgment against Defendants as follows:

    (a)    An order certifying the proposed Nationwide Class and Sub-Classes, designating Plaintiff as named representatives of the Nationwide Class, and designating the undersigned as class ccounsel;

    (b)    A declaration that Defendants are financially responsible for notifying

1                all prospective class members about the defective nature of the timing

2                chain, including the need for periodic maintenance;

3         (c)   An order to enjoin Defendants from further deceptive distribution, sales,

4                and lease practices with respect to Class Vehicles, and to remove and

5                replace Plaintiff and prospective class members' timing chain systems

6                with a suitable alternative product;

7         (d)   An award to Plaintiff and the Class for compensatory, exemplary, and

8                statutory damages, including interest, in an amount to be proven at trial,

9                except that, for now, Plaintiff seek only equitable and injunctive relief

10              with respect to his claims under California's Consumer Legal Remedies

11              Act, California Civil Code section 1750 *et seq.*;

12        (e)   Any and all remedies provided pursuant to the Song-Beverly Act,

13              including California Civil Code section 1794;

14        (f)   A declaration that Defendants must disgorge, for the benefit of the

15              Class, all or part of the ill-gotten profits they received from the sale or

16              lease of its Class Vehicles, or make full restitution to Plaintiff and class

17              members;

18        (g)   An award of attorneys' fees and costs, as allowed by law;

19        (h)   An award of attorneys' fees and costs pursuant to California Code of

20              Civil Procedure § 1021.5;

21        (i)   An award of pre-judgment and post-judgment interest, as provided by

22              law;

23        (j)   Leave to amend the Complaint to conform to the evidence produced at

24              trial; and

25        (k)   Such other relief as may be appropriate under the circumstances.

26   ///

27   ///

28   ///

# DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of any and all issues in this action so triable.

Dated: December 26, 2012                    Respectfully submitted,

By: _____

Jordan L. Lurie
David L. Cheng
Cody R. Padgett

Attorneys for Plaintiff Kobe Falco

1    Jordan L. Lurie (SBN 130013)
     Jordan.Lurie@capstonelawyers.com
2    David L. Cheng (SBN 240926)
     David.Cheng@capstonelawyers.com
3    Cody R. Padgett (SBN 275553)
     Cody.Padgett@capstonelawyers.com
4    Capstone Law APC
     1840 Century Park East, Suite 450
5    Los Angeles, California 90067
     Telephone:    (310) 556-4811
6    Facsimile:     (310) 943-0396

7    Attorneys for Plaintiff Kobe Falco

8

9                SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                 FOR THE COUNTY OF LOS ANGELES

11

12    KOBE FALCO, individually, and on behalf    Case No:
     of a class of similarly situated individuals,

13              Plaintiff,             **DECLARATION OF JORDAN LURIE IN**
                                     **SUPPORT OF PLAINTIFF'S SELECTION**
14            vs.                      **OF VENUE FOR TRIAL OF CLAIMS**
                                     **ARISING UNDER THE CALIFORNIA**
15    NISSAN NORTH AMERICA, INC., a        **CONSUMER LEGAL REMEDIES ACT**
16    California Corporation, NISSAN MOTOR    [Cal. Civ. Code, § 1780, subd. (d)]
     COMPANY, LTD., a Japanese Company,
17    and DOES 1-10, inclusive,

18              Defendants.

19

20

21

22

23

24

25

26

27

28

                 DECL. OF JORDAN LURIE IN SUPPORT OF PLAINTIFF'S SELECTION OF VENUE FOR TRIAL

1                      **DECLARATION OF JORDAN LURIE**

2        I, JORDAN LURIE, declare under penalty of perjury as follows:

3       1.       I am admitted, in good standing, to practice as an attorney in the State of

4 California. All of the matters set forth herein are within my personal knowledge, except those

5 matters that are stated to be upon information and belief. As to such matters, I believe them to

6 be true.

7       2.       Pursuant to California Civil Code section 1780(d), this Declaration is submitted

8 in support of Plaintiff's Selection of Venue for the Trial of Plaintiff's Cause of Action alleging

9 violation of California's Consumer Legal Remedies Act.

10       3.       On information and belief, Defendants, through their various entities, conduct

11 business in Los Angeles County.

12       4.       Based on the facts set forth herein, this Court is a proper venue for the

13 prosecution of Plaintiff's Cause of Action alleging violation of California's Consumer Legal

14 Remedies Act because Defendants conduct business activities in the County of Los Angeles.

15 *See,* Cal. Civ. Code § 1780(d).

16       I declare under penalty of perjury under the laws of the State of California that the

17 forgoing is true and correct. Executed this 26th day of December, 2012 in Los Angeles,

18 California.

19

20                           _____

21                           Jordan L. Lurie

22

23

24

25

26

27

28

DECL. OF JORDAN LURIE IN SUPPORT OF PLAINTIFF'S SELECTION OF VENUE FOR TRIAL

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
**NOTICE OF CASE ASSIGNMENT – CLASS ACTION CASES**
Case Number

THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT 4 9 8 2 3 8
Your case is assigned for all purposes to the judicial officer indicated below (Local Rule 3.3(c)).

| ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|
| Judge Elihu M. Berle | 323 | 1707 |
| Judge Kenneth Freeman | 323 | 1702 |
| Judge William F. Highberger | 307 | 1402 |
| Judge Jane Johnson | 308 | 1415 |
| Judge Anthony J. Mohr | 309 | 1409 |
| Judge John Shepard Wiley, Jr. | 311 | 1408 |
| OTHER | | |

## Instructions for handling Class Action Civil Cases

The following critical provisions of the Chapter Three Rules, as applicable in the Central District, are summarized for your assistance.

**APPLICATION**
The Chapter Three Rules were effective January 1, 1994. They apply to all general civil cases.

**PRIORITY OVER OTHER RULES**
The Chapter Three Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

**CHALLENGE TO ASSIGNED JUDGE**
A challenge under Code of Civil Procedure section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

**TIME STANDARDS**
Cases assigned to the Individual Calendaring Court will be subject to processing under the following time standards:

**COMPLAINTS:** All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days of filing.

**CROSS-COMPLAINTS:** Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

A Status Conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

**FINAL STATUS CONFERENCE**
The Court will require the parties at a status conference not more than 10 days before the trial to have timely filed and served all motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested jury instructions, and special jury instructions and special jury verdicts. These matters may be heard and resolved at this conference. At least 5 days before this conference, counsel must also have exchanged lists of exhibits and witnesses and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Eight of the Los Angeles Superior Court Rules.

**SANCTIONS**
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party or if appropriate on counsel for the party.

**This is not a complete delineation of the Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is absolutely imperative.**

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____    JOHN A. CLARKE, Executive Officer/Clerk

By _____, Deputy Clerk

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Jordan Luric (SBN 130013), David Cheng (SBN 240926), Cody Padgett (SBN 275553)<br>CAPSTONE LAW APC<br>1840 Century Park East, Suite 450<br>Los Angeles, CA 90067 | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.: (310) 556-4811      FAX NO.: (310)_943-0396<br>ATTORNEY FOR *(Name):* Plaintiff Kobe Falco | **CONFORMED COPY**<br>OF ORIGINAL FILED<br>Los Angeles Superior Court |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles<br>STREET ADDRESS: 111 N. Hill Street<br>MAILING ADDRESS: 111 N. Hill Street<br>CITY AND ZIP CODE: Los Angeles, 90012<br>BRANCH NAME: Stanley Mosk Courthouse, Central Division | DEC 27 2012<br><br>John A. Clarke, Executive Officer/Clerk<br>By Amber Hayes, Deputy |

| CASE NAME:<br>Falco v. Nissan North America, Inc., et al. | |
|---|---|

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER: B C 4 9 8 2 3 8 |
|---|---|---|
| ☑ Unlimited    ☐ Limited<br>(Amount     (Amount<br>demanded    demanded is<br>exceeds $25,000)   $25,000 or less) | ☐ Counter    ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| **Auto Tort** | **Contract** | **Provisionally Complex Civil Litigation**<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| ☐ Auto (22) | ☐ Breach of contract/warranty (06) | ☐ Antitrust/Trade regulation (03) |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | ☐ Other collections (09) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ☐ Insurance coverage (18) | ☐ Securities litigation (28) |
| ☐ Product liability (24) | ☑ Other contract (37) | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | **Real Property** | ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| ☐ Other PI/PD/WD (23) | ☐ Eminent domain/Inverse condemnation (14) | |
| **Non-PI/PD/WD (Other) Tort** | ☐ Wrongful eviction (33) | **Enforcement of Judgment** |
| ☐ Business tort/Unfair business practice (07) | ☐ Other real property (26) | ☐ Enforcement of judgment (20) |
| ☐ Civil rights (08) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| ☐ Defamation (13) | ☐ Commercial (31) | ☐ RICO (27) |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ Other complaint *(not specified above)* (42) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | **Miscellaneous Civil Petition** |
| ☐ Professional negligence (25) | **Judicial Review** | ☐ Partnership and corporate governance (21) |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Other petition *(not specified above)* (43) |
| **Employment** | ☐ Petition re: arbitration award (11) | |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☐ is  ☑ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
  a. ☐ Large number of separately represented parties    d. ☐ Large number of witnesses
  b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve    e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
  c. ☐ Substantial amount of documentary evidence    f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action *(specify):* three (3)
5. This case ☑ is   ☐ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: December 26, 2012

Jordan Lurie

_____
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |
|---|---|---|

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) *(if the*
    *case involves an uninsured*
    *motorist claim subject to*
    *arbitration, check this item*
    *instead of Auto)*

**Other PI/PD/WD (Personal Injury/**
**Property Damage/Wrongful Death)**
**Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
        Wrongful Death
Product Liability *(not asbestos or*
    *toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice–
        Physicians & Surgeons
    Other Professional Health Care
        Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
        and fall)
    Intentional Bodily Injury/PD/WD
        (e.g., assault, vandalism)
    Intentional Infliction of
        Emotional Distress
    Negligent Infliction of
        Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) *(not civil*
    *harassment)* (08)
Defamation (e.g., slander, libel)
    (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
        *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
        Contract *(not unlawful detainer*
        *or wrongful eviction)*
    Contract/Warranty Breach–Seller
        Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
        Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
        Case
Insurance Coverage *(not provisionally*
    *complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent*
        *domain, landlord/tenant, or*
        *foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal*
    *drugs, check this item; otherwise,*
    *report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
        Case Matter
    Writ–Other Limited Court Case
        Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
        Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.**
**Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    *(arising from provisionally complex*
    *case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of
        County)
    Confession of Judgment *(non-*
        *domestic relations)*
    Sister State Judgment
    Administrative Agency Award
        *(not unpaid taxes)*
    Petition/Certification of Entry of
        Judgment on Unpaid Taxes
    Other Enforcement of Judgment
        Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified*
    *above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-*
        *harassment)*
    Mechanics Lien
    Other Commercial Complaint
        Case *(non-tort/non-complex)*
    Other Civil Complaint
        *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition *(not specified*
    *above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
        Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
        Claim
    Other Civil Petition

**CIVIL CASE COVER SHEET**

# Conformed Copy

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Falco v. Nissan North America, Inc., et al. | BC498238 |

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to LASC Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

Item I. Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES   CLASS ACTION? ☑ YES   LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL 10-15   ☐ HOURS/ ☑ DAYS

Item II. Select the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Los Angeles Superior Court Local Rule 2.0.

---

**Applicable Reasons for Choosing Courthouse Location (see Column C below)**

1. Class Actions must be filed in the County Courthouse, Central District.
2. May be filed in Central (Other county, or no Bodily Injury/Property Damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.

---

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100 | Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110 | Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐ A6070 | Asbestos Property Damage | 2. |
| | | ☐ A7221 | Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260 | Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210 | Medical Malpractice - Physicians & Surgeons | 1., 2., 4. |
| | | ☐ A7240 | Other Professional Health Care Malpractice | 1., 2., 4. |
| | Other<br>Personal Injury<br>Property Damage<br>Wrongful Death<br>(23) | ☐ A7250 | Premises Liability (e.g., slip and fall) | 1., 2., 4. |
| | | ☐ A7230 | Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 2., 4. |
| | | ☐ A7270 | Intentional Infliction of Emotional Distress | 1., 2., 3. |
| | | ☐ A7220 | Other Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ A6029 | Other Commercial/Business Tort (not fraud/breach of contract) | 1., 2., 3. |
| | Civil Rights (08) | ☐ A6005 | Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010 | Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013 | Fraud (no contract) | 1., 2., 3. |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: Falco v. Nissan North America, Inc., et al. | CASE NUMBER |
|---|---|

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons -See Step 3 Above |
|---|---|---|---|
| Non-Personal Injury/Property Damage/ Wrongful Death Tort (Cont'd.) | Professional Negligence (25) | ☐ A6017 Legal Malpractice<br>☐ A6050 Other Professional Malpractice (not medical or legal) | 1., 2., 3.<br>1., 2., 3. |
| | Other (35) | ☐ A6025 Other Non-Personal Injury/Property Damage tort | 2.,3. |
| Employment | Wrongful Termination (36) | ☐ A6037 Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024 Other Employment Complaint Case<br>☐ A6109 Labor Commissioner Appeals | 1., 2., 3.<br>10. |
| Contract | Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not Unlawful Detainer or wrongful eviction)<br>☐ A6008 Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence)<br>☐ A6019 Negligent Breach of Contract/Warranty (no fraud)<br>☐ A6028 Other Breach of Contract/Warranty (not fraud or negligence) | 2., 5.<br>2., 5.<br>1., 2., 5.<br>1., 2., 5. |
| | Collections (09) | ☐ A6002 Collections Case-Seller Plaintiff<br>☐ A6012 Other Promissory Note/Collections Case | 2., 5., 6.<br>2., 5. |
| | Insurance Coverage (18) | ☐ A6015 Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☑ A6009 Contractual Fraud<br>☐ A6031 Tortious Interference<br>☐ A6027 Other Contract Dispute(not breach/insurance/fraud/negligence) | (1.), 2., 3., 5.<br>1., 2., 3., 5.<br>1., 2., 3., 8. |
| Real Property | Eminent Domain/Inverse Condemnation (14) | ☐ A7300 Eminent Domain/Condemnation Number of parcels______ | 2. |
| | Wrongful Eviction (33) | ☐ A6023 Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018 Mortgage Foreclosure<br>☐ A6032 Quiet Title<br>☐ A6060 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6.<br>2., 6.<br>2., 6. |
| Unlawful Detainer | Unlawful Detainer-Commercial (31) | ☐ A6021 Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020 Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022 Unlawful Detainer-Drugs | 2., 6. |
| Judicial Review | Asset Forfeiture (05) | ☐ A6108 Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115 Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |

| SHORT TITLE: Falco v. Nissan North America, Inc., et al. | | CASE NUMBER |
| --- | --- | --- |

| A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
| --- | --- | --- |
| **Judicial Review (Cont'd.)** | | |
| Writ of Mandate<br>(02) | ☐ A6151  Writ - Administrative Mandamus<br>☐ A6152  Writ - Mandamus on Limited Court Case Matter<br>☐ A6153  Writ - Other Limited Court Case Review | 2..8.<br>2.<br>2. |
| Other Judicial Review<br>(39) | ☐ A6150  Other Writ /Judicial Review | 2..8. |
| **Provisionally Complex Litigation** | | |
| Antitrust/Trade<br>Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1..2..8. |
| Construction Defect (10) | ☐ A6007  Construction defect | 1..2..3. |
| Claims Involving Mass<br>Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1..2..8. |
| Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| Insurance Coverage<br>Claims from Complex<br>Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2..5., 8. |
| **Enforcement of Judgment** | | |
| Enforcement<br>of Judgment<br>(20) | ☐ A6141  Sister State Judgment<br>☐ A6160  Abstract of Judgment<br>☐ A6107  Confession of Judgment (non-domestic relations)<br>☐ A6140  Administrative Agency Award (not unpaid taxes)<br>☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112  Other Enforcement of Judgment Case | 2., 9.<br>2..6.<br>2., 9.<br>2..8.<br>2., 8.<br>2., 8..9. |
| **Miscellaneous Civil Complaints** | | |
| RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2..8. |
| Other Complaints<br>(Not Specified Above)<br>(42) | ☐ A6030  Declaratory Relief Only<br>☐ A6040  Injunctive Relief Only (not domestic/harassment)<br>☐ A6011  Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1..2., 8.<br>2., 8.<br>1..2..8.<br>1., 2., 8. |
| **Miscellaneous Civil Petitions** | | |
| Partnership Corporation<br>Governance(21) | ☐ A6113  Partnership and Corporate Governance Case | 2..8. |
| Other Petitions<br>(Not Specified Above)<br>(43) | ☐ A6121  Civil Harassment<br>☐ A6123  Workplace Harassment<br>☐ A6124  Elder/Dependent Adult Abuse Case<br>☐ A6190  Election Contest<br>☐ A6110  Petition for Change of Name<br>☐ A6170  Petition for Relief from Late Claim Law<br>☐ A6100  Other Civil Petition | 2., 3., 9.<br>2., 3., 9.<br>2., 3., 9.<br>2.<br>2., 7.<br>2., 3.. 4.. 8.<br>2., 9. |

LACIV 109 (Rev. 01/07)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC. rule 2.0
Page 3 of 4

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Falco v. Nissan North America, Inc., et al. | |

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., Step 3 on Page 1, as the proper reason for filing in the court location you selected.

| REASON: CHECK THE NUMBER UNDER COLUMN C WHICH APPLIES IN THIS CASE<br><br>☑1. ☐2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | | | ADDRESS:<br>["Class Actions must be filed in the County Courthouse, Central District"]  Stanley Mosk Courthouse, 111 North Hill Street |
|---|---|---|---|
| CITY:<br>Los Angeles | STATE:<br>CA | ZIP CODE:<br>90012 | |

Item IV. *Declaration of Assignment*: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the __Stanley Mosk__ courthouse in the __Central__ District of the Los Angeles Superior Court (Code Civ. Proc., § 392 et seq. and LASC Local Rule 2.0, subds. (b), (c) and (d)).

Dated: December 26, 2012

(SIGNATURE OF ATTORNEY/FILING PARTY)

---

### PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet form CM-010.

4. Complete Addendum to Civil Case Cover Sheet form LACIV 109 (Rev. 01/07), LASC Approved 03-04.

5. Payment in full of the filing fee, unless fees have been waived.

6. Signed order appointing the Guardian ad Litem, JC form FL-935, if the plaintiff or petitioner is a minor under 18 years of age, or if required by Court.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE
[CRC 3.221 Information about Alternative Dispute Resolution]
For additional ADR information and forms visit the Court ADR web application at www.lasuperiorcourt.org (click on ADR).

The plaintiff shall serve a copy of this Information Package on each defendant along with the complaint (Civil only).

**What is ADR:**
Alternative Dispute Resolution (ADR) is the term used to describe all the other options available for settling a dispute which once had to be settled in court. ADR processes, such as arbitration, mediation, neutral evaluation (NE), and settlement conferences, are less formal than a court process and provide opportunities for parties to reach an agreement using a problem-solving approach.

There are many different kinds of ADR. All of them utilize a "neutral", an impartial person, to decide the case or help the parties reach an agreement.

**Mediation:**
In mediation, a neutral person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

> **Cases for Which Mediation May Be Appropriate**
> Mediation may be particularly useful when parties have a dispute between or among family members, neighbors, or business partners. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

> **Cases for Which Mediation May Not Be Appropriate**
> Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

**Arbitration:**
In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." *Binding arbitration* means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. *Nonbinding* arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

> **Cases for Which Arbitration May Be Appropriate**
> Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

> **Cases for Which Arbitration May Not Be Appropriate**
> If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

**Neutral Evaluation:**
In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

> **Cases for Which Neutral Evaluation May Be Appropriate**
> Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

> **Cases for Which Neutral Evaluation May Not Be Appropriate**
> Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

**Settlement Conferences:**
Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

LAADR 005 (Rev.12-09)
LASC Approved 05-09

# LOS ANGELES SUPERIOR COURT ADR PROGRAMS

**CIVIL:**

- **Civil Action Mediation** (Governed by Code of Civil Procedure (CCP) sections 1775-1775.15, California Rules of Court, rules 3.850-3.868 and 3.890-3.898 Evidence Code sections 1115-1128, and Los Angeles Superior Court Rules, chapter 12.)
- **Retired Judge Settlement Conference**
- **Neutral Evaluation** (Governed by Los Angeles Superior Court Rules, chapter 12.)
- **Judicial Arbitration** (Governed by Code of Civil Procedure sections 1141.10-1141.31, California Rules of Court, rules 3.810-3.830, and Los Angeles Superior Court Rules, chapter 12.)
- **Eminent Domain Mediation** (Governed by Code of Civil Procedure section 1250.420.)
- **Civil Harassment Mediation**
- **Small Claims Mediation**

**FAMILY LAW (non-custody):**

- **Mediation**
- **Forensic Certified Public Accountant (CPA) Settlement Conference**
- **Settlement Conference**
- **Nonbinding Arbitration** (Governed by Family Code section 2554.)

**PROBATE:**

- **Mediation**
- **Settlement Conference**

## NEUTRAL SELECTION

Parties may select a mediator, neutral evaluator, or arbitrator from the Court Party Select Panel or may hire someone privately, at their discretion. If the parties utilize the Random Select Mediation or Arbitration Panel, the parties will be assigned on a random basis the name of one neutral who meets the case criteria entered on the court's website.

## COURT ADR PANELS

**Party Select Panel**  The Party Select Panel consists of mediators, neutral evaluators, and arbitrators who have achieved a specified level of experience in court-connected cases. The parties (collectively) may be charged $150.00 per hour for the first three hours of hearing time. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing.

**Random Select Panel**  The Random Select Panel consists of trained mediators, neutral evaluators, and arbitrators who have not yet gained the experience to qualify for the Party Select Panel, as well as experienced neutrals who make themselves available pro bono as a way of supporting the judicial system. It is the policy of the Court that all Random Select panel volunteer mediators, neutral evaluators, and arbitrators provide three hours hearing time per case. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing.

**Private Neutral**  The market rate for private neutrals can range from $300-$1,000 per hour.

## ADR ASSISTANCE

For assistance regarding ADR, please contact the ADR clerk at the courthouse in which your case was filed.

| COURTHOUSE | ADDRESS | ROOM | CITY | PHONE | FAX |
|---|---|---|---|---|---|
| Antonovich | 42011 4th St. West | None | Lancaster, CA 93534 | (661)974-7275 | (661)974-7060 |
| Chatsworth | 9425 Penfield Ave. | 1200 | Chatsworth, CA 91311 | (818)576-8565 | (818)576-8687 |
| Compton | 200 W. Compton Blvd. | 1002 | Compton, CA 90220 | (310)603-3072 | (310)223-0337 |
| Glendale | 600 E. Broadway | 273 | Glendale, CA 91206 | (818)500-3160 | (818)548-5470 |
| Long Beach | 415 W. Ocean Blvd. | 316 | Long Beach, CA 90802 | (562)491-6272 | (562)437-3802 |
| Norwalk | 12720 Norwalk Blvd. | 308 | Norwalk, CA 90650 | (562)807-7243 | (562)462-9019 |
| Pasadena | 300 E. Walnut St. | 109 | Pasadena, CA 91101 | (626)356-5685 | (626)666-1774 |
| Pomona | 400 Civic Center Plaza | 106 | Pomona, CA 91766 | (909)620-3183 | (909)629-6283 |
| San Pedro | 505 S. Centre | 209 | San Pedro, CA 90731 | (310)519-6151 | (310)514-0314 |
| Santa Monica | 1725 Main St. | 203 | Santa Monica, CA 90401 | (310)260-1829 | (310)319-6130 |
| Stanley Mosk | 111 N. Hill St. | 113 | Los Angeles, CA 90012 | (213)974-5425 | (213)633-5115 |
| Torrance | 825 Maple Ave. | 100 | Torrance, CA 90503 | (310)222-1701 | (310)782-7326 |
| Van Nuys | 6230 Sylmar Ave. | 418 | Van Nuys, CA 91401 | (818)374-2337 | (818)902-2440 |

Partially Funded by the Los Angeles County Dispute Resolution Program
A complete list of the County Dispute Resolution Programs is available online and upon request in the Clerk's Office.

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF LOS ANGELES

### Information About Alternative Dispute Resolution:

California Rules of Court, rule 3.221, requires counties participating in the Dispute Resolution Programs Act ("DRPA"), to provide information about the availability of local dispute resolution programs funded under DRPA. In Los Angeles County, these services are made possible through major support from the Los Angeles County Department of Community and Senior Services through DRPA. The list of the local dispute resolution programs funded in Los Angeles County is set forth below.

Superior Court of California, Los Angeles County, ADR Office (213) 974-5425
www.lasuperiorcourt.org/ADR

**Staff and volunteers of the following identified agencies are not employees of the Los Angeles Superior Court:**

Asian-Pacific American Dispute Resolution Center (213) 250-8190 www.apadrc.org

California Academy of Mediation Professionals (818) 377-7250 www.mediationprofessionals.org

California Lawyers for the Arts, Arbitration and Mediation Service (310) 998-5590 www.calawyersforthearts.org/

Center for Conflict Resolution (818) 705-1090 www.ccr4peace.org

Inland Valleys Justice Center (909) 621-7479 www.ivjc.org

Korean American Coalition 4.29 Center (213) 365-5999 www.kacla.org

Los Angeles City Attorney's Office Dispute Resolution Program (213) 485-8324
www.lacity.org/mediate

Los Angeles County Bar Association Dispute Resolution Services
(877) 473-7658 (323) 930-1841 (888) 922-1322 (562) 570-1019 www.lacba.org/drs

Los Angeles County Department of Consumer Affairs (213) 974-0825

The Loyola Law School Center for Conflict Resolution (213) 736-1145 www.lls.edu/ccr

City of Norwalk Dispute Resolution Program (562) 929-5603
www.ci.norwalk.ca.us/socialservices2.asp

*These programs do not offer legal advice or help you respond to a summons, but they can assist in resolving your problem through mediation.*

**Dispute Resolution Programs Act**
**Contracts Administration Office: (213) 738-2621**

LAADR 007 (Rev. 04/10)                    **INFORMATION ABOUT**
LASC Approved 07-04                  **ALTERNATIVE DISPUTE RESOLUTION**

| NAME, ADDRESS, AND TELEPHONE NUMBER OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| | | |

ATTORNEY FOR (Name):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:
Click on the button to select the appropriate court address.

PLAINTIFF:

DEFENDANT:

| STIPULATION TO PARTICIPATE IN ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER: |
|---|---|

The undersigned parties stipulate to participate in an Alternative Dispute Resolution (ADR) process in the above-entitled action, as follows:

☐ Mediation

☐ Non-Binding Arbitration

☐ Binding Arbitration

☐ Early Neutral Evaluation

☐ Settlement Conference

☐ Other ADR Process (describe): _____

Dated: _____

| Name of Stipulating Party<br>☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| Name of Stipulating Party<br>☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party<br>☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party<br>☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |

☐ *Additional signature(s) on reverse*

LAADR 001 10-04
LASC Approved
(Rev. 01-07)

**STIPULATION TO PARTICIPATE IN
ALTERNATIVE DISPUTE RESOLUTION (ADR)**

Cal. Rules of Court, rule 3.221
Page 1 of 2

| Short Title | Case Number |
|---|---|
| | |

**Name of Stipulating Party**
☐ Plaintiff ☐ Defendant ☐ Cross-defendant

Name of Party or Attorney Executing Stipulation

Signature of Party or Attorney

**Name of Stipulating Party**
☐ Plaintiff ☐ Defendant ☐ Cross-defendant

Name of Party or Attorney Executing Stipulation

Signature of Party or Attorney

**Name of Stipulating Party**
☐ Plaintiff ☐ Defendant ☐ Cross-defendant

Name of Party or Attorney Executing Stipulation

Signature of Party or Attorney

**Name of Stipulating Party**
☐ Plaintiff ☐ Defendant ☐ Cross-defendant

Name of Party or Attorney Executing Stipulation

Signature of Party or Attorney

**Name of Stipulating Party**
☐ Plaintiff ☐ Defendant ☐ Cross-defendant

Name of Party or Attorney Executing Stipulation

Signature of Party or Attorney

**Name of Stipulating Party**
☐ Plaintiff ☐ Defendant ☐ Cross-defendant

Name of Party or Attorney Executing Stipulation

Signature of Party or Attorney

**Name of Stipulating Party**
☐ Plaintiff ☐ Defendant ☐ Cross-defendant

Name of Party or Attorney Executing Stipulation

Signature of Party or Attorney

**Name of Stipulating Party**
☐ Plaintiff ☐ Defendant ☐ Cross-defendant

Name of Party or Attorney Executing Stipulation

Signature of Party or Attorney

**Name of Stipulating Party**
☐ Plaintiff ☐ Defendant ☐ Cross-defendant

Name of Party or Attorney Executing Stipulation

Signature of Party or Attorney

**Name of Stipulating Party**
☐ Plaintiff ☐ Defendant ☐ Cross-defendant

Name of Party or Attorney Executing Stipulation

Signature of Party or Attorney

LAADR 001 10-04
LASC Approved
(Rev. 01-07)

**STIPULATION TO PARTICIPATE IN
ALTERNATIVE DISPUTE RESOLUTION (ADR)**

Cal. Rules of Court, rule 3.221
Page 2 of 2

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association
Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:          FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES | |
|---|---|
| COURTHOUSE ADDRESS: | |
| PLAINTIFF: | |
| DEFENDANT: | |

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, to discuss and consider whether there can be agreement on the following:

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

Case 2:13-cv-00686-DDP-MAN   Document 1   Filed 01/31/13   Page 54 of 63   Page ID #:56

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h. Computation of damages, including documents not privileged or protected from disclosure, on which such computation is based;

i. Whether the case is suitable for the Expedited Jury Trial procedures (see information at **www.lasuperiorcourt.org** under "*Civil*" and then under "*General Information*").

2. The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
(INSERT DATE)                                      (INSERT DATE)
complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation.

3. The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____        ➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR PLAINTIFF)
Date:
                                                     ➤ _____
_____              (ATTORNEY FOR DEFENDANT)
(TYPE OR PRINT NAME)
Date:
                                                     ➤ _____
_____              (ATTORNEY FOR DEFENDANT)
(TYPE OR PRINT NAME)
Date:                                                ➤ _____

_____              (ATTORNEY FOR DEFENDANT)
(TYPE OR PRINT NAME)
Date:
                                                     ➤ _____
_____              (ATTORNEY FOR _____ )
(TYPE OR PRINT NAME)
Date:                                                ➤ _____

_____              (ATTORNEY FOR _____ )
(TYPE OR PRINT NAME)
Date:
                                                     ➤ _____
_____              (ATTORNEY FOR _____ )
(TYPE OR PRINT NAME)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:               FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES | |
|---|---|
| COURTHOUSE ADDRESS: | |
| PLAINTIFF: | |
| DEFENDANT: | |

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

   i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

   ii. Include a brief summary of the dispute and specify the relief requested; and

   iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

   i. Also be filed on the approved form (copy attached);

   ii. Include a brief summary of why the requested relief should be denied;

LACIV 036 (new)
LASC Approved 04/11        **STIPULATION – DISCOVERY RESOLUTION**        Page 1 of 3

    iii.   Be filed within two (2) court days of receipt of the Request; and

    iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:       FAX NO. (Optional): <br> E-MAIL ADDRESS (Optional): <br> ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE** <br> (pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:
   - ☐ Request for Informal Discovery Conference
   - ☐ Answer to Request for Informal Discovery Conference
2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).
3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).
4. For a Request for Informal Discovery Conference, <u>briefly</u> describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, <u>briefly</u> describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

| SHORT TITLE: | CASE NUMBER: |
|---|---|

## The following parties stipulate:

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

_____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR _____ )

➤ _____
(ATTORNEY FOR _____ )

➤ _____
(ATTORNEY FOR _____ )

## THE COURT SO ORDERS.

Date: _____

_____
JUDICIAL OFFICER



1840 Century Park East, Suite 450
Los Angeles, California 90067
310.556.4811 Main | 310.943.0396 Fax

CODY PADGETT
310.712.8029 Direct
Cody.Padgett@capstonelawyers.com

December 27, 2012

*Via Certified Mail, Return Receipt Requested*
*And First Class Mail*

Nissan North America, Inc.
M.S. A-5-C, P.O. BOX 685001
Franklin, Tennessee 37068
**Attn: Office of General Counsel**

Nissan North America, Inc.
Care of CSC – Lawyers Incorporating Service
2730 Gateway Oaks Drive, Suite 100
Sacramento, California 95833
**Attn: Office of General Counsel**

CLRA Letter Re:    Nissan Pathfinder, Xterra, and Frontier Vehicles Equipped with
                   Defective Timing Chain Systems

Dear Sir or Madam:

We are writing this letter on behalf of our client, Kobe Falco, and all persons residing in the
United States who purchased or leased, not for resale, any 2005-2010 Nissan Pathfinder, Xterra,
and Frontier Vehicles equipped with VQ40 engines ("Nissan Vehicles").

Pursuant to the California Consumer Legal Remedies Act ("CLRA"), California Civil Code
section 1750 et seq., and specifically, sections 1782 (a)(1) and (2), we hereby notify you that
Nissan North America ("Nissan") has violated section 1770 of the CLRA by warranting,
advertising, and selling defective Nissan Vehicles that it knew (or should have known) are
defective to consumers in California and throughout the United States.

In particular, we notify you that each of the Nissan Vehicles and their timing chain systems suffer
from numerous latent design and/or manufacturing defects. Because of a defect or defects in the
Nissan Vehicles and their timing chains, tensioners, and guides, among other places, the Nissan
Vehicles timing chains and related components are prone to degradation of the contact surfaces
which keep the timing chains at the proper tension and position within the engine (the "Timing
Chain Defect").

The defectively designed and/or manufactured Nissan Vehicles with the Timing Chain Defect
present a safety hazard and are unreasonably dangerous to consumers. As the timing chain

malfunction progresses, this degradation of the protective surfaces leads to an incorrect fit between the timing chain and its guides and tensioners. Among other problems, damaging metal-on-metal contact can occur between the fast rotating metal timing chain and its associated metal components. This improper positioning and/or metal-on-metal contact can lead to a loss of proper chain tension, which can cause the timing chain to skip teeth on the sprockets, to stretch, or to otherwise deteriorate over time, which can in turn lead to sudden, catastrophic engine failure, which can occur suddenly at any speed, thereby contributing to traffic accidents, which can result in personal injury or death.

Our client, Kobe Falco, is a California citizen who lives in Irvine and a "consumer" as defined by California Civil Code § 1761(d). In or about 2005, Mr. Falco purchased a new 2005 Nissan Pathfinder, and his vehicle has exhibited the Timing Chain Defect described herein. Mr. Falco has suffered a loss as a result of the Timing Chain Defect.

Nissan, through its own internal testing, records of customer complaints, dealership repair orders, as well as various other internal sources, was aware and knew of the Timing Chain Defect. However, Nissan failed to disclose and actively concealed the Timing Chain Defect from consumers at the time of purchase or lease and thereafter.

Nissan's conduct in warranting, advertising, and selling the Nissan Vehicles knowing that they contained the Timing Chain Defect constitutes the following violations of section 1770:

1. Nissan represented that the Nissan Vehicles had characteristics or benefits which they did not have (§ 1770 (a)(5));

2. Nissan has falsely represented that the Nissan Vehicles were of a particular standard, quality, or grade when they are of another (§ 1770 (a)(7));

3. Nissan advertised the Nissan Vehicles with the intent not to sell them as advertised (§ 1770 (a)(9));

4. Nissan represents that a transaction confers or involves rights, remedies, or obligations which it does not have-or involve (§ 1770 (a)(14)); and

5. Nissan represents that its goods have been supplied in accordance with a previous representation when they have not (§ 1770 (a)(16)).

Pursuant to section 1782 of the CLRA, based on the foregoing, we hereby demand that within thirty (30) days of receiving this letter, Nissan:

1. Pay all costs of repairing or replacing the Nissan Vehicles owned or leased by any individual residing in the United States, so that the Nissan Vehicles will no longer suffer from the Timing Chain Defect;

2. Pay all costs of repairing or replacing any other parts of the Nissan Vehicles owned or leased by any individual residing in the United States that were damaged as a result of the Timing Chain Defect;

3. Reimburse any and all individuals residing in the United States who currently own or lease a Nissan Vehicle for all expenses already incurred due to the

Timing Chain Defect, including reimbursing all individuals for all their consequential and/or incidental damages;

4.  Reimburse any and all individuals residing in the United States who owned or leased a Nissan Vehicle all expenses incurred due to the Timing Chain Defect including reimbursing all individuals for all their consequential and/or incidental damages; and

5.  Provide monetary compensation, plus interest, to all owners and/or lessees of the Nissan Vehicles in the United States who have been damaged as a result of Nissan's conduct alleged herein.

Unless Nissan takes such action as demanded above within (30) days after your receipt of this letter, we intend to bring suit for damages pursuant to the CLRA on behalf of all owners and lessees of the Nissan Vehicles residing in California and throughout the United States.

If you have any questions regarding this notice and demand, please contact me at 310-556-4811.

Sincerely,

Cody R. Padgett

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself □)<br>Kobe Falco | DEFENDANTS<br>Nissan North America, Inc., Nissan Motor Company, Ltd. |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>Jordan Lurie; David Cheng, Cody Padgett<br>Capstone Law APC<br>1840 Century Park East, Suite 450 Los Angeles, CA Telephone: 310.556.4811 | Attorneys (If Known)<br>Sedgwick LLP<br>Paul Riehle (State Bar No. 115199) James Nelson (State Bar No. 181256).<br>333 Bush Street, 30th Floor<br>San Francisco, CA 94104-2834 Telephone: 415-781-7900 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES - For Diversity Cases Only**
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☑ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding   ☑ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes   ☐ No           ☑ **MONEY DEMANDED IN COMPLAINT:** $ 392,310,829.80

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. 1332, Violation of Consumer Legal Remedies Act, Unfair Business Practices Act, and Song-Beverly Consumer Warranty Act

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Fed. Employers' Liability | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 340 Marine | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | CIVIL RIGHTS | FORFEITURE/ PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 355 Motor Vehicle Product Liability | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 443 Housing/Acco- mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | IMMIGRATION | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 463 Habeas Corpus- Alien Detainee | | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 465 Other Immigration Actions | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**   Case Number:   CV13-00686

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)    ☐ A.  Arise from the same or closely related transactions, happenings, or events; or

☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Tennessee, Japan |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
  **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Seattle, Washington |

***** Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _Paul Prehn_      Date  _Janny 31, 2013_

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |