Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Mark Pifko (SBN 228412)
mpifko@baronbudd.com
Isaac Miller (SBN 266459)
imiller@baronbudd.com
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698

Attorneys for Plaintiffs
KOBE FALCO, JOEL SEGUIN,
ALFREDO PADILLA, and ROBERTO
GALVAN, individually, and on behalf
of other members of the public similarly
situated

*Additional Counsel Listed Below*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KOBE FALCO, JOEL SEGUIN, ALFREDO PADILLA, and ROBERTO GALVAN, individually, and on behalf of other members of the public similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NISSAN NORTH AMERICA, INC. a California corporation, and NISSAN JIDOSHA KABUSHIKI KAISHA d/b/a NISSAN MOTOR CO., LTD., a publicly traded company in Japan,<br><br>Defendants. | Case No.: 2:13-cv-00686-DDP-MAN<br>**CLASS ACTION**<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT NISSAN MOTOR CO., LTD.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. PROC. 12(b)(5) AND 4(c)**<br><br>District Judge: Hon. Dean D. Pregerson<br>Magistrate: Hon. Margaret A. Nagle<br><br>Hearing Date: September 30, 2013<br>Hearing Time: 10:00 a.m.<br>Location:  312 North Spring Street<br>    Courtroom 3, 2nd Floor<br><br>Action Filed: Jan. 31, 2013 (removal)<br>Trial Date: None Set |

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION .................................................................................................. 1

II. STATEMENT OF FACTS ..................................................................................... 2

III. CALIFORNIA LAW PERMITS SERVICE ON NML THROUGH ITS "GENERAL MANAGER" ...................................................................................... 3

IV. NML WAS PROPERLY SERVED THROUGH ITS "GENERAL MANAGER," NNA ................................................................................................. 3

    A. NNA Is NML's "General Manager" under California Law ........................... 4

    B. Plaintiffs Properly Served NML with the Summons and Complaint by Substitute Service on NNA ............................................................................. 7

V. EVEN IF THIS COURT DETERMINES PROCESS WAS NOT PROPERLY SERVED ON NML IN JUNE, ANY DEFECTS HAVE BEEN CORRECTED AND THEREFORE, DISMISSAL IS NOT WARRANTED .......... 8

VI. CONCLUSION ....................................................................................................... 9

# TABLE OF AUTHORITIES

**AUTHORITY**                                                                             **PAGE(S)**

**CASES**

*Cosper v. Smith & Wesson Arms Co.*,
   53 Cal.2d 77 (1959) ................................................................................... 4, 6

*Eclipse Fuel Engineering Co. v. Sup. Ct.*,
   148 Cal. App. 2d 736 (1957) ........................................................................ 3

*Gibble v. Car-Lene Research, Inc.*,
   67 Cal. App. 4th 295 (1998) ......................................................................... 3

*Gray v. Mazda Motor of America*,
   560 F. Supp. 2d 928 (C.D. Cal. 2008) ............................................... 1, 4, 5, 7

*Khachatryan v. Toyota Motor Sales, U.S.A., Inc.*,
   578 F. Supp. 2d 1224 (C.D. Cal. 2008) ............................................ 1, 4, 5, 7

*McKinney v. Law Office of James Duncan*,
   2010 U.S. Dist. LEXIS 14589 (N.D. Cal. Feb. 19, 2010) ........................... 8, 9

*Seguin v. Nissan North America Inc., et al.*,
   Case No. 2:13-cv-00761-DDP-MAN (C.D. Cal., filed Feb. 4, 2013) .............. 1, 2, 7

*Umbenhaur v. Woog*,
   969 F.2d 25 (3rd Cir. 1992) .......................................................................... 8

*Yamaha Motor Co., Ltd. v. Sup. Ct.*,
   171 Cal. App. 4th 264 (2009) ................................................................... 5, 6

**STATUTES**

Cal. Code Civ. Proc. § 415.20 ........................................................................ 7, 8

Cal. Code Civ. Proc. § 416.10 ............................................................... 1, 3, 4, 5, 8

**OTHER AUTHORITIES**

Fed. R. Civ. Proc. 4(h)(1) ................................................................................... 3

Fed. R. Civ. Proc. 12(b)(5) ................................................................................. 1

## I. INTRODUCTION

The core issued presented in the Motion to Dismiss under Rule 12(b)(5) and Rule 4(c) filed by Defendant Nissan Motor Co., Ltd. ("NML") is whether Nissan North America, Inc. ("NNA") qualifies as NML's "general manager" for service of process purposes under Section 416.10(b) of the California Code of Civil Procedure. That issue is not a controversial one.

Applying this Court's recent holdings in *Khachatryan v. Toyota Motor Sales, U.S.A., Inc.*, 578 F. Supp. 2d 1224 (C.D. Cal. 2008) and *Gray v. Mazda Motor of America*, 560 F. Supp. 2d 928 (C.D. Cal. 2008), there can be no real question that NNA meets the requirements of a "general manager" under California law. NML admits that NNA serves as NML's sole and exclusive distributor and marketing agent in the California and United States. Additionally, by using NNA to distribute, market, and sell Nissan vehicles in California and throughout the United States, NML obtains the same business advantages it would have enjoyed had NML performed these functions by itself. As a result, the relationship between NML and NNA is sufficient to support a finding that NNA is NML's "general manager" for purposes of service under California law. Therefore, service was properly effected on NML via service on NNA.

NML's other argument, that it was not properly served with the Summons, is moot. Although NML was previously served with the Summons and Complaint in the related *Seguin v. Nissan North America, Inc.* action[1] (the claims of which were subsequently and voluntarily combined into this Action), Plaintiffs re-served NML with the First Amended Complaint and a Summons in this Action on August 8, 2013. (*See* Dkt. No. 35; Pifko Decl. ¶ 3, Ex. 2.) Moreover , NML, having filed two Motions to Dismiss in this Action,

---

[1] A true and correct copy of the *Seguin* Proof of Service (*Seguin* Dkt. No. 5) is attached as Exhibit 3 to the Declaration of Mark Pifko in Support of Plaintiffs' Opposition to Nissan Motor Co., Ltd.'s Motion to Dismiss Plaintiffs' Complaint Pursuant to Fed. R. Civ. Proc. 12(b)(5) and 4(c) ("Pifko Decl.").

obviously received the operative pleading, and it clearly was on notice of the claims brought against it. Accordingly, NML's Motion must be denied.

## II. STATEMENT OF FACTS

As noted in NML's Motion, the current matter began as two separate cases. On December 27, 2012, the action styled *Kobe Falco v. Nissan North America, Inc., et al.*, was filed in Los Angeles Superior Court, and was subsequently removed on January 31, 2013. (Dkt. No. 1.) On February 4, 2013, Plaintiff Joel Seguin filed an action in this Court also naming NML and NNA as defendants. *See Seguin v. Nissan North America Inc., et al.*, Case No. 2:13-cv-00761-DDP-MAN (C.D. Cal., filed Feb. 4, 2013). Both actions assert claims arising out of NNA and NML's intentional failure to disclose the fact that its vehicles' timing chain components were prone to premature failure, and that as a result of NNA and NML's active concealment, a class of consumers suffered damages.

Plaintiff Seguin served a copy of the Complaint and summons on NML through substitute service on NNA's chairman, Colin Dodge, on February 11, 2013. (*See Seguin*, Dkt. No. 5) (Proof of Service). Subsequently, by stipulation, the parties agreed that Plaintiff Seguin's claims would be incorporated into this Action. (Dkt. No. 20.) As a result, a First Amended Class Action Complaint ("FAC"), which asserted claims against NNA and NML on behalf of Plaintiffs Kobe Falco, Joel Seguin, Alfredo Padilla, and Roberto Galvan ("Plaintiffs"), was filed on June 26, 2013. (Dkt. No. 22.)

On June 27, 2013, Plaintiffs served a copy of the FAC filed in this matter on NML through substitute service on NNA's chairman. (Dkt. No. 31.) Plaintiffs inadvertently served the FAC without a copy of the Summons. (*Id.*) Despite continued communications with NML's counsel, including negotiating a briefing schedule for this Motion, Plaintiffs did not learn of this inadvertent error until NML filed this Motion on July 31, 2013. Eight days later, on August 8, 2013, Plaintiffs again served NML via substitute service on NNA's chairman, and this time included a copy of both the FAC and the Summons. (Dkt. No. 35; Pifko Decl., ¶ 3, Ex. 2.)

2          Case No.: 2:13-cv-00686-DDP-MAN
PLAINTIFFS' OPPOSITION TO DEFENDANT'S RULE 12(b)(5) AND 4(c) MOTION TO DISMISS

### III. CALIFORNIA LAW PERMITS SERVICE ON NML THROUGH ITS "GENERAL MANAGER"

As a foreign corporation, NML must be served "in a judicial district of the United States: (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1). Rule 4(e)(1) provides that process may be served in accordance with "state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1).

The California Code of Civil Procedure provides that process may be served on a corporation "by delivering a copy of the summons and the complaint . . . [t]o . . . a general manager, or person authorized by the corporation to receive service of process." Cal. Code Civ. Proc. § 416.10(b). A "general manager" under the California statute has been interpreted to include "any agent of the corporation 'of sufficient character and rank to make it reasonably certain that the defendant will be apprised of the service made.'" *Gibble v. Car-Lene Research, Inc.*, 67 Cal. App. 4th 295, 314 (1998) (quoting *Eclipse Fuel Engineering Co. v. Sup. Ct.*, 148 Cal. App. 2d 736, 745-46 (1957)). As set forth below, NNA clearly meets this definition of NML's "general manager" under California law.

### IV. NML WAS PROPERLY SERVED THROUGH ITS "GENERAL MANAGER," NNA

NNA qualifies as NML's "general manager" for service of process under California law for two reasons. First, NNA is NML's sole distributor in the United States. (Dkt. No. 27-1, Declaration of Shiho Kobayashi in Support of Defendant Nissan Motor Co., Ltd.'s Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. Proc. 12(b)(2) ("Kobayashi Decl.") at ¶¶ 17-19.) Second, by manufacturing, distributing, marketing and selling Nissan vehicles in California and throughout the United States, NNA gives NML the same business advantages it would have enjoyed if NML had

performed these functions in the United States marketplace itself. (*Id.*) Furthermore, the Kobayashi Declaration states that "[c]onsistent with its role as the parent of NNA, Nissan Japan employees have visited and attended meetings at Nisan's offices in Franklin, Tennessee." (Kobayashi Decl., ¶ 10.) Accordingly, this Court should hold that NML can properly be served under California law via service on NNA pursuant to California Code of Civil Procedure section 416.10(b).

*Cosper v. Smith & Wesson Arms Co.*, 53 Cal.2d 77 (1959) is the seminal case addressing "general manager" status under California law. In *Cosper*, the California Supreme Court held that a California representative of a Massachusetts gun manufacturer constituted the gun manufacturer's general manager in California. *Id.* at 84. The relationship between the gun manufacturer and its California representative was limited to a non-exclusive contract for the representative to promote the sale of the gun manufacturer's products on the West Coast for a commission. *Id.* at 80. The gun manufacturer had no financial interest in its California representative, nor any control over its employees, and provided no assistance other than furnishing advertising materials. *Id.* at 80-81. Nonetheless, the court found that this arrangement provided the gun manufacturer with substantially the same business advantages it would have enjoyed if it had opened its own offices or hired its own agents in California. *Id.* at 84. Therefore, service on the gun manufacturer could be accomplished by serving its California representative. *Id.* at 84.

### A. NNA Is NML's "General Manager" under California Law

Astonishingly, even though NML's counsel was provided with a letter discussing *Khachatryan v. Toyota Motor Sales, U.S.A., Inc.*, 578 F. Supp. 2d 1224 (C.D. Cal. 2008) prior to filing this Motion,[2] in arguing that NNA does not qualify as NML's "general manager," NML fails to address the *Khachatryan* case, or the court's holding in *Gray v.*

---

[2] *See* Pifko Decl., ¶ 2, Ex. 1.

1  *Mazda Motor of America*, 560 F. Supp. 2d 928 (C.D. Cal. 2008), both of which are
2  directly on point.
3        In *Khachatryan*, 578 F. Supp. 2d 1224, this Court found that Toyota Motor Sales,
4  U.S.A., Inc. ("Toyota America") was the general manager of Toyota Motor Corporation
5  ("Toyota Japan") for purposes of California Code of Civil Procedure § 416.10(b). *Id.* at
6  1227. The *Khachatryan* court based its holding on the fact that: (1) Toyota America is
7  "the distributor of some Toyota vehicles, in certain geographic areas of the United States
8  including . . . California"; (2) Toyota America "publishes and distributes marketing
9  materials for Toyota vehicles… which contain Toyota [Japan's] logo, trademarks, and
10 tradename"; and (3) "Toyota Japan's relationship with Toyota America gave it
11 'substantially the business advantages that it would have enjoyed if it conducted business'
12 in the [California] itself." *Id.*
13       Similarly, in *Gray*, 560 F. Supp. 2d 928, defendant Mazda Motor Corporation
14 ("Mazda-Japan"), a Japanese corporation, moved to dismiss under Rule 12(b)(5),
15 asserting that service on its wholly-owned United States subsidiary, Mazda Motor of
16 America, Inc. ("Mazda-America"), was ineffective under California law. *Id.* at 929-30.
17 The *Gray* court began its analysis by explaining that "it [was] undisputed that Mazda-
18 America is 'the distributor of Mazda motor vehicles in North America,'" and, thus,
19 "Mazda-Japan's relationship with Mazda-America [gave] it 'substantially the business
20 advantages that it would have enjoyed if it conducted business' in [California] itself." *Id.*
21 at 931. This Court also noted that "Mazda-Japan was, evidently, put on notice of th[e]
22 action as a result of the service of process on Mazda-America." *Id.* After summarily
23 rejecting Mazda-Japan's argument that service on a subsidiary does not amount to service
24 on a parent corporation, the *Gray* court held that Mazda-America was Mazda-Japan's
25 "general manager" under California Code of Civil Procedure section 416.10. *Id.*
26 ("[Mazda-Japan] notes that service on a subsidiary does not affect service on a parent.
27 While true, this observation is irrelevant, since Gray has affected service on Mazda-Japan
28

by way of Mazda-America based on Mazda-America's status as its general manager, not as its subsidiary.").

Finally, in *Yamaha Motor Co., Ltd. v. Sup. Ct.*, 171 Cal. App. 4th 264 (2009) the court held that Yamaha Motor Company, Ltd ("Yamaha-Japan") could properly be served under California law simply by serving the Japanese manufacturer's American subsidiary, Yamaha Motor Corporation USA ("Yamaha-America"). *See Yamaha Motor Co., Ltd.*, 171 Cal.App.4th at 275 ("*Yamaha*"). As the *Yamaha* court explained:

> *Cosper* applies *a fortiori* to this case -- that is, the relationship between the manufacturer's representative and the manufacturer in *Cosper* was far less intimate, far less connected, and far less interrelated than the relationship between Yamaha-America and Yamaha-Japan in the case before us. If, in *Cosper*, a sporting-goods-oriented nonexclusive purveyor of Smith & Wesson guns on the West Coast was a "general manager in this State" under Corporations Code former section 6500, how much more so is Yamaha-America the "general manager in this State" here, where (unlike *Cosper*), Yamaha-America is the American face of the Japanese company: Here, Yamaha-America *does* have an exclusive arrangement to sell the manufacturer's products, provides warranty service, English owner manuals, does testing, marketing, and *receives complaints* about the manufacturer's products. Probable contact between the domestic representative and the foreign corporation leading to actual notification is far more present here than in *Cosper*.

*Id.* at 274. Denying Yamaha-Japan's motion to quash service, the court concluded that "[i]f it was reasonably certain that a relatively casual sporting goods representative would apprise the 'foreign' manufacturer of service in *Cosper*, it is doubly reasonably certain Yamaha-America will apprise Yamaha-Japan of any service in California." *Id.*

As with United States subsidiaries of the Japanese companies discussed in the cases above, it is undisputed that NNA serves as the sole and exclusive distributor of Nissan vehicles in the United States. (Dkt. No. 27-1, Declaration of Shiho Kobayashi in Support of Defendant Nissan Motor Co., Ltd's Motion to Dismiss for Lack of Personal Jurisdiction ("Kobayashi Decl.") at ¶ 17 ("[NML] and NNA have entered into an agreement that appoints NNA as the sole authorized distributor of Nissan and Infiniti

vehicles in the United States, including California.")) As part of this distribution system, NML provides NML-manufactured vehicles exclusively to NNA who imports the vehicles for NML and distributes them to dealerships throughout the United States, including California. (*Id.* at ¶ 21 ("When NNA purchases from [NML] Nissan and Infiniti vehicles which were manufactured and assembled in Japan, title passes from [NML] to NNA in Japan. NNA is solely responsible for distribution of these vehicles in the United States."))

Additionally, NNA also manufactures certain Nissan vehicles, and is responsible for marketing, advertising, sales, and warranties for all Nissan vehicles distributed in the United States. (*Id.* at ¶¶ 26, 39-40.) NML's relationship with NNA clearly gives NML "'substantially the business advantages that it would have enjoyed if it conducted business' in [California] itself." *Khachatryan*, 578 F. Supp. 2d at 1227; *Gray*, 560 F. Supp. 2d at 931. Thus, NNA constitutes NML's "general manager" for purposes of service of process under California law, and service on NNA is sufficient to serve NML.

### B.  Plaintiffs Properly Served NML with the Summons and Complaint by Substitute Service on NNA

As noted above, in the *Seguin* action, Plaintiff Seguin served a copy of the complaint and summons on NML through substitute service on its general manager NNA on February 11, 2013. (*See Seguin*, Dkt. No. 5; Pifko Decl., ¶ 4 Ex. 3) (Proof of Service). Accordingly, NML was properly notified of Plaintiff Seguin's allegations against it at that time.

Additionally, on August 8, 2013, service of the Summons and FAC in this Action was effected on NML via substitute service on its general manager NNA. (Dkt. No. 35; Pifko Decl., ¶ 3 Ex. 2.) The California Code of Civil Procedure provides for substitute service as follows:

> In lieu of personal delivery of a copy of the summons and complaint to the person to be served as specified in Section 416.10… a summons may be served [1] by leaving a copy of the summons and complaint during usual office hours in his or her office… with the person who is apparently in charge thereof,

>and [2] by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left.

Cal. Code Civ. Proc. § 415.20. Here, the person to be served was Colin Dodge -- NNA's Chairman, Management Committee-Americas Executive Vice President and Chief Performance Offer -- and the papers were indeed left during usual office hours at his NNA office in Franklin, Tennessee. (Dkt. No. 35; Pifko Decl., ¶ 3 Ex. 2.) Although Mr. Dodge was not personally present, as set forth in the Proof of Service, the FAC and Summons were personally delivered to Larry Okuneff, the "Claims Manager" who was apparently in charge. (*Id.*) Plaintiffs also subsequently mailed a copy of the Summons and Complaint via first class mail to NNA's office. (*Id.*) Accordingly, Plaintiffs complied with all the requirements to effect service of process on NML under the applicable California statutes. *See* Cal. Code Civ. Proc. §§ 415.20, 416.10.

### V.    EVEN IF THIS COURT DETERMINES PROCESS WAS NOT PROPERLY SERVED ON NML IN JUNE, ANY DEFECTS HAVE BEEN CORRECTED AND THEREFORE, DISMISSAL IS NOT WARRANTED

In light of the fact that Plaintiffs have cured the defect NML identifies in this Motion, there is no basis for the Court to grant the extreme relief NML seeks in its Motion -- a dismissal of the action. NML cannot assert that it has been prejudiced in any way by the short delay in receiving proper service. Nor, could NML realistically dispute that it has received sufficient notice of the claims asserted against it in this matter.

In ruling on NML's Motion, this Court has the discretion to deem the defect corrected or correctable, rather than dismiss the entire action. *See McKinney v. Law Office of James Duncan*, 2010 U.S. Dist. LEXIS 14589, at *9 (N.D. Cal. Feb. 19, 2010) (in ruling on a Rule 12(b)(5) motion, the court may either dismiss or retain the action); *see also Umbenhaur v. Woog*, 969 F.2d 25, 30 (3rd Cir. 1992) (District Courts possess broad discretion when evaluating the propriety of service).

1   Here, dismissal clearly is not warranted.  Plaintiffs certainly have already effected
2   proper service on NML[3] under California law via service on its "general manager" NNA.
3   *See McKinney*, 2010 U.S. Dist. LEXIS 14589, at *9 (if effective service can be made and
4   there has been no prejudice to the defendant, dismissal is inappropriate); *Umbenhaur*, 969
5   F.2d at 30 ("dismissal of a complaint is inappropriate when there exists a reasonable
6   prospect that service may yet be obtained").  This is particularly true given the fact that
7   NML has received sufficient notice of the complaint to prepare *multiple* motions to
8   dismiss.  *See  McKinney*, 2010 U.S. Dist. LEXIS 14589, at *9 (denying Rule 12(b)(5)
9   motion based, in part, on the fact that "[a]ll Defendants received the complaint and were
10  able to promptly move to dismiss after reviewing the complaint").  Given the absence of
11  any possibility of prejudice to NML, NML's extreme remedy of dismissal is completely
12  inappropriate.

## VI. CONCLUSION

For the reasons set forth herein, NML has properly been served, and its Motion must be denied.

Dated:  August 28, 2013              BARON & BUDD, P.C.

                                     By:  /s/ Mark Pifko
                                          Mark Pifko

                                     Roland Tellis (SBN 186269)
                                     rtellis@baronbudd.com
                                     Mark Pifko (SBN 228412)
                                     mpifko@baronbudd.com
                                     Isaac Miller (SBN 266459)
                                     imiller@baronbudd.com
                                     BARON & BUDD, P.C.
                                     15910 Ventura Boulevard, Suite 1600
                                     Encino, California  91436
                                     Telephone:   (818) 839-2333
                                     Facsimile:    (818) 986-9698

---

[3] Pifko Decl., ¶ 3 Ex. 2.

Payam Shahian (SBN 228406)
pshahian@slpattorney.com
Ramtin Shahian (SBN 276203)
rshahian@slpattorney.com
Christopher Swanson (SBN 278413)
cswanson@slpattorney.com
STRATEGIC LEGAL PRACTICES, APC
1875 Century Park East, Suite 700
Los Angeles, California 90067
Telephone:   (310) 277-1040
Facsimile:   (310) 943-3838

Jordan Lurie (SBN 130013)
Jordan.Lurie@capstonelawyers.com
Cody Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
CAPSTONE LAW APC
1840 Century Park East, Suite 450
Los Angeles, California 90067
Telephone:   (310) 556-4811
Facsimile:   (310) 943-0396

Dara Tabesh (SBN 230434)
dara.tabesh@ecotechlaw.com
ECOTECH LAW GROUP, P.C.
333 First Street, Suite C
San Francisco, California 94105
Telephone:   (415) 503-9134
Facsimile:   (415) 651-8639

Attorneys for Plaintiffs
KOBE FALCO, JOEL SEGUIN, ALFREDO PADILLA, and ROBERTO GALVAN, individually, and on behalf of other members of the public similarly situated