Payam Shahian (SBN 228406)
pshahian@slpattorney.com
STRATEGIC LEGAL PRACTICES, APC
1875 Century Park East, Suite 700
Los Angeles, California 90067
Telephone:   (310) 277-1040
Facsimile:   (310) 943-3838

Dara Tabesh (SBN 230434)
dara.tabesh@ecotechlaw.com
ECOTECH LAW GROUP, P.C.
333 First St. Ste. C
San Francisco, CA 94105
Telephone:   (415) 503-9194
Facsimile:   (415) 651-8639


Attorneys for Plaintiffs

[*Additional Counsel Listed on Signature Page*]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

| | |
|---|---|
| KOBE FALCO, Joel Seguin, Alfredo Padilla, and Roberto Galvan, individually, and on behalf of other members of the public similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Nissan North America, Inc. a California corporation, and NISSAN JIDOSHA KABUSHIKI KAISHA d/b/a NISSAN MOTOR CO., LTD., a publicly traded company in Japan,<br><br>Defendants. | Case No. 2:13-cv-00686-DDP-MAN<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT NISSAN NORTH AMERICA, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date:      September 30, 2013<br>Time:      10:00 a.m.<br>Location:   Courtroom 3<br>Judge:     Hon. Dean D. Pregerson<br><br>Complaint Filed:   December 27, 2012 |

# TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................1

II.  STATEMENT OF FACTS ....................................................................1

III. ARGUMENT ........................................................................................4

    A.   Plaintiffs' CLRA Claim is Well-Pled ........................................7

        1.   Nissan Failed to Disclose Material Facts ........................7

            a.   The TCTS Defect Is a Safety Hazard ....................8

                (1)   Plaintiffs adequately allege a safety hazard ..............8

                (2)   Physical Injury Is Not Required ...............................10

            b.   The TCTS Defect was contrary to Plaintiffs' reasonable expectations ...........................................................12

        2.   Defendant Was Under a Duty to Disclose Material Facts ......13

            a.   Defendant had exclusive knowledge of material facts ............13

            b.   Nissan actively concealed material facts ...........................18

    B.   Plaintiffs' UCL Claim is Well-Pled .........................................19

    C.   Plaintiffs' Fraud Claim Is Well-Pled ......................................20

    D.   Plaintiffs' Fraud-Based Allegations Satisfy Rule 9(b) .............21

    E.   Falco's Washington Consumer Protection Act Claim Is Well-Pled ..............22

    F.   Plaintiffs' Implied Warranty Claim Is Well-Pled and Timely .........................23

IV.  CONCLUSION ...................................................................................25

i

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Avedisian v. Mercedes-Benz USA, LLC*, 2013 WL 2285237 (C.D. Cal.
    May 22, 2013) ...........................................................................................17

*Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261 (C.D. Cal. 2007).......................21

*Banks v. Nissan N. Am., Inc.*, 2012 U.S. Dist. LEXIS 37754 (N.D. Cal.
    Mar. 20, 2012) ..........................................................................................17

*Belle v. Chrysler Group, LLC*, 2013 WL 949484 (C.D. Cal. Jan. 29, 2013)........... 5, 9, 18

*Bristow v. Lycoming Engines*, 2007 WL 1106098 (E.D. Cal. 2007)................................20

*Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088 (9th Cir. 2003)...........................24

*Carideo et al. v. Dell, Inc.*, 706 F. Supp. 2d 1122 (W.D. Wa. 2010).............................23

*Chamberlan v. Ford Motor Co.*, 2003 WL 25751413 (N.D. Cal. Aug. 6,
    2003)......................................................................................... 4, 5, 13

*Cholakyan v. MBUSA*, 796 F. Supp. 2d (C.D. Cal 2011) ........................................ 9, 10, 11

*Cirulli v. Hyundai Motor Co.*, 2009 WL 5788762 (C.D. Cal. June 12,
    2009).......................................................................................................9, 17

*Cooper v. Pickett*, 137 F.3d 616 (9th Cir. 1997).......................................................21

*Decker v. Mazda Motor of Am., Inc.*, 2011 WL 5101705 (C.D. Cal. Oct.
    24, 2011) ..............................................................................................8, 12

*Dees v. Allstate Ins. Co.*, 2013 WL 1187652 (W.D. Wa. 2013) ........................................23

*Ehrlich v. BMW of N. America*, 801 F. Supp. 2d 908 (C.D. Cal. 2010)....................*passim*

*Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007)...................*passim*

*Feldman v. Mercedes-Benz USA, LLC*, 2012 WL 6596830 (D.N.J. 2012)........... 9, 14, 22

*Funk v. Sperry Corp.*, 842 F.2d 1129 (9th Cir. 1988) ........................................................13

*Grodzitsky v. American Honda Motor Co., Inc.*, 2013 WL 2631326 (C.D.
    Cal. June 12, 2013) ................................................................... 16, 18

*Grodzitsky v. American Honda Motor Co., Inc.*, 2013 WL 690822 (C.D. Cal. Feb. 19, 2013)................................................................................................16

*Ho v. Toyota Motor Corp.*, __ F. Supp. 2d __, 2013 WL 1087846 (N.D. Cal. Mar. 14, 2013).....................................................................................*passim*

*In re Apple & AT&T Antitrust Litig.*, 596 F. Supp. 2d 1288 (N.D. Cal. 2008).........................................................................................................21

*In re Craftmatic Sec. Litig.*, 890 F.2d 628 (3d Cir. 1989)...................................14

*In Re OnStar Contract Lit.*, 600 F. Supp. 2d. 861 (E.D. Mich. 2009)..............................15

*In re Porsche Cars N.A., Inc.*, 880 F. Supp. 2d 801 (S.D. Oh. July 19, 2012)................................................................................................9, 11, 14, 22

*In re Saturn L-Series Timing Chain Prods. Liab. Litig.*, 2008 WL 486604, (D. Neb. Nov. 7, 2008).........................................................................6, 7

*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices and Product Liability Litigation*, 790 F. Supp. 2d 1152 (C.D. Cal. 2011)....................................................................................................13

*Johnson v. General Mills, Inc.*, 276 F.R.D. 519 (C.D. Cal. 2011)....................................20

*Kas v. Mercedes-Benz USA, LLC*, 2011 WL 5248299 (C.D. Cal. Oct. 31, 2011)..................................................................................................24

*Keegan v. Am. Honda Motor Co., Inc.*, 838 F. Supp. 2d 929 (C.D. Cal. 2012)................................................................................................*passim*

*Keilholtz v. Superior Fireplace Co.*, 2009 WL 839076 (N.D. Cal. 2009) ........................25

*Kowalsky v. Hewlett Packard Co.*, 771 F. Supp. 2d 1138 (N.D. Cal. 2010) ...................17

*Marchante v. Sony Corp. of America, Inc.*, 2011 WL 6027602 (S.D. Cal. 2005)................................................................................................13

*Marsikian v. Mercedes Benz USA, LLC*, 2009 WL 8379784 (C.D. Cal. 2009)................................................................................................*passim*

*Moore v. Kayport Package Express, Inc.*, 885 F.2d 431 (9th Cir. 1989)..........................21

*Nelson v. Nissan North America, Inc.*, 894 F. Supp. 2d 558 (D.N.J. 2012)......9, 14, 20, 22

*Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964 (N.D. Cal. 2008) .......................6, 7

*Parkinson v. Hyundai Motor America*, 258 F.R.D. 580 (C.D. Cal. 2008)...................7, 15

*Price v. Kawasaki Motors Corp.,* 2011 WL 10948588 (Jan. 24, 2011).......................9, 12

*Rush v. Whirlpool Corp.*, 2008 WL 509562 (W.D. Ark. 2008)........................................14

*Stearns v. Ticketmaster Corp. et al.*, 655 F.3d 1013 (9th Cir. 2011) ............................7, 20

*Stickrath v. Globalstar, Inc.*, 2008 WL 344209 (N.D. Cal. Feb. 6, 2008) .......................19

*Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123 (N.D. Cal. 2003)..................................................................................................8, 11

*Vernon v. Qwest Comms., Inc.*, 643 F. Supp. 2d 1256 (W.D.Wash.2009) ......................23

*Weske v. Samsung Elecs., Am., Inc.,* 2013 WL 1163501 (D.N.J. Mar. 19, 2013)...............................................................................................................14

*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012) ...............................*passim*

*Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168 (9th Cir. 2010)....................................................................................................................16

## STATE CASES

*Atkinson v. Elk Cor. of Texas*, 142 Cal. App. 4th 212 (2006) ...........................................24

*Bank of the West v. Superior Court*, 2 Cal. 4th 1254 (1992) .............................................25

*Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255 (2006)..........................5, 6, 7

*Collins v. EMachines, Inc.*, 202 Cal. App. 4th 249 (2011) .........................................8, 12

*Daugherty v. Amer. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824 (2006) ...........*passim*

*Donlen v. Ford Motor Co.*, 217 Cal. App. 4th 138 (2013) ........................................ 10, 24

*Evergreen Moneysource Mortg. Co. v. Shannon*, 167 Wash. App. 242 (2012) ....................................................................................................................23

*Hirsch v. Bank of Am.*, 107 Cal. App. 4th 708 (2003)......................................................25

*In re Tobacco II Cases,* 46 Cal. 4th 298 (2009) ...............................................................15

*In re Vioxx Class Cases*, 180 Cal. App. 4th 116 (2009) ......................................20

*Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19 (2007)...............................23, 24

*Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205 (1991)...........................24

*Lipinski v. Martin J. Kelly Oldsmobile, Inc.*, 325 Ill. App. 3d 1139 (2001).....................14

*Mass. Mutual Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282
   (2002) ......................................................................................................20

*Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297 (2009)...............................................24

*Oregel v. American Isuzu Motors*, Inc., 90 Cal. App. 4th 1094 (2001) ...........................10

*Peterson v. Kitsap Comm. Fed. Credit Union*, 171 Wash. App. 404 (2012) .................23

*Seely v. White Motor Co.*, 63 Cal. 2d 9 (1965) ...................................................................5

*Shapiro v. Sutherland*, 64 Cal. App. 4th 1534 (1998).......................................................13

*State Farm Fire & Casualty v. Superior Court*, 45 Cal. App. 4th 1093
   (1996) ......................................................................................................19


**FEDERAL STATUTES**

Fed. R. Civ. P. 8(a).....................................................................................................1

Fed. R. Civ. P. 9(b) ...........................................................................................*passim*

Fed. R. Civ. P. 12(b)(6) .............................................................................................1


**STATE STATUTES**

Cal. Bus. & Prof. Code §§ 17200 *et seq.* (Unfair Comp. Law (UCL)).....................*passim*

Cal. Civ. Code §§ 1747 *et seq.* (Song-Beverly Credit Card Act)..................................1, 24

Cal. Civ. Code §§ 1750 *et seq.* (Con. Legal Remedies Act (CLRA)).......................*passim*

RCW §§ 19.86 *et seq.* (Washington Consumer Protection Act)......................1, 19, 22, 23

## I.       INTRODUCTION

Defendant Nissan North America, Inc.'s ("Defendant" or "Nissan") Motion to Dismiss the First Amended Complaint ("MTD" or "Motion") obscures a very simple point: Nissan knew about the vehicles' safety defects and failed to disclose such defects to its customers.  Recognizing this core issue, Nissan's Motion seeks to convert this action to an express warranty case.  It is not.  The CLRA and UCL transcend express warranty law.  Indeed, the California Legislature passed the CLRA and the UCL in large part because traditional warranty doctrines did not provide sufficient legal remedies.

This lawsuit involves neither difficult legal theories nor complex facts.  Rather, this lawsuit is the product of an all-too-common scenario: an automaker decided it would be easier and cheaper to conceal a widespread safety defect than it would be to announce its existence and fix it.  The law, however, is clear: when a manufacturer knows that its product is defectively designed and will not perform as expected in a safe manner—even when the defect manifest itself after warranty expiration—the manufacturer has two choices: (1) refrain from selling the product until the defect is fixed; or (2) sell the defective product after disclosing the defect and its implications to prospective buyers so that they can make an informed purchase decision.  In this case, Nissan did neither.

As such, Plaintiffs Kobe Falco, Joel Seguin, Alfredo Padilla, and Roberto Galvan ("Plaintiffs") satisfy the requirements of Federal Rules 8(a), 9(b), and 12(b)(6) by alleging, with particularity, violations of California's Consumer Legal Remedies Act ("CLRA"), the Unfair Competition Law ("UCL"), Fraud, the Washington Consumer Protection Act ("WCPA"), the Song-Beverly Act ("Song-Beverly"), and Unjust Enrichment.  Nissan's Motion should be denied in its entirety.

## II.       STATEMENT OF FACTS

This consumer class action concerns Nissan's intentional failure to disclose material facts to consumers.  (FAC ¶ 1.)  The timing chain tensioning system ("TCTS"), including the primary timing chain tensioner, primary timing chain guide, secondary timing chain tensioners, and secondary timing chain tensioner shoes, installed in 2004-

2008 Nissan Maxima vehicles, 2004-2009 Nissan Quest vehicles, 2004-2006 Nissan Altima vehicles (with the VQ35 engine), 2005-2007 Nissan Pathfinder vehicles, 2005-2007 Nissan Xterra vehicles, and 2005-2007 Nissan Frontier vehicles ("Class Vehicles"), is prone to premature failure before the end of the useful life of the vehicles, well before consumers reasonably expect any such failure to occur, and cannot be reasonably repaired ("TCTS Defect"). (*Id.* ¶¶ 2, 5, 28.)[1] The timing chain system, which includes the TCTS, is an integral engine component responsible for connecting the camshaft to the crankshaft, which opens and closes the engine valves at specific time intervals in a synchronized manner. (*Id.* ¶ 29.) The TCTS is responsible for ensuring this occurs. (*Id.*)

When the TCTS fails, it sets off a chain reaction, causing extensive damage to—and ultimately, complete destruction of—the engine. (*Id.* ¶ 31.) A TCTS malfunction can cause vehicle pistons and valves to smash into one another, leading to catastrophic engine failure. (*Id.*) A TCTS malfunction also causes an inability to accelerate, maintain speed, or idle smoothly. (*Id.*) Such failures present a serious safety issue, placing drivers and passengers at risk of harm. (*Id.* ¶¶ 10, 33, 53.) Vehicle occupants are thus exposed to collisions caused by inability to maintain an appropriate speed. (*Id.*) There is no safe alternative to avoid the risk of harm. (*Id.* ¶ 11.)

Class Vehicle owners incur substantial costs to replace a defective TCTS, or to repair or replace damaged engines. (*Id.* ¶ 32.) Premature TCTS failure is material because no reasonable consumer expects to spend thousands of dollars to repair or replace essential vehicle components in the early years of vehicle ownership. (*Id.* ¶ 32.)

Since 2004, Nissan acquired its exclusive knowledge of the TCTS Defect through many sources unavailable to Plaintiffs. (*Id.* ¶ 37; *see also id.* ¶ 7.) Based on this, Nissan published three Technical Service Bulletins ("TSBs") demonstrating knowledge that TCTS components were defective. (*Id.* ¶¶ 44-49.) Indeed, prior to 2007, the problem

---

[1] The Class Vehicles were designed, manufactured, imported, distributed, marketed, and maintained by Defendant Nissan North America, Inc. and Nissan Jidosha Kabushiki Kaisha d/b/a Nissan Motor Co., Ltd.. (FAC ¶ 3.)

had become so bad that by 2007, Nissan essentially conceded in their TSBs that TCTS parts were beyond repair and needed to be replaced entirely.  (*Id.* ¶¶ 44-49.)  Further, based on its exclusive knowledge of the defect, in 2006 or 2007, Nissan redesigned TCTS components, including the primary timing chain guide, slack side, but did not disclose this publicly.  (*Id.* ¶¶ 39-43.)  Nissan also knew about many National Highway Traffic Safety Administration ("NHTSA") complaints, as it monitored NHTSA databases as part of its obligation to identify potential defects in its vehicles.  (*Id.* ¶ 50.)

**Plaintiffs' Experiences:**

Plaintiffs would not have bought the Class Vehicles had they known about the TCTS Defect.  (FAC ¶ 12.)  Indeed, while under warranty, Plaintiffs' vehicles were making "whining" and "ticking" noises symptomatic of the TCTS Defect, but because Nissan failed to disclose the problem, Plaintiffs were not aware of the precise nature and extent of the problem.  (*Id.* ¶¶ 57, 64, 73, 80.)  Had Nissan disclosed the TCTS Defect prior to warranty expiration, Plaintiffs would have been aware of the defect and would have demanded that Nissan repair their vehicles while under warranty.  (*Id.*)

Kobe Falco, a California resident, purchased a new 2005 Nissan Pathfinder from a Nissan dealer in Washington.  (*Id.* ¶ 55.)  On or about November 9, 2011, with approximately 40,663 miles, Falco took the vehicle to an authorized Nissan dealer for TCTS repairs.  (*Id.* ¶ 59.)  The repair order for that visit explains there was a "metalick [sic] rattle noise comming [sic] from the engine area on start up," and that the vehicle was experiencing "timing chain whining."  (*Id.*)  The dealer told Falco the secondary timing chains and tensioner shoes had to be replaced.  Falco paid $510.60 to do so.  (*Id.*)

Joel Seguin, a California resident, purchased a new 2007 Nissan Quest from a Nissan dealer in California.  (*Id.* ¶ 61.)  He brought his car to a Nissan dealer for other repairs while under warranty, including on February 26, 2009, and May 8, 2009.  Despite Seguin then identifying engine "whining" and "rattling," Nissan failed to disclose the TCTS Defect, so Seguin did not know to have his TCTS repaired while under warranty.  (*Id.* ¶ 65.)  On July 2, 2012, upon noticing high-pitched whining and rattling noises from

1   the engine, Seguin took his vehicle to a Nissan dealer.  He paid $300 to diagnose the

2   problem and was told his vehicle's TCTS was damaged and would need to be repaired

3   for $2,788.  (*Id.* ¶ 67.)  Rather than invest so much in a car with a resale value of about

4   $7,000, Seguin sold his vehicle for $4,000, at a substantial loss.  (*Id.* ¶ 68.)

5        Alfredo Padilla, a California resident, purchased a new 2006 Nissan Pathfinder

6   from a Nissan dealership in California.  (*Id.* ¶ 70.)  On or around September 26, 2012,

7   with about 58,237 miles on the odometer, Padilla brought his vehicle to an authorized

8   Nissan dealer in California.  (*Id.* ¶ 74.)  The dealer informed Padilla that components of

9   his TCTS, including the primary timing chain guide, slack side, and other related

10   components, needed to be replaced.  (*Id.*)  Padilla paid $1,747.16 for the repairs.  (*Id.*)

11        Roberto Galvan, a California resident, purchased a used 2005 Nissan Pathfinder

12   from a Nissan dealer in California in April 2009.  (*Id.* ¶ 77.)  On or around March 15,

13   2011, with about 47,424 miles on the odometer, Galvan brought his vehicle to an

14   authorized Nissan dealer in California.  (*Id.*)  He informed the dealer, as recorded in his

15   repair order, "there is a humming type noise heard from engine."  (*Id.*)  The dealer

16   informed Galvan his timing chain and guides needed to be replaced for $1,600.  (*Id.*)

17   **III.   ARGUMENT**

18        The underlying premise of Nissan's Motion—that protection under consumer

19   rights statutes is wholly derivative of a manufacturer's express warranty—has been

20   soundly rejected.  *See, e.g.*, *Chamberlan v. Ford Motor Co.*, 2003 WL 25751413, at **3-

21   4 (N.D. Cal. Aug. 6, 2003).  As the *Chamberlan* court explained:

22        Defendant contends that Plaintiffs fail to state a claim under the CLRA or the
UCL because Plaintiffs cannot use these statutes retroactively to convert their

23        vehicles' warranties into lifetime guarantees . . . .  [¶¶]  None of the cases relied on
by Defendant holds that a defect manifested after the expiration of a warranty

24        precludes a plaintiff from bringing claims under the CLRA or the UCL.  The
effect of warranty expiration is not included in the plain language of the relevant

25        sections of the CLRA and the UCL.  To state a claim under these statutes, a
plaintiff must only allege that the defendant engaged in unfair business practices.

26        For these reasons, Plaintiffs' complaint cannot be dismissed on this ground.

27

28

1    *Id.* at **3-4, 9 (finding plaintiffs alleged an actionable CLRA claim).  Indeed, Nissan's

2    attempt to avoid liability under consumer protection statutes by improperly attempting to

3    turn this case into an express warranty case is made clear where it argues:

> California appellate courts twice [in *Bardin* and *Daugherty*] have addressed the
> exact issue presented in this case, i.e., ***whether a plaintiff can state a claim for***
> ***breach of express warranty in an automobile case where the alleged***
> ***malfunction does not occur until after the vehicle's express warranty has***
> ***expired***. Both held that allowing a plaintiff to recover damages for a "latent"
> defect – even one substantially certain to result in a malfunction after the warranty
> period expires – would render . . . limitations in warranties meaningless.

9    (MTD at 8:4-12 (emphasis added) (citing *Daugherty v. Amer. Honda Motor Co., Inc.*,

10   144 Cal. App. 4th 824, 830-32 (2006); *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App.

11   4th 1255, 1261-63 (2006)).)  Of course, Plaintiffs here do not bring a claim for breach of

12   express warranty.[2]  The law is clear, however, that consumers can bring claims under the

13   UCL and CLRA based on a defendant's failure to disclose known material facts.[3]

14            And despite its heavy reliance on these cases, both *Daugherty* and *Bardin*

15   undermine Nissan's Motion.  In both cases, the plaintiffs failed to allege a safety concern,

16   or that consumers reasonably expected something different than they received. Neither of

17   these cases applies here, where Nissan failed to disclose a known safety concern (FAC ¶¶

18   1, 4, 8, 10, 11-13, 33, 45, 48, 53), and Plaintiffs allege expectations different from what

19   they received (*id.* ¶¶ 5, 9, 12, 28, 53).  Indeed, in granting motions to dismiss, both

20   *Bardin* and *Daugherty* emphasize the absence of allegations of safety concerns, *Bardin*,

21   136 Cal. App. 4th at 1275 ("Plaintiffs did not allege any . . . safety concerns . . . .");

22   *Daugherty*, 144 Cal. App. 4th at 836 ("The complaint is devoid of factual allegations

---

23   [2] Nissan's's reliance on *Seely v. White Motor Co.*, 63 Cal. 2d 9, 45 (1965), is similarly
24   misplaced.  (MTD at 7:8-11 & 18:4-7.)  *Seely* is an express warranty case, not a consumer
     protection case.  For this reason, it does not, as Nissan suggests, compel a finding that a
25   consumer cannot have a reasonable expectation outside of the manufacturer's warranty.
     *See Belle v. Chrysler Group, LLC*, 2013 WL 949484, at *4 (C.D. Cal. Jan. 29, 2013)
26   (finding *Seely* not relevant to CLRA and UCL claims).

27   [3] "An example of material fact that *Daugherty* emphasized is an unreasonable safety risk."
28   *Marsikian v. Mercedes Benz USA, LLC*, 2009 WL 8379784, at *5 (C.D. Cal. 2009).

showing . . . any safety concerns posed by the defect."), and a consumer's mere expectation that a manufacturer would disclose them, *Daugherty*, 144 Cal. App. 4th at 838 ("The only expectation buyers could have had about the engine was that it would function properly for the length of Honda's express warranty, and it did."); *Bardin*, 136 Cal. App. 4th at 1275 ("[C]omplaint did not allege . . . members of the public had any expectation or made any assumptions that DCC's exhaust manifolds would be made from cast iron, as opposed to tubular steel . . . .").

In contrast, the court in *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1100 (N.D. Cal. 2007), distinguishing both *Daugherty* and *Bardin* under the same analysis applicable here, denied a motion to dismiss, finding that "GM knew and concealed that its speedometers were defective and likely to fail far more often than expected by the consuming public." The court agreed with plaintiffs that "a reasonable consumer would expect a speedometer to last for the life of a vehicle," and that "a faulty speedometer easily would lead to traveling at unsafe speeds and moving-violation penalties." *Id.* The *Falk* court even noted: "Since the *Bardin* and *Daugherty* plaintiffs alleged no consumer expectations about the matter in question, it could not be material." The *Falk* court found particularly significant plaintiffs' failure in *Bardin* and *Daugherty* to allege safety defects. As explained in more detail below, the analysis of *Falk* and its progeny applies to the material omission alleged here, compelling denial of Nissan's Motion. *See, e.g.*, *In re Saturn L-Series Timing Chain Prods. Liab. Litig.*, 2008 WL 486604, at *20 (D. Neb. Nov. 7, 2008) ("*In re Saturn*") ("Like the Court in *Falk,* this Court finds that the alleged safety risk posed by a **defective steel timing chain** is 'far more 'unreasonable' than the monetary consequences in *Daugherty.*'") (quoting *Falk*, 496 F. Supp. 2d at 1096) (emphasis added).[4]

---

[4] Another case relied on by Nissan, *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 970-71 (N.D. Cal. 2008), also applied *Falk*'s analysis, but in doing so to different facts, simply reached a different conclusion. The court noted, "the safety consideration was integral to [Falk's] finding that the non-disclosed information was material," and so concluded that under the facts before it, which involved no safety considerations, plaintiff

**A.      Plaintiffs' CLRA Claim is Well-Pled**

"[A]lthough a claim may be stated under the CLRA in terms constituting fraudulent omissions, to be actionable, the omission must be contrary to a representation actually made by the defendant, **or an omission of a fact the defendant was obliged to disclose.**" *Daugherty*, 144 Cal. App. 4th at 835 (emphasis added).

**1.      Nissan Failed to Disclose Material Facts**

The materiality of an <u>omitted</u> fact gives rise to a duty to disclose under the CLRA. *See Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 596 (C.D. Cal. 2008) (citing *Falk*, 496 F. Supp. 2d at 1094-95). "In order for non-disclosed information to be material, a Plaintiff must show that had the omitted information been disclosed, one would have been aware of it and behaved differently." *Falk*, 496 F. Supp. 2d at 1095. "[M]ateriality is generally a question of fact unless the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it." *Stearns v. Ticketmaster Corp. et al.*, 655 F.3d 1013, 1022 (9th Cir. 2011).

Courts find several categories of facts to be material. First, an unreasonable safety risk is *per se* material. *See Falk*, 496 F. Supp. at 1096 (speedometer defect material) (citing *Daugherty*, 144 Cal. App. 4th at 838 (2006) (emphasizing unreasonable safety risk is material)); *Keegan v. Am. Honda Motor Co., Inc.*, 838 F. Supp. 2d 929, 944 (C.D. Cal. 2012); *Ehrlich v. BMW of N. America*, 801 F. Supp. 2d 908, 917 (C.D. Cal. 2010) (quoting *Bardin*, 136 Cal. App. 4th at 1270 ("noting that plaintiffs [in *Bardin*] 'did not allege [] safety concerns related to' the alleged defect"); *Marsikian*, 2009 WL 8379784, at *6 (refusing to dismiss CLRA claim based on "plausible prospect of a safety problem"); *In re Saturn*, 2008 WL 486604, at *20 (finding vehicle timing chain system defect a safety hazard under CLRA).

---

had failed to state a CLRA claim. *Id.* at 971; *see also In re Saturn*, 2008 WL 486604, at *20 ("In contrast to the pleadings at issue in *Oestreicher*, [plaintiff] has adequately pled facts to establish that the latent defect in the car is in fact related to safety and that Defendants knew of the defect at the time they sold her the car.").

Second, as was clarified by the Ninth Circuit, non-safety defects arising during the warranty period are material where a consumer's reasonable expectation regarding a consumer good is different than what was received. *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1142 & n.1 (9th Cir. 2012) (relying on *Falk* and noting non-safety defect alleged in *Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123 (N.D. Cal. 2003), gave rise to a valid CLRA claim because the defect was experienced within the express warranty period); *Collins v. EMachines, Inc.*, 202 Cal. App. 4th 249, 258 (2011) (non-safety computer defect arising during the warranty period material); *Decker v. Mazda Motor of Am., Inc.*, 2011 WL 5101705, at *4 (C.D. Cal. Oct. 24, 2011) ("It makes logical sense that the average consumer would expect the manufacturer to disclose significant defects of *any natur*e that arise within the warranty period.") (emphasis added).

Plaintiffs allege the materiality of the TCTS Defect on both bases: (1) it is a safety concern (FAC ¶¶ 4, 8, 10, 11, 33, 45, 48, 53, 54, 108, 109, 110, 125, 126); and (2) it arose during the warranty period and is contrary to the reasonable expectations of consumers (*id.* ¶¶ 5, 8-9, 12, 28, 32, 56-57, 63-64, 72-73, 79, 80, 110, 124-125). These allegations are at least as comprehensive and particularized as those reflected in the cases cited here.

### a. The TCTS Defect Is a Safety Hazard

#### (1) Plaintiffs adequately allege a safety hazard

Contrary to Nissan's assertion otherwise (*see* MTD at 11:23-24), Plaintiffs allege with particularity the fact that the TCTS Defect constitutes a safety concern: "When the Subject Nissan Vehicles' [TCTS] fails, drivers of the Subject Nissan Vehicles can experience an inability to accelerate, an inability to maintain speed, and even catastrophic engine failure, potentially rendering the vehicle inoperable while it is moving[,]" and that, "[a]s a result, drivers are unable to keep up with the normal flow of traffic, and are at an increased risk of collision." (FAC ¶ 53; *see also id.* ¶¶ 4, 8, 10, 11, 33, 45, 48, 53, 54, 108-10, 125-26.) This reflects an unreasonable safety hazard and is at least as severe as defects addressed in *many* cases, including *Falk*, 496 F. Supp. 2d at 1095-96 (malfunctioning speedometer), *Keegan*, 838 F. Supp. 2d at 961 (suspension defect

8

causing premature tire wear), *Ehrlich*, 801 F. Supp. 2d at 918 (windshields susceptible to cracking), *Ho v. Toyota Motor Corp.*, __ F. Supp. 2d __, 2013 WL 1087846, at *7 (N.D. Cal. Mar. 14, 2013) (headlights prone to condensation or moisture), *Feldman v. Mercedes-Benz USA, LLC*, 2012 WL 6596830, at *11 (D.N.J. 2012) (air intake system susceptible to clogging); *In re Porsche Cars N.A., Inc.*, 880 F. Supp. 2d 801, 828 (S.D. Oh. July 19, 2012) (plastic coolant tubes that crack, leak or otherwise fail); *Cirulli v. Hyundai Motor Co.*, 2009 WL 5788762, at *3 (C.D. Cal. June 12, 2009) (sub-frames susceptible to corrosion); and *Belle*, 2013 WL 949484 at *5 (premature brake wear); *Price v. Kawasaki Motors Corp.*, 2011 WL 10948588, at *6 (Jan. 24, 2011) (materiality shown where "costs for repair, the need for additional oil, and the safety dangers (including that the engine would suddenly seize up while driven) are all types of information that would have made a reasonable consumer behave differently.").

*Nelson v. Nissan North America, Inc.*, 894 F. Supp. 2d 558 (D.N.J. 2012), is instructive. In *Nelson*, which involves the same defendants and defense counsel as here, plaintiffs alleged that the 5-speed automatic transmissions equipped in certain Nissan vehicles were improperly designed, causing delayed shift patterns, excessive heat buildup, slippage, harshness, premature internal part wear, metal debris, and catastrophic transmission failure. *Id.* at 561. The plaintiffs further alleged that the defective transmission not only failed well in advance of their expected useful life, but also posed significant safety risks due to an unpredictable acceleration response and sudden total transmission failure. *Id.* The court found that "Nelson ha[d] alleged a defect posing an unreasonable risk to personal safety . . . ." *Id.* at 569. The allegations in *Nelson* are qualitatively indistinguishable from those here.

Nissan also cannot claim Plaintiffs do not adequately describe the defect. (*See* MTD at 12:16-17.) As an initial matter, "Plaintiff is not required to plead the mechanical details of an alleged defect in order to state a claim" at the pleading stage, *Cholakyan v. MBUSA*, 796 F. Supp. 2d at 1237 fn.60 (C.D. Cal 2011), nor do California consumer protection statutes require this level of detail to state a claim, *see, e.g.*, *Donlen v. Ford*

*Motor Co.*, 217 Cal. App. 4th 138, 149 (2003) ("Plaintiff is not obligated to identify or prove the car's defect") (2013); *Oregel v. American Isuzu Motors*, Inc., 90 Cal. App. 4th 1094, fn. 8 (2001) (same).  In any event, Plaintiffs describe the defect mechanism in meticulous detail, including pictures to guide the description.  (*See, e.g.*, FAC ¶¶ 29-31, 34, 39-43.)

Notably, Nissan relies on *Wilson* to support the contention that "Plaintiffs provide no supporting detail indicating how the alleged timing belt defect constitutes a safety hazard."  (MTD at 12:16-18.)  *Wilson*, however, is distinguishable, and indeed, compels denial of Nissan's Motion here.  In *Wilson*, the court held plaintiffs had failed to plead facts showing how the alleged design defect caused laptops to burst into flames.  *Wilson*, 663 F.3d at 1144-45. The court, however, deduced a logical inconsistency in plaintiffs' allegations that the defect cut off power from the laptops, yet at the same time would ignite.  *Id.* ("[I]t was "difficult to conceive (and the complaint [did] not explain) how the Laptops could ignite if they [were] 'unable to receive an electrical charge.'").  No such inconsistency is presented here, and indeed, Plaintiffs provide a clear explanation of why the TCTS Defect implicates safety concerns.[5]  (*See* FAC ¶ 29-31, 34, 39-43.)

### (2)   Physical Injury Is Not Required

Courts also roundly reject Nissan's claim that Plaintiffs must have experienced a personal injury to allege a safety hazard.  (*See* MTD at 2:13-16 and 13:8-14:19.)  *See Ho*, __ F. Supp. 2d __, 2013 WL 1087846, at *7 (rejecting argument that plaintiffs must "have actually been injured before an omission as to an alleged safety defect can be held material and actionable" because under "*Daugherty* and cases following it, including *Falk* . . . held that a fact can give rise to a duty to disclose an actionable omission if it

---

[5] Nissan also fails to note that *Wilson* cites *Cholakyan*, *Marsikian*, and *Falk* favorably as "cases surviving a motion to dismiss where the alleged design defect could conceivably lead to a safety hazard."  *Wilson*, 668 F.3d at 1145.  Indeed, by their very nature, vehicle defects (such as those alleged here, and like those in *Cholakyan*, *Marsikian*, and *Falk*)implicate safety concerns in a far more direct and obvious manner than do the computer laptops at issue in *Wilson*.

implicates safety concerns . . . ."); *Cholakyan*, 796 F. Supp. 2d at 1236-37 (rejecting defendant's argument that "the purported safety defects are speculative in nature, because there is no allegation that [plaintiff] or any other class member ever experienced such a defect"); *Ehrlich*, 801 F. Supp. 2d at 918 ("The Court is not persuaded . . . that Plaintiff must plead that consumers have been injured by the alleged unreasonable safety risk."); *In re Porsche*, 880 F. Supp. 2d at 827-28 (applying *Cholakyan* and *Ehrlich*).  Because the *Ho*, *Cholakyan*, *Ehrlich*, and *In re Porsche* plaintiffs incurred monetary damages in repairing defects, they could invoke *Daugherty* without alleging safety-related injuries. *See Ho*, __ F. Supp. 2d __, 2013 WL 1087846, at **7-8; *Cholakyan*, 796 F. Supp. 2d at 1236-37; *Ehrlich*, 801 F. Supp. 2d at 918; *In re Porsche*, 880 F. Supp. 2d at 828.

Indeed, the *Ehrlich* court expressly rejected the same argument Nissan presents here, *i.e.*, under *Tietsworth*, pleading actual injury is required to state a CLRA claim based on a safety hazard.  (*See* MTD at 13:10-14:19 (citing generally *Tietsworth*, 720 2009 WL 3320486).) As the *Ehrlich* court explained:

> The Court is not persuaded by *Tietsworth* or BMW's arguments that Plaintiff must plead that consumers have been injured by the alleged unreasonable safety risk. *Tietsworth* approached the safety defect issue in terms of actual injury to the named plaintiffs, finding that they "lacked standing" to pursue their claims based on merely posited injuries. Here, Plaintiff has alleged that he was injured by the defective windshields by having to replace the cracked windshield in his MINIs twice; BMW has not argued that he lacks standing to pursue those claims.  The alleged unreasonable risk of safety created by compromised windshields during rollover accidents is relevant to the materiality of BMW's omissions, and Plaintiff has alleged a plausible unreasonable safety risk that would have been material to the reasonable consumer.

*Ehrlich*, 801 F. Supp. 2d at 918 (citing *Marsikian*, 2009 WL 8379784, at *7).)  Taking Plaintiffs' allegations as true, they show a plausible claim that the defect creates unreasonable safety risks, even without allegations of Plaintiffs suffering physical injury.[6]

---

[6] Nissan is wrong when it claims, "any mechanical issue, left unattended, could, in certain circumstances, result in an engine failure.  But courts have never held that such mechanical conditions are thereby rendered safety hazards giving rise to a duty to disclose.  Otherwise, the exception would entirely swallow the rule." (MTD at 13:4-7.) Courts, in fact, reject this line of reasoning.  *See, e.g.*, *Keegan*, 838 F. Supp. 2d at 933. *Keegan* is instructive.  In *Keegan*, the plaintiffs alleged that the rear suspension of the

11

**b.**     **The TCTS Defect was contrary to Plaintiffs' reasonable expectations**

The TCTS Defect is also material because it was contrary to Plaintiffs' reasonable expectations, and it arose during the warranty period. *See Falk*, 496 F. Supp. 2d at 1096 (finding relevant plaintiffs' expectation that "a speedometer [would] last for the life of a vehicle); *Collins*, 202 Cal. App. 4th at 258; *Decker*, 2011 WL 5101705, at *4.

First, Plaintiffs allege they "relied on a reasonable expectation that the vehicles' Timing Chain Tensioning System was designed to last beyond the warranty period without need for repair or replacement." (FAC ¶¶ 71, 78; *see also id.* ¶¶ 56, 63.) *See, e.g., Falk*, 496 F. Supp. 2d at 1096 ("[P]laintiffs also argue that that had they known of the possibility of a failed speedometer, they would not have paid the full asking price for their GM vehicles."). Moreover, as explained below in § III.B (fn.19), *infra*, reliance may be inferred as to each Plaintiff based on a finding of materiality.

---

class vehicles was defective, causing uneven and premature wear on the rear tires. *Id.* The defendant argued that because consumers know tires have a "finite useful life and [must] be replaced during the . . . life of an automobile, they must also be aware of the risks involved in driving on worn tires." *Id.* at 942. The defendant also argued that premature tread wear was "open and obvious" and should have led plaintiffs to replace their tires immediately, rather than assuming the risk of continued use, and maintained that because any safety issues could have occurred "only in the absence of reasonable diligence," the plaintiffs' CLRA claim failed. *See id.* The *Keegan* court, however, rejected these arguments:

> [T]he mere fact that a tire is a maintenance item does not foreclose the possibility that there are safety concerns with the class vehicles. Brakes require regular maintenance and replacement, but it would be difficult to argue that a brake defect would not be a safety issue.

*Id.*; *accord Ehrlich*, 801 F. Supp. 2d at 918 (rejecting argument that "injuries would not occur unless an owner makes a conscious decision to drive a [class vehicle] with a cracked windshield and then gets into a rollover accident" because plaintiff was injured by having to replace cracked windshields, and that "[t]he alleged unreasonable risk of safety created by compromised windshields during rollover accidents is relevant to the materiality of BMW's omissions."); *Price*, 2011 WL 10948588, at *4 (finding safety hazard where vehicle consumed oil at higher rate than expected and resulted in possible engine failure).

Second, Plaintiffs allege they experienced the TCTS Defect throughout the life of their vehicles, including during the express warranty period.  (FAC ¶¶ 56, 57, 63, 64, 72. 73, 79, 80.)  Thus, Nissan is wrong when it suggests Plaintiffs are precluded from seeking recovery because the defect manifested itself "outside the warranty period."  (MTD at 11:5-14.)  But this is not a breach of warranty case.  The significance of the warranty period is simply to show that the defect is material in that it  manifested within the warranty period for each Plaintiff.  Whether or not Plaintiffs  sought warranty repairs is irrelevant to stating a claim under California's consumer protection statutes.[7]  *See Chamberlan*, 2003 WL 25751413, at **3-4.

## 2.      Defendant Was Under a Duty to Disclose Material Facts

A duty to disclose material facts may arise: (1) when defendant had exclusive knowledge of material facts not known to the plaintiff, or (2) when defendant actively conceals a material fact from plaintiff.  *See Falk*, 496 F. Supp. 2d at 1094-96.

### a.      Defendant had exclusive knowledge of material facts

Nissan was obligated to disclose the TCTS Defect because it was a material fact within its exclusive knowledge.  *See Shapiro v. Sutherland*, 64 Cal. App. 4th 1534, 1544 (1998) ("Generally where one party to a transaction has sole knowledge or access to material facts and knows that such facts are not known or reasonably discoverable by the other party, then a duty to disclose exits.").[8]  Here, Plaintiffs allege Nissan's awareness of the defect based on internal knowledge under its exclusive control, including:

---

[7] The cases cited to support Nissan's claim that "[a] plaintiff is required to submit his vehicle for repair with the warranty period," are all inapposite.  (*See* MTD at 9:13 (citing *Daugherty*, 144 Cal. App. 4th at 830, *Marchante v. Sony Corp. of America, Inc.*, 2011 WL 6027602, at *5 (S.D. Cal. 2005), and *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices and Product Liability Litigation*, 790 F. Supp. 2d 1152, 1174 (C.D. Cal. 2011)).)  In each, plaintiffs were precluded from bringing express warranty claims, not CLRA claims, because they did not seek warranty repairs.

[8] The Ninth Circuit holds that under California law "a duty to disclose can . . . arise when one party has superior knowledge" of material facts.  *Funk v. Sperry Corp.*, 842 F.2d 1129, 1134 (9th Cir. 1988).

1
2
3
4

> pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made exclusively to Nissan's network of dealers and directly to Nissan, aggregate warranty data compiled from Nissan's network of dealers, testing conducted by Nissan in response to consumer complaints, and repair order and parts data received by Nissan from Nissan's network of dealers.

5    (FAC ¶ 37.)  Courts routinely find such allegations of exclusive knowledge sufficient

6    under Rule 9(b).[9]  *Ho*, __ F. Supp. 2d __, 2013 WL 1087846, at **8-9 (finding

7    allegations that "Defendants had non-public, internal data about the Class Vehicles'

8    headlamp problems, including pre-release testing data, early consumer complaints about

9    the defect to Defendants' dealers who are their agents for vehicle repairs, dealership

10   repair orders, testing conducted in response to those complaints, and other internal

11   sources" sufficient); *Feldman*, 2012 WL 6596830, at *11 (finding allegations of "pre-

12   release testing data, early consumer complaints about the AIS Defect . . . testing

13   conducted in response to those complaints, warranty and post-warranty claims,

14   replacement part sales data, aggregate data from Mercedes dealers, and from other

15   internal sources" sufficient to establish exclusive knowledge); *Nelson*, 894 F. Supp. 2d

16   558, 563 & 568 (D.N.J. 2012) (same); *In re Porsche*, 880 F. Supp. 2d at 816 (same);

17   *Rush v. Whirlpool Corp.*, 2008 WL 509562, at *4 (W.D. Ark. 2008) (same).

18        Indeed, as in some of the cases cited above, it was as a result of Nissan's internal

19   knowledge unavailable to consumers, that Nissan ultimately issued three TSBs to its

20   dealers, quietly acknowledging the defective nature of the Class Vehicles and

21   undertaking the temporary repairs (*see id.* ¶¶ 44-49).[10]  *See, e.g., Ho*, __ F. Supp. 2d __,

22

23   [9] "Where plaintiffs can demonstrate that specific information is in the exclusive control of the defendant, the Court relaxes the showing required under Rule 9(b)."  *Weske v.*

24   *Samsung Elecs., Am., Inc.,* 2013 WL 1163501, at *3 (D.N.J. Mar. 19, 2013) (citing *In re Craftmatic Sec. Litig.*, 890 F.2d 628, 645 (3d Cir. 1989)); *see, e.g., In re Porsche*, 880 F.

25   Supp. 2d at 817 (same).

26   [10] Even if Plaintiffs' other allegations of exclusive knowledge are found insufficient— which they are not—there is no question that at a minimum, the TSBs issued by Nissan

27   are  sufficient to show Nissan's knowledge and admission of the defect.  (FAC ¶¶ 7, 8, 44-48.)  *See Lipinski v. Martin J. Kelly Oldsmobile, Inc.,* 325 Ill. App. 3d 1139, 1147–48

28   (2001) (finding TSB sufficient to allege GM's prior knowledge of alleged defect at time

2013 WL 1087846, at **1, 8-9 (finding allegations similar to those here sufficient to establish exclusive knowledge).[11]  At least one Plaintiff, Galvan, purchased his vehicle in April 2009, years after publication of the TSBs.[12]  (FAC ¶ 77.)

 *Wilson*, on which Nissan relies to overcome Plaintiffs' allegations, is distinguishable on its facts,[13] and indeed, supports a finding here of exclusive knowledge.

---

of sale, and TSB's statement that "some owners may experience excessive consumption of engine oil" does not defeat the allegation that class vehicle suffers from defect). Further, any argument by Defendant that the TSB is not an admission of a defect is a question of fact not appropriately adjudicated at the pleading stage.  *See Parkinson v. Hyundai Motor America*, 258 F.R.D. 580, 594 (C.D. Cal. 2008).

[11] Defendants misleadingly suggest that because the TSBs are "publicly available" at their company website, exclusive knowledge is not established.  (*See* MTD at 5:7-11)  Even if such information had been available, however, a reasonable consumer cannot be charged with knowledge thereof.  As the *Falk* court explained: "It is true that the prospective purchasers, with access to the internet, could have read the many complaints . . . . [However,] many consumers would not have performed an internet search before beginning a car search.  Nor were they required to do so." *Falk*, 496 F. Supp. 2d at 1097; *see also In re Tobacco II Cases*, 46 Cal. 4th 298,328 (2009) ("[A]llegation of reliance is not defeated merely because there was alternative information available to the consumer plaintiff, even regarding an issue as prominent as whether cigarette smoking causes cancer.").  Indeed, resolving the question of constructive knowledge of a design defect is not even appropriate on a motion to dismiss.  *In Re OnStar Contract Lit.*, 600 F. Supp. 2d. 861, 871-72 (E.D. Mich. 2009) (explaining that issue of constructive notice of material facts involved fact questions not appropriate for motion to dismiss).

[12] Nissan also implausibly suggests it could not have been unaware of the subject of any TSB prior to the TSB's issuance date. (*See* MTD at fn. 3.)  Not only does common sense dictate otherwise, so too does Nissan's website which concedes that "TSBs address specific concerns or conditions such as rough idles, noises and rattles," and that "[t]hese specific concerns can be the result of customer or repair shop feedback."  Thus, issuance of the TSBs follows <u>prior</u> events such as customer complaints or repair shop feedback. Moreover, common sense dictates that once feedback is received, it is processed by the relevant departments within Nissan.  Then, only after the feedback is received and processed, including internal testing of the defect and plausible fixes, would Defendants set about drafting the TSBs.  By any measure, knowledge of a defect long precedes publication of the TSBs that concede the existence of that defect.

Moreover, the web page invoked by Nissan is a dead-end unless the visitor is willing to purchase a "Viewing Subscription" (MTD at 5:9 [http://www.nissan-techinfo.com /TSB/TSB_xml/nmIndex.aspx]), and, critically, the intended viewers of the TSBs are dealers, not customers (*see id.*).

[13] Nissan misinterprets *Wilson*'s holdings and the rules governing Rule 9(b) when it contends, "Plaintiffs have not and  cannot plead with the required particularity that NNA

In *Wilson*, 668 F.3d at 1147, the court explained that plaintiffs' knowledge theory, *inter alia*, was not supported by an allegation that defendant "had access to the aggregate information and data regarding the risk of overheating." Here, however, like the cases cited above,[14] Plaintiffs rely on more than just "aggregate information and data regarding" a safety risk. Plaintiffs rely on customer complaints to Nissan and testing conducted in response to such complaints, dealer repair orders (including those of the individual Plaintiffs), warranty reimbursements rates, etc., as well as repair orders and parts data received by Nissan from Nissan's network of dealers. (*See, e.g.*, FAC ¶ 37.)

Further, the *Wilson* court found significant that, unlike in *Falk*, the information on which the allegations of knowledge were based was exclusively in the defendant's control. *Id.* at 1147 ("By contrast, the plaintiffs in *Falk* alleged that '[o]nly GM had access to the aggregate data from its dealers [,] only GM had access to pre-release testing data[, and] only GM had access to the numerous complaints from its customers." These facts led the court to conclude that plaintiffs sufficiently "state[d] a claim that GM had exclusive knowledge of the alleged defect in their speedometers.") (quoting *Falk*, 496 F. Supp. 2d at 1096).[15] Here, unlike in *Wilson*, Plaintiffs' allegations of Defendant's access

had knowledge at the time of sale of a safety defect." (MTD at 19:22-25.) In evaluating "exclusive knowledge" sufficient to give rise to a duty to disclose, nowhere does the *Wilson* court invoke Rule 9(b)'s requirement of particularized facts—*nor could it*, because as Rule 9(b) expressly states, "knowledge . . . may be alleged **generally**."

[14] Nissan's reliance on *Grodzitsky v. American Honda Motor Co., Inc.*, 2013 WL 690822, at *6 (C.D. Cal. Feb. 19, 2013), is similarly misplaced. In *Grodzitsky*, the court found plaintiffs' allegations insufficient because they did not establish knowledge *at the time of sale. Id.* Here, Plaintiffs adequately allege knowledge at the time of sale, including knowledge that Defendants gained from pre-production testingdesign failure mode analysis, and customer complaints made to dealers. (FAC ¶¶ 7, 36-43.) Indeed, citing *Ho*, 2013 WL 1087846, at **8-9, the *Grodzitsky II* court, found similar allegations sufficient to support a "plausible inference" that Honda was aware of the defect. *See Grodzitsky v. American Honda Motor Co., Inc.*, 2013 WL 2631326 (C.D. Cal. June 12, 2013).

[15] Further, whether (and when) a manufacturer became aware of a defect is a question of fact that is to be adjudicated only after appropriate discovery. *See Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168, 1173 (9th Cir. 2010) (certifying class where, *inter alia*, "common issues predominate such as whether Land Rover was aware of the existence of the alleged defect . . . .").

1  to various sources of information under their exclusive control are more than sufficient to

2  allege exclusive knowledge under *Wilson* and the applicable law.  *See, e.g.*, *Marsikian*,

3  2009 WL 8379784, at **1, 6 (finding allegations of knowledge sufficient where "[s]ince

4  2001, [d]efendant did know about the defective [part] as a result of its own internal

5  testing, customer complaints, dealership repair orders, as well as various other sources"

6  and "was in a superior position to know" about the defect); *Kowalsky v. Hewlett Packard*

7  *Co.*, 771 F. Supp. 2d 1138, 1145-46 (N.D. Cal. 2010) ("The Court is sensitive to the fact

8  that Plaintiff is unlikely to have access to the details of [defendant's] product testing

9  process without discovery . . . .  [W]ithout the benefit of formal discovery, it is difficult to

10  imagine what other publicly available facts a plaintiff may rely on . . . .").

11       Moreover, Nissan gives no credence to NHTSA consumer complaints evincing

12  the TCTS Defect and Nissan's knowledge thereof by its monitoring of NHTSA (FAC ¶¶

13  50-52), despite the fact that courts routinely find NHTSA complaints relevant to a finding

14  of knowledge.  *See Avedisian v. Mercedes-Benz USA, LLC*, 2013 WL 2285237, at *7

15  (C.D. Cal. May 22, 2013) (finding sufficient to establish exclusive knowledge at time of

16  sale based on a single consumer NHTSA complaint on the Internet and allegations that

17  defendant "learned about the defect from pre-release testing data, consumer complaints,

18  dealer complaints, further testing, warranty data, goodwill date, repair date, and parts

19  purchase information."); *Banks v. Nissan N. Am., Inc.*, 2012 U.S. Dist. LEXIS 37754

20  (N.D. Cal. Mar. 20, 2012); *Cirulli v. Hyundai Motor Co.*, 2009 WL 5788762, at *4 (CD.

21  Cal. June 12, 2009) (holding that the plaintiff had sufficiently pled Hyundai was aware

22  that its vehicles were unusually vulnerable to premature oxidation and corrosion, and

23  consequently structural deterioration, where plaintiff alleged that "[s]ince 1999,

24  [Defendant] has . . . constantly tracked the National Highway Traffic Safety

25  Administration . . . database to track reports of defective Sonata sub-frames.  From this

26  source, [Defendant] knew that its 1999-2004 Sonatas were experiencing unusually high

27  levels of sub-frame deterioration, steering control arm separation, steering loss, and

28  highway accidents . . . ."); *Grodzitsky II*, 2013 WL 2631326, at *6 (finding relevant to

17

knowledge a "sampling" of NHTSA complaints demonstrating knowledge of the vehicle defect at issue).[16]  Indeed, the NHTSA complaints show that consumers actually experienced a potential of great physical injury.  (FAC ¶ 52 at 20 ("The timing chain broke in half while driving down the highway.  This problem caused the vehicle to shut down in the middle of a highway lane almost causing a wreck."); *see also id.* ¶ 54 at 21 ("Was told if tensioners break, timing chain would release into engine and cause a hazard.").)  Finally, Nissan's design change in 2006 or 2007 reflects its awareness that the earlier design had been defective.  (*See id.* ¶ 39.)

The factors alleged above, whether taken individually or in the aggregate, reflect Nissan's exclusive knowledge of the TCTS Defect.

### b.   Nissan actively concealed material facts

Nissan actively concealed the TCTS Defect by withholding information about the systematic nature of the problem from consumers.  (*See* FAC ¶¶ 6-8, 9, 11, 13, 38, 44-49, 51, 56, 57, 63, 64, 72, 73, 79, 80, 106-109, 127.)  Failure by a vehicle manufacturer to notify other customers or to affect a recall in the face of complaints evinces such intent. *See, e.g.*, *Falk*, 496 F. Supp. 2d at 1088.

Here, Plaintiffs allege active concealment of the TCTS Defect by the following: continuing to sell vehicles manufactured with a defective TCTS, notwithstanding their knowledge of the defect (FAC ¶ 38); failing to disclose that it redesigned the TCTS as a result of its internal knowledge of the defect (*id.* ¶ 29-43); issuing multiple TSBs to repair facilities and dealerships, informing them it was necessary to replace certain elements of the TCTS, but not informing consumers about the TSBs (*id.* ¶¶ 7, 8, 44-48); giving goodwill adjustments to reduce the costs of repairs for some customers who complained,

---

[16] Nissan hopes to ignore these complaints by arguing they are "generally without evidentiary value." (MTD at fn. 8.)  Yet, this argument concerns the weight of evidence, not its admissibility.  And even if such statements cannot be used for the truth of the matter asserted, they can be used to show the state of mind of Nissan and consumers. *See, e.g.*, *Belle*, 2013 WL 949484, at *9 (rejecting motion to strike Internet and NHTSA complaints from pleadings because perceptions of drivers, even if anonymous and self-reporting, may be relevant to plaintiffs' claims).

but failing to do so for other customers who did not complain (*id.* ¶ 7); when attempting to "fix" the defect, using a temporary fix (*id.* ¶ 8); issuing, in 2009, a press release representing that the Class Vehicles featured a "silent timing chain," not the "whining" and "buzzing" one it knew customers were actually experiencing in their vehicles (*id.* ¶ 49); and withholding information about the systematic nature of the defect from consumers, including information learned through various internal sources and through customer complaints (*id.* ¶¶ 7, 36, 37).  *Ehrlich*, 801 F. Supp. 2d at 919 (citing *Falk*, 496 F. Supp. 2d at 1097 (finding plaintiffs sufficiently pled active concealment by alleging manufacturer did not notify consumers of defect in light of complaints and replaced defective parts with other defective parts to provide a temporary fix)); *Marsikian*, 2009 WL 8379784, at *6 (finding attempt to fix defect with temporary fix relevant to finding active concealment under the CLRA); *Stickrath v. Globalstar, Inc.*, 2008 WL 344209, at *3 (N.D. Cal. Feb. 6, 2008) ("[A]llegations that Defendant knew of material defects but did not disclose them to potential customers are sufficient to allege a duty to disclose under an active concealment theory.").  Accordingly, Plaintiffs allege active concealment.

## B.  Plaintiffs' UCL Claim is Well-Pled

The UCL prohibits unlawful, **or** unfair, **or** fraudulent business practices.  *State Farm Fire & Casualty v. Superior Court*, 45 Cal. App. 4th 1093, 1102 (1996).  Here, Nissan violated the UCL's fraudulent prong by failing to disclose material facts.  (*See* § III.A.3, *supra*.)  Defendant violated the unlawful prong by committing fraud and otherwise violating the CLRA and WCPA, and breaching the implied warranty.  (*See* §§ III.C [fraud], *infra*, III.A [CLRA], *supra*, III.D [WCPA], *infra*, and III.E [implied warranty], *infra*.)  Defendant also violated the unfair[17] prong of the UCL by, *inter alia*, actively concealing the Defect and its attendant safety hazards and repair costs.  (*See* §

---

[17] To determine if business practice is unfair, the court must review the evidence from both parties and weigh any legitimate utility of the practice against the harm to consumers; this decision "cannot usually be made on demurrer."  *Id.*; *see also Keegan*, 838 F. Supp. 2d at 938-39 (finding violation of unfair prong by selling vehicles with alignment defect).

III.A.3.b, *supra*.)  *See Ho*, __ F. Supp. 2d __, 2013 WL 1087846, at *29 (finding unfair prong violated by failure to disclose safety defects); *Keegan*, 838 F. Supp. 2d at 944 fn.50 (finding UCL's "unlawful" prong violated based on well-pled CLRA claim, and finding UCL's "unfair" prong violated based on safety hazard allegations).

Again, *Nelson* is instructive.  There, plaintiffs, as here, alleged that Nissan violated the UCL by knowingly and intentionally concealing a design defect, and that Nissan had an affirmative duty to disclose the defect and that plaintiffs could not be reasonably expected to learn or discover the true facts related to the transmission defect.  *Nelson*, 894 F. Supp. 2d at 570.  Nissan moved to dismiss the UCL claim, arguing that plaintiffs had not sufficiently alleged an unlawful, unfair, or fraudulent business practice.  *Id.*  The court disagreed, finding that the UCL claim had been adequately alleged because plaintiffs had adequately pleaded claims for breach of warranty and under the CLRA.  *Id.*  Similarly, here, Plaintiffs adequately allege a CLRA claim, so their UCL claim survives as well.[18]

## C.   Plaintiffs' Fraud Claim Is Well-Pled

For the same reasons as explained above for Plaintiffs' CLRA and UCL claims, Plaintiffs adequately plead every element of a fraudulent concealment claim, including

---

[18] Nissan incorrectly contends Plaintiffs fail to allege reliance.  Plaintiffs expressly allege their reliance based, in part, on their pre-purchase review of and exposure to Nissan's advertising campaign, promotional materials, radio and television commercials, and other information.  (*See, e.g.*, FAC ¶¶ 12, 56, 62, 63, 71, 72, 78, 79, 123.)  *See Ehrlich*, 801 F. Supp. 2d at 919 (finding similar allegations are sufficient to satisfy actual reliance under UCL and CLRA because in an omission case, a plaintiff need only show he "*plausibly*" would have been aware of the defect had the manufacturer chose to disclose it).  Moreover, "[u]nder the UCL and CLRA, the legally relevant question is framed not in terms of 'reliance,' which is required in common law fraud, but of materiality."  *Bristow v. Lycoming Engines*, 2007 WL 1106098, at *7 (E.D. Cal. 2007) (citing *Mass. Mutual Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1288 (2002)).  Indeed, The Ninth Circuit recognized in *Johnson* that "California law permits a court to try, and a class to establish causation/reliance as a common issue by inference[.]" *Johnson v. General Mills, Inc.*, 276 F.R.D. 519, 522 (C.D. Cal. 2011) (citing *Stearns v. Ticketmaster*, 655 F.3d 1013, 1022 (9th Cir. 2011).)  As the *Stearns* court explained, "[c]ausation/ [reliance], on a classwide basis, may be established by materiality."  *Stearns*, 655 F.3d at 1022 (quoting *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (2009)) (emphasis in original).  Plaintiffs adequately allege reliance under these standards, because they allege materiality.

1   (1) concealment of a material fact (FAC ¶¶ 6-13, 31-33, 38-43, 45, 48, 53, 56, 63, 72, 79,

2   107, 108, 110, 114), (2) a duty to disclose (*id.* ¶¶ 9-11, 13, 38, 48, 53, 56, 63, 72, 79, 107,

3   108, 110, 114), (3) intentional concealment with intent to defraud (*id.* ¶¶ 6-9, 11-13, 38-

4   43, 45, 48, 53, 56, 63, 72, 79, 107, 108, 110, 114), (4) that Plaintiffs were unaware of the

5   fact and would not have acted as they did if they had known of it (*id.* ¶¶ 12, 13, 56, 57,

6   62-64, 71-73, 78-80, 84, 123, 151), and (5) damages (*id.* ¶¶ 4, 9, 32, 37, 66, 72, 109, 110,

7   125, 148).  In light of these detailed allegations, as well as the arguments addressed

8   above, Nissan's contentions that it had no duty to disclose, or that Plaintiffs failed to

9   adequately allege knowledge, are without merit.  *See, e.g.*, *Falk*, 496 F. Supp. 2d at 1099

10   (finding Fraud by Omission claim well-pled under similar allegations).

11         **D.    Plaintiffs' Fraud-Based Allegations Satisfy Rule 9(b)**

12         A pleading is sufficient under Rule 9(b) if it identifies the circumstances

13   constituting fraud so a defendant can prepare an adequate answer.  *Moore v. Kayport*

14   *Package Express, Inc.*, 885 F.2d 431, 540 (9th Cir. 1989).  Typically, "[a]verments of

15   fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct

16   charged."  *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).  Omission-based claims,

17   however, "can succeed without the same level of specificity required by a normal fraud

18   claim."  *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007).

19   This is because a party pursuing an omissions-based claim will "not be able to specify the

20   time, place, and specific content of an omission as precisely as would a plaintiff in a false

21   representation claim."  *Id.* (*citing Falk*, 496 F. Supp. 2d at 1098-99).  Thus, inability to do

22   so will not bar claims under Rule 9(b).  *In re Apple & AT&T Antitrust Litig.*, 596 F. Supp.

23   2d 1288, 1310 (N.D. Cal. 2008) (citing *Falk*, 496 F. Supp. 2d at 1099).

24         At the heart of this case is Defendant's failure to disclose a timing chain tensioning

25   system defect that can result in the inability to accelerate and maintain speed, as well as

26   catastrophic engine failure.  (*See*, *e.g.*, FAC ¶ 10.)  The FAC provides requisite notice of

27   the defect.  Plaintiffs identify the material information Defendant knew, since 2004, and

28   withheld from consumers.  (FAC ¶¶ 6, 8, 9-13, 31, 32, 38-43, 48, 53, 56, 63, 72, 79, 107,

108, 110, 114.)  Plaintiffs allege Defendant's exclusive knowledge of aggregate information about the defect (*id.* ¶¶ 11, 55, 57, 59); the materiality of that information (*id.* ¶¶ 9-11, 13, 38, 48, 53, 56, 63, 72, 79, 107, 108, 110, 114); Plaintiffs' reliance on the materiality of the information (*id.* ¶¶ 12, 13, 62, 71, 78, 84, 123, 151); and damages (*id.* ¶¶ 4, 9, 32, 37, 66, 72, 109, 110, 125, 148).  *See Falk*, 496 F. Supp. 2d at 1099 (finding similar allegations to be sufficient under Rule 9(b)); *Keegan*, 838 F. Supp. 2d at 960 (same); *Feldman*, 2012 WL 6596830, at *10 (finding similar fraud allegations sufficient under Rule 9(b)); *See Ho*, __ F. Supp. 2d __, 2013 WL 1087846, at *9 (same).

These allegations are nearly identical to those in *Nelson*, in which the court found plaintiffs' pleadings with regard to their omission-based fraud claims sufficient to satisfy the Rule 9(b) standard.  *Nelson*, 894 F. Supp. 2d at 568 ("Courts have held similar allegations to be sufficient to satisfy Fed.R.Civ.P. 9(b).").  Accordingly, Nissan's claim that "Plaintiffs' allegations lack the requisite particularity necessary to assert a claim based upon a fraudulent omission" (*see* MTD at 11:20-21), rings hollow.

Finally, despite Nissan's contentions otherwise, Plaintiffs allege Defendant's exclusive knowledge of the defect in detail.  (*See, e.g.*, FAC ¶¶ 36-43.)  Indeed, the FAC is more than sufficient to show Nissan what Plaintiffs allege and how to defend itself.  *See In re Porsche*, 880 F. Supp. 2d at 817 ("The specific 'when the decision to conceal the defect was made, who made it, where it occurred, and where it was implemented' are facts that, if they exist, are likely within [defendant's] control and are best addressed after the close of discovery.  The Court will therefore assume, for purposes of this analysis, that defendant knew of the alleged defect at the time it sold the vehicles.").  Moreover, as Defendant fails to bring to the court's attention, "knowledge . . . may be averred *generally*."  Fed. R. Civ. P. 9(b) (emphasis added).

### E.   Falco's Washington Consumer Protection Act Claim Is Well-Pled

Under the WCPA, a plaintiff must prove that an act or practice (1) is unfair or deceptive, (2) occurs in trade or commerce, (3) affects public interest, (4) causes injury to plaintiff's property, and (5) causes the injury suffered.  *Dees v. Allstate Ins. Co.*, 2013 WL

1187652, at *6 (W.D. Wa. 2013).  Knowing omission of a material fact is deceptive

under the WCPA.[19]  *Peterson v. Kitsap Comm. Fed. Credit Union*, 171 Wash. App. 404,

426 (2012).  Further, likelihood of additional plaintiffs having been or being injured in

the same fashion satisfies the "public interest" requirement.  *Evergreen Moneysource*

*Mortg. Co. v. Shannon*, 167 Wash. App. 242, 260-61 (2012).  Washington courts, like

California courts, do not require allegations of individual reliance where non-disclosure

of a *material* fact is alleged.  *Vernon v. Qwest Comms., Inc.*, 643 F. Supp. 2d 1256, 1268

(W.D.Wash.2009).  Plaintiffs allege Nissan failed to disclose to consumers the TCTS

Defect—a material omission.  (FAC ¶¶ 6-8, 9, 11, 13, 38, 44-49, 51, 56, 57, 63, 64, 72,

73, 79, 80, 106-109, 127.)  Plaintiffs further also allege they suffered injury as a result of

Nissan's deceptive acts.  (*Id.* ¶¶ 4, 9, 32, 37, 66, 72, 109, 110, 125, 148.)  Just as they

were with respect to the CLRA, these allegations are sufficient to state a WCPA claim.

*See Carideo et al. v. Dell, Inc.*, 706 F. Supp. 2d 1122, 1134 (W.D. Wa. 2010)  (rejecting

argument that Washington law, like California law under *Daugherty*, limits a duty to

disclose a defect that manifests after expiration of express warranty to, *inter alia*, safety

defects, in finding defendant had duty to disclose material non-safety defects).

## F.    Plaintiffs' Implied Warranty Claim Is Well-Pled and Timely

Nissan's claim that the FAC does not state a claim for breach of implied warranty

(MTD at 24:7-17), fails.  In *Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 27

(2007), the court rejected an "attempt to define a vehicle as unfit only if it does not

provide transportation."  The court explained: "we reject the notion that merely because a

vehicle provides transportation from point A to point B, it necessarily does not violate the

implied warranty of merchantability.  A vehicle that smells, lurches, clanks, and emits

---

[19] Under Washington law, "[a] buyer and seller do not deal from equal bargaining positions when the latter has within his knowledge a material fact which, if communicated to the buyer, will render the goods unacceptable or, at least, substantially less desirable.  Failure to reveal a fact which the seller is in good faith bound to disclose may generally be classified as an unfair or deceptive act . . . ."  As explained above, Nissan had exclusive knowledge of the TCTS Defect and did not disclose it to Plaintiffs, and those facts would have been material to the decisions to purchase their vehicles.

smoke over an extended period of time is not fit for its intended purpose." *Id.*  Similarly, here, a vehicle that whines, buzzes, fails to accelerate and maintain speed, experiences engine failure, and ultimately requires major engine repairs, also violates the implied warranty under Song-Beverly.  (*See*, *e.g.*, FAC ¶¶ 9, 10, 32, 45-47, 49, 57, 59, 64, 65, 67, 73, 80.)  Indeed, these problems are at least as serious as those described in *Isip*.

Nissan also incorrectly asserts that Plaintiff's implied warranty claim is foreclosed by Song-Beverly's one-year duration for the implied warranty.  The California Court of Appeal, however, considered and rejected exactly this argument in *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1304-05 (2009), concluding that "a product is rendered unmerchantable, and the warranty of merchantability is breached, by the **existence** of the unseen defect [at the time of sale], not by its subsequent discovery."  *See also Donlen*, 217 Cal. App. 4th at 148 (citing *Mexia*, 174 Cal. App. 4th at 1308 ("[A] defect that first appears after a warranty has expired does not necessarily mean the defect did not exist when the product was purchased."))[20] Here, Plaintiffs allege Nissan breached the implied warranty "at the time of sale" when it sold the Class Vehicles with the TCTS Defect.  (FAC ¶¶ 140, 142.)  *See Kas v. Mercedes-Benz USA, LLC*, 2011 WL 5248299, at *2 (C.D. Cal. Oct. 31, 2011) (citing *Mexia*, 174 Cal. App. 4th at 1305–06)  (finding unmerchantability outside of one-year implied warranty period where Plaintiff alleged defect existed at the time of sale).  Accordingly, Plaintiffs' vehicles were defective at the outset of the implied warranty period.

Finally, Plaintiffs' implied warranty claim is not time-barred because Nissan ignores that the limitations period is tolled until discovery of a breach.  In *Ehrlich*, relying on *Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205, 215-217 (1991), and distinguishing *Atkinson v. Elk Cor. of Texas*, 142 Cal. App. 4th 212, 232 (2006) (*see* MTD

---

[20] As the *Ehrlich* court explained in relying on *Mexia*, "The Court must 'defer to the California Court of Appeal's interpretation of [a state statute] unless there is convincing evidence that the California Supreme Court would decide the matter differently.'"  *Ehrlich*, 801 F. Supp. 2d at 924 (quoting *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1099 (9th Cir. 2003)).

at 25:7-10), the court rejected defendant's contention that plaintiffs' implied warranty claim was barred by the four-year limitations period that began from the date of purchase. *Ehrlich*, 801 F. Supp. 2d at 923-925 (quoting *Krieger*, 234 Cal. App. 3d at 215-217) ("BMW's argument fails because it ignores the existence of the 4–year/50,000-mile express warranty, which is a warranty that 'explicitly extends to future performance of the goods.' That warranty tolled the statute of limitations until Plaintiff reasonably knew that his MINI would not perform as it should, which did not occur until his windshield cracked and BMW would not replace it."). Similarly, here, Nissan's 5-year/60,000-mile warranty extends to future performance, and Plaintiffs sufficiently allege tolling of the statute of limitations based on their inability to discover the TCTS defect until, at the earliest, the time of repair. (FAC ¶¶ 58, 59, 65, 67, 74, 75, 81, 83-85). *See Ehrlich*, 801 F. Supp. 2d at 925 ("The statute of limitations for Plaintiff's breach of implied warranty claim thus began running in March 2008, when he first discovered that BMW would not repair his defective windshield.") Thus, Plaintiffs' claims are timely.

### G.    Plaintiffs' Unjust Enrichment Claim Is Well-Pled

Under California law, unjust enrichment claims can exist as a separate cause of action when "the claim is grounded in equitable principles of restitution." *Hirsch v. Bank of Am.*, 107 Cal. App. 4th 708, 721-22 (2003). There is no dispute that restitution is permitted under the UCL. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254 (1992). Given that Plaintiffs state a valid cause of action under their UCL claim, Nissan's request for dismissal of Plaintiffs' unjust enrichment claim must be denied. *Keilholtz v. Superior Fireplace Co.*, 2009 WL 839076, at **4-5 (N.D. Cal. 2009) (same). (*See also* FAC ¶¶ 156-57 (pleading facts showing that Nissan was unjustly enriched).)

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied, or alternatively, leave to amend should be granted.

Dated:  August 28, 2013          By: ___/s/_____
                                     Payam Shahian, Esq.

1

2

3

4

    Payam Shahian (SBN 228406)
pshahian@slpattorney.com
STRATEGIC LEGAL PRACTICES, APC
1875 Century Park East, Suite 700
Los Angeles, California 90067
Telephone: (310) 277-1040
Facsimile: (310) 943-3838

5

6

7

8

9

10

    Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Mark Pifko (SBN 228412)
mpifko@baronbudd.com
Natasha Mehta (SBN 272241)
nmehta@baronbudd.com
Baron & Budd, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698

11

12

13

14

15

    Jordan L. Lurie (SBN 130013)
jordan.lurie@capstonelawyers.com
Cody R. Padgett (SBN 275553)
cody.padgett@capstonelawyers.com
CAPSTONE LAW APC
1840 Century Park East, Suite 450
Los Angeles, California 90067
Telephone: (310) 556-4811
Facsimile: (310) 943-0396

16

17

18

19

20

    Dara Tabesh (SBN 230434)
dara.tabesh@ecotechlaw.com
ECOTECH LAW GROUP, P.C.
333 First St. Ste. C
San Francisco, CA 94105
Telephone:  (415) 503-9194
Facsimile:  (415) 651-8639

21

    Attorneys for Plaintiffs

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS