1

2

3                                                                O

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11  KOBE FALCO, individually,      )  Case No. CV 13-00686 DDP (MANx)
    and on behalf of a class       )
12  similarly situated             )  **ORDER DENYING IN PART AND**
    individuals,                   )  **GRANTING IN PART DEFENDANT'S**
13                                  )  **MOTION TO DISMISS FOR FAILURE TO**
                     Plaintiff,    )  **STATE A CLAIM**
14                                  )
          v.                       )
15                                  )  [Dkt. No. 29-1]
    NISSAN NORTH AMERICA INC.,      )
16  NISSAN MOTOR CO.LTD, a          )
    Japanese Company,              )
17                                  )
                     Defendants.   )
18                                  )
    _____  )
19

20      Before the court is Defendant Nissan North America's (NNA)

21  motion to dismiss Plaintiff Kobe Falco, Joel Seguin, Alfredo

22  Padilla, and Roberto Galvan's First Amended Class Action Complaint

23  under Rules 12(b)(6) and 9(b),(DKT No. 29-1, "MTD"), as well as

24  Plaintiffs' Opposition, (DKT No. 41, "Opp."), and Defendant's Reply

25  (DKT. No 46, "Reply").  Having reviewed the parties' submissions

26  and heard oral argument, the court now adopts the following order.

27  ///

28  ///

**I.  Background**

Named Plaintiffs Falco, Seguin, Padilla, and Galvan are purchasers, respectively, of 2005 Nissan Pathfinder, a 2007 Nissan Quest, 2006 Nissan Pathfinder, and 2005 Pathfinder vehicles. (FAC ¶¶ 55, 61, 70, 77.) Plaintiffs allege that their vehicles had a defectively designed Timing Chain Tensioning System (TCTS). They bring this putative class action on behalf of themselves and other purchasers or lessees of the vehicles noted above and other Nissan vehicle lines which they allege share the TCTS defect.[1] (Id. ¶¶ 2, 5, 28.)

The TCTS is a component of an internal combustion engine. It is responsible for connecting the engine's camshaft to the crankshaft, which in turn control the opening and closing of the engine's valves. (Id. ¶ 29.) The TCTS ensures that the valves open and close in a precise, synchronized manner that is necessary for the engine to function. (Id.) According to Plaintiffs, a TCTS malfunction can cause vehicle pistons and valves to smash into one another, causing an inability to accelerate, maintain speed, and idle smoothly, and potentially catastrophic engine failure. (Id. ¶¶ 31, 33.)

Plaintiffs allege the TCTSs installed in the Subject Vehicles are prone to failure before consumers reasonably expect any failure to occur,(id. ¶ 5.), and that the defect presents a safety concern for drivers and occupants of the vehicles. (Id. ¶¶ 10, 53.)

---

[1] The lines of vehicles alleged to include the defect include: 2004-2008 Nissan Maxima, 2004-2009 Nissan Quest , 2004-2006 Nissan Altima(with the VQ35 engine), 2005-2007 Nissan Pathfinder, 2004-2007 Nissan Xterra, and 2005-2007 Nissan Frontier(with the VQ49 engine). These vehicles are referred to herein as the Subject Vehicles. (FAC ¶ 2.)

Plaintiffs allege that after their vehicles' TCTSs broke down they were confronted with significant repair costs, ranging from $510.60 in the case of Falco to $2,788.00 in the case of Seguin. (<u>Id.</u> ¶¶ 4, 59, 68). Plaintiffs allege that they would not have bought the vehicles had they known of the TCTS defect. (<u>Id.</u> ¶ 12)

Plaintiffs allege that NNA has been aware of the defect since 2004, as a result of information exclusively within its possession, including data from pre-production testing, pre-production design failure mode and analysis, production design failure mode and analysis, and early consumer complaints, as well as aggregate data from retailers.[2] (<u>Id.</u> ¶ 37.) Plaintiffs allege that despite this knowledge, NNA continued to install the defective component, while concealing its knowledge so that the warranty period would expire before owners became aware of the problem.  (<u>Id.</u> ¶ 8.)

In support of these contentions, Plaintiffs allege that NNA redesigned one of the defective TCTS components in 2006 or 2007, correcting the defect, but without informing consumers. (<u>Id.</u> ¶¶ 39-43.) Plaintiffs further point to a series of three Technical Service Bulletins issued by Nissan North America, beginning July 17, 2007, instructing technicians to replace TCTS component parts in the case of whining or buzzing noises. (<u>Id.</u> ¶¶ 44-49.) Additionally, Plaintiffs point to complaints by drivers to the National Highway Traffic Administration, which Plaintiffs allege NNA monitors regularly, between 2006 and 2010. (<u>Id.</u> ¶¶ 50, 52.)

---

[2] Plaintiffs refer throughout their complaint to "Nissan," by which they appear to refer collectively to both Nissan North America (NNA) and its Japanese parent company Nissan Motor Co., Ltd (NML). For the purposes of this motion, the court construes Plaintiffs' references to "Nissan" to refer to NNA.

In the case of each Plaintiff, the repairs were undertaken outside of the vehicle's five-year, 60,000-mile (which ever comes first) Powertrain warranty. (Id. ¶¶ 57, 65, 74, 82 57, 58.) Plaintiffs allege that they heard "whining," "buzzing," and "ticking" sounds during the warranty period which were symptomatic of the TCTS defect, and that they would have demanded that NNA repair the vehicles during the warranty period had they been made aware of the nature and extent of the problem. (Id. ¶¶ 57, 64, 73, 80.)

Based on the facts described above, Plaintiffs asserted six causes of action against NNA: (1) violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 et seq; 2) breach of implied warranty pursuant to California's Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1792 and 1791.1 et seq.; 3) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq.;(4) violation of Washington's Consumer Protection Act ("WCPA"), RCW 19.86 et seq;(5) Fraud, and (6) Unjust Enrichment.

## II   Legal Standard

## A.   Motions to Dismiss

A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." Resnick

*v. Hayes*, 213 F.3d 443, 447 (9th Cir.2000). Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." *Id.* at 679. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. *Id.* at 678 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id.* at 679. Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." *Twombly*, 550 U.S. at 555. "Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

**B. Rule 9(b)**

Claims sounding in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." See *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir.2009). "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or

1  misleading about [the purportedly fraudulent] statement, and why it

2  is false." <u>Cafasso, United States ex rel v. Gen. Dynamics C4 Sys.</u>,

3  Inc., 637 F.3d 1047, 1055 (9th Cir.2011) (internal quotation marks

4  and citations omitted).

5

6  **III. Analysis**

7  **A. California Consumers Legal Remedies Act (CLRA)**

8       Plaintiffs' first claim is made under the CLRA. The CLRA

9  prohibits "unfair methods of competition and unfair or deceptive

10  acts or practices." Cal. Civ. Code § 1770. Plaintiffs rely on §

11  1770(a)(5), which prohibits "[r]epresenting that goods or services

12  have sponsorship, approval, characteristics, ingredients, uses,

13  benefits, or quantities which they do not have", and § 1770(a)(7),

14  which prohibits "[r]epresenting that goods or services are of a

15  particular standard, quality, or grade, or that goods are of a

16  particular style or model, if they are of another."[3]

17       Although a plaintiff may bring a claim under these sections of

18  the CLRA for both representations and fraudulent omissions, a

19  fraudulent omissions claim is only actionable if the omission is

20  "contrary to a representation actually made by the defendant" or

21  "of a fact the defendant was obliged to disclose." <u>Daugherty v.</u>

22  <u>Am. Honda Motor Co., Inc.</u>, 144 Cal. App. 4th 824, 835 (2006).

23  "In the CLRA context, a fact is deemed 'material,' and obligates an

24  exclusively knowledgeable defendant to disclose it, if a

25  _____

26       [3]  Plaintiffs also allege in general terms that Defendants
     have violated § 1770(a)(9), which prohibits "[a]dvertising goods
27   or services with intent not to sell them as advertised." <u>See</u> FAC ¶
     105. However, because Plaintiffs do not allege specific facts to
28   support this contention or otherwise explain its inclusion, the
     court dismisses this aspect of Plaintiffs' claim.

1  'reasonable [consumer]' would deem it important in determining how

2  to act in the transaction at issue." <u>Collins v. eMachines, Inc.</u>,

3  202 Cal.App.4th 249,255 (2011).

4      Nondisclosure or concealment of a material fact may be

5  actionable, among other circumstances, when (1) the defendant had

6  exclusive knowledge of material facts not known to the plaintiff,

7  and (2) the defendant actively conceals a material fact from the

8  plaintiff. <u>LiMandri v. Judkins</u>, 52 Cal.App.4th 326, 336-37

9  (Cal.Ct.App.1997). Plaintiffs assert that NNA is liable on both

10 grounds, each of which NNA challenges in the instant motion. The

11 court addresses each theory of liability in turn.

12 **1. Exclusive Knowledge of Material Facts**

13     The court first analyzes Plaintiffs' assertion that NNA

14 violated its duty to Plaintiffs to disclose material facts

15 exclusively within its possession.

16 **I. Materiality of the Alleged Timing Chain Tensioning System**

17 **Problem**

18     The initial issue is whether the alleged defect was

19 "material."  NNA contends that it is immune from liability in a

20 CLRA suit because the purported defect did not arise until after

21 the expiration of the vehicles' warranty period. (Opp. at 6.) NNA

22 argues that the warranty "define[s] consumer expectations of

23 product life and establish[es] the parameters of a fact's

24 'materiality' for purposes of a fraudulent non-disclosure claim."

25 (Reply at 5.)

26     NNA is correct that a warranty generally defines a consumer's

27 expectations of a product's performance under California law. <u>See</u>

28 <u>Daugherty</u>, 144 Cal.App.4th at 830-32. However, California courts

have carved out an exception to this rule that is relevant to the current case: A manufacturer's duty to consumers is not limited to its warranty obligations where the nondisclosure involves an "unreasonable safety risk." Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1141 (9th Cir. 2012). See also Daugherty, 144 Cal.App.4th at 832-38; Smith v. Ford Motor Co., 749 F. Supp. 2d 980, 987 (N.D. Cal. 2010) aff'd, 462 F. App'x 660 (9th Cir. 2011)(citing Daugherty, 144 Cal.App.4th at 836) ("[W]here, as here, a plaintiff's claim is predicated on a manufacturer's failure to inform its customers of a product's likelihood of failing outside the warranty period, the risk posed by such asserted defect cannot be 'merely' the cost of the product's repair; rather, for the omission to be material, the failure must pose 'safety concerns.'")

On its face, Plaintiffs' complaint focuses squarely on safety, alleging, for example:

> [T]he fact that the Timing Chain Tensioning System is prone to sudden premature failure is material to consumers because it presents a serious safety issue and places driver and passengers at risk of harm. The Timing Chain Tensioning System is an integral component of the Subject Nissan Vehicles' engines. When the Timing Chain Tensioning System fails, it can cause a variety of problems for the Subject Nissan Vehicles, including the inability [to] accelerate and maintain speed, as well as catastrophic engine failure, among other issues. When any of these occur while the vehicles are in motion, occupants of the vehicles are exposed to rear end collisions and other accidents caused by the driver's inability to maintain an appropriate speed on the road.

1  (FAC ¶ 10.)

2      NNA argues that Plaintiffs have not "alleg[ed] with

3  particularity a defect and a causal connection to the alleged

4  unreasonable safety hazard" and that "Plaintiffs provide no

5  supporting detail indicating how the alleged timing belt defect

6  constitutes a safety hazard." (MTD at 12; Reply at 7.) However, the

7  court finds to the contrary that the First Amended Complaint

8  describes in sufficient detail, through both text and figures, that

9  the alleged failure of the Timing Chain Tensioning System can cause

10  the vehicle's pistons and valves to smash into one another, leading

11  to an inability to accelerate or maintain speed, as well as

12  catastrophic engine failure. See FAC ¶¶ 10, 29-31, 34, 39-43.

13      NNA relies heavily on Wilson here, but this reliance is

14  misplaced. In Wilson, the court found a logical inconsistency in

15  the plaintiffs' allegation that a defect cutting off power to a

16  laptop could cause the laptop to ignite. 668 F.3d at 1144. By

17  contrast, the nexus between the alleged Timing Chain Tensioning

18  System and the danger posed by engine failure is natural and

19  direct. See In re Saturn L-Series Timing Chain Products Liab.

20  Litig., MDL 1920, 2008 WL 4866604 at *8 (D. Neb. Nov. 7, 2008)

21  (holding, in the case of an alleged defective steel timing chain,

22  that "the potential for an engine to stop operating in the middle

23  of an intersection, or on an interstate at speeds upwards of 65

24  miles per hour, constitutes enough of a safety risk that the

25  Defendants in this case had a duty to disclose the safety defect to

26  any potential consumer").

27      NNA also argues that the claim must be rejected because

28  Plaintiffs have failed to allege that they or other members of the

putative class have experienced a mechanical failure resulting in an unreasonable risk to personal safety.  (MTD at 14.) In support of the assertion that Plaintiffs must allege such harm to themselves or other class members, NNA relies on Tietsworth v. Sears, Roebuck & Co., 2009 WL 3320486 (N.D. Cal. Oct. 13 2009). There, plaintiffs alleged that a defect in a washing machine's control board could lead to the machine spinning out of control, posing a safety risk. Id. at *5. Addressing the issue as a question of standing, the court held that the plaintiffs lacked standing to pursue a claim because they failed to allege that they or other putative class members had experienced the alleged malfunction involving the machine spinning out of control. Id.

However, other courts that have considered the issue have expressly disagreed with Tietsworth's rationale. As Judge Fogel explained in Ehrlich v. BMW of North America, LLC:

> The Court is not persuaded by Tietsworth or BMW's arguments
> that Plaintiff must plead that consumers have been injured by
> the alleged unreasonable safety risk. Tietsworth approached
> the safety defect issue in terms of actual injury to the named
> plaintiffs, finding that they "lacked standing" to pursue
> their claims based on merely posited injuries. Here, Plaintiff
> has alleged that he was injured by the defective windshields
> by having to replace the cracked windshield in his MINIs
> twice.... The alleged unreasonable risk of safety created by
> compromised windshields during rollover accidents is relevant
> to the materiality of BMW's omissions, and Plaintiff has
> alleged a plausible unreasonable safety risk that would have
> been material to the reasonable consumer.

801 F.Supp. 2d 908, 918 (C.D. Cal 2010) (internal citations
omitted). See also Cholakyan v. Mercedes-Benz USA, LLC, 796
F.Supp.2d 1220, 1236-37 (C.D. Cal 2011) (rejecting defendant's
argument that "the purported safety defects are speculative in
nature, because there is no allegation that [plaintiff] or any
other class member ever experienced such a defect"); In re Toyota
Motor Corp., 754 F.Supp.2d 1145, 1160 (C.D. 2010)("The Court agrees
with Plaintiffs that experiencing [a sudden unintended
acceleration] defect is not required for standing. Standing merely
requires a redressable injury that is fairly traceable to
Defendants' conduct"); In re Porsche, 880 F. Supp 2d 827-28 (S.D.
Ohio, 2012) (applying rule of Ehrlich and Cholakyan); Keegan v. Am.
Honda Motor Co., Inc., 838 F. Supp. 2d 929, 943 (C.D. Cal. 2012)
(same).

The court agrees with and will apply the rule of Ehrlich,
Cholakyan, In re Porsche, and Keegan. There is little question the
plaintiffs have alleged a sufficient injury-in-fact to establish
standing: Each has alleged that he has been injured by the alleged
defect by having to pay for the repair of his vehicle. As with the
allegedly defective windshields in Ehrlich, the safety risk posed
by the allegedly defective TCTS is not relevant to standing but
rather goes to the materiality of NNA's alleged omissions. The
court finds that Plaintiffs have alleged a plausible unreasonable
safety risk that a reasonable consumer would have found material.

**ii. Defendant's Knowledge of Alleged Defect**

In order for a defendant's duty to disclose an alleged defect
to be actionable, the defendant must have been aware of the defect
at the time of sale to the plaintiff. See Wilson, 668 F.3d at 1145.

11

1   NNA argues that Plaintiffs have not alleged sufficient facts to
2   show that NNA was aware of the alleged defect at the time of sale.
3   In particular, NNA argues that Plaintiffs' allegations are
4   conclusory and do not include facts that pre-date the sale of
5   vehicles and thereby permit an inference of Defendant's knowledge
6   at the time of sale. (MTD at 15.)
7        In alleging NNA's exclusive knowledge, Plaintiffs assert that:
8        [S]ince as early as 2004, Nissan acquired its exclusive
9        knowledge of the Timing Tensioning System defect through
10       sources not available to Plaintiffs and members of the Class
11       including, but not limited to, pre-production testing, pre-
12       production design failure mode and analysis data, production
13       design failure mode and analysis data, early consumer
14       complaints made exclusively to Nissan's network of dealers and
15       directly to Nissan, aggregate warranty data compiled from
16       Nissan's network of dealers, testing conducted by Nissan in
17       response to consumer complaints, and repair order and parts
18       data received by Nissan from Nissan's network of dealers.
19  FAC ¶ 37.
20       NNA argues that dismissal is required under Wilson, 668 F.3d
21  at 1145-48 (9th Cir. 2012) because Plaintiffs' allegations are
22  impermissibly conclusory. In Wilson, the Ninth Circuit found that
23  the plaintiffs' allegation that Hewlett-Packard was aware of an
24  alleged computer defect at the time of sale because it had "access
25  to the aggregate information and data regarding the risk of
26  overheating" was "speculative and [did] not suggest how any tests
27  or information could have alerted HP to the defect." Id. at 1146-47
28  (internal citations and quotation marks omitted). NNA also points

to Grodzitsky v. Am. Honda Motor, 2013 WL 690822 at *6 (C.D. Cal. Feb 19, 2013), where the court found similarly generalized allegations of "pre-release testing data" and "aggregate data from Honda dealers" to inadequately plead that the manufacturer was aware of the defect at the time of sale to the plaintiffs.

However, in the present case, unlike in Wilson and Grodzitsky, Plaintiffs have alleged particular facts which make Plaintiffs' allegations more than merely speculative or conclusory. First, as noted above, Plaintiffs allege that on or around July 17, 2007, NNA issued the first of several Technical Service Bulletins to its dealerships instructing technicians to replace components of the Timing Chain Tensioning System in the vehicles covered by the complaint. (FAC ¶¶ 44-47.) Second, Plaintiffs allege that in or around 2006 or 2007, NNA replaced the chain guide of the Timing Chain Tensioning System with a redesigned version of the part that does not suffer from the defect. (FAC ¶¶ 41-42.) These facts, if true, permit plausible inferences that NNA was aware of the defect at the time they sold the vehicles in 2005 and 2006 and that NNA acquired this knowledge through the sorts of internal data Plaintiffs allege.

Indeed, the facts of this case are much closer to those of Mui Ho v. Toyota Motor Corp., 2013 WL 1087846 (N.D. Cal. Mar. 14, 2013), where the court found pleadings regarding the defendant's exclusive knowledge at the time of sale adequate, than they are to those of Wilson or Grodzitsky. In Ho, similar to the present case, the plaintiffs alleged that Toyota acquired their knowledge of a defective headlamp through "pre-release testing data," "aggregate data from Toyota dealers," "early consumer complaints," and "other

internal sources of aggregate information." (Ho Second Amended
Complaint, 3:12-cv 02672-SC, Dkt. No. 56 at ¶ 48.) And like the
present case, defendants allegedly provided their dealers with a
technical service informational bulletin acknowledging the
headlight defect and noting the availability of replacement parts.
(Ho SAC ¶ 9.) Although the bulletin appears to have been issued
after some or most of the plaintiffs purchased their cars, (Ho SAC
¶¶ 9, 20, 30, 35), the court found that the plaintiffs had alleged
sufficient facts to support their claim that the defendants knew of
the defect at the time of sale. 2013 WL 1087846 at *8. This court
reaches the same conclusion in the current case.

NNA correctly points out that most of the alleged complaints
to NHTSA occurred post-sale, including those explicitly raising
safety concerns.(MTD at 17; FAC 50-54.) Were post-sale customer
complaints the only basis for NNA's alleged knowledge at the time
of sale, as it appears was the case in Grodzitsky, 2013 WL 690822
at * 6-7, NNA would have a stronger case. But for the reasons
explained above, there are other adequate bases to permit an
inference that NNA was aware of the alleged defect at the time of
sale. These allegations create a reasonable likelihood that
discovery will produce evidence that NNA was aware of the alleged
defect at the time it sold the vehicles to Plaintiffs.

**2. Active Concealment**

The court now turns to Plaintiffs' second theory under the
CLRA. An discussed above, an actionable claim may arise "when the
defendant actively conceals a material fact from the plaintiff."
LiMandri, 52 Cal. App. 4th at 337.  The following five elements are
required: (1) the defendant must have concealed or suppressed a

14

material fact; (2) the defendant must have been under a duty to
disclose the fact to the plaintiff; (3) the defendant must have
intentionally concealed or suppressed the fact with the intent to
defraud the plaintiff; (4) the plaintiff must have been unaware of
the fact and would not have acted as he did if he had known of the
concealed or suppressed fact; and (5) as a result of the
concealment or suppression of the fact, the plaintiff must have
sustained damage. Lovejoy v. AT & T Corp., 119 Cal.App.4th 151, 157
(Cal.Ct.App. 2004).

     With respect to the first and second elements, Plaintiffs have
adequately pled that the alleged TCTS defect was material because
it was safety-related and that the defendant therefore had an
obligation to disclose it.  See infra Section III(A)(1).

     With respect to the third element, Plaintiffs allege that NNA
actively concealed its knowledge of the TCTS defect, among other
actions, by issuing TSBs advising repair facilities and dealerships
that it was necessary to replace certain elements of the TCTS, but
not informing customers about the TSBs (id. ¶¶ 7, 8, 44-48);
failing to disclose that it redesigned the TCTS as a result of its
internal knowledge of the system's defect (FAC ¶¶ 29-43); giving
goodwill adjustments to reduce the costs of repairs for some
customers who complained, but failing to do some for other
customers who did not complain (id. ¶ 7); and when attempting to
address the alleged defect, using a temporary fix (id. ¶ 8).

     These allegations sufficiently allege active concealment that
would create a duty to disclose. See, e.g., Falk v. Gen. Motors
Corp., 496 F. Supp. 2d 1088, 1097 (N.D. Cal. 2007) (finding that
plaintiffs sufficiently pled active concealment by alleging that

manufacturer did not notify consumers of defect in light of
complaints and replaced defective parts with other defective parts
in order to conceal defects); <u>Marsikian v. Mercedes Benz USA, LLC</u>,
2009 WL 8379784 at *14 (C.D. Cal. May 4, 2009)(finding sufficient
to state a claim for active concealment allegations that internal
service bulletins, "goodwill" adjustments given to the most vocal
owners, and temporary fixes concealed the defect from the general
customer base); <u>Ehrlich v. BMW of N. Am., LLC</u>, 801 F. Supp. 2d 908,
919 (C.D. Cal. 2010)(finding sufficient to state a claim for
active concealment allegations that defendant withheld information
about alleged defect that it had learned through internal sources
and customer complaints, replaced defective windshields only for
the most vocal customers without disclosing the replacement program
to all consumers, and concealed the program by calling the
replacements "goodwill" adjustments).

To the extent that NNA challenges these allegations, it argues
that the July 17, 2007 TSB disclosed the TCTS issue to consumers.
(Reply at 5.) NNA points out that the text of the TSB is directed
to the consuming public (referring, for example, to "your
vehicle.") (Reply at 5.) Plaintiffs counter by asserting that the
TSB can only be accessed online if one pays a "Viewing
Subscription" and that its intended viewers are dealers, not
customers. (<u>See</u> Reply at 15, fn 11.) This dispute of fact is not
appropriately addressed at the stage of a motion to dismiss under
Rule 12(b)(6).

With respect to the fourth and fifth elements, NNA asserts
that Plaintiffs have failed to plead actionable reliance. (MTD at
18.) NNA asserts that each Plaintiff's claim that he would not have

1  purchased the vehicle or paid less had he known of the alleged

2  defect is conclusory. Id. at 18-19. However, under California law,

3  reliance, on a classwide basis, may be established by materiality,

4  a rule that applies in "failure to disclose" cases. See, e.g.,

5  Stearns v. Ticketmaster Corp., 655 F.3d 1013, 122 (9th Circuit)

6  (citing McAdams v. Monier, Inc., 182 Cal.App.4th 174, 184 (2010)

7  (holding that because of defendant's failure to disclose

8  information "which would have been material to any reasonable

9  person who purchased" the product, a presumption of reliance was

10 justified)). As discussed above, Plaintiffs adequately plead that

11 the alleged TCTS defect was material. See, infra, Section

12 (III)(A)(1)(I).

13    NNA further argues that Plaintiffs' reasonable expectations

14 were satisfied because the vehicles allegedly did not fail during

15 the life of the warranty. (MTD at 18.)  This argument is

16 unavailing.  For the reasons discussed above, see Section III(A), a

17 warranty does not define customers' expectations where, as here,

18 the alleged defect is safety-related. In such cases, the non-

19 disclosure of the defect may give rise to a fraudulent

20 nondisclosure claim even if the defect arises and the claim is made

21 outside of the warranty period.

22

23 **B. Breach of Implied Warranty under the Song-Beverly Warranty Act**

24    The Song-Beverly Consumer Warranty Act creates "an implied

25 warranty of merchantability," whereby the seller guarantees that

26 consumer goods meet each of the following conditions: (1) pass

27 without objection in the trade under the contract description; (2)

28 are fit for the ordinary purposes for which such goods are used;

(3) are adequately contained, packaged, and labeled; and (4)
conform to the promises or affirmations of fact made on the
container or label. Cal. Civ. Code § 1791.1   Unlike an express
warranty, "the implied warranty of merchantability arises by
operation of law" and "provides for a minimum level of quality."
(Am. Suzuki Motor Corp v. Superior Court, 37 Cal.App.4th at 1291,
1295-1296 (1995) (internal quotation marks and citation omitted).
Plaintiffs assert that the alleged TCTS defect renders the Class
Vehicles unfit for their particular purpose of providing safe and
reliable transportation. (FAC ¶¶ 137-143.)

     NNA moves to dismiss on two grounds.  First, NNA argues that
Plaintiffs have failed to allege that the vehicles are unfit for
their ordinary purpose, which, relying on Am. Suzuki,37 Cal. App.
4th 1295-96, it argues is simply to provide transportation. (MTD at
24.) NNA argues that the fact that the vehicles outlasted their
warranty demonstrate that the vehicles "must have, by definition,
been fit for [their] ordinary purpose[]." (Id.) NNA quotes a
passage purportedly from Am. Suzuki which would strongly support
its position ("[W]here an express time-limited warranty is issued
by a manufacturer, latent defects discovered after the term of the
warranty are not actionable as an implied warranty claim.") (MTD at
24). However, the court does not find this passage in the cited
case.

     Moreover, the proposition that a vehicle is merchantable
solely because it provides transportation was rejected in Isip v.
Mercedes-Benz USA, LLC, 155 Cal. App. 4th 19, 27 (2007) ("We reject
the notion that merely because a vehicle provides transportation
from point A to point B, it necessarily does not violate the

implied warranty of merchantability. A vehicle that smells, lurches, clanks, and emits smoke over an extended period of time is not fit for its intended purpose.") Plaintiffs assert that the alleged defect violates the implied warranty of merchantability on the ground that "a vehicle that whines, buzzes, fails to accelerate and maintain speed, experience engine failure, and ultimately requires engine repairs" is unmerchantable. (Opp at 24.) While Plaintiffs' allegations may not reach the level of those in <u>Mexia</u>, the court finds that, taken as true, they are enough to survive a motion to dismiss.

NNA's second argument is that Plaintiffs' claims are time-barred. (MTD at 24.) California Civil Code section 1791.1 provides that "[t]he duration of the implied warranty of merchantability ... shall be coextensive in duration with an express warranty which accompanies the consumer goods, provided the duration of the express warranty is reasonable; but in no event shall such implied warranty have a duration of less than 60 days nor more than one year following the sale of new consumer goods to a retail buyer." Commercial Code section 2725 states in relevant part: "(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued.... (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." A cause of action under the Song-Beverly Act accrues

1   from the date the product is delivered, if the defect--albeit

2   undiscovered-- existed at that time. Mexia, 174 Cal. App. 4th at

3   1305.

4        NNA asserts that the above rules mean that an implied warranty

5   brought more than five years from the date of delivery is time-

6   barred: Since the implied warranty lasts only one year, NNA argues,

7   a claim must be brought within four years of the expiration of the

8   one-year period, or five years from the date of sale.  This

9   argument, fails, however because under California law, NNA's five-

10  year warranty had the effect of tolling the statute of limitations.

11  Indeed, a court in this district recently considered and rejected

12  precisely NNA's argument in Ehrlich v. BMW of N. Am., LLC, 801 F.

13  Supp. 2d 908, 924-25 (C.D. Cal. 2010) ("BMW's argument fails

14  because it ignores the existence of the 4-year/50,000-mile express

15  warranty, which is a warranty that 'explicitly extends to future

16  performance of the goods.' That warranty tolled the statute of

17  limitations until Plaintiff reasonably knew that his MINI would not

18  perform as it should, which did not occur until his windshield

19  cracked and BMW would not replace it.') (citing  Krieger v. Nick

20  Alexander Imports, Inc., 234 Cal.App.3d 205, 215-17 (Ct.App.1991)).

21  Following the holding in Erlich, Plaintiffs' claims are not time-

22  barred because NNA's five-year warranty tolled the running of the

23  implied warranty's statute of limitations.

24

25  **C.  California Unfair Competition Law (UCL)**

26       California's Unlawful Competition Act prohibits "unlawful,"

27  "unfair," or "fraudulent" business practices. Cal. Bus. & Prof.

28  Code § 17200. Plaintiffs assert that NNA's business practices are

1  unlawful, unfair, and fraudulent. (FAC  ¶¶ 18-27.)

2      For a claim based upon unlawful business practices under the
3  UCL, the UCL "borrows violations of other laws and treats them as
4  unlawful practices that the unfair competition law makes
5  independently actionable." Cel-Tech Comms., Inc. v. Los Angeles
6  Cellular Tel. Co., 20 Cal4th 163, 180 (1999).  Plaintiffs assert
7  that NNA's conduct violates the unlawful prong on the grounds that
8  it violates the CLRA and the Song-Beverly Warranty Act. (See FAC ¶
9  118.) NNA asserts that it has violated neither law.  However,
10 because the court finds that Plaintiffs' pleadings under the CLRA
11 and the Song-Beverly Warranty Act are sufficient to survive NNA's
12 motion to dismiss, see, infra, Sections III(A) and III(B), the
13 court finds that Plaintiffs' pleadings as to the UCL's unlawful
14 prong are likewise sufficient.

15     Having determined that Plaintiffs have adequately pled a UCL
16 violation under the "unlawful" prong, it need not address whether
17 Plaintiffs' claims are adequately pled under the "unfair" and
18 "fraudulent" prongs.

19

20 **D. Washington Consumer Protection Act (WCPA)**

21     Under the WCPA, a plaintiff must prove that the defendant's
22 act or practice (1) is unfair or deceptive; (2) occurs in the
23 conduct of trade or commerce; (3) affects the public interest; (4)
24 causes injury to the plaintiff's business or property; and (5)
25 causes the injury suffered. Hangman Ridge Training Stables, Inc. v.
26 Safeco Title Ins. Co., 105 Wash.2d 778, 719 P.2d 531, 535 (1986).
27 Washington courts have determined that the knowing omission of a
28 material fact is a "deceptive" practice. See Testo v. Russ Dunmire

21

1  Oldsmobile, Inc., 16 Wash. App. 39, 51, 554 P.2d 349, 358 (1976)("A
2  buyer and seller do not deal from equal bargaining positions when
3  the latter has within his knowledge a material fact which, if
4  communicated to the buyer, will render the goods unacceptable or,
5  at least, substantially less desirable. Failure to reveal a fact
6  which the seller is in good faith bound to disclose may generally
7  be classified as an unfair or deceptive act due to its inherent
8  capacity to deceive and, in some cases, will even rise to the level
9  of fraud."); Carideo v. Dell, Inc., 706 F. Supp. 2d 1122, 1133
10 (W.D. Wash. 2010) (citing Testo).  Plaintiffs allege that NNA's
11 failure to disclose the TCTS to Plaintiffs was a material omission
12 that constituted a deceptive practice in the course of trade or
13 business of public interest that resulted in damages to Plaintiffs.
14 (FAC ¶¶ 132-136.)

15     NNA challenges Plaintiffs' WCPA claim on the same grounds as
16 it challenges Plaintiffs' CLRA claim. (MTD at 22-23.)  First, it
17 asserts that the alleged failure to disclose was not "material"
18 because it relates solely to the post-warranty performance of the
19 vehicles. (Id. at 23) However, Plaintiffs identify no Washington
20 case law to support this proposition. Moreover, a U.S. district
21 court has recently suggested that Washington courts would allow
22 "failure to disclose" actions for defects that arise post-warranty,
23 including even non-safety defects. See Carideo v. Dell, Inc., 706
24 F. Supp. 2d 1122, 1134 (W.D. Wash. 2010) (rejecting argument that
25 defendant's "duty to its consumers was limited to its warranty
26 obligations absent either an affirmative misrepresentation or a
27 safety issue" because Washington courts have not embraced this
28 principle, as articulated by California courts in Dougherty and its

progeny).

NNA further challenges the WCPA claim on the grounds that Plaintiffs have failed to allege NNA's knowledge at the time of sale. (MTD at 23, citing <u>Robinson v Avis Rent a Car System, Inc</u>, 22 P.3d 818, 824 (Wash. App. 2001)). However, as discussed <u>supra</u> in section III(A)(1)(ii), the court found that Plaintiffs have sufficiently pled NNA's knowledge at the time of sale to survive a motion to dismiss under Rule 12(B)(6).

**E. Fraud**

Plaintiffs appear to assert a claim of fraudulent concealment (failure to disclose). A plaintiff must how that (1) the defendant intentionally concealed or suppressed a material fact, (2) the defendant had a duty to disclose that fact, (3) acted with the intent to defraud the plaintiff, (4) the plaintiff was unaware of the fact, and (5) as a result of the concealment, plaintiffs were damaged. <u>See</u> <u>Roddenberry v. Roddenberry</u>, 44 Cal.App.4th 634, 666 (1996).

All but one of NNA's challenges as to Plaintiffs' allegations of fraudulent concealment are addressed at length in Section III(A). A final objection is that Plaintiffs have failed to plead fraudulent concealment with the specificity required by 9(b).

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." As a general rule, "[a]verments of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged." <u>Cooper v. Picket</u>, 137

23

1  F.3d 616,627 (9th Cir. 1997).  However, as Plaintiffs point out, a

2  fraud by omission or fraud by concealment claim "can succeed

3  without the same level of specificity required by a normal fraud

4  claim." Baggett v. Hewlett-Packard, Co., 582 F. Supp. 2d 1261, 1267

5  (C.D. Cal. 2007) (internal citations omitted). "[A] plaintiff in a

6  fraudulent concealment suit will 'not be able to specify the time,

7  place, and specific content of an omission as precisely as would a

8  plaintiff in a false representation claim.'" Id. (internal

9  citations omitted). Ultimately, the question before the court is

10 whether the plaintiff "identifies the circumstances constituting

11 fraud so that a defendant can prepare an adequate answer from the

12 allegations." See Moore v. Kayport Package Exp., Inc., 885 F.2d

13 531, 540 (9th Cir. 1989).  In the present case, the court finds

14 that Plaintiffs' allegations that NNA concealed from consumers its

15 knowledge of the TCTS problem during the period 2004 through 2007

16 are sufficiently specific to go beyond the level of merely

17 conclusory or speculative and are sufficient to enable NNA to

18 produce an adequate response.

19

20 **F. Unjust Enrichment**

21     Finally, NNA challenges Plaintiffs' claim of unjust enrichment

22 on the grounds that unjust enrichment is not an independent cause

23 of action. (MTD at 25.) The court agrees. "California does not

24 recognize a standalone cause of action for unjust enrichment."

25 Robinson v. HSBC Bank USA, 732 F.Supp.2d 976 (N.D.Cal.2010).

26 "Unjust enrichment is not a cause of action, however, or even a

27 remedy, but rather, a general principle, underlying various legal

28

1   doctrines and remedies." <u>McBride v. Boughton</u>, 123 Cal.App.4th 379,

2   387, 20 Cal.Rptr.3d 115 (2004) (internal citations omitted).

3

4   **IV.  Conclusion**

5        For the reasons set forth herein, the court DENIES Defendant

6   NNA's motion to dismiss Plaintiffs' First Amended Complaint for

7   failure to state a claim under Rule 12(b)(6) as to Plaintiffs' (1)

8   CLRA,(2) Implied Warranty, (3) UCL,(4) WCPA, and (5) Fraud claims.

9   The court GRANTS NNA's motion to dismiss as to Plaintiffs' Unjust

10  Enrichment claim.

11

12

13  IT IS SO ORDERED.

14

15

16  Dated: October 10, 2013

17                                  DEAN D. PREGERSON
                                    United States District Judge

18

19

20

21

22

23

24

25

26

27

28