O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KOBE FALCO, individually, and on behalf of a class similarly situated individuals,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NISSAN NORTH AMERICA INC., NISSAN MOTOR CO.LTD, a Japanese Company,<br><br>　　　　Defendants. | Case No. CV 13-00686 DDP (MANx)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS UNDER RULES 12(B)(5) AND (4)(c)**<br><br>[DKT No. 42] |

Presently before the court is Defendant Nissan Motor Co., Ltd's ("Nissan-Japan") Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(5) and 4(c). Having considered the parties' submissions and heard oral argument, the court now adopts the following order.

**I.　Background**

This case involves a putative class action lawsuit brought by consumers of certain Nissan automobiles against Nissan-Japan and Nissan North America ("Nissan-America"). Nissan-Japan asserts in

the instant motion that Plaintiffs have failed to effectively serve Nissan-Japan.

This court previously granted a motion by Nissan-Japan to dismiss for inadequate service of process. (See DKT No. 52.) That order was granted on the grounds that, in an attempt made on June 27, 2013 to serve Nissan-Japan (purportedly via substitute service on an executive of Nissan-Japan's subsidiary, Nissan-America), Plaintiffs failed to serve a summons along with their First Amended Complaint, as required by Fed. R. Civ. P. 4(c)(1).

Plaintiffs made a subsequent attempt to serve Nissan-Japan, again via its subsidiary Nissan-America, on August 8, 2013, this time including a summons. (DKT No. 35.) The proof of service submitted to the court stated that the following person was served:

> a. Defendant (name): Colin Dodge, Chairman, Management Committee-Americas, Executive Vice President, and Chief Performance Officer, Nissan North America, Inc, which is general manager of Nissan Jid'osha Kabushiki Kaisha d/b/a Nissan Motor, Co., and
>
> b.  Other: Larry Okuneff, Claims Manager Apparently in Charge on Behalf of Colin Dodge, Chairman."

(Id. ¶¶ 2(a) and 2(b).)

The proof of service indicates that the service was accomplished via substitute service, by (1) leaving copies with a person apparently in charge of the office of the place of business of the person to be served and (2) by mailing a copy addressed to Colin Dodge (with the same description as quoted above). (Id. ¶ 4(b)(2)-(5).) The proof of service leaves unchecked a box with the

text: "due diligence: I made at least (3) attempts to personally serve the defendant.") (Id. ¶ 4(b)(6)).

In support of its motion to dismiss, Nissan-Japan submitted a declaration by Larry Okuneff, the Nissan-America claims manager who received Plaintiffs' papers. Okuneff stated in the declaration that he is not authorized to accept service of process for Colin Dodge or Nissan-Japan. (Declaration of Larry Okuneff in Support of Motion ¶ 4.) Okuneff also stated that, upon briefly reviewing the papers handed to him by a process server, Okuneff told the process server that he would "only accept the papers on behalf of [Nissan-America] and ask him to write on the papers that I was only accepting the papers for [Nissan-America]." (Id. ¶ 5.) Accordingly, according to Okuneff, the process server wrote "For Nissan North America Only" on the summons. (Id. Ex. I.)

**II.  Legal Standard**

"[S]ervice of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served." Mississippi Publishing Corp. v. Murphree, 326 U.S. 438, 444-445, 66 S.Ct. 242, 245-246, 90 L.Ed. 185 (1946). "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 104 (1987). Accordingly, Federal Rule of Civil Procedure 12(b)(5) provides that insufficient service may be a basis for dismissal of a complaint. Once service is challenge, the plaintiff bears the burden of establishing that

service was valid. Brockmeyer v. May, 383 F.3d 798, 801 (9th Cir. 2004).

Requirements for the contents and manner of service are established by Rule 4. Under Rule 4(h)(1), a corporation, whether foreign or domestic, must be served in a judicial district of the United States either: "(A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Rule 4(e)(1), in turn, provides, *inter alia*, that process may be served in accordance with "state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." The applicable state law is described in the following section.

**III. Discussion**

**A.    Service on Nissan-America as a General Manager of Nissan-Japan**

California law provides that service of process may be effected on a corporation by, among other means, delivering a copy of the summons and the complaint to "a general manager" of the corporation. Cal. Code of Civ. Proc. § 416.10(b). California courts have interpreted "general manager" to "include[] any agent of the corporation 'of sufficient character and rank to make it reasonably certain that the defendant will be apprised of the service made.'" Gibble v. Car-Lene Research, Inc., 67 Cal.App.4th 295, 313 (1998), quoting Eclipse Fuel Engineering Co. v. Superior Court, 148 Cal.App.2d 736, 745-46 (1957). Plaintiffs assert that Nissan-

4

America qualifies as a "general manager" of Nissan-Japan within the meaning of § 416.10(b) and, therefore, its service on Nissan-Japan via Nissan-America was proper. (Opp at 5-10.)

Nissan-Japan challenges Plaintiffs' service as inadequate on several grounds. First, Nissan-Japan asserts that service was ineffective on the ground that "[i]t has long been recognized in California that service upon a subsidiary does not constitute service upon a parent corporation." (MTD at 7, citing <u>Gravely Motor Plow & Cultivator Co. v. H.V. Carter Co., Inc.</u>, 193 F.2d 158, 161 (9th Cir. 1951); <u>Graval v. P.T. Bakrie & Bros.</u>, 986 F.Supp. 1326, 1330-31 (C.D. Cal. 1996)). While Nissan-Japan is correct that service on a subsidiary corporation does not automatically effect service on a parent corporation, this has no import for the present case because Plaintiffs' contention that service on Nissan-Japan may be made upon Nissan-America is not premised on the parent-subsidiary relationship between the two companies. Rather, as discussed above, Plaintiffs assert that Nissan-Japan may be served via Nissan-America because Nissan-America is a "general manager" under California law.

Second, Nissan-Japan asserts that Nissan-America is not a "general manager" of Nissan-Japan because Nissan-America "is not [Nissan-Japan's] designated general manager and does not have management responsibilities or exercise control over [Nissan-Japan]." (MTD at 8.)[1] Nissan-Japan relies on <u>Bakersfield Hacienda</u>

---

[1] It is unclear from Nissan-Japan's moving papers and reply whether Nissan-Japan is arguing that Nissan-America is not a "general manager" of Nissan-Japan because (1) Nissan-America lacks sufficient control over Nissan-Japan or (2) Nissan-Japan lacks sufficient control over Nissan-America. On the one hand, Nissan-
(continued...)

5

Inc. V. Superior Court, 199 Cal. App. 2d 798 (1962). However, Hacienda is inapposite. Hacienda considered whether service on the general manager of an individual motel site constituted adequate service of process on the corporation that owned the hotel. The court held that it did not, explaining that "the general manager of a motel is not the general manager of the corporation." 199 Cal.App.2d at 803. The facts that were at issue in Hacienda were remote from the circumstances here involving service on the domestic subsidiary of a foreign parent corporation.

Three published decisions have addressed the meaning of "general manager" for the purposes of California's substitute service statute where applied, as in the present case, to the domestic subsidiary of a foreign automotive corporation for which the subsidiary is the parent's distributor in the country. See Khachartryan v. Toyota Motor Sales, U.S.A, Inc., 578 F. Supp. 2d 1224 (C.D. Cal. 2008); Gray v. Mazda Motor of America, 560 F. Supp. 2d 928, 929-930 (C.D. Cal. 2008); Yamaha Motor Co., Ltd v. Superior

---

[1](...continued)
Japan quotes a definition of "general manager" from Bakersfield Hacienda Inc. V. Superior Court, 199 Cal. App. 2d 798 (1962) a California court indicating that a general manager is "one who has general direction and control of the business of the corporation as distinguished from one who has the management only of a particular brand of the business." (See MTD at 8, quoting Hacienda, Inc. V. Superior Court, 199 Cal.App.2d 798, 804 (1962)). This suggests that Nissan-Japan's theory is that Nissan-America lacks sufficient control over its parent Nissan-Japan. On the other hand, however, Nissan-Japan immediately follows this definition by asserting a series of alleged facts suggesting a lack of control by Nissan-Japan over its subsidiary Nissan-America, including, for example, that Nissan-Japan does not have the right to exercise control over Nissan-America's day to day-to-day operations or its distribution or sales in the United States. (See Opp. at 9.) The issue is beside the point, however, because control is not a focus of the inquiry California courts have developed for identifying "general managers" for the purpose of service of process in circumstances like those in the instant case.

6

1 Ct.,174 Cal.App.4th 264 (2009). These cases strongly support
2 Plaintiffs' contention that Nissan-America is a "general manager"
3 of Nissan-America within the meaning of Cal. Code § 416.10(b).

4     Each of the three cases relies on language in the California
5 Supreme Court's decision in Cosper v. Smith & Wesson Arms Co., 53
6 Cal. 2d 77, 84(1959). There, the Court held that service could be
7 effected on the out-of-state gun manufacturer Smith & Wesson via
8 its sales representative in California. The Court noted that the
9 sales representative would have "ample regular contact with Smith &
10 Wesson and would be of 'sufficient character and rank to make it
11 reasonably certain' that Smith & Wesson would be apprised of the
12 service of process" and that the sales representative gave Smith &
13 Wesson the opportunity for regular contact with customers in the
14 state. Accordingly, it held: "In short, the arrangement of Smith &
15 Wesson with [the sales representative] appears ... to have given
16 Smith & Wesson substantially the business advantages that it would
17 have enjoyed 'if it conducted its business through its own offices
18 or paid agents in the state' (Eclipse Fuel Engineering Co. v.
19 Superior Court, supra, 148 Cal.App.2d 736, 740, 307 P.2d 739, 742);
20 and such arrangement was sufficient to constitute [the sales
21 representative] 'the general manager in this State' for purposes of
22 service of process on Smith & Wesson." 53 Cal. 2d at 84.

23     In Khachartryan v. Toyota Motor Sales, U.S.A, Inc., this court
24 found that Toyota Motor Sales, U.S.A. ("Toyota-America") was a
25 "general manager" of Japan-based Toyota Motor Corporation ("Toyota-
26 Japan") for purposes of service of process under California Code of
27 Civil Procedure section 416.10(b). Toyota-America was the
28 distributor of Toyota products for certain regions of the United

States and published marketing materials bearing Toyota-Japan's logo, trademarks, and trade name. 578 F. Supp. 2d at 1227. Citing these facts, the court found that, because Toyota-Japan's relationship with Toyota-America gave the former "'substantially the business advantages that it would have enjoyed if it conducted its business through its own offices or paid agents in the state,' that relationship was sufficient to render the California entity a general manager for service of process." Id., quoting Cosper, 53 Cal.2d at 84.

Likewise, in Gray v. Mazda Motor of America, this court found that Mazda Motor of America, Inc ("Mazda-America") was a "general manager" of its Japanese parent company Mazda Motor Company ("Mazda-Japan") for purposes of service of process. Mazda-America was "the distributor of Mazda motor vehicles in North America" and, together with Mazda-Japan, warranted Mazda vehicles. 560 F. Supp. 2d at 931. Citing the same language from Cosper, the court found that "Mazda-Japan's relationship with Mazda-America [gave] it 'substantially the business advantages that it would have enjoyed if it conducted business' in the state itself" and was therefore a "general manager" for purposes of service of process. Id., citing Cosper, 53 Cal.2d at 84.

Finally, in Yamaha Motor Co., Ltd v. Superior Ct., a California appeals court found that "Yamaha-America" served as a "general manager" for its parent company "Yamaha-Japan" for the purposes of service of process. In reaching this finding, the court noted, among other facts, that "Yamaha-America" is the exclusive importer and distributor of Yamaha vehicles in the U.S., that it provides warranty and owner manuals for Yamaha vehicles, and that

it tests, markets, and receives complaints about the vehicles. 174 Cal.App.4th at 268.

<u>Khachartryan</u>, <u>Gray</u>, and <u>Yamaha Motor Co.</u> are controlling for case at bar. As in all three cases, Nissan-America is a wholly-owned domestic subsidiary of its Japanese parent corporation, Nissan-Japan, for which it serves as the sole and exclusive distributor of Nissan vehicles in the United States. (<u>See</u> Declaration of Shiho Kobayashi in Support of Motion to Dismiss Under Rule 12(b)(6) ¶ 17 ("[Nissan-America"Nissan Japan and [Nissan-America] have entered into an agreement that appoints [Nissan-America] as the sole authorized distributor of Nissan and Infiniti vehicles in the United States, including California."; ¶ 18 ("[Nissan-America] is the exclusive distributor of Nissan and Infiniti vehicles in the United States."). As another district court has noted:

> Nothing prevented Nissan-Japan from entering the American market through a selling branch or department but instead it formed Nissan-America to serve as exclusive distributor of manufacturer Nissan-Japan's products in the continental United States. Thus, Nissan-America is a mere conduit or vehicle for entering and exploiting the American market.

<u>Hitt v. Nissan Motor Co., Ltd.</u>, 399 F. Supp. 838, 842 (S.D. Fla. 1975) (denying motion by Nissan-Japan to quash service and dismiss complaints for lack of personal jurisdiction and venue).[2] As such, Nissan-Japan's relationship with Nissan-America gives Nissan-Japan "substantially the business advantages that it would have enjoyed

---

[2] The court made the quoted statement in the course of finding that venue was proper.

9

if it conducted business in [California] itself." Khachartryan, 578 F. Supp. 2d at 1227; Gray, 560 F. Supp. 2d at 931. Moreover, the close relationship between Nissan-Japan and Nissan-America--a relationship certainly as close as those in Khachartryan, Gray, Yamaha Motor Co., and Cosper--makes it "reasonably certain that [Nissan-Japan] would be apprised of the service of process." See Yamaha Motor Co., Ltd, 174 Cal. App. 4th at 274 ("If it was reasonably certain that a relatively casual sporting goods representative would apprise the "foreign" manufacturer of service in Cosper, it is doubly reasonably certain Yamaha-America will apprise Yamaha-Japan of any service in California."). Accordingly, Nissan-America meets the definition of "general contractor" for purposes of service of process.

Because the requirements first described in Cosper are met, Nissan-Japan's contentions, taken as true, that Nissan-Japan and Nissan-America are independent businesses that strictly observe corporate formalities and that Nissan-Japan does not does not exercise control over Nissan-America's activities have no effect on this conclusion. (MTD at 8-9.)

Nissan-Japan appears to accept that Khachartryan, Gray, and Yamaha Motor Co. strongly favor Plaintiffs' position. Nevertheless, Nissan-Japan argues that all three cases should be disregarded because they were decided wrongly and are no longer good law. (MTD at 9; Reply 2-12.) The court is unpersuaded.

As an initial matter, this court is bound to follow a state supreme court's interpretation of that state's statutes. Dimidowich v. Bell & Howell, 803 F.2d 1473, 1482 (9th Cir. 1986). This case turns on California state law because, as noted above, Federal Rule

10

of Civil Procedure 4(e)(1) provides that process may be served in accordance with "state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." And as outlined above, the California Supreme Court has explicitly interpreted the relevant state law statutory term, "general manager," in the context of its state service of process statutes. Cosper, 53 Cal.2d at 83-84. This court is bound by that interpretation.

Nissan-Japan argues that Cosper was decided wrongly because it did not take into account certain statutory interpretation arguments raised by Nissan-Japan in its reply brief. Nissan-Japan argues that Cosper's definition of "general manager" is at odds with the term's ordinary meaning, legislative history, and statutory context. (See Reply at 2-7.) Yet, whether or not Nissan-Japan's arguments have merit, the California Supreme Court had the same interpretive tools at its disposal and yet reached a contrary result. Even were it inclined to so, this court is not in a position to overrule the Court's decision.

Similarly, Nissan-Japan argues that the "character and rank" language in Cosper is no longer good law because the cases the California Supreme Court cited in support of that language in turn rely on statutory language that was subsequently changed. (See Reply at 7.) Yet the key change pointed to by Nissan-Japan, in which the California legislature replaced "managing agent" with "general manager" when it amended California Code of Civil Procedure section 411 in 1931, occurred nearly three decades before Cosper was decided. (Id. at 9.) The Cosper court could have reached

11

a different result on the basis of the statutory revision, but it did not.

Nissan-Japan further argues that Cosper is no longer good law because it cited language from state statutes that were subsequently revised. The court is unpersuaded. California and federal district courts have relied on the "character and rank" and "substantially the business advantages" language from Cosper in more than a dozen cases since Cosper was decided in 1959. During that period, there were ample opportunities for California's legislature to further revise its statute or for the California Supreme Court to find occasion to revise the rule. Neither occurred. Indeed, the California appeals court that decided Yamaha Motor Co. criticized the rule of Cosper and invited the California Supreme Court to revisit the decision, titling a subsection of its opinion, "The Supreme Court is Welcome to Revisit Cosper." 174 Cal.App.4th at 275. It nonetheless noted that, in the meantime, the rule of Cosper is binding. Id. at 267 ("[T]here is nothing this court, as a matter of California common law, can do about it. We are a court under authority, and there is a non-overruled, non-distinguishable California Supreme Court case, Cosper v. Smith & Wesson Arms Co. (1959) 53 Cal.2d 77, 346 P.2d 409, that makes service on the California representative of a foreign parent valid—that is, valid as to the foreign parent—under California law.") The California Supreme Court denied a petition to review the Yamaha Motor Co. decision in July 2009. Id. at 264.

In short, as long as the rule of Cosper is good law, this court is compelled to follow it, and it will do so here.

**B.     Service on Claims Manager Larry Okuneff**

Nissan-Japan asserts that Plaintiffs did not effectively execute service on Nissan-America or Colin Dodge when their process server delivered the papers to Nissan-America Claims Manager Larry Okuneff. (MTD at 6.) Nissan-Japan argues that "[p]ersonal service on a Claims Manager of a corporation is not valid service on the corporation where the Claims Manager has no authority to receive service on behalf of the corporation." (Id.) In support of this contention, Plaintiffs rely on General Motors Corp. v. Superior Court, 15 Cal.App.3d 81 (1971). In that case, the court held that an alleged statement of a manager's secretary that the manager was authorized to accept process on behalf of the corporation could not be held to estop the corporation from denying that such authority existed. Id. at 86.

Nissan-Japan's argument is unavailing. General Motors is inapposite to the instant case because, unlike the instant case, it did not deal with a situation involving substitute service. The relevant statutes are California Code of Civil Procedure sections 416.10(b) and 415.20(a). Section 415.20(a) provides that service on a corporation can be effected via service on a chief officer of the corporation.[3]  Section 416.10(b) provides that, in lieu of personal delivery to a corporate official who may be served under section

---

[3] Specifically, service may be served on a corporation by delivering a copy of the summons and the complaint to "To the president, chief executive officer, or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a controller or chief financial officer, a general manager, or a person authorized by the corporation to receive service of process." § 416.10(b).

13

415.20, a copy of the summons and complaint may be served via substitute service:

> [1] by leaving a copy of the summons and complaint during usual office hours in his or her office ... with the person who is apparently in charge thereof, and [2] by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left.

Cal. Code Civ. Proc. § 415.20(a).

Here, Plaintiffs attempted service on Nissan-Japan by serving its subsidiary Nissan-America via substitute service on a senior official of Nissan-America, Colin Dodge. (Opp. at 14.) Plaintiffs did so by (1) leaving the papers at Dodge's office in Franklin, Tennessee during working hours with Claims Manager Okuneff, and (2) mailing a copy of the papers to Dodge's office address. (DKT. No. 35.) Both the summons and address listed on the envelope sent to Dodge's address designated the recipient as "Colin Dodge, Chairman, Management Committee-Americas Executive Vice President, and Chief Performance Officer, Nissan North America, Inc., which is general manager of Nissan Jid'osha Kabushiki Kaisha d/b/a Nissan Motor." (Id. at ¶ 2, pg. 3.)

These actions fulfilled the requirements for substitute service under section 415.20(a). Because section 415.20(a) allows for a copy of the summons and complaint to be left "during usual office hours in his or her office ... with the person who is apparently in charge thereof," it does not matter whether the person who received the papers was authorized to accept service of process on behalf of the corporation. The only requirement is that

14

the person was apparently in charge of the office of the person to be served. § 415.20(a). Plaintiffs assert, and Nissan-Japan does not appear to contest, that Okuneff was apparently in charge of office of Dodge. (DKT No. 35 ¶¶ 2(a), 2(b), 4(b)(2).) Nor does Nissan-Japan assert any deficiency in Plaintiffs' subsequent mailing of the papers to Dodge. Therefore, Onuneff's purported lack of authority to accept service of process is not a basis for finding the service deficient.

**C. Diligence of Plaintiffs in Effecting Substitute Service**

Nissan-Japan next urges the court to find that service was ineffective because Plaintiffs were not "reasonably diligent" in attempting to serve Nissan-America's chairperson, Colin Dodge. (See Mot. at 9-10; Reply at 12-13.)

Under California law, the plaintiff bears the burden of showing that she demonstrated reasonable diligence at direct service before substitute service is permitted. See California Code of Civil Procedure section 415.20(a); Evartt v. Superior Court, 89 Cal.App.3d 795, 801 (Cal. Ct. App. 1979). However, "each case must be judged upon its own facts" and "'[n]o single formula nor mode of search can be said to constitute due diligence in every case.'" Evartt, 89 Cal.App.3d at 801, quoting Donel, Inc. v. Badalian, 87 Cal.App.3d 327, 333 (Cal. Ct. App. 1978). California's Supreme Court has held that the state's service of process rules should be "liberally construed to effectuate service and uphold the jurisdiction of the court if actual notice has been received by the defendant, and in the last analysis the question of service should be resolved by considering each situation from a practical

15

standpoint." Pasadena Medi-Ctr. Associates v. Superior Court, 9 Cal. 3d 773, 778 (1973) (internal citations and quotation marks omitted).

Nissan-Japan argues that Plaintiffs failed to demonstrate reasonable diligence prior to effecting substitute service on Colin Dodge because "Plaintiffs' process server (a) did not attempt any type of direct service on Colin Dodge; (b) did check the 'due diligence' box on his proof of service indicating that he 'made at least three attempts to personally serve the defendant'; and (c) did not attach any due diligence declaration to his proof of service." (Mot. at 10.)

Although this is a reasonably close question, the court finds that Plaintiffs exercised sufficient diligence under the circumstances. Because actual notice was received by Nissan-Japan via Nissan-America, the court must construe California's service of process statute liberally. Pasadena Medi-Ctr. Associates, 9 Cal. 3d at 778. From a practical perspective, considering the relatively low likelihood that the chairperson of a corporation as large as Nissan-America would be made accessible to a process server, multiple attempts at personal service would likely have been futile. As noted by Plaintiffs, prior to the current effort to serve Nissan-Japan, Plaintiffs made at least one prior attempt to serve Colin Dodge at Nissan-America's headquarters (though that effort was ineffective). (See DKT No. 31.) Contrary to Nissan-Japan's assertion, and notwithstanding a conclusory finding to the contrary in Moletech Global Hong Kong Ltd. v. Pojery Trading Co., 2009 WL 506873 (N.D. Cal. Feb. 27, 2009), California courts have set forth no hard and fast rule requiring that Plaintiffs make

16

three or any other number of attempts at personal service. See Evartt, 89 Cal. App. 3d at 801. In light of the circumstances here, the court finds that the reasonable diligence requirement was met.

To hold otherwise would further the kind of "unnecessary ... disputes over legal technicalities, without prejudicing the right of defendants to proper notice of court proceedings" that the liberal construction of service process statutes commanded by the California Supreme Court was expressly intended to avoid. Pasadena Medi-Ctr. Associates, 9 Cal. 3d at 778.

**D.  Adequacy of Summons**

Finally, Nissan-Japan argues that the court should dismiss the complaint on the basis that the summons served on Nissan-America was defective because it did not contain language specifically stating that Colin Dodge was being served as a representative of Nissan-America. (Mot. at 11.)

Nissan-Japan points to California Code of Civil Procedure section 412.3, which provides that in an action against a corporation, the copy of the summons that is served "shall contain a notice stating in substance: 'To the person served: You are hereby served in the within action (or special proceeding) on behalf of (here state the name of the corporation...'" Plaintiffs have not included such language in their summons. (See DKT No. 33.)

However, as Plaintiffs point out, the contents of a summons for a proceeding in district court are governed by Federal Rule of Civil Procedure 4(a), which does not require that a summons contain the language in question. Rather, Rule 4(a) requires only that a summons:

17

>    (A) name the court and the parties;
>    (B) be directed to the defendant;
>    (C) state the name and address of the plaintiff's attorney or—if unrepresented—of the plaintiff;
>    (D) state the time within which the defendant must appear and defend;
>    (E) notify the defendant that a failure to appear and defend will result in a default judgment against the defendant for the relief demanded in the complaint;
>    (F) be signed by the clerk; and
>    (G) bear the court's seal.

Fed. R. Civ. P. 4(a). Plaintiffs' summons appears to comply with these requirements. (<u>See</u> DKT No. 33.)

As discussed above, Rule 4, subparts (h) and (e) provide, in combination, that the manner of service of a summons on a corporation be carried out in accordance with state law. However, the rules do not leave to state law the question of the substantive contents of the summons itself. Indeed, as Plaintiffs note, Nissan-Japan has failed to cite, and the court has been unable to find, any district court case granting a dismissal under Rule 12(b)(4) on the ground that the federal summons failed to include language set forth in Section 412.30 of the California Code of Civil Procedure.

The court finds of no relevance that the process server apparently wrote the phrase "For Nissan North America Only" on the summons. (Okuneff Decl. ¶ 5 and Exh. 1.) As Nissan-Japan admits, the phrase was written on the summons at the demand of Okuneff as a condition of accepting receipt of the summons. (Okuneff Decl. ¶ 5.)

For the reasons explained above, Okuneff, as a person apparently in charge of the office of Dodge, was not in a position to place conditions on receipt of service of process under California's substitute service statute. Moreover, as Plaintiffs point out, giving effect to phrases written on summonses by process servers at the demand of those to be served would invite chaos on the service of process scheme. (Opp. at 17.)

For these reasons, Plaintiffs complied with the requirements of the federal rules and the court will not dismiss the complaint on the ground that the summons was defective.

IT IS SO ORDERED.

Dated: December 12, 2013

DEAN D. PREGERSON
United States District Judge