O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KOBE FALCO, individually, and on behalf of a class similarly situated individuals,<br><br>        Plaintiff,<br><br>  v.<br><br>NISSAN NORTH AMERICA INC., NISSAN MOTOR CO. LTD, a Japanese Company,<br><br>        Defendants. | Case No. CV 13-00686 DDP (MANx)<br><br>**ORDER DENYING CERTIFICATION OF INTERLOCUTORY APPEAL**<br><br>[Dkt. No. 118] |

Presently before the Court is Defendant Nissan Motor Co., Ltd.'s ("NML") motion to certify an interlocutory appeal of the Court's order of April 6, 2015. (Dkt. No. 118.) In that order, the Court held that it could exercise specific personal jurisdiction over NML, a foreign corporation, and that NML could be held liable under for certain California statutory causes of action: the Song-Beverly Consumer Warranty Act, the Consumer Legal Remedies Act ("CLRA"), and the Unfair Competition Law ("UCL"). (Dkt. No. 114.) NML seeks to certify two questions, which it phrases as follows:

> 1. Is a foreign defendant solely involved in design decisions about a vehicle subject to specific personal jurisdiction under a stream-of-commerce theory for causes of action for alleged violation of the Warranty Act, CLRA and UCL where the vehicles at issue were manufactured, sold, marketed, and warranted by a subsidiary U.S. corporation of the defendant?
>
> 2. Can a person be liable under the Warranty Act, CLRA and UCL based on allegations of control over a product's design where the defendant did not manufacture, distribute, sell, market, or warrant the product?

(Defs.' Mem. P. & A. at 1.)

## I. BACKGROUND

Plaintiffs in this case sue both NML and its domestic subsidiary, Nissan North America ("NNA"), alleging that a particular timing chain system was prone to failure and put consumers at risk. (Dkt. No. 114 at 2.) NML admits that it had what it calls a "role in design decisions," but it denies being involved in manufacturing, selling, marketing, or warranted the vehicles. (Defs.' Mem. P. & A. at 1.) However, Plaintiff presented evidence, which the Court found credible, that Defendant's "design" responsibility extended well beyond drawing up plans and essentially gave NML control and authority over the manufacturing process. Specifically, the Court made factual findings that:

> NML took almost total responsibility for the relevant components up through the initial production release, NML conducted testing of the components, NML had authority over the manufacturing process, because parts and vehicles could

> not be manufactured without NML's 'release,' NML appears to
> have been involved in monitoring the manufacturing plant, and
> NML had the final authority to change or decline to change the
> manufacture of faulty parts, including for pricing reasons.

(Dkt. No. 114 at 6.)  The Court therefore concluded that "NML, at the very least, participated in manufacturing the vehicles in question . . . and has therefore placed them into the stream of commerce." (Id.)

## II. LEGAL STANDARD

A district court must certify an otherwise non-appealable question of law if its order "involves a controlling question of law as to which there is substantial ground for difference of opinion" and "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).  The primary purpose of the interlocutory appeal statute is to "avoid protracted and expensive litigation"; appeal is granted only in "extraordinary circumstances." In re Cement Antitrust Litig. (MDL No. 296), 673 F.2d 1020, 1026 (9th Cir. 1981).  The district judge has discretion to certify a question or not, based on his or her opinion as to whether the statutory requirements are met.  Green v. Occidental Petroleum Corp., 541 F.2d 1335, 1338 (9th Cir. 1976).

## III. DISCUSSION

A question of law is "controlling" if "resolution of the issue on appeal could materially affect the outcome of litigation in the district court." In re Cement Antitrust Litig., 673 F.2d at 1026. An order determining who the parties to the action are can materially affect the outcome of the litigation. E.g., United

3

States v. Woodbury, 263 F.2d 784, 787 (9th Cir. 1959) ("The senate report . . . cites as one instance in which § 1292(b) may be applied a district court order granting or denying a motion to join a third party defendant."). The Court therefore finds that the question of specific personal jurisdiction over NML is a "controlling issue of law."

"Courts traditionally will find that a substantial ground for difference of opinion exists where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point . . . or if novel and difficult questions of first impression are presented. However, just because a court is the first to rule on a particular question or just because counsel contends that one precedent rather than another is controlling does not mean there is such a substantial difference of opinion as will support an interlocutory appeal." Couch v. Telescope Inc., 611 F.3d 629, 633 (9th Cir. 2010) (citation and internal quotation marks omitted).

In order for a court in a particular "forum" to exercise jurisdiction over a non-resident defendant, it must be shown, among other things, that:

> The non-resident defendant . . . purposefully direct[ed] his activities or consummate[d] some transaction with the forum or resident thereof; or perform[ed] some act by which he purposefully avail[ed] himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws . . . .

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th

Cir.2004). In cases where the non-resident defendant is sued for injuries caused by a manufactured product that has reached the forum state, the defendant must have both placed the product into the "stream of commerce" and taken some steps to direct its business to the forum state. <u>J. McIntyre Mach., Ltd. v. Nicastro</u>, 131 S. Ct. 2780, 2790 (2011) (Kennedy, J., plurality opinion).

Defendants' motion focuses on the placement-into-the-stream prong. (Defs.' Mem. P. & A. at 6-7.) Defendants cite to two cases, <u>Seiferth v. Helicopteros Atuneros, Inc.</u>, 472 F.3d 266 (5th Cir. 2006) and <u>McCarthy v. Yamaha Motor Mfg. Co.</u>, 994 F.Supp.2d 1318 (N.D. Ga. 2014), which they argue support the proposition that a company that merely designs a product, but does not otherwise involve itself in manufacture, marketing, and sale, has not placed the product in the stream of commerce.

In <u>Seiferth</u>, Mark Camus "designed and patented an external work platform for use with a helicopter" while in Florida. 472 F.3d at 270. He then licensed his design to a company, Air 2, that "had the platform manufactured." <u>Id.</u> While in use in Mississippi, the platform broke, and a man fell to his death. <u>Id.</u> The Fifth Circuit found that Camus "did not manufacture" the platform; rather, "Air 2 had it manufactured." <u>Id.</u> at 275. The court held that he "did not place a product into the stream, but merely licensed a design to Air 2." <u>Id.</u>

In <u>McCarthy</u>, Yamaha, a Japanese corporation, designed a personal watercraft that was "manufactured and assembled in Georgia" by an American Yamaha subsidiary. 994 F.Supp.2d at 1320. The Japanese parent company subsequently sold the watercraft to an Australian dealer, and it eventually ended up in the hands of an

5

Australian man who was injured while riding the craft in Australia. Id. The court in that case, the Northern District of Georgia, held that it could not exercise specific personal jurisdiction over the Japanese parent company. It specifically found that although the watercraft was manufactured in Georgia, "YMMC [the subsidiary] handled the manufacturing." Id. at 1327. Nothing in the McCarthy court's order discusses the degree of control that the parent company exerted over the manufacturing process.

McCarthy and Seiferth therefore do little to resolve the question presented in this case. The Court has already noted in its previous order that "[t]his is not . . . a case where a wholly independent designer sells a product design to another company and is completely uninvolved in the production of the physical product thereafter." (Dkt. No. 114 at 5-6.) Seiferth is thus irrelevant. McCarthy is a step closer to this case, because it involved a parent-subsidiary relationship. But it did not involve, as appear here, facts indicating that the parent exercised a high degree of control over the manufacturing process. Thus, NML's citations do not show that other circuits, or even another district court, faced this situation and ruled differently.

This case does present "novel and difficult questions of first impression." Couch, 611 F.3d at 633. But district courts must often resolve novel questions. Interlocutory appeal should not function "merely to provide review of difficult rulings in hard cases." U. S. Rubber Co. v. Wright, 359 F.2d 784, 785 (9th Cir. 1966). Rather, such an appeal is appropriate only where resolution of a novel and difficult question could "avoid protracted and expensive litigation, as in antitrust and similar protracted

cases." Id. at 785, n. 2 (quoting S.Rep.No.2434, 85th Cong.2nd sess., 1958 U.S.Code Cong. & Ad. News, pp. 5255, 5260).[1] Thus, the third prong – material advancement of the termination of the litigation – becomes particularly important where the court's analysis is not contradicted by other authority, but is merely a difficult question.

It is not clear that a successful interlocutory appeal will materially advance the termination of this litigation. NML argues that it will, because if it is removed from the case as a party, there will be less discovery and a less complicated trial process. (Reply at 8.) The analysis is not quite so simple; although NML would not be a party if the Court's order were reversed, it might nonetheless have information important to the case.[2] Obtaining discovery from a foreign *non*-party could be even more complex and time-consuming than obtaining it from a foreign party. Moreover, NML might end up completing a considerable portion of at least the discovery process before receiving its answer from the circuit court. That, too, suggests that the benefit in advancing the termination of the litigation may be somewhat limited.

It is true that if the appeal is completed before trial and the circuit court rules for NML, the company would be saved the

---

[1] The Senate report continues: "It is not thought that district judges would grant the certificate in ordinary litigation which could otherwise be promptly disposed of or that mere question as to the correctness of the ruling would prompt the granting of the certificate." Id.

[2] This would seem to be especially true if NNA attempts to shift responsibility for any flawed design to its parent company. It may be necessary for a jury to understand NML's role in designing the components in order to allocate fault, even if NML is no longer a party.

7

cost of a trial and perhaps a summary judgment, and the trial might be made somewhat shorter absent the second defendant. On the other hand, the litigation in this case will almost certainly be "protracted and expensive" even without NML. U. S. Rubber Co. v. Wright, 359 F.2d 784, 785 (9th Cir. 1966). NML's departure before trial would not reduce the number of claims, nor would it reduce the need for long and complex testimony as to the technical components at issue here, their manufacture, and their alleged failure. Moreover, the trial may involve questions of knowledge, or of allocation of fault, that would require testimony about NNA and NML's relationship, even if NML is no longer a party.

Thus, there is not much to suggest that the litigation will advance materially toward termination if the appeal is successful. Given that this prong is especially important in cases where the question is novel rather than the subject of a split of authority, the Court finds that the statutory requirements for an interlocutory appeal are not met.

The Court also does not find it appropriate to certify the question of whether, if personal jurisdiction exists, NML may be held liable under the statutory causes of action. For the reasons stated in the Court's previous order, the Court concludes that NML can be held liable, and that this is not a question as to which there is substantial ground for difference of opinion. "A party's strong disagreement with the Court's ruling is not sufficient for there to be a 'substantial ground for difference . . . .'" Kowalski v. Anova Food, LLC, 958 F. Supp. 2d 1147, 1165 (D. Haw. 2013). "[J]ust because counsel contends that one precedent rather than another is controlling does not mean there is such a

substantial difference of opinion as will support an interlocutory appeal." <u>Couch v. Telescope Inc.</u>, 611 F.3d 629, 633 (9th Cir. 2010) (internal quotation marks omitted).

**IV. CONCLUSION**

The Court DENIES the motion for certification of interlocutory appeal. However, the Court notes that its jurisdictional ruling was highly fact-specific and based on the facts presented after limited discovery. Should the full factual record show, at the close of discovery, that Plaintiffs' jurisdictional evidence was misleading and that NML did not exert any meaningful control over the manufacturing process, NML may renew its motion to dismiss on jurisdictional grounds at that time.

IT IS SO ORDERED.

Dated: June 3, 2015

DEAN D. PREGERSON
United States District Judge