1
2
3
4
5
6

Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Mark Pifko (SBN 228412)
mpifko@baronbudd.com
Pablo Orozco (SBN 274267)
porozco@baronbudd.com
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone:   (818) 839-2333
Facsimile:   (818) 986-9698

7
8
9
10

Attorneys for Plaintiffs
KOBE FALCO, JOEL SEGUIN,
ALFREDO PADILLA, and ROBERTO
GALVAN, individually, and on behalf
of other members of the public similarly
situated

11

*Additional Counsel Listed Below*

12
13
14

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

15
16
17
18
19
20
21
22
23
24
25

| | |
|---|---|
| KOBE FALCO, JOEL SEGUIN, ALFREDO PADILLA, and ROBERTO GALVAN, individually, and on behalf of other members of the public similarly situated,<br><br>   Plaintiffs,<br><br>  vs.<br><br>NISSAN NORTH AMERICA, INC. a California corporation, and NISSAN JIDOSHA KABUSHIKI KAISHA d/b/a NISSAN MOTOR CO., LTD., a publicly traded company in Japan,<br><br>   Defendants. | Case No.: 2:13-cv-00686-DDP-MAN<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>District Judge: Hon. Dean D. Pregerson<br>Magistrate: Hon. Margaret A. Nagle<br><br>Hearing Date: December 7, 2015<br>Hearing Time: 10:00 a.m.<br>Location:  312 North Spring Street<br>    Courtroom 3, 2nd Floor<br><br>Action Filed: Jan. 31, 2013 (removal)<br>Trial Date: None Set |

26
27

**REDACTED PUBLIC VERSION**

28

# TABLE OF CONTENTS

**PAGE**

I.   INTRODUCTION ................................................................................. 1

II.  FACTS ................................................................................................ 3

    A.   Overview of the Defective Timing Chain System ......................... 3

    B.   Class Vehicles Uniformly Contained the Same Defective System ............... 4

    C.   Nissan Knew the System Was Defective, but it Failed to Tell Consumers ............................................................................... 6

    D.   The Defective Timing Chain System Caused Plaintiffs to Suffer Damages ............................................................................... 7

III. DISCUSSION ..................................................................................... 9

    A.   The Class Is Ascertainable ........................................................... 10

    B.   The Class Meets the Requirements of Rule 23(a) ........................ 10

        i.    Numerosity Is Met Because the Class Numbers in the Thousands ...................................................................... 10

        ii.   Plaintiffs and the Class Share Common Questions ........................... 11

        iii.  Plaintiffs' Claims Are Typical of the Class' Claims ......................... 11

        iv.   Adequacy of Representation Is Satisfied ........................................... 13

    C.   The Class Meets The Requirements under Rule 23(b) ................. 13

        i.    Common Issues Predominate Plaintiffs' Claims ............................... 13

            a.   Common Issues Predominate Plaintiffs' CLRA Claim ........... 14

            b.   Common Issues Predominate Plaintiffs' UCL Claim ............. 16

            c.   Common Issues Predominate Breach of Warranty Claims ...... 17

            d.   Common Issues Predominate Concerning Fraud .................... 18

            e.   Common Issues Predominate Washington Consumer Protection Act Claim ................................................................. 19

ii.    Manifestation Is Not Relevant to Class Certification Analysis ..........21

iii.    Plaintiffs' Damages Models Comply with *Comcast* ..........................23

iv.    A Class Action Is Superior to Individual Actions ...............................25

IV.    CONCLUSION........................................................................................25

# TABLE OF AUTHORITIES

**AUTHORITY**                                                                    **PAGE(S)**

*Allen v. Am. Honda Motor Co., Inc.*,
  284 F.R.D. 412 (N.D. Ill. 2009) ................................................................... 21

*Amchem Prods., v. Windsor*,
  521 U.S. 591 (1997) ......................................................................................... 9

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*,
  133 S. Ct. 1184 (2013) ............................................................................... 9, 25

*Bailey v. Atlantic Automotive Corp.*,
  992 F.Supp.2d 560 (D. Md. 2014) ............................................................... 24

*Baker v. Microsoft Corp.*,
  --- F.3d ---, 2015 WL 4393964 (9th Cir. July 20, 2015) ................... 21, 22, 23

*Banks v. Nissan N. Am.*,
  301 F.R.D. 327 ........................................................................................ 14, 15

*Cel-Tech Comms., Inc. v. L.A. Cell. Tel. Co.*,
  20 Cal.4th 163 (1999) .................................................................................. 16

*Chamberlan v. Ford Motor, Co.*,
  402 F.3d 952 (9th Cir. 2005) .................................................................. 11, 14

*Collins v. eMachines, Inc.*,
  202 Cal. App. 4th 249 (2011) ..................................................................... 14

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426 (2013) ................................................................................. 23

*Daffin v. Ford Motor, Co.*,
  458 F.3d 549,553-54 (6th Cir. 2010) ......................................................... 21

*Daugherty v. Am. Honda Motor Co., Inc.*,
  144 Cal. App. 4th 824 (2006) ..................................................................... 14

*Deposit Guar. Nat'l Bank v. Roper*,
  445 U.S. 326 (1980) ...................................................................................... 25

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

*Doyle v. Chrysler Grp. LLC*,
    2014 WL 7690155 (C.D. Cal. Oct. 9, 2014)...............................................10, 11, 12, 14

*Ehrlich v. BMW of N. Am., LLC.*,
    801 F.Supp.2d 908 (C.D.Cal. 2010) .............................................................. 18

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ....................................................................... 9, 12

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
    Case No. 2:13-cv-5693-PSG(RZx), Dkt. 225 at 10-11 (C.D. Cal. May 27, 2015)...... 10

*Grays Harbor Adventist Christian School v. Carrier Corp.*,
    242 F.R.D. 568 (W.D. Wa. 2007)..............................................................20, 21, 23

*Green Wood Indus. Co. v. Forceman Int'l Dev. Group*,
    156 Cal. App. 4th 766 (2007) ....................................................................24, 27

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ........................................................................ 11

*Isip v. Mercedes–Benz USA, LLC*,
    155 Cal.App.4th 19 (2007) ............................................................................. 18

*Johns v. Bayer Corp.*,
    280 F.R.D. 551 (S.D. Cal. 2012) ................................................................... 23

*Jordan v. Paul Financial, LLC*,
    745 F. Supp.2d 1084 (N.D. Cal. 2010) ........................................................... 19

*Keegan v. Am. Honda Motor Co.*,
    284 F.R.D. 504 (C.D. Cal. 2012)..............................................................*passim*

*Keilholtz v. Lennox Hearth Products Inc.*,
    268 F.R.D. 330 (N.D. Cal. 2010)................................................................... 15

*Leyva v. Medline Industries Inc.*,
    716 F.3d 510 (9th Cir. 2013) ........................................................................ 23

*Lindell v. Synthes USA*,
    2014 WL 841738 (E.D. Cal. Mar. 4, 2014)..................................................... 23

*McCabe v. Daimler AG*,
    948 F. Supp. 2d 1347 (N.D. Ga. 2013).......................................................... 24

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

*Mexia v. Rinker Boat Co.*,
   174 Cal.App.4th 1297 (2009) ................................................................. 18, 24

*Panag v. Farmers Ins. Co. of Wash.*,
   166 Wash.2d 27 (2009) ............................................................................... 20

*Parkinson v. Hyundai Motor Am.*,
   258 F.R.D. 580 (C.D. Cal. 2008) .......................................... 10, 11, 14, 17

*Pecover v. Elec. Arts Inc.*,
   2010 WL 8742757 (N.D. Cal. Dec. 21, 2010) ........................................... 25

*Philips v. Ford Motor Co.*,
   No. 14-cv-02989 LHK, 2015 WL 4111448 (N.D. Cal. July 7, 2015) .......... 12

*Pierce v. NovaStar Mortgage, Inc.*,
   238 F.R.D. 624 (W.D. Wash. 2006) ..................................................... 19, 20

*Plascencia v. Lending 1st Mortg.*,
   259 F.R.D. 437 (N.D. Cal. 2009) ................................................................ 19

*Rosas v. Baca*,
   No. CV 12000428 DDP, 2012 WL 2061694 (C.D. Cal. June 7, 2012) ........ 9

*Sharma v. BMW of North America, LLC*,
   2015 WL 82534 (N.D. Cal. Jan. 6, 2015) ................................................... 12

*Sibert v. TV Magic, Inc.*,
   No. CV 12-03404 DDP, 2012 WL 3589795 (C.D. Cal. Aug. 21, 2012) ....... 10

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ...................................................................... 13

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 1013 (9th Cir. 2011) .................................................................... 17

*Tait v. BSH Home Appliances Corp.*,
   289 F.R.D. 466 (C.D. Cal. 2012) ..................................................... 15, 17, 21

*In re Toyota Motor Corp.*,
   754 F.Supp.2d 1145 (C.D. Cal. 2010) ........................................................ 14

*In re Toyota Motor Corp.*,
   790 F. Supp. 2d 1152 (C.D. Cal. 2011) ...................................................... 24

*In re Toyota Motor Corp. Unintended Acceleration Mktg.,*
  *Sales Practices, & Prods Liab. Litig.,*
  2012 WL 7802852 (C.D. Cal. Dec. 28, 2012) ............................................................... 12

*Vaccarino v. Midland Nat'l Life Ins. Co.,*
  2014 WL 572365 (C.D. Cal. Feb. 3, 2014) ................................................................... 23

*Vess v. Ciba-Geigy Corp. USA,*
  317 F.3d 1097 (9th Cir. 2003) ..................................................................................... 18

*Vinole v. Countrywide Home Loans, Inc.,*
  571 F.3d 935 (9th Cir. 2009) ....................................................................................... 25

*Wal-Mart Stores, Inc. v. Dukes,*
  131 S. Ct. 2541 (2011) ................................................................................................. 11

*Wolin v. Jaguar Land Rover N. Am., LLC,*
  617 F.3d 1168 (9th Cir. 2010) ................................................................................. *passim*

*Yokoyama v. Midland Nat'l Life Ins. Co.,*
  594 F.3d 1087 (9th Cir. 2010) ..................................................................................... 23

**Statutes**

Cal. Bus. & Prof. Code, §§ 17200, *et seq.* ...................................................................... 16

Cal. Civ. Code § 1770 ........................................................................................................ 14

Cal. Civ. Code § 1791.1(a) A ............................................................................................ 17

Cal Civ. Code § 1794(b)(2)(Song-Beverly Act) ............................................................... 24

Division 2 of the California Uniform Commercial Code .................................................. 24

California Uniform Commercial Code, section 2721 ........................................................ 24

**Other Authorities**

https://www.nissan-techinfo.com/deptsubs.aspx (last visited July 23, 2015) ................... 7

Local Rule Rule 23 ...................................................................................................... *passim*

# I.  INTRODUCTION

This case concerns Nissan's[1] deliberate, profit-driven decision to conceal a material safety defect plaguing hundreds of thousands of Nissan vehicles (the "Class Vehicles").[2] The defect involves the Class Vehicles' timing chain system; a part *necessary* for engine operation and performance.  Evidence obtained by Plaintiffs incontrovertibly establishes that Nissan *knew* the timing system was defective before it ever sold the Class Vehicles, that Nissan  *concealed* its knowledge of the defect from consumers, and that Nissan *refused* to timely implement design changes that could have corrected the defect, because it did not want to bear the costs.

██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
█████████████████████████████████████ But, recognizing that the problems associated with defect would occur when the warranty on the Class Vehicles had expired, Nissan was intent on forcing consumers to bear the cost. Accordingly, Nissan sold the vehicles to consumers without implementing necessary design changes or "countermeasures," and without disclosing its knowledge of the defect.

██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████

---

[1]  The term "Nissan" refers to Defendants Nissan Motor Co., Ltd. ("Nissan Japan") and Nissan North America, Inc. ("Nissan USA").

[2]  The Class Vehicles are the following vehicles with Nissan's VQ 35 engine:  (a) 2004-2008 Nissan Maxima; (b) 2004-2009 Nissan Quest; (c) 2004-2006 Nissan Altima, and the following vehicles with Nissan's VQ 35 engine: (d) 2005-2007  Nissan Pathfinder; (e) 2005-2007 Nissan Xterra; and (f) 2005-2007 Nissan Frontier.

 Yet, Nissan did nothing to inform consumers. Still nothing was done.

Plaintiffs now seek to certify their claims as a class action.  Evidence obtained by Plaintiffs overwhelmingly shows that class certification is appropriate.  The same defective timing chain system components were installed in all the Class Vehicles.  The timing chain system was uniformly defective as a matter of design, not as a result of manufacturing anomalies.  Nissan discussed and addressed the defective timing chain system as a single, uniform defect across all Class Vehicles.  And, it is indisputable that Nissan uniformly failed to disclose its knowledge of the defect to the public

In light of these and other undeniable facts, there is simply no question that adjudicating Nissan's liability on a classwide basis is not only appropriate, but necessary. If Plaintiffs and members of the class are not permitted the opportunity to assert their claims in a class action, they will effectively be denied justice because given the expense and difficulty of individual litigation, they will have no other means to hold Nissan responsible for its unlawful conduct.

## II.     FACTS

### A.     Overview of the Defective Timing Chain System

The timing chain system is an integrated system whose purpose is to ensure that the engine's various mechanical components are properly timed so that combustion will occur as intended.  The timing chain system connects the crankshaft and camshafts by means of several, interdependent components.  (Declaration of Mark Pifko in Support of Plaintiffs' Motion for Class Certification ("Pifko Decl.") ¶ 26, Ex. 25 at P. 206; ¶ 21; Ex. 20 at PP. 128-9; ¶ 25, Ex. 24 at PP. 195-6.) ██████████████████████████████████████████

██████████████████████████████████████ (*Id.* at PP. 207-10.)  The primary timing chain connects the crankshaft to the camshafts, synchronizing the movement of the pistons and the valves.  (*Id.*)  The secondary timing chain connects the intake camshaft and the exhaust camshaft, synchronizing the movement of the intake and exhaust valves with each other and the pistons.  (*Id.*)

Like a bicycle chain, the chains in the Class Vehicles' timing chain system have a certain amount of "slack" or looseness that needs be taken in order for the chain to function properly.  (*Id.* ¶ 21, Ex. 20 at P. 120-3.) ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████████

███ (*Id.* ¶ 26, Ex. 25 at PP. 210-4.). ████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████ (*Id.*)

██████████████████████████████████████████████

█████████████████████████ (*Id.*) █████████████████████

██████████████████████████████████████████ *Id.* at P. 226.) ██████████████████████████████████████

██████████████████████████████████████

█████████████████████████████ (*Id.*) (*See also*, *id.* ¶ 22, Ex. 21 at P.

142.) ███████████████████████████████████████

████████████████████████ (*Id.* ¶ 26, Ex. 225 at P. 226.)

███████████████████████████████████████████

███████████████████

███████████████████████████████

███████████████████████████████

███████████████ ██████████████████

█████████ ██████████████████████████████████

███████████████████████████████████

██████████████████████████████████████

████████████████ This potential for unexpected engine failure endangers the lives of Plaintiffs and members of the Class. (*Id.* ¶ 26, Ex. 25 at P. 226.)  Indeed, as alleged in Plaintiffs' operative Second Amended Complaint ("SAC"), many consumers have reported serious safety concerns caused by the defective timing chain system.  (SAC, ¶ 72 at p. 24-25.) ███████████████████████████████

███████████████████████████████████████████

██████████████████████ (*Id.* ¶ 19, Ex. 18 at P. 100.)

████████████████████████████████████████

███████████████████████████████████████████

███████████████████ (Pifko Decl. ¶ 21, Ex. 20 at PP. 120-3; ¶ 22, Ex. 21 at PP. 140-2.) ████████████████████████████

███████████████████████████████████████████

██████████████ (*Id.* ¶ 15, Ex. 14 at PP. 46-7; *id.* ¶ 16, Ex. 15 at PP. 53-6.)

### B.    Class Vehicles Uniformly Contained the Same Defective System

The Class Vehicles were manufactured with the same defective timing chain system, containing the same defective slack guide and secondary chain components. ████

---

[3] All emphases added unless otherwise noted.



(*Id.* ¶ 4, Ex. 3 at P. 8; *id.* ¶ 5, Ex. 4 at P. 9; *id.* ¶ 24, Ex. 23 at P. 184.)

. (*Id.* ¶ 25, Ex. 24 at PP. 192-3, 197; ¶ 22, Ex. 21 at PP. 136-7.)

(*Id.* ¶ 21, Ex. 20 at P. 119.)

(*Id.* ¶ 25, Ex. 24 at P. 191; *id.* ¶ 4, Ex. 3 at P. 8.)

(*Id.* ¶ 8, Ex. 7 at P. 20; *id.* ¶ 9, Ex. 8 at P. 23; *id.* ¶ 10, Ex. 9 at P. 27; *id.* ¶ 11, Ex. 10 at P. 32; *id.* ¶ 6, Ex. 5 at PP. 10-17.)

. (*Id.* ¶ 22, Ex. 21 at PP. 152-3; *id.* ¶ 18, Ex. 17 at PP. 61-3.)

(*Id.* ¶ 22, Ex. 21 at PP. 152-4; *id.* ¶ 20, Ex. 19 at PP. 110-11.) As a result, the slack guide moved out of place so that the full force of the spring-loaded tensioner was not being applied to remove the slack from the chain and keep it taut. (Second Amended Complaint ¶ 34 at p. 10.) Additionally, and undesired metal on metal contact could occur between the component parts. (*Id.*)

(Pifko Decl., ¶ 18, Ex. 17 at P. 67.)

1  ██████████████████████████████████████████ (*Id.* ¶ 23, Ex. 22 at

2  PP. 174-5.) ████████████████████████████████████

3  ████████████████████████████████████████████████

4  ████████ (*Id.*)  This also generated the loud "clanking" or "whining" noise that worried

5  and distracted Plaintiffs and many other members of the Classes while they drove their

6  defective Nissan vehicles.  (SAC, ¶¶ 74, 80, 87, 96, 103.) ████████████████

7  ████████████████████████████████████████████████

8  █████████████. (Pifko Decl. ¶ 22, Ex. 21 at PP. 156-7; *id.* ¶ 8, Ex. 7 at P. 23; *id.* ¶18, Ex.

9  17 at PP. 61-9.)

10      **C.**    **Nissan Knew the System Was Defective, but it Failed to Tell Consumers**

11  ██████████████████████████████████████████████████████

12  ██████████████████████████████████████████

13  █████████████████████████████████ (*Id.* ¶ 21, Ex. 20 at P. 124; *id.*

14  ¶ 7, Ex. 6 at P. 18.) ████████████████████████████

15  ████████████████████████████████████████████

16  ████████████████████████████████████████████████

17  ███████████████████████████ (*Id.* ¶ 12, Ex. 11 at P. 37.) ████████████

18  ████████████████████████████████████████████

19  ████████████████████████████████████████████

20  ████████████████████████████████████████████

21  ████████████████████████████████████████████

22  ████████████████████████████████████████████

23  ████████████████████████████████████████

24  ████████████████████████████████████████████

25  ██████████████████████████ (*Id.* ¶ 18, Ex. 17 at P. 61.) ████████████████

26  █████████████████████████████████████ (*Id.*)  However,

27  despite Nissan's knowledge that the system was defective, Nissan ***never*** informed

28  consumers who purchased or leased the Class Vehicles.  (*Id.* ¶ 21, Ex. 20 at P. 118.)



1

2

3        (*Id.* ¶ 22, Ex. 21 at P. 161-4;. *id.* ¶ 7, Ex. 6 at P. 18.)

4

5                    (*Id.* ¶ 22, Ex. 21 at P. 166.)

6

7                                                        (*Id.* at

8   PP. 149-150, 158-60; *id.* ¶ 13, Ex. 12 at P. 39.)

9

10

11                   Notably, the TSBs apply across the range of Class Vehicles.  (*Id.* ¶

12   17, Ex. 16 at P. 57-60.)

13

14

15

16

17              (*Id.*)  However, Nissan did not issue a TSB concerning the slack guide.

18        **D.     The Defective Timing Chain System Caused Plaintiffs to Suffer Damages**

19        On approximately July 29, 2010, Plaintiff Falco purchased a 2005 Pathfinder for

20   personal use at a Nissan dealership in Bellevue, Washington.  (*Id.* ¶ 31, Ex. 30 at PP 288-

21   89.)  At the time he purchased the Pathfinder, Plaintiff Falco was unaware that the timing

22   chain system was defective, but had he been aware that the timing chain system was

23   defective at that time, he would not have purchased it, or he would have paid less.  (*Id.*)

24   Subsequently, Plaintiff Falco began to experience problems with his vehicle, and on

25   ─────────────────

26   [4] TSBs instruct dealerships on how to repair issues known by the manufacturer, they do
     not relate to coverage of the repair costs, and TSBs are ***not*** distributed to the public at
27   large.  Nissan does make the TSBs available online, but they can only be accessed after
     purchasing a costly subscription, through a website that is not easy to find or access.  *See*
28   *e.g.* https://www.nissan-techinfo.com/deptsubs.aspx (last visited July 23, 2015).

November 9, 2011, with only 40,663 on the vehicle, Falco paid a Nissan dealership in Tustin $510.60 to repair his Pathfinder's timing chain system. (*Id.*)

Similarly, on or about October 22, 2006, Seguin bought a new 2007 Quest for personal use at a Nissan dealership in Simi Valley, California. (*Id.* ¶ 32, Ex. 31 at PP 303-5.) Plaintiff Seguin was unaware at the time he purchased the vehicle that it contained a defective timing chain system, but had he been aware that the timing chain system was defective at that time, he would not have purchased it, or he would have paid less. (*Id.*) After hearing a "whining" noise coming from his Quest's engine, on July 2, 2012, Plaintiff Seguin paid a Nissan dealership in Woodland Hills to diagnose the problem. (*Id.*) The dealership reported that the noise was caused by the timing chain system and Seguin was quoted $2,350.00 to repair the defect. (*Id.*) In light of the cost, Seguin was unable to repair the defective timing chain system and, instead, he traded the vehicle in approximately two months later. (*Id.*)

On November 29, 2005 Plaintiff Padilla purchased a 2006 Pathfinder for personal use at Boardwalk Cars, Inc., in Redwood, California. (*Id.* ¶ 33 Ex. 32 at P. 313-14.) At the time he purchased his Pathfinder, Plaintiff Padilla was unaware that it contained a defective timing chain system, but had he known, he would not have purchased it, or would have paid less for it. (*Id.*) Plaintiff Padilla's Pathfinder began to experience mechanical problems, including making a "whining" noise, and on September 26, 2012, with approximately 58,237 miles on the odometer, Plaintiff paid Sierra Monte Nissan approximately $1,747.16 to repair his defective timing chain system. (*Id.*)

In April 2009, Plaintiff Galvan bought a 2005 Pathfinder in California for personal use. (*Id.* ¶ 34, Ex. 33 at P.332-33.) Like the other Plaintiffs, Plaintiff Galvan was not aware at the time of purchase that the Pathfinder contained a defective timing chain system, but had he been aware at that time, he would not have purchased the Pathfinder, or would have paid less for it. (*Id.*) On March 25, 2011, after the Pathfinder started to make "humming" noises, with only 47,424 miles on the odometer, Plaintiff Galvan took the vehicle to Riverside Nissan and they concluded the noise came from a timing chain

system that needed repair.  (*Id.*)  Galvan was quoted $1,600.00 for the repairs, but given the cost, like Seguin, he did not repair his vehicle.  (*Id.*)

## III.   DISCUSSION

Consumer protection cases, which like this case, arise from a single course of conduct that negatively impacts large numbers of consumers, are particularly amenable to class treatment. *Amchem Prods., v. Windsor*, 521 U.S. 591, 625 (1997).  Indeed, "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Id*. at 617.

Although courts are required to conduct a rigorous analysis, "Rule 23 grants [them] no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013). "Merits questions can be considered to the extent -- but only to the extent -- that they are relevant to determining whether Rule 23 prerequisites for class certification are satisfied." *Id*. at 1195; *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (inappropriate to "turn class certification into a mini-trial"); *Rosas v. Baca*, No. CV 12000428 DDP, 2012 WL 2061694, at * 2 (C.D. Cal. June 7, 2012) (J. Pregerson) (question is "not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met").

Here, Plaintiffs seek to certify the following classes (collectively, the "Class"):

**California Statutory Class**:  All California residents who purchased or leased a Class Vehicle in California and who have incurred expenses in connection with either the diagnosis or repair of the defective timing chain system.

**California Fraud and Breach of Warranty Class:**  All California residents who currently own or lease a Class Vehicle and who have not yet repaired the defective timing chain system.

**Washington Class**:  All Washington residents who purchased or leased a Class Vehicle in Washington and who have incurred expenses in connection with either the diagnosis or repair of the defective timing chain system.

## A.      The Class Is Ascertainable

It is incontrovertible that ascertainability is readily met here.  Class definitions that rely on objective, verifiable criteria satisfy the ascertainability requirement.  *Keegan v. Am. Honda Motor Co*., 284 F.R.D.  504, 521 (C.D. Cal. 2012).  Moreover, the "ascertainability requirement concerns *identification rather than verification*," and it "does not demand documentary proof of each membership criterion." *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, Case No. 2:13-cv-5693-PSG(RZx), Dkt. 225 at 10-11 (C.D. Cal. May 27, 2015).  Here, the members of the Class are ascertainable through, among other things, Nissan records, dealership records, and DMV records.  Additionally, members of the Class can be identified through records concerning diagnosis or repair the defective timing chain system.  *See Doyle v. Chrysler Grp. LLC*,  2014 WL 7690155, at *6 (C.D. Cal. Oct. 9, 2014) (ascertainability satisfied where class membership could be established with documents showing part numbers installed in vehicles); *Keegan*, 284 F.R.D. at 521 ("all purchasers or lessees of any 2006 through 2007 Honda Civic and 2006 through 2008 Honda Civic Hybrid vehicles" was ascertainable); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 594 (C.D. Cal. 2008) (current or former owners or lessees of class vehicles who paid for a clutch flywheel assembly replacement was ascertainable).

## B.      The Class Meets the Requirements of Rule 23(a)

### i.      Numerosity Is Met Because the Class Numbers in the Thousands

Similarly, it cannot reasonably be disputed that numerosity is established here. Courts do not rely on a set numerical cut-off to determine whether numerosity is satisfied. But, courts generally hold that a class of forty or more members is sufficient.  *Sibert v. TV Magic, Inc.*, No. CV 12-03404 DDP, 2012 WL 3589795, at *1-2 (C.D. Cal. Aug. 21, 2012) (Pregerson, J.).  Here, the Class includes far more than forty members.

1  ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (Pifko Decl. ¶ 7, Ex. 6 at P. 18.)  *See Doyle*,

2  2014 WL 7690155, at *7 (numerosity clearly satisfied although the sale of 16,000

3  components did not directly correlate with the number of class members).

### ii.    Plaintiffs and the Class Share Common Questions

5       Commonality is a "limited burden" *Keegan*, 284 F.R.D. at 524, and does not

6  require "all questions of fact and law . . . to be common." *Hanlon v. Chrysler Corp.*, 150

7  F.3d 1011, 1019 (9th Cir. 1998).  Plaintiffs need to show only that there is one common

8  question that and the determination "of its truth or falsity will resolve an issue that is

9  central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v.*

10 *Dukes*, 131 S. Ct. 2541, 2551 (2011).  In cases like this case, involving defective products,

11 commonality is established when the questions at issue concern the existence of a defect.

12 *See e.g.*, *Chamberlan v. Ford Motor, Co.*, 402 F.3d 952, 962 (9th Cir. 2005) (common

13 failure to disclose the existence of an engine defect); *Doyle*, 2014 WL 7690155, at *6

14 (common questions regarding concealment of regulator defect);  *Parkinson*, 258 F.R.D. at

15 595-96 (common contention regarding clutch flywheel system defect).

16      In *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010), the

17 Ninth Circuit concluded that the plaintiffs "easily satisf[ied] the commonality

18 requirement" because they identified the following common issues:  (a) whether the

19 vehicle's alignment geometry was defective; (b) whether the defendant was aware of the

20 defect; (c) whether the defendant concealed the defect; and (d) whether that conduct

21 violated consumer protection laws.  *Id*. at 1172.  Similarly, the crux of Plaintiffs' case is

22 that Nissan intentionally concealed its knowledge of the defective timing chain system

23 installed in the Class Vehicles, and, therefore, the same common questions identified in

24 *Wolin*, are at issue here, namely whether:  (a) the timing chain system in all Class

25 Vehicles was defectively designed; (b) Nissan was aware that the timing chain system was

26 defective; (c) Nissan concealed such knowledge; and (e) Nissan's conduct was unlawful.

### iii.    Plaintiffs' Claims Are Typical of the Class' Claims

28      "The test of typicality is whether other members have the same or similar injury,

whether the action is based on conduct which is not unique to the named plaintiffs, and
whether other class members have been injured by the same course of conduct." *Ellis*,
657 F.3d at 984.  The interests and claims of named plaintiffs and class members need not
be identical to satisfy typicality; so long as their claims are based on the same legal
theory, differing fact situations of the class members do not defeat typicality. *Id.*; *Wolin*,
617 F.3d at 1175 (interests of representatives should align with interests of the class).

Like commonality, typicality readily satisfied in cases like this one, where Plaintiffs
allege that Nissan's efforts to withhold material information about a uniform design defect
violate one or more consumer protection statutes. *Wolin*, 617 F.3d 1168, 1175 (typicality
satisfied where "Gable and Wolin allege that they, like all prospective class members,
were injured by a defective alignment geometry in the vehicles [and the plaintiffs] and the
class seek to recover pursuant to the same legal theories."); *In re Toyota Motor Corp.
Unintended Acceleration Mktg., Sales Practices, & Prods Liab. Litig.*, 2012 WL 7802852,
at *2-3 (C.D. Cal. Dec. 28, 2012) (claims, including those of the named plaintiffs, arose
from a common automobile defect and uniform deceptive conduct); *Doyle*, 2014 WL
7690155, at *7 (plaintiff, "like other class members, has been required to seek repeated
repairs of window regulators").  Indeed, Nissan actively concealed the fact that the timing
chain system in all Class Vehicles was defective.  This wrongful conduct caused Plaintiffs
and all members of the Class to be damaged.   Moreover, given that the defective timing
chain system was installed in all the Class Vehicles, it is immaterial that the Class
includes people who own vehicle models that are not identical to the models owned by
Plaintiffs.  *See, e.g.*, *Sharma v. BMW of North America, LLC*, 2015 WL 82534 (N.D. Cal.
Jan. 6, 2015) (declining to find that "plaintiffs['] claims are not typical of those of persons
who purchased or leased different models of Class Vehicles" at pleading stage); *see also*,
*Philips v. Ford Motor Co.*, No. 14-cv-02989 LHK, 2015 WL 4111448, at *6-7 (N.D. Cal.
July 7, 2015) (plaintiffs could assert claims on behalf of those who owned different model
cars because defect was uniform across all models).

### iv.   Adequacy of Representation Is Satisfied

In the Ninth Circuit, courts use a two-prong test for determining if the adequacy requirement is met: (1) whether Plaintiffs and their counsel "have any conflicts of interest with other class members," and (2) whether Plaintiffs and their counsel will "prosecute the action vigorously on behalf of the class." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).  Here, Plaintiffs' interests do not conflict with the interests of the Class. (Pifko Decl. ¶¶ 31-34, Exs. 30-33.)  Using the same set of facts, Plaintiffs and the Class seek relief for the same harms they suffered as a result of Nissan's deliberate failure to disclose its knowledge that the timing chain system was defective.  Plaintiffs are familiar with the claims in this matter, and have actively participated in this litigation by producing documents and providing written discovery responses.  (*Id.*)

In evaluating the adequacy of counsel, courts consider the following:  "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class[.]"  Rule 23(g)(1)(A)(i)-(iv). Here, Plaintiffs have retained highly qualified and competent counsel with significant experience litigating class actions.  (*Id.* ¶¶ 28-30, Exs. 27-29.)  Indeed, thus far, Plaintiffs' counsel successfully defeated multiple motions to dismiss and obtained discovery establishing personal jurisdiction over Nissan Japan.

### C.   The Class Meets The Requirements under Rule 23(b)

### i.   Common Issues Predominate Plaintiffs' Claims

Plaintiffs move for certification of their claims under Rule 23(b)(3).  Under Rule 23(b)(3), if common issues "present a significant aspect of the case" and "can be resolved for all members of the class in a single adjudication," then "the predominance test is satisfied."  *Keegan*, 284 F.R.D. at 526 (quoting *Hanlon*, 150 F.3d at 1022).  Here, the central issues turn on Nissan's uniform conduct and can be fully resolved on a classwide basis.  Predominance is satisfied because, as explained below, all of the key questions will

be answered by reference to the same set of common facts and legal principles.  *See e.g.*, *Wolin*, 617 F.3d at 1173 (the following questions were susceptible to "proof by generalized" evidence in a case involving uniformly designed vehicles:  (a) whether uniformly designed cars contained a defect, (b) whether defendant failed to reveal material facts regarding such defect, and (c) whether such a failure violated various state laws); *Chamberlan*, 402 F.3d at 962 (same); *Doyle*, 2014 WL 7690155 at *8 (same); *Banks*, 301 F.R.D. 327, 335 (N.D. Cal. 2013) (same); *Keegan*, 284 F.R.D. at 531-32 (same); *Parkinson*, 258 F.R.D. at 596 (same).

### a.  Common Issues Predominate Plaintiffs' CLRA Claim

Plaintiffs assert a CLRA claim against Nissan on behalf of the California Statutory Class.  Cal. Civ. Code § 1770.  To prevail on this claim, plaintiffs must show defendant had a duty to disclose the information withheld.  *See Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835 (2006).  A duty to disclose arises if a defendant "had exclusive knowledge of material facts not known to the plaintiff."  *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255-56 (2011) (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997)).  This duty is not limited by an express warranty if the nondisclosure creates an "unreasonable safety risk."  *See e.g.*, *In re Toyota Motor Corp.*, 754 F.Supp.2d 1145, 1191 n.25 (C.D. Cal. 2010) ("[t]he risk of injury . . . is the type of 'unreasonable risk' that leads to a duty to disclose under California law").

Here, Plaintiffs will establish that Nissan had a duty to disclose its knowledge that the timing chain system was defective and presented an unreasonable safety risk by reference to common, classwide evidence.  In fact, given the uniform nature of the timing chain system in the Class Vehicles, ***all*** the evidence is common evidence. █████

██████████████████████████████████████████████████████████████

███████████████████████████████  ████████████████████████████

█████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████████



1
2
3
4
5 ████████████████████████  This is sufficient to establish predominance.  *See*
6 *Banks v. Nissan N. Am.*, 301 F.R.D. 327, 331 (plaintiffs relied on TSBs and internal
7 company communications applicable to all class vehicles as evidence of CLRA
8 violations).

9       A CLRA claim also "requires each class member to have an actual injury caused by
10 the unlawful practice."  *Keegan*, at 529.  However, causation on a classwide basis "may
11 be established by materiality."  *Id*.  An omission is material if "a reasonable [person]
12 would attach importance to its existence or nonexistence in determining his choice of
13 action in the transaction in question ."  *Id*.  Because materiality is determined according to
14 a reasonable person standard, the question of whether the omitted information is material
15 is a common question of fact suitable for treatment in a class action.  *Keilholtz v. Lennox
16 Hearth Products Inc*., 268 F.R.D. 330, 343 (N.D. Cal. 2010); *Tait v. BSH Home
17 Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012) ("claims under the UCL, FAL,
18 and CLRA [are] ***ideal for class certification*** because they will not require the court to
19 investigate class members' individual interaction with the product").

20       Here, Plaintiffs rely on common, classwide evidence to prove this element.  ████
21 ████████████████████████████████████████████████
22 ████████████████████████████████████████
23 ████████████████  (*See*, *e.g.*, Pifko Decl. ¶ 26, Ex. 25 at PP. 226-9.)  ████████
24 ███████████████████████████████████
25 ███████████████████████████████████  (*Id*. ¶ 22, Ex. 21 at PP.
26 152-3; *id.* ¶ 18, Ex. 17 at PP. 61-3.)  ██████████
27 ████████████████████████████████████████
28 ████████  (*Id*.)  Thus, whether information regarding the defective timing chain system

was "material" and whether Nissan's deliberate efforts to withhold such information

created an "unreasonable safety" risk are susceptible to common, classwide proof.

*Keegan*, 284 F.RD. at 532.

### b.   Common Issues Predominate Plaintiffs' UCL Claim

Plaintiffs assert a UCL claim against Nissan on behalf of the California Statutory

Class.  Cal. Bus. & Prof. Code, §§ 17200, *et seq*.  As a threshold issue, predominance is

satisfied with respect to the UCL because Plaintiffs predicate the unlawful prong of their

claim on Nissan's CLRA and Song-Beverly Warranty Act violations.  *See* Sections

III(C)(i)(a), (c).  Similarly, predominance is satisfied with respect to the UCL's fraud

prong for the same reasons that it exists concerning the California Fraud Class' fraud

claim.  *See* Section III(C)(i)(d), *infra*.

Further, the claims under the unfair prong of their UCL will be established through

common, classwide evidence.  Courts typically operationalize the unfair prong by

employing one of three tests.  *See Cel-Tech Comms., Inc. v. L.A. Cell. Tel. Co.*, 20 Cal.4th

163 (1999).[5]  Here, all three tests require Plaintiffs to examine (a) when Nissan first

became aware of the timing chain system Defect; (b) whether Nissan deliberately chose to

withhold information about the timing chain system Defect; (c) why Nissan made the

choice to deceive its consumers; (d) the impact that Nissan's deceptive and fraudulent

conduct had on consumers; (e) whether Nissan's concealment created a safety risk for

consumers; and (f) whether Nissan's concealment violated any "legislatively" declared

policies.  Plaintiffs will answer all these questions with common evidence because the

defective timing chain system is uniform across all Class Vehicles and Nissan addressed it

as such.  For example, documents and testimony that touch upon the issues concerning

slack guide, secondary tensioner and secondary chain are equally relevant to all the Class

---

[5]  A practice may be deemed unfair if: (a) it offends an established public policy or when
the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to
consumers; (b) its utility does not outweigh the gravity of harm to the alleged victim; or
(c) plaintiff's claims is "tethered" to some legislatively declared policy.  *Id.*

Vehicles. *See Parkinson*, 258 F.R.D. at 596 (predominance  satisfied as to all three UCL prongs in case involving defectively designed and uniformly used clutch flywheel.)

Finally, like the CLRA, the UCL makes relief available "without individualized proof of deception, reliance and injury." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 326-27, 93 Cal. Rptr. 3d 559 (2009)); *Tait* , 289 F.R.D. at 480 (UCL is "ideal" for certification).  Thus, any concerns that individualized proof will be necessary to establish reliance or causation are "insufficient to preclude a finding of predominance." *Keegan*, 238 F.R.D. at 533. Where, as here, claims are based on fraudulent omissions, the proper focus is on the defendant's failure to disclose the information and the impact that the omission had on class members' decision to purchase the products.[6] *Keegan*, 238 F.R.D. at 533.  Plaintiffs will establish reliance and injury by presenting common, classwide evidence that Nissan:

█████████████████████████████████████████

███████████████████████████████████

████████████████████████████████████

██████████████████████████████████████

███████   *See*, *id.* at 533-534.

       **c.**    **Common Issues Predominate Breach of Warranty Claims**

Plaintiffs and members of the California Fraud and Breach of Warranty Class allege that Nissan breached its obligations under the implied warranty of merchantability as construed by the Song-Beverly Warranty Act.  An implied warranty of merchantability guarantees that consumer goods are "fit for the ordinary purposes for which such goods are used."  Cal. Civ. Code § 1791.1(a)  A vehicle fit for the ordinary purpose of providing transportation is one that can do so "in safe condition and substantially free of defects."

---

[6]  The reliance/causation requirement applicable to UCL claims is sometimes formulated as: "whether members of the public are likely to be deceived."  This standard is an objective one typically found to be no different than the "materiality" standard used under CLRA.  *See Tait*, 289 F.R.D. at 480.

1   *Isip v. Mercedes–Benz USA, LLC,* 155 Cal.App.4th 19, 27 (2007).  The proper focus for

2   this analysis is the condition of the product at the time of sale.  As noted in *Mexia v.*

3   *Rinker Boat Co.*, 174 Cal.App.4th 1297 (2009), "[i]n the case of a latent defect, a product

4   is rendered unmerchantable, and the warranty of merchantability is breached, by the

5   existence of the unseen Defect, not by its subsequent behavior." *Id.* at 1305-06; *see also*,

6   *Ehrlich v. BMW of N. Am., LLC.*, 801 F.Supp.2d 908, 924 (C.D.Cal. 2010) ("so long as a

7   latent defect existed within the one-year period, its subsequent discovery did not defeat an

8   implied warranty claim").

9          At the time of sale, each and every Class Vehicle contained an identical defective

10   timing chain system.  As a result, every single Class Vehicle was sold with the same

11   likelihood of experiencing a timing chain system malfunction and the potentially serious

12   safety risks that result therefrom.  ███████████████████

13   ████████████████████████████████████████████

14   █████████████████████████   Accordingly, whether each Class Vehicle

15   was sold in a safe condition and substantially free from Defect, can be resolved by means

16   of common, classwide evidence.  *See Keegan*, 284 F.R.D. at 537.

### d.    Common Issues Predominate Concerning Fraud

18          On behalf of the California Fraud and Breach of Warranty Class, Plaintiffs' assert a

19   common law fraud claim.  This cause of action requires Plaintiffs to establish the

20   following elements:  (a) a false representation, (b) knowledge of its falsity, (c) intent to

21   defraud, (d) justifiable reliance, and (e) damages.  *Vess v. Ciba-Geigy Corp. USA*, 317

22   F.3d 1097, 1105 (9th Cir. 2003).  Common issues predominate with respect to each of the

23   elements, and there are no individual issues to consider on behalf of members of the

24   California Fraud Class.  Evidence showing that Nissan refused to timely correct the

25   defective timing chain system and, instead, knowingly sold Class Vehicles containing the

26   defective system to the public is applicable classwide.  (Pifko Decl. ¶ 22, Ex. 21 at PP.

27   161-4.)  The same is true for the other documents discussing the defective timing chain

28   system because Nissan itself addressed it as a single, common issue.  (*Id*. ¶¶ 8-11, Exs. 7-

10 at PP. 20-32.)

For fraud claims like those at issue here, which are premised on a Nissan's omission of information, reliance can be determined on a classwide basis because a presumption applies.  *Jordan v. Paul Financial, LLC*, 745 F. Supp.2d 1084, 1096 (N.D. Cal. 2010).  Courts routinely hold that the question of reliance in a fraud claim based on omission is suitable for certification:

> [C]ourts have recognized that this element, which is often phrased in terms of reliance or causation, may be presumed in the case of a material fraudulent omission. As the Supreme Court has held, in cases "involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery." *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 153, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972).  Rather, "[a]ll that is necessary is that the facts withheld be material," in the sense that a reasonable person "might have considered them important" in making his or her decision. *Id.* at 153–54, 92 S.Ct. 1456.  Similarly, the California Supreme Court has held that class certification is appropriate even where there may be individual issues of reliance because "it is not necessary to show reliance upon false representations by direct evidence." *Vasquez v. Superior Court,* 4 Cal.3d 800, 814, 94 Cal.Rptr. 796, 484 P.2d 964 (1971).

*Plascencia v. Lending 1st Mortg.*, 259 F.R.D. 437, 447 (N.D. Cal. 2009).

Predominance is satisfied as to reliance and injury because Plaintiffs will rely on common, classwide evidence to answer whether:  (a) Nissan was aware that the timing chain system was defective and dangerous; (b) Nissan deliberately withheld such information; and, if so, whether (c) a reasonable person would find such information important in deciding whether to purchase a Class Vehicle.

### e.   Common Issues Predominate Washington Consumer Protection Act Claim

Plaintiffs and the Washington Class assert that Nissan's deliberate efforts to withhold the timing chain system Defect from the public violates Washington's Consumer Protection Act ("CPA").  To obtain relief, plaintiffs must show that defendant engaged in "(1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) that impacts the public interest; (4) and causes injury to the plaintiff in his or her business or property; and (5) such injury is causally linked to the unfair or deceptive act." *Pierce v.*

*NovaStar Mortgage, Inc.*, 238 F.R.D. 624, 626 (W.D. Wash. 2006).

Where, as here, the CPA claim is based on allegations that the defendant fraudulently omitted material information, courts presume that causation has been established. *See Grays Harbor Adventist Christian School v. Carrier Corp.*, 242 F.R.D. 568, 573 (W.D. Wa. 2007) (citing *Binder v. Gillespie,* 184 F.3d 1059, 1064 (9th Cir.1999)). This presumption shifts the focus of the causation inquiry away from what information each class member received to what the defendant "allegedly concealed in light of what consumers reasonably expect," a question capable of generating a common answer across the class without substantial individualized inquiries. *Id.*

Moreover, to establish injury to business or property under the CPA, "[m]onetary damages need not be proved; unquantifiable damages may suffice." *Panag v. Farmers Ins. Co. of Wash.,* 166 Wash.2d 27, 57-58 (2009). Pecuniary losses occasioned by inconvenience, however minimal they may be, are recoverable as actual damages. *Id.* The existence of latent defect in a product is sufficient to establish a claim for damages under the CPA, and is a question susceptible to class-wide proof.

Here, causation under the CPA will be established by reference to common, classwide evidence regarding Nissan's efforts to withhold its knowledge about the nature and consequences of the defective timing chain system from the public. Individual inquiries are unnecessary because, as noted, the defective timing chain system is uniform across all Class Vehicles and because Nissan itself addressed it as such. Accordingly, Nissan's deliberate decision to withhold information regarding the defective timing chain system is equally applicable to all members of the Washington Class.

Finally, Plaintiffs' allegation of injury is "sufficient to allow the case to proceed as a class action, and the necessity of determining the fact and extent of the plaintiffs' injuries does not defeat class certification requirements." *Pierce*, 238 F.R.D. at 629. This is true irrespective of whether the defective timing chain system has manifested itself in all Class Vehicles. Indeed, this case analogous to *Grays Harbor*, where the court certified a CPA claim based on the allegation that Carrier Corporation failed to disclose a uniform

1  design defect that rendered its furnaces *more prone* to fail prematurely.  *Id.*at 571.  Just as

2  in *Grays Harbor*, proof that the timing chain system Defect has actually manifested itself

3  is not a prerequisite to certification. *See also* Section III(C)(ii), *infra*.

### ii.    Manifestation Is Not Relevant to Class Certification Analysis

5          The fact that some Class Vehicles have not yet experienced problems associated

6  with the defective timing chain system is, on its own, insufficient to defeat commonality

7  or predominance.  *See Wolin,* 617 F.3d at 1773 ("proof of the manifestation of the defect

8  is not a prerequisite to class certification."); *Daffin v. Ford Motor, Co.*, 458 F.3d 549,553-

9  54 (6th Cir. 2010) (certification proper even though the defect only manifested itself in

10  some vehicles); *Keegan*, 284 F.R.D. at 524 (certification was proper even though "some

11  vehicles have not yet manifested premature or excessive . . . wear"); *Tait* , 289 F.R.D. at

12  479 (holding actual presence of bacteria and odors not required in all subject appliances

13  for commonality to be satisfied where plaintiffs alleged a design defect rendered the

14  appliances more *prone* to developing such bacteria and odors); *Allen v. Am. Honda Motor*

15  *Co., Inc.*, 284 F.R.D. 412 (N.D. Ill. 2009) (commonality satisfied where plaintiffs alleged

16  that motorcycles suffered from design defect even though many class members had not

17  yet felt the effects).

18          The Ninth Circuit recently addressed this issue in *Baker v. Microsoft Corp.*, --- F.3d

19  ---, 2015 WL 4393964, at *5 (9th Cir. July 20, 2015).  In *Baker*, plaintiffs brought suit

20  against defendant Microsoft for breach of express and implied warranties based on the

21  allegation that Microsoft sold them and a class of similarly situated consumers certain

22  *Xbox 360* ® gaming consoles that gouged game discs.  *Id.* at *1, 6.  Microsoft moved to

23  strike the class allegations, arguing that "only 0.4% of Xbox owners have reported disc

24  scratching -- and that the cause of any disc scratching is consumer misuse, not a product

25  defect."  *Id.* at *1.  According to Microsoft, this made individualized inquiries into

26  causation and damages necessary and, as such, precluded class-wide treatment.  *Id.* at *6.

27          However, the Ninth Circuit was not persuaded.  In *Baker*, the Ninth Circuit

28  reasoned that it was vital to draw a distinction between the actual defect alleged and the

(potential) consequences of the defect.  *Id.* at *5.  The Ninth Circuit highlighted that the *Baker* plaintiffs alleged that ***all*** Xbox consoles contained a defectively designed disc system.  *Id.* at *5.  Whether that defective system did, in fact, result in the scratching of the disc was germane only to the issue of damages and best addressed at trial.  *Id.* at *3.

The analysis in *Baker* relied heavily on the Ninth's Circuit previous ruling on the issue of manifestation in *Wolin*, 617 F.3d 1168.  There, plaintiffs alleged that defendant Land Rover failed to reveal material facts concerning the existence of a uniform design defect in the "alignment geometry" of the vehicles at issue.  *Id.*at 1170.  Significantly, the alignment defect caused some, but not all, of the vehicles to develop premature and unexpected wearing of the tires.  *Id.*  at 1171.  The trial court refused to certify the putative class on the grounds that the plaintiffs had not provided any evidence of a certain failure rate.  *Id.*  The Ninth Circuit reversed, emphasizing the distinction between the nature of the defect and its consequences.  *Id.*  at 1173.  Specifically, it noted that:

> [Plaintiffs] assert that the Defect exists in the alignment geometry, not in the tires, that Land Rover failed to reveal material facts in violation of consumer protection laws, and that Land Rover was unjustly enriched when it sold a defective vehicle.  All of these allegations are susceptible to proof by generalized evidence.

*Id.*  In other words, proof of manifestation of a defect is relevant to the merits and the alleged measure of damages, but it is decidedly not "a prerequisite for class certification." *Id.*  (citing to *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975)).

Like *Baker* and *Wolin*, Plaintiffs allege the existence of a design defect present in all the Class Vehicles at the time of sale.  ███████████████████████

██████████████████████████████████████████████████████

██████████████████  As *Baker* and *Wolin* both recognized, whether symptoms of the defective timing chain system ultimately manifests themselves in all Class Vehicles is pertinent only to the merits of Plaintiffs' claims and the calculation of damages.[7]  As in

---

[7]  ██████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████

*Baker* and *Wolin*, the existence of the uniform defect in the Class Vehicles and Nissan's deliberate attempt to conceal its existence will be established with common proof.

### iii.   Plaintiffs' Damages Models Comply with *Comcast*

Plaintiff presents two damages models to comply with *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013).  "So long as the damages can be determined and attributed to . . . plaintiff's theory of liability, damage calculations for individual class members do not defeat certification."  *Lindell v. Synthes USA*, 2014 WL 841738, at *14 (E.D. Cal. Mar. 4, 2014); *see also, Johns v. Bayer Corp.*, 280 F.R.D. 551, 555 (S.D. Cal. 2012) ("The amount of damages is invariably an individual question and does not defeat class action treatment."); *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1089 (9th Cir. 2010).

Moreover, the Ninth Circuit recently held that at the class certification stage, plaintiffs need only propose a valid method for calculating class wide damages.  *Leyva v. Medline Industries Inc.*, 716 F.3d 510, 514 (9th Cir. 2013).  Plaintiffs' damages model need not be perfect and it need not be "precisely correct."  *See Vaccarino v. Midland Nat'l Life Ins. Co.* , 2014 WL 572365, at *10-13 (C.D. Cal. Feb. 3, 2014) ("*Comcast* requires that courts determine whether damages are susceptible of class-wide measurement, not whether that measurement is precisely correct.")

Under the UCL, CLRA, Song-Beverly Warranty Act and the CPA, members of the California Statutory Class and the Washington Class are entitled to receive restitution in an amount that corresponds to the money they expended to diagnose and/or repair the defective timing chain system.  *See Keegan*, 284 F.R.D. at 510-11; *Grays Harbor Adventist Christian School*, 242 F.R.D. at 574.  This model complies with *Comcast* because it is consistent with Plaintiffs' theory and calculating the amount of money expended in connection with the diagnosis and/or repair of the defective timing chain system can be accomplished by applying economic principles to common, classwide

evidence.  In particular, Plaintiffs' model relies on common, classwide warranty data and to provide a *conservative* estimate of the average amount of money paid as a result of the defective timing chain system.  (Pifko Decl. ¶ 27, Ex. 26 at PP. 232-7.)

Similarly, the members of the California Fraud and Breach of Warranty Class are entitled to receive benefit of the bargain damages.  *See Mexia*, 174 Cal.App.4th at 1303-04 (Song-Beverly was intended to "provide greater protections and remedies for consumers" than the Commercial Code); Cal Civ. Code § 1794(b)(2)(Song-Beverly Act)(where goods have been accepted "the measure of damages shall include the cost of repairs necessary to make the goods conform"); *Green Wood Indus. Co. v. Forceman Int'l Dev. Group*, 156 Cal. App. 4th 766, 773 (2007) ("The fraud in this case related to the purchase order.  The purchase order was a contract for the sale of goods subject to Division 2 of the California Uniform Commercial Code.  Accordingly, the damages available to Green Wood from the fraud are governed by California Uniform Commercial Code, section 2721, which provides for recovery on a benefit-of-the-bargain basis.")

In particular, Plaintiffs allege that Nissan's fraudulent behavior induced them to purchase Class Vehicles that did not comport with their safety expectations, and had Nissan disclosed the existence of the defective timing chain system or the high costs of repair, they would have paid less.  *In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1163 (C.D. Cal. 2011) ("[a] vehicle with a defect is worth less than one without a defect" ); *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1369 (N.D. Ga. 2013) (plaintiffs adequately alleged injury in that "they expected to receive vehicles free from design or manufacturing defects and that they would not have purchased their vehicles had they known of the defect" and they "'received [vehicles] that [have] a diminished value for what [they] believed he had paid for and purchased'"); *Bailey v. Atlantic Automotive Corp.*, 992 F.Supp.2d 560, 580 (D. Md. 2014) (injury alleged be Plaintiff "was overcharged for the Vehicle" based on defendant's misrepresentations).

However, Plaintiffs and the California Fraud and Breach of Warranty Class who have not yet paid to repair the timing chain defect will receive the benefit of the bargain if

the defective timing chain system is repaired.  Accordingly, under the benefit of the bargain or cost of repair model, damages consist of the average amount each member can expect to pay to have the defective timing chain system repaired at an authorized Nissan dealership.  (Pifko Decl. ¶ 27, Ex. 26 at PP. 232-7.)  This amount is easily determined by reference to basic economic principles and common evidence.  (*Id.*)

### iv.   A Class Action Is Superior to Individual Actions

The second prong of the analysis under Rule 23(b)(3) also requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  This superiority requirement is met "[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis." *Amgen*, 133 S. Ct. at 1202; *Wolin*, 617 F.3d at 1175.  Given that each member of the Class is entitled to recover a relatively small amount of money, in comparison to the costs of litigating on an individual basis, a class action is the superior method of resolving these claims.  *See Pecover v. Elec. Arts Inc.*, 2010 WL 8742757, at * 25 (N.D. Cal. Dec. 21, 2010) ("[T]he modest amount at stake for each purchaser renders individual prosecution impractical. Thus, class treatment likely represents plaintiffs' only chance for adjudication.")  Indeed, "[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class action device." *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980).  Furthermore, if each member of the classes were to pursue his or her claim individually, the courts would be substantially burdened, which is contrary to the goals of efficiency and judicial economy advanced by Rule 23.  *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009).

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court certify this action for class treatment, appoint the named Plaintiffs as class representatives and appoint their counsel as Class Counsel.

Dated:  August 17, 2015          BARON & BUDD, P.C.

By:      /s/ Mark Pifko

_____

Mark Pifko

Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Mark Pifko (SBN 228412)
mpifko@baronbudd.com
Pablo Orozco (SBN 2274267)
porozco@baronbudd.com
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California  91436
Telephone:    (818) 839-2333
Facsimile:     (818) 986-9698

Payam Shahian (SBN 228406)
pshahian@slpattorney.com
Ramtin Shahian (SBN 276203)
rshahian@slpattorney.com
Christopher Swanson (SBN 278413)
cswanson@slpattorney.com
STRATEGIC LEGAL PRACTICES, APC
1875 Century Park East, Suite 700
Los Angeles, California  90067
Telephone:    (310) 277-1040
Facsimile:     (310) 943-3838

Jordan Lurie (SBN 130013)
Jordan.Lurie@capstonelawyers.com
Cody Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
CAPSTONE LAW APC
1840 Century Park East, Suite 450
Los Angeles, California  90067
Telephone:    (310) 556-4811
Facsimile:     (310) 943-0396

Dara Tabesh (SBN 230434)

dara.tabesh@ecotechlaw.com
ECOTECH LAW GROUP, P.C.
333 First Street, Suite C
San Francisco, California  94105
Telephone:    (415) 503-9134
Facsimile:    (415) 651-8639

orneys for Plaintiffs

KOBE FALCO, JOEL SEGUIN,
ALFREDO PADILLA, and ROBERTO
GALVAN, individually, and on behalf of
other members of the public similarly
situated