SEDGWICK LLP
PAUL RIEHLE (Bar No. 115199)
NATASSIA KWAN (State Bar No. 294322)
333 Bush St., 30th Floor
San Francisco, California 94104
Telephone: (415) 781-7900
Facsimile: (415) 781-2635
paul.riehle@sedgwicklaw.com
natassia.kwan@sedgwicklaw.com

E. PAUL CAULEY, JR. (admitted *pro hac vice*)
1717 Main Street, Suite 5400
Dallas, TX 75201-7367
Telephone: (469) 227-8200
Facsimile: (469) 227-8004
paul.cauley@sedgwicklaw.com

JAMES NELSON (BAR NO. 181256)
801 South Figueroa Street, 19th Floor
Los Angeles, CA 90017
Telephone: (213) 426-6900
james.nelson@sedgwicklaw.com

Attorneys for Defendant
NISSAN NORTH AMERICA, INC. and
NISSAN MOTOR CO., LTD.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KOBE FALCO, JOEL SEGUIN, ALFREDO PADILLA, AND ROBERTO GALVAN, individually, and on behalf of other members of the public similarly situated,<br><br>PLAINTIFFS,<br><br>v.<br><br>NISSAN NORTH AMERICA, INC., a California corporation, and NISSAN JIDOSHA KABUSHIKI KAISHA D/B/A NISSAN MOTOR CO., LTD., a publically traded company in Japan,<br><br>DEFENDANTS. | Case No. 2:13-cv-00686-DDP-MAN<br><br>**DEFENDANTS' OBJECTIONS TO REPORT OF SUSAN THOMPSON FILED IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>District Judge: Hon. Dean D. Pregerson<br>Magistrate:    Hon. Margaret A. Nagle<br><br>Date:        December 7, 2015<br>Time:        10:00 a.m.<br>Location:    312 North Spring Street<br>Courtroom 3, 2nd Floor<br><br>Trial Date:  None Set |

82274886v2

Case No. 2:13-cv-00686-DDP-MAN
**DEFENDANTS NISSAN NORTH AMERICA, INC. AND NISSAN MOTOR CO., LTD.'S OBJECTIONS TO PLAINTIFFS' EVIDENCE FILED IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

**TO THIS COURT, AND ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants Nissan North America, Inc. and Nissan Motor Co., Ltd. ("Defendants") hereby object to the report of Susan Thompson offered by Plaintiffs Kobe Falco, Joel Seguin, Alfredo Padilla, and Roberto Galvan ("Plaintiffs") in support of their Motion for Class Certification.

| Material Objected To | Grounds for Objection | Ruling |
|---|---|---|
| **Objection to Report of Susan Thompson**, Opinion Proffering "Out-of-Pocket Classwide Damage Model," pp. 3, 5-6. | - **Opinion not based on reliable facts or data. Fed. R. Evid. 702, 703; irrelevant Fed. R. Evid. 402.**<br><br>*Am. Booksellers Assn. Inc. v. Barnes & Noble, Inc.*, 135 F. Supp. 2d 1031, 1041 (N.D. Cal. 2001) (expert damages model excluded as too speculative because it contained "too many assumptions and simplifications that are not supported by real-world evidence"); *In re REMEC, Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1273-75 (S.D. Cal. 2010) (expert regression model's failure to take into account key market and industry factors rendered the model inadmissible as irrelevant and unreliable); *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1435 (2013) (reversing certification in light of the expert's damages model's inability to bridge the differences between supra-competitive prices in general and supra-competitive prices attributable to the particular injuries alleged).<br><br>Thompson's opinion proposing what she terms an "out-of-pocket classwide damage" model is not reliable, is based on unrelated data, and therefore is irrelevant. <u>In her deposition, Thompson testified she did not in fact do an "out-of-pocket classwide damages" calculation</u>, but rather looked at five repairs that were provided to her by Plaintiffs' counsel – four invoices (for plaintiffs Kobe Falco and Alfredo Padilla, and "absent" plaintiffs, Jon Cakus and Teresa Vallejo) and one repair estimate (for Roberto Galvan). Thompson Deposition at | Sustained: _____<br><br>Overruled: _____ |

-1-

**DEFENDANTS NISSAN NORTH AMERICA, INC. AND NISSAN MOTOR CO., LTD.'S OBJECTIONS TO PLAINTIFFS' EVIDENCE FILED IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

42:2-43:12; 58:2-65:13.[1] She has not actually calculated out-of-pocket expenses on a class-wide basis, but simply "summarized the ones that [she] know[s] of." *Id.* at 63:18-24. The methodology, "so far," has been to "look at each invoice one by one and total it up." *Id.* at 64:1-5. By her own admission, Thompson's "Out-of-Pocket Classwide Damage Model," fails to provide a scientifically valid methodology for proving classwide damages as required by *Comcast*, 133 S.Ct. at 1433-34 (in order to satisfy the predominance inquiry, a plaintiff must present a model that is "susceptible of measurement across the entire class.").

Moreover, the methodology Thompson employed is deficient. First, she includes unrelated car parts, and the presumed labor to install those parts in her calculations. Specifically, she identifies part costs as "unrelated" in her invoice summaries for Vallejo and Padilla. *Id.* at 81:15-25 ("Q: But in your mind, you thought that with respect to Ms. Vallejo, the belt, power steering, oil pump, the belt compressors and the AF sensor were unrelated to the timing chain issues in this case, correct? A: I don't know… Q: But you put them in the unrelated column, correct? Yeah, I did."); and 84:9-15 ("Q: Now for Mr. Padilla… there is a category for unrelated there as well?... And under that category, it says wiper blades? A: Yes.") Yet, in her calculations for out-of-pocket damages, she did not subtract these costs for either Vallejo or Padillo because she lacked the automotive expertise to determine whether or not these expenses listed as unrelated were indeed unrelated. *Id.* at 80:19-81:4. In sum, Thompson's "out-of-pocket classwide damages model" includes using all costs and labor from a repair invoice (or similar repair document), including obviously unrelated part costs and the labor involved to install those unrelated parts.

Second, Thompson includes repairs that are not related to the alleged defect in her "out-of-pocket classwide damages" calculation.

---

[1] The referenced excerpts from the Deposition of Susan Thompson ("Thompson Depo.") are located at the accompanying Riehle Declaration in Support of NNA and NML's Opposition to Plaintiffs' Motion for Class Certification (Riehle Decl.").

**DEFENDANTS NISSAN NORTH AMERICA, INC. AND NISSAN MOTOR CO., LTD.'S OBJECTIONS TO PLAINTIFFS' EVIDENCE FILED IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

| | | | |
|---|---|---|---|
| | | Specifically, she uses the Cakus invoice in her calculation, despite that the Cakus repair is not related to the defect that plaintiffs allege. *See* Riehle Decl. Ex. 23, Thompson Depo. Ex. 173 ("primary timing chain guide tensioner bolt was beginning to back out and damaged threads"). Even if the repair "is not a repair related to the defect alleged by plaintiffs in their complaint," Thompson testified she believes that this type of repair should be included in her putative out-of-pocket classwide damages model. Thompson Depo. at 88:2-89:10. She testified that *any* repair involving replacement of one of the part numbers at issue would be appropriate to include in this damage model. *Id.* In fact, repairs attributable to other causes other than the alleged defects would not qualify the vehicle owner for class membership. | |
| **Objection Thompson Report**, Opinion Proffering "Benefit of the Bargain Classwide Damage Model," at pp. 3-6. | - | **Opinion not based on reliable facts or data and irrelevant. Fed. R. Evid. 702, 703, 402.**<br><br>*Am. Booksellers Assn.,*, 135 F. Supp. 2d at 1041 (expert damages model excluded as too speculative because it contained "too many assumptions and simplifications that are not supported by real-world evidence"); *In re REMEC,* 702 F. Supp. 2d at 1273-75 (expert regression model's failure to take into account key market and industry factors rendered the model inadmissible as irrelevant and unreliable); *Comcast,* 133 S. Ct. at 1435 (reversing certification in light of the expert's damages model's inability to bridge the differences between supra-competitive prices in general and supra-competitive prices attributable to the particular injuries alleged); *Building Indus. Assoc. v. Washington State Building Code Council,* 683 F.3d 1144, 1154 (9th Cir. 2012) (excluding expert testimony where proffered expert "offered no data forming the basis for [his] assumptions or conclusions," and "made no attempt to show his testimony was scientifically or otherwise reliable"); *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 590-94 (1993) (the trial judge, pursuant to Rule 104(a), must make a preliminary assessment of whether the testimony's underlying reasoning or methodology is scientifically valid). | Sustained: _____<br><br>Overruled: _____ |

-3-

**DEFENDANTS NISSAN NORTH AMERICA, INC. AND NISSAN MOTOR CO., LTD.'S OBJECTIONS TO PLAINTIFFS' EVIDENCE FILED IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

82274886v2

Thompson's opinion on benefit of the bargain class wide damages is based on Nissan warranty data. From that data, Thompson created her own warranty database that: (1) eliminated duplicates and (2) excluded service contract, factory goodwill and extended warranty claims. In her calculation of benefit of the bargain classwide damages, Thompson excluded "any VIN number with claim amounts below $600… to eliminate data representing repairs that received discounts or other goodwill adjustments that would not be available at this time." Thompson Report at 5. By excluding repairs under $600, she excluded 30% of the claims data. Thompson Depo. at 108:1-22. She attempted to elaborate on the $600 minimum amount claiming she picked that number to avoid including claims where there was a zero value for parts or labor. *Id.* at 118:24-119:13. However, she agreed that even just looking at the first seven instances of "less than $600" items of Thompson Depo. Exhibit 174, a 103 page spreadsheet reflecting Thompson's warranty database, each of those first seven instances were not zero labor or zero parts, and indeed, each had both parts and labor costs. *Id.* at pp. 120:5-21. In addition, she admitted that a person with Plaintiff Kobe Falco's repair would be excluded from the average cost calculation because his total was less than $600. *Id.* at 106:7-107:20.

Thompson destroyed data relating to her calculation of the benefit of the bargain damages model. Specifically, she admits she initially calculated the averages to include repair costs under $600, but she "destroyed" them because they were "crazy." *Id.* at 118:24-120:3.

Thompson chose the $600 minimum amount without consulting with a mechanic or other automotive expert. *Id.* at 108:23-109:24. While Thompson may be qualified as a forensic accountant, consultant or auditor, she is admittedly not a mechanic or engineer. *Id.* at 27:24-28:9; 80:23-25. In fact, Thompson cannot even opine on whether wiper blades should be included when calculating timing chain defect repair expenses. *Id.* at 85:15-86:4. Yet, she attempts to, without any reasonable justification, exclude from her classwide

-4-

82274886v2

**DEFENDANTS NISSAN NORTH AMERICA, INC. AND NISSAN MOTOR CO., LTD.'S OBJECTIONS TO PLAINTIFFS' EVIDENCE FILED IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

damages calculation 30% of the warranty data.

Thompson's proffered benefit of the bargain damages model contains "too many assumptions and simplifications that are not supported by real-world evidence." *Am. Booksellers*, 135 F. Supp. 2d at 1041. Thompson ignores 30% of the warranty data without providing any scientific or otherwise reliable explanation to support why she is excluding this data. *Building Indus. Assoc.*, 683 F.3d at 1154. Thompson's "Benefit of the Bargain Classwide Damage Model," fails to provide a scientifically valid and reliable methodology for proving classwide damages as required by *Comcast v. Behrend*, 133 S.Ct. 1426 (2013).

Thompson's benefit of the bargain opinion is also irrelevant. The purported justification for the average repair cost is that it supposedly restores to the class members their "benefit of the bargain" in not having a vehicle with a timing chain defect. Thompson Report at pp. 3-4. But Plaintiffs never made such a bargain. The class members did not bargain for a vehicle without defects or for perpetual repair of defects. NNA issued an express warranty in which it undertook to repair or replace parts that are defective in materials and workmanship during a period limited by time and mileage. The very purpose of such a warranty is to "mark the point in time during the useful life of a product when the risk of paying for repairs shifts from the manufacturer to the consumer." *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 972 (N.D. Cal. 2008). Thus, claimants may not recover for breach of express warranty or under the consumer statutes for defects that first manifest after the expiration of the warranty—regardless of allegations that the seller was aware of the defect. *Daugherty v. Am. Honda Motor Co., Inc.,* 144 Cal.App.4th 824, 829 (2006); *Wilson v. Hewlett-Packard Co.*, 668 F. 3d 1136, 1141 (9th Cir. 2012); *Abraham v. Volkswagen of America, Inc.,* 795 F.2d 238, 250 (2d Cir. 1986). Plaintiffs' damages theory, therefore, represents an impermissible attempt to rewrite the warranty.

Moreover, a hypothetical repair is not the legal measure of damages for breach of

warranty. Damage for the breach of warranty of accepted goods consists of the difference between the value the goods had at the time and place of acceptance and the value they would have had as warranted. Cal. Com. Code § 2714(2).

The UCL permits recovery of restitution, but not damages. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003). Restitution is not captured by cost of repair—either actual or derived from some average. Cost of repair does not represent money that class members paid to Nissan. *See In re Tobacco Cases II*, -- Cal.App.4th --, 2015 WL 5673070, at *8 (Sept. 28, 2015) (restitution order requires money or property to have been lost by the plaintiff and that it has been acquired by the defendant). Rather, any claim for restitution must show that the claimant received insufficient value relative to the amount paid. I*n re Vioxx Class Cases*, 180 Cal.App.4th 116, 130 (2011); *see also Tobacco II*, 2015 WL 5673070, at *5-6; *In re POM Wonderful LLC*, 2014 WL 1225184, at *3 (C.D. Cal. Mar. 25, 2014).

Thompson's average repair cost method commits the same error as the class proponents in *Comcast*—reliance on a method that does not reflect the damages recoverable under the particular cause of action. *Comcast*, 133 S. Ct. at 1432-35.

DATED: October 22, 2015   SEDGWICK LLP

By: \S\ Paul J. Riehle
PAUL J. RIEHLE
Attorneys for Defendant
NISSAN NORTH AMERICA, INC.