O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| KOBE FALCO, individually, and on behalf of a class similarly situated individuals, | ) ) ) ) | Case No. CV 13-00686 DDP (MANx) **ORDER GRANTING MOTION FOR CLASS CERTIFICATION** |
| Plaintiff, | ) ) | [Dkt. Nos. 130, 133] |
| v. | ) ) ) | |
| NISSAN NORTH AMERICA INC., NISSAN MOTOR CO. LTD, a Japanese Company, | ) ) ) ) | |
| Defendants. | ) ) | |

Presently before the Court is Plaintiffs' Motion for Class Certification.  (Dkt. Nos. 130, 133.)  Having considered the parties' submissions and heard oral argument, the Court adopts the following Order.

I.   **BACKGROUND**

This class action alleges consumer defects and misrepresentations based on the timing chain systems in several Nissan vehicles.  The Court has already detailed the basic facts of the case in its prior Orders, particularly the October 10, 2013,

1   Order Denying in Part and Granting in Part Defendants' Motion to

2   Dismiss.  (Dkt. No. 51.)  Thus, the Court repeats the statement of

3   facts here, along with new relevant facts:

4        Named Plaintiffs Falco, Seguin, Padilla, and Galvan are

5   purchasers, respectively, of a 2005 Nissan Pathfinder, a 2007

6   Nissan Quest, a 2006 Nissan Pathfinder, and a 2005 Pathfinder.

7   (First Am. Compl.[1] ("FAC"), Dk. No. 22, ¶¶ 55, 61, 70, 77.)

8   Plaintiffs allege that their vehicles had a defectively designed

9   Timing Chain Tensioning System ("TCTS").  They bring this putative

10  class action on behalf of themselves and other purchasers or

11  lessees of the vehicles noted above and other vehicle lines that

12  they allege share the defect.[2]  (Id. ¶¶ 2, 5, 28.)  The Defendants

13  are Nissan North America, Inc. and Nissan Motor Co., Ltd.

14  (respectively, "Nissan USA" and "Nissan Japan"; collectively,

15  "Nissan").

16       Plaintiffs allege defective TCTSs are prone to failure before

17  consumers reasonably expect any failure to occur and that the

18  defect presents a safety concern for drivers and occupants of the

19  vehicles.  (Id. ¶ 5.)  They allege that repair of the faulty TCTSs

20

21

_____

22       [1]    The Court notes that the operative pleading is now the
    Second Amended Complaint ("SAC"), Dkt. No. 95.  However, the
23  essential facts and theory of the case remain the same in both
    pleadings.  The SAC does have more specific details to support
24  Plaintiffs' claims because more discovery had been completed.
    Those facts are also alleged in the Motion for Class Certification
25  and thus included in this Order as well.

26       [2]    These lines of vehicles include: 2004-2008 Nissan Maxima
    vehicles; 2004-2009 Nissan Quest vehicles; 2004-2006 Nissan Altima
27  vehicles (with the VQ35 engine); 2005-2007 Nissan Pathfinder
    vehicles; 2004-2007 Nissan Xterra vehicles; and 2005-2007 Nissan
28  Frontier vehicles (with the VQ49 engine).  FAC § 2.

1   has caused them and other class members significant monetary

2   damages.  (Id. ¶ 4.)

3        The TCTS is a component of an internal combustion engine.  It

4   is responsible for connecting the engine's camshaft to the

5   crankshaft, which in turn controls the opening and closing of the

6   engine's valves.  (Id. ¶ 29.)  The TCTS ensures that this system

7   occurs in the precise, synchronized manner necessary for the engine

8   to function.  (Id.)  According to Plaintiffs, a TCTS malfunction

9   can cause a vehicle's pistons and valves to smash into one another,

10  resulting in an inability to accelerate, maintain speed, and idle

11  smoothly, and that malfunction can lead to catastrophic engine

12  failure, posing safety risks.  (Id. ¶¶ 31, 33; see also Pifko

13  Decl., Exs. 2, 18, 21, 22, 25).)

14       Plaintiffs allege that after their vehicles' TCTS broke down,

15  they were confronted with significant repair costs, ranging from

16  $510.60 for Falco to $2,788.00 for Seguin.  (FAC ¶¶ 59, 68.)

17  Plaintiffs allege that they would not have bought the vehicles had

18  they known of the TCTS defect.  (Id. ¶ 12.)  Plaintiffs allege that

19  Nissan USA has been aware of the defect since at least 2004 as a

20  result of information exclusively in its possession, including pre-

21  production testing, pre-production design failure mode and analysis

22  data, production design failure mode and analysis data, early

23  consumer complaints, and aggregate data from retailers.  (Id. ¶ 37;

24  see also Pifko Decl., Exs. 7, 17, 18, 19, 21).)  Plaintiffs allege

25  that despite this knowledge, Nissan USA continued to install the

26  defective component while concealing its knowledge so that the

27  warranty period would expire before owners became aware of the

28  problem.  (FAC ¶ 8.)

In support of these contentions, Plaintiffs allege that Nissan USA redesigned one of the defective TCTS components in 2006 and 2007, correcting the defect, but without informing consumers. (Id. ¶¶ 39-43.)  Plaintiffs further point to a series of three Technical Service Bulletins ("TSBs") issued by Nissan USA, beginning July 17, 2007, instructing technicians to replace TCTS component parts in the case of whining or buzzing noises. (Id. ¶¶ 44-49; see also Pifko Decl., Ex. 16).)  Additionally, Plaintiffs point to complaints by drivers to the National Highway Traffic Safety Administration ("NHTSA"), which Plaintiffs allege that Nissan USA monitors regularly, between 2006 and 2010. (Id. ¶¶ 50, 52.)

In the case of each Plaintiff, the repairs were undertaken outside of the vehicles' 5-year, 50,000-mile powertrain warranty. (Id. ¶¶ 57, 58, 65, 74.)  Plaintiffs allege that they heard "whining," "buzzing," and "ticking" during the warranty period, which were symptomatic of the TCTS defect, and that they would have demanded that the Defendants repair the vehicles during the warranty period had they been made aware of the nature and extent of the problem.

Based on the facts described above, Plaintiffs asserted six causes of action against Defendants: (1) violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 et seq.; (2) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq.; (3) violation of Washington Consumer Protection Act ("CPA"), RCW 19.86 et seq.; (4) breach of implied warranty pursuant to the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1792 and 1791.1 et seq.; (5) Fraud; and (6) Unjust Enrichment.

4

Now, Plaintiffs have brought a motion to certify three classes under Federal Rule of Civil Procedure 23(b)(3): (1) the "California Statutory Class," consisting of all California residents who purchased or leased a class vehicle in California and who have incurred actual expenses in connection with either the diagnosis or repair of the defective timing chain system; (2) the "California Fraud and Breach of Warranty Class," consisting of all California residents who currently own or lease a class vehicle in California and who have not yet had the defective timing chain system fully repaired; and (3) the "Washington Class," consisting of all Washington residents who purchased or leased a class vehicle in Washington and who have incurred actual expenses in connection with either the diagnosis or repair of the defective timing chain system. (Mot. Certify Class, dkt. no. 134, at 9.)

According to Plaintiffs, all class vehicles use a uniform timing chain system — the same slack guide, secondary chain, and secondary tensioners — and they all have the same defect. (Id. at 4-5.) All class vehicles came with either a ZV5 or ZV7 engine, and those engines shared an identical timing chain system. (Id. at 5 (citing Pifko Decl., Exs. 20, 21, 24).) Both engines had the same defective slack guide, secondary timing chain, and secondary tensioners for the relevant class years and class vehicle models. (Id. (citing Pifko Decl., Exs. 3, 24).)

Plaintiffs argue that any countermeasures Defendants took during the class years were attempts to fix the defect, but the countermeasures failed to fix the defect, which is why Nissan ultimately redesigned the system. (Id. at 6-7.) Plaintiffs maintain that Defendants knew about this defect as early as 2003

1    based on internal communications.  (Id. (citing Pifko Decl., Exs.

2    11, 17).)

3         Defendants oppose certification of all three classes.  (Opp'n,

4    dkt. no. 147.)  Defendants argue that Plaintiffs are lumping

5    together two separate issues with two different components in two

6    different timing chain systems. (Id. at 1.)  According to

7    Defendants, Plaintiffs misunderstand the evidence because (1) not

8    all class vehicles came with the same primary timing chain slack

9    guide design; (2) not all class vehicles came with the same

10   secondary timing chain; (3) even for those class vehicles that came

11   with the same secondary timing chain design, a manufacturing

12   variation caused issues with a small percentage of vehicles.  (Id.)

13   **II.   LEGAL STANDARD**

14        The party seeking class certification bears the burden of

15   showing that each of the four requirements of Rule 23(a) and at

16   least one of the requirements of Rule 23(b) are met.  See Meyer v.

17   Portfolio Recovery Assocs., LLC, 707 F.3d 1036, 1041 (9th Cir.

18   2012); Hanon v. Dataprods. Corp., 976 F.2d 497, 508-09 (9th Cir.

19   1992).  In determining whether to certify a class, a court must

20   conduct a "rigorous analysis" to determine whether the party

21   seeking certification has met the prerequisites of Rule 23 of the

22   Federal Rules of Civil Procedure.  Valentino v. Carter-Wallace,

23   Inc., 97 F.3d 1227, 1233 (9th Cir. 1996).  Rule 23(a) sets forth

24   four prerequisites for class certification:

25        (1)  the class is so numerous that joinder of all members
             is impracticable;
26        (2)  there are questions of law or fact common to the
             class;
27        (3)  the claims or defenses of the representative parties
             are typical of the claims or defenses of the class;
28           and

(4)   the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); see also Hanon, 976 F.2d at 508.  These four requirements are often referred to as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy.  See General Tel. Co. v. Falcon, 457 U.S. 147, 156 (1982).

In determining the propriety of a class action, the question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.  Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974).  This Court, therefore, considers the merits of the underlying claim to the extent that the merits overlap with the Rule 23(a) requirements, but will not conduct a "mini-trial" or determine at this stage whether Plaintiffs could actually prevail. Ellis v. Costco Wholesale Corp., 657 F.3d 970, 981, 983 n.8 (9th Cir. 2011); see also Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 131 S. Ct. 2541, 2551-52 (2011).

Rule 23(b) defines different types of classes.  Leyva v. Medline Indus. Inc., 716 F.3d 510, 512 (9th Cir. 2012).  Relevant here, Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over individual questions . . . and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

**III. DISCUSSION**

**A.    Rule 23(a) Prerequisites**

1    To show that class certification is warranted, Plaintiffs
2   must show that all four prerequisites listed in Rule 23(a) are
3   satisfied.

4           **1.   Numerosity**

5    Numerosity is satisfied if "the class is so numerous that
6   joinder of all members is impracticable."  Fed. R. Civ. P.
7   23(a)(1).

8    Plaintiffs argue that documents obtained through discovery
9   show that thousands of timing chain systems have been repaired on
10  class vehicles.  (Mot. at 10-11.)  Further, Plaintiffs claim that
11  Nissan sold 768,333 class vehicles between December 2004 and
12  September 2010.  (<u>Id.</u> at 10.)  Courts typically find the
13  numerosity requirement satisfied when a class includes forty or
14  more members.  <u>Sibert v. TV Magic, Inc.</u>, No. CV 12-03404 DDP
15  (MRWx), 2012 WL 3589795, at *2 (C.D. Cal. Aug. 21, 2012).  As
16  there are more than forty potential class members, the Court finds
17  this factor satisfied.

18          **2.   Commonality**

19   Commonality is satisfied if "there are questions of law or
20  fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Note that
21  this does not mean that *all* questions of law and fact must be
22  identical across the class; "[t]he requirements of Rule 23(a)(2)
23  have been construed permissively, and all questions of fact and
24  law need not be common to satisfy the rule."  <u>Ellis v. Costco
25  Wholesale Corp.</u>, 657 F.3d 970, 981 (9th Cir. 2011) (internal
26  quotation marks and brackets omitted).  However, posing common
27  questions of trivial fact is not enough: the "question" must be
28  one that "will generate common answers apt to drive the resolution

of the litigation."  Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011).

Plaintiffs assert that there are common questions of law and fact across the classes, namely: "(a) whether the timing chain system in all Class Vehicles was defectively designed; (b) whether Nissan was aware of the defective timing chain system; (c) whether Nissan concealed the uniformly defective timing chain system; and (d) whether Nissan's deceptive and fraudulent conduct was unlawful." (Mot. at 11.)

Defendants argue that Plaintiffs have "failed to prove that all class members received the same timing chain system parts, much less that all of those parts have a common defect." (Opp'n at 10-11.) Defendants claim that a class vehicle "could have one of four slack guides for the primary timing chain: (1) original unmodified; (2) original with barb height change; (3) original with barb height change and new mold process; and (4) new slack guide." (Id. at 11.) Additionally, the class vehicles "could have one of two secondary timing chains: (1) original design or (2) new design"; Defendants also claim that the secondary timing chain suffers from "manufacturing variability." (Id.) So, Defendants argue, there is no single defect, and thus no common issues, citing Johnson v. Harley-Davidson Motor Co. Grp. LLC, 285 F.R.D. 573, 579-80 (E.D. Cal. 2012), and In re Ford Motor Co. Ignition Switch Prods. Liability Litigation, 174 F.R.D. 332, 343-44 (D.N.J. Aug. 28, 1997).

Further, Defendants claim that there is no evidence to show Nissan USA or Nissan Japan were aware of timing chain issues "in the same way throughout the class period." (Opp'n at 11.)

9

1   "[E]vidence indicates that at the time design responsibility was

2   handed over from Nissan Japan to [Nissan USA] in March 2004 for

3   the 3.5L engine and in July 2004 for the 4.0L engine, Nissan Japan

4   believed that initial quality issues for the slack guide

5   identified by the engine plant had been addressed." (<u>Id.</u> at 11-

6   12.)  According to Defendants, Nissan USA only found issues with

7   the system after warranty data was analyzed and then it determined

8   design changes were desired.  (<u>Id.</u> at 11.)  This led Nissan USA

9   and the supplier to take countermeasures, which Defendants

10  appeared to believe would be effective.  (<u>Id.</u>)  Thus, according to

11  Defendants, there are no common issues underlying all the

12  potential class vehicles as to design, defect, and knowledge.

13      Plaintiffs' Reply argues there is no evidence that points to

14  manufacturing variability rather than a defect — and further, that

15  even accounting for manufacturing variability, there could also be

16  a design problem, and so commonality still exists through the

17  class.  (Reply at 6-9 (citing <u>Keegan v. Am. Honda Motor Co., Inc.</u>,

18  284 F.R.D. 530, 33 (C.D. Cal. 2012); Dkt. No. 135, Pifko Decl.,

19  Exs. 1, 5, 6, 7, 9, 11, 17, 20, 21; Dkt. No. 153, Reply Pifko

20  Decl., Ex. 12, 36).)  Further, Plaintiffs argue that no Nissan

21  engineers support Defendants' theory that there was merely a

22  production problem because the engineers all point to a design

23  problem.  (<u>Id.</u> at 8-9 (citing exs. to Dkt. No. 135, Pifko Decl.;

24  exs. to Dkt. No. 153, Reply Pifko Decl.).)

25      The Court finds this case raises similar common questions of

26  fact and law to the common questions alleged in another consumer

27  automobile defect class certification case, <u>Chamberlan v. Ford</u>

28  <u>Motor Co.</u>, 402 F.3d 952, 962 (9th Cir. 2005).  That case denied an

interlocutory appeal of a grant of class certification. The Ninth Circuit held the lower court's decision was not manifestly erroneous, particularly as the district court had listed examples of common issues, such as whether there was defect design, whether Ford had knowledge of the defects, and other questions similar to the ones Plaintiffs present here. See id. In these consumer defect cases, commonality can be found in the very legal and factual question of the defect. See, e.g., id.; see also Wolin v. Jaguar Land Rover N. Am. LLC, 617 F.3d 1168, 1172 (9th Cir. 2010); Doyle v. Chrysler Grp. LLC, No. SACV 13-00620, 2014 WL 7690155, at *6-7 (C.D. Cal. Oct. 9, 2014); Parkinson v. Hyundai Motor Am., 258 F.R.D. 580, 595-96 (C.D. Cal. 2008). Here, the same defect is alleged across all class vehicles, and the assertion is supported by sufficient evidence at this juncture as shown by the Plaintiffs' cited exhibits. Therefore, the Court finds that Plaintiffs have satisfied the commonality requirement.

### 3. Typicality

Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class. Typicality refers to *the nature of the claim or defense* of the class representative, and *not to the specific facts from which it arose* or the relief sought. The test of typicality is whether other members have the same *or similar* injury . . . ." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks omitted) (citations omitted) (emphasis added).

11

1    Plaintiffs argue that the named Plaintiffs' claims are
2  typical because all claims in the classes arise from Nissan's
3  concealment of the same defective timing chain system. (Mot. at
4  12.) Plaintiffs cite to <u>Wolin</u> for the proposition that there is
5  typicality when the same defect is alleged across a consumer
6  class. (<u>Id.</u> (citing <u>Wolin</u>, 617 F.3d at 1175); <u>see also Doyle</u>, No.
7  SACV 13-00620, 2014 WL 7690155, at *7; <u>In re Toyota Motor Corp.</u>
8  <u>Unintended Acceleration Marketing, Sales Practices, and Prods.</u>
9  <u>Liability Litigation</u>, No. 8:10ML2151 JVS, 2012 WL 7802852, at *2-3
10 (C.D. Cal. Dec. 28, 2012). Further, Plaintiffs claim, because the
11 same defective timing chain system was installed in all the class
12 vehicles, it does not matter that the class contains people who
13 own vehicle models that are not identical to the models owned by
14 the named Plaintiffs. (Mot. at 12 (citing <u>Sharma v. BMW of N.</u>
15 <u>Am., LLC</u>, No. C-13-2274 MMC, 2015 WL 82534, at *2 (N.D. Cal. Jan.
16 6, 2015)(pleading stage).)

17   Defendants counter that the overbreadth of the proposed
18 classes is a problem for typicality. For instance, no named
19 Plaintiff is a member of the Washington class as presently defined
20 by Plaintiffs because none are Washington residents. (Opp'n at 13
21 (citing <u>Estate of Felts v. Genworth Life Ins. Co.</u>, 250 F.R.D. 513,
22 524 (W.D. Wa. 2008)("Class membership is a minimal prerequisite to
23 a finding of typicality.").) Further, Defendants argue, none of
24 the named Plaintiffs leased a vehicle. (<u>Id.</u>) Lastly, Defendants
25 claim that the vehicles here are not like those in <u>Wolin</u> because
26 the vehicles here do not possess a single common defect that
27 unites the claims of all class members. (<u>Id.</u>) Therefore,
28

1   Defendants claim there is no typicality because the classes could
2   have different part configurations.
3        Plaintiffs concede that the Washington class, as currently
4   defined in the moving papers, does require Washington residence
5   and no named Plaintiff is a current Washington resident. (Reply
6   at 16 & n.18.) However, Plaintiffs argue that Plaintiff Falco
7   should be a member of the Washington class because he purchased
8   his vehicle there. (Id. (citing Dkt. No. 135, Pifko Decl., Ex. 30
9   at 288.) Because Washington's Consumer Protection Act ("CPA")
10  does not have a substantive residency requirement, Plaintiffs
11  argue that Plaintiff Falco would be typical of such a CPA claim.
12  (Id. (citing Wash. Rev. Code § 19.86.010; Pierce v. NovaStar
13  Mortg., Inc., 238 F.R.D. 624, 626 (W.D. Wa. 2006)(providing
14  elements of CPA action).) Therefore, Plaintiffs ask the Court to
15  modify the proposed Washington class definition so that it
16  includes individuals like Falco who bought or leased a class
17  vehicle in Washington but who may not be Washington residents.
18       Plaintiffs further argue that the interests of the class and
19  the named Plaintiffs need not be identical, so it should not
20  defeat class certification that none of the named Plaintiffs
21  leased a vehicle. (Id. at 16-17.) All that is needed for
22  typicality is the same legal theory, so minor factual differences
23  do not defeat typicality. (Id. (citing Wolin, 617 F.3d at 1175).)
24  Because Plaintiffs are not asking for vehicle buybacks, a recall,
25  or other forms of relief perhaps not available to leased vehicles,
26  there are no differences in remedies; Plaintiffs seek "economic
27  compensation for out-of-pocket costs they incurred and/or amount
28

1  by which they each overpaid for a vehicle that was less safe than

2  Nissan claimed." (Id. at 16.)

3       The Court finds that as presently defined, no named Plaintiff

4  is a member of the Washington class.  Further, the statute only

5  covers "any commerce directly or indirectly affecting the people

6  of the state of Washington."  Wash. Rev. Code § 19.86.010(2).

7  Courts applying Washington's CPA have understood this statutory

8  section to provide something akin to a standing requirement: The

9  plaintiff must show some effect on the people of Washington, such

10 that a nonresident plaintiff's claim under the CPA for a

11 defendant's actions not taken in Washington is not likely to be

12 covered by the statute's reach.  See, e.g., Malmquist v. OMS Nat'l

13 Ins. Co., No. CV 09-1309-PK, 2010 WL 5621358, at *12-13 (D. Or.

14 Dec. 28, 2010) (citing Schnall v. AT&T Wireless Servs., Inc., 225

15 P.3d 929,939 (Wash. 2010) (en banc), superseded on reconsideration

16 by 259 P.3d 129 (2011) (en banc)).

17      Here, while Falco is not a Washington resident, he did

18 purchase his vehicle in that state when he was a resident of that

19 state.  Other Washington residents and nonresidents have purchased

20 Nissan vehicles in Washington as well, which constitutes commerce

21 directly effecting people of Washington because the sale occurred

22 in the state.  Because residency is not a substantial requirement

23 for application of Washington's CPA, it appears that the Court

24 could remove the residency requirement from the class definition

25 and simply require that the class vehicle be leased or purchased

26 in Washington.  Therefore, the Court will construe the class

27 definition as: All purchasers or lessors of a Class Vehicle who

28 purchased or leased the vehicle in Washington and who have

1  incurred expenses in connection with either the diagnosis or

2  repair of the defective timing chain system.

3      The other two classes meet the typicality requirement; named

4  Plaintiffs are members of the class and have the same interests as

5  other class members, and no particular defenses are alleged

6  against any of them that would detract from the class.  The fact

7  that not all class vehicle models or any lessees are represented

8  does not defeat typicality because the legal interests are the

9  same across all potential class members.  Therefore, the Court

10  finds this factor satisfied.

11      **4.  Adequacy**

12      Adequacy of representation is satisfied if "the

13  representative parties will fairly and adequately protect the

14  interests of the class."  Fed. R. Civ. P. 23(a)(4).  Inasmuch as

15  it is conceptually distinct from commonality and typicality, this

16  prerequisite is primarily concerned with "the competency of class

17  counsel and conflicts of interest."  <u>Gen. Tel. Co. of Southwest v.</u>

18  <u>Falcon</u>, 457 U.S. 147, 158 n.13 (1982).  Thus, "courts must resolve

19  two questions: (1) do the named plaintiffs and their counsel have

20  any conflicts of interest with other class members and (2) will

21  the named plaintiffs and their counsel prosecute the action

22  vigorously on behalf of the class?"  <u>Ellis</u>, 657 F.3d at 985.

23      Plaintiffs allege that there are no conflicts of interests on

24  behalf of any of the named Plaintiffs or Plaintiffs' counsel, and

25  that counsel is adequate for this litigation.  (Mot. at 13.)

26  Defendants' arguments are limited to those for typicality.  (Opp'n

27  at 13.)  The Court finds the adequacy requirement met here because

28

1  the named Plaintiffs and their counsel satisfy the Rule's

2  requirements.

3      **B.   Rule 23(b)(3)**

4      A class action may be certified under Rule 23(b)(3) if "the

5  questions of law or fact common to class members predominate over

6  any questions affecting only individual members, and that a class

7  action is superior to other available methods for fairly and

8  efficiently adjudicating the controversy."  Fed. R. Civ. P.

9  23(b)(3).  In making its findings on these two issues, courts may

10  consider "the class members' interests in individually controlling

11  the prosecution or defense of separate actions," "the extent and

12  nature of any litigation concerning the controversy already begun

13  by or against class members," "the desirability or undesirability

14  of concentrating the litigation of the claims in the particular

15  forum," and "the likely difficulties in managing a class action."

16  <u>Id.</u>

17      **1. Predominance**

18      "The Rule 23(b)(3) predominance inquiry tests whether

19  proposed classes are sufficiently cohesive to warrant adjudication

20  by representation."  <u>Amchem Products, Inc. v. Windsor</u>, 521 U.S.

21  591, 623 (1997).  "Even if Rule 23(a)'s commonality requirement

22  may be satisfied by [a] shared experience, the predominance

23  criterion is far more demanding."  <u>Id.</u> at 623-24.  Predominance

24  cannot be satisfied if there is a much "greater number" of

25  "significant questions peculiar to the several categories of class

26  members, and to individuals within each category."  <u>Id.</u> at 624.

27  However, Rule 23(b)(3) predominance "requires a showing that

28  *questions* common to the class predominate, not that those

1  questions will be answered, on the merits, in favor of the class."

2  Amgen Inc. v. Connecticut Ret. Plans & Trust Funds, 133 S. Ct.

3  1184, 1191 (2013).

4          **i.   California Statutory Class**

5      The California statutory class alleges claims under

6  California's Consumers Legal Remedies Act ("CLRA") and Unfair

7  Competition Law ("UCL").  (Mot. at 14, 16.)

8          **(a)   CLRA Claim**

9      For the CLRA claim, Plaintiffs have to show that Defendants

10  had a duty to disclose the alleged defect because Defendants had

11  "exclusive knowledge of material facts." Collins v. eMachines,

12  Inc., 202 Cal. App. 4th 249, 255-56 (2011).  An express warranty

13  does not vitiate this duty if there is an unreasonable safety risk

14  caused by the lack of disclosure. See In re Toyota Motor Corp.,

15  754 F. Supp. 2d 1145, 1191 n.25 (C.D. Cal. 2010).  Additionally,

16  CLRA claims require "each class member to have an actual injury

17  caused by the unlawful practice." Keegan, 284 F.R.D. at 529.

18  Causation, and an "inference of reliance," for the class in a CLRA

19  claim "can be shown as to an entire class by proving materiality."

20  Id. at 530-31.  "Whether an omission is material is a fact-

21  intensive question that asks whether 'a reasonable man would

22  attach importance to its existence or nonexistence in determining

23  his choice of action in the transaction in question.'"  Id.

24  (quoting In re Steroid Hormone Prod. Cases, 181 Cal. App. 4th 145,

25  157 (2010)).

26      Plaintiffs argue that evidence such as internal emails and

27  the TSBs demonstrate that Nissan was aware of the timing chain

28  system defect, which created unreasonable safety risks, and the

defect equally effects all the class vehicle engines; thus, common issues of fact and law predominate this claim. (Mot. at 14-15 (citing Dkt. No. 135, Pifko Decl., Exs. 7-10, 16, 17, 21, 25.) Further, Plaintiffs claim that causation and reliance can be proved on a class basis because the standard is an objective one, so the evidence need not be examined on an individual basis. (Id. at 15.)

Defendants argue that there is no common proof of Nissan's knowledge of the defect because knowledge must be determined on a per-transaction basis. (Opp'n at 18.) Defendants claim the same problem exists for class members' knowledge: the Court would need to know about each sale and lease transaction to determine whether there was a material misrepresentation or omission that is common to the class. (Id.) Defendants further claim that the TSBs and NHTSA complaints were freely available on the internet, so there could be individualized knowledge issues for those consumers exposed to such information. (Id.)

Defendants also argue that, for causation purposes, materiality varies amongst class members and so class certification would be inappropriate. (Id. at 20.) This variation among class members is shown by: "(1) the vast majority never experience a timing chain problem; (2) the secondary timing chain issue is largely limited to narrow production bands; (3) when timing chain issues arise they manifest themselves as a noise that consumers may not find troublesome; (4) the reported timing chain issues do not disable the vehicle and provide plenty of warning — by way of the extra noise — that repairs are necessary; (5) the condition usually occurs only after the consumer has

18

1    driven the car for tens of thousands of miles; and (6) there is no

2    demonstrated real world safety effect." (<u>Id.</u>)  Lastly, Defendants

3    argue that Plaintiffs offer "no survey evidence or expert

4    testimony that all consumers would find the timing chain

5    material." (<u>Id.</u>)

6         In reply, Plaintiffs argue that materiality can be proved on

7    a class basis. (Reply at 21- 24.)  They claim that the class

8    vehicles suffer from the same defect; the defect existed at the

9    time of sale, as did the risks that the defect entailed; there was

10   a risk of catastrophic engine failure; the vehicles are less safe

11   and put consumers in a greater risk of harm than they would be

12   without the defect; and even if the safety risk is just engine

13   noise, the engine noise is a safety concern according to Nissan's

14   own engineers. (<u>Id.</u> at 22-23.)

15        The Court holds that common issues predominate for the CLRA

16   claims.  Common proof can be used to establish the elements of the

17   CLRA claim, such as whether Nissan had a duty to disclose the

18   alleged defect, whether there was an unreasonable safety risk, and

19   whether consumers would find such omission material in their

20   transaction.  The actual proof of common defect, or Defendants'

21   knowledge and subsequent actions, go to the merits of the claim,

22   but common evidence will be used to prove the claim either way.

23   Further, the evidence cited by Plaintiffs in their moving papers

24   is sufficient at this stage of the case to make out allegations

25   common among the class as to the alleged vehicle defects, the

26   effects the alleged defects could have on the vehicle in terms of

27   safety, and Nissan's knowledge of the defect.  Therefore, common

28   issues predominate.

### (b)  UCL Claim

There are three potential bases for UCL claims because the statute "penalizes behavior that is 'unlawful,' 'unfair,' or 'fraudulent.'"  <u>Keegan</u>, 284 F.R.D. at 533 (quoting <u>Cel-Tech Comm'ns, Inc. v. L.A. Cellular Tel. Co.</u>, 20 Cal.4th 163, 178-81 (1999)).  For the unlawful prong, plaintiffs must show an underlying violation of another law.  <u>Id.</u>  For the fraudulent prong, individual proof is not necessary to show deception, reliance, and injury because unlike common law fraud, the focus in the UCL claim is on the defendant's conduct, not the consumer's reaction.  <u>Id.</u>  In <u>Keegan</u>, the court explained that "a violation of the UCL can be proved with common evidence regarding the nature of the design defect in question, the likely effect of the defect on class vehicles, its likely impact on vehicle safety, what [a defendant] knew or did not know, and what it disclosed or did not disclose to consumers."  <u>Id.</u> at 534.  Lastly, the unfairness prong is shown by a violation of "established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits."  <u>McKell v. Wash. Mut., Inc.</u>, 142 Cal. App. 4th 1457, 1473 (2006).

Plaintiffs argue all three prongs of the UCL are met here. Plaintiffs first predicate the unlawful prong of their UCL claim on Nissan's violation of the CLRA, described above, and Nissan's Song-Beverly Warranty Act violations, described below.  (Mot. at 16.)  Plaintiffs base the fraudulent prong on their common law fraud claims described below.  (<u>Id.</u>)  Plaintiffs claim that the unfair prong would be proved by common evidence that would answer "(a) when Nissan first became aware of the timing chain system

20

1   Defect; (b) whether Nissan deliberately chose to withhold

2   information about the timing chain system Defect; (c) why Nissan

3   made the choice to deceive its consumers; (d) the impact that

4   Nissan's deceptive and fraudulent conduct had on consumers; (e)

5   whether Nissan's concealment created a safety risk for consumers;

6   and (f) whether Nissan's concealment violated any 'legislatively'

7   declared policies." (Id.)

8        Plaintiffs explain that this will all be proved by common

9   evidence because the "defective timing chain system is uniform

10  across all class vehicles" and all the evidence surrounding the

11  defect will thus relate to all members of the class. (Id. at 16-

12  17.)  As with the CLRA, Plaintiffs claim they will show reliance

13  and injury for causation purposes with common evidence that (1)

14  Nissan knew of the defect; (2) Nissan did not disclose the defect

15  in order to save money; and (3) Nissan concealed the defect to

16  shift repair costs to vehicle owners or lessees after the end of

17  the warranty period, as well as to encourage purchase of the class

18  vehicles in the first place. (Id. at 17.)

19       Defendants present the same arguments for the UCL claim as

20  for the CLRA claim.  For the UCL claim, Defendants note that

21  "[i]ndividual determinations would be needed to assess whether

22  class members are entitled to restitution" because restitution

23  requires an examination of what the Plaintiffs paid and the value

24  of Plaintiffs received. (Opp'n at 19.)

25       Plaintiffs reply that the UCL claim does not require

26  individual determinations of deception, reliance, and injury for

27  restitution; instead, they must show that members of the public

28  are likely to be deceived by the defendant. (Reply at 22 (citing

21

1  <u>In re Tobacco II Cases</u>, 46 Cal. 4th 326, 312, 326 (2009)).)

2  Further, Plaintiffs argue they are not seeking a full refund of

3  the purchase price as restitution, so there are no individualized

4  damages issues.  (<u>Id.</u>)

5      The Court holds that, as with the CLRA claim, Plaintiffs can

6  use common proof for their UCL claim.  First, Plaintiffs can rely

7  on an underlying CLRA violation for their UCL claim, which alone

8  is sufficient to allow this claim to go forward.  Second,

9  Plaintiffs will use common evidence to make their fraud claim, as

10 described below.  Lastly, Plaintiffs have sufficiently alleged

11 that common proof would be used for the unfair prong of the UCL.

12 Defendants' restitution argument will be addressed below.

13              **ii.  California Fraud and Breach of Warranty Class**

14      This class also alleges two different causes of action:

15 common law fraud and breach of the implied warranty of

16 merchantability under the Song-Beverly Warranty Act.

17                  **(a)  Breach of Warranty**

18      The Song-Beverly Warranty Act's implied warranty of

19 merchantability requires that the consumer goods "(1) Pass without

20 objection in the trade under the contract description. (2) Are fit

21 for the ordinary purposes for which such goods are used. (3) Are

22 adequately contained, packaged, and labeled. (4) Conform to the

23 promises or affirmations of fact made on the container or label."

24 Cal. Civ. Code § 1791.1(a)(1)-(4).  For vehicles, the question "is

25 whether the vehicle is fit for driving."  <u>Keegan</u>, 284 F.R.D. at

26 537.  "The implied warranty of merchantability may be breached by

27 a latent defect undiscoverable at the time of sale."  <u>Mexia v.</u>

28

Rinker Boat Co., 174 Cal. App. 4th 1297, 1304-5 (2009)(collecting cases).

Plaintiffs argue here that the class vehicles were sold with same latent defect, and thus the same likelihood of experiencing a timing system malfunction and safety risks.  (Mot. at 17-18.) "Again, the evidence that demonstrates this is applicable across the board because Nissan itself addressed the timing chain system Defect as a single problem common to all Class Vehicles." (Id. at 18).

Defendants argue that "a mere *theoretical* defect that does not result in any malfunction does not state a merchantability claim."  (Opp'n at 15 (citing Taragan v. Nissan N. Am., Inc., No. C 09-3660 SBA, 2013 WL 3157918, at (N.D. Cal. June 20, 2013).) According to Defendants, the evidence shows that "only a small percentage of vehicles ever displayed a timing chain problem," thus demonstrating that "manifestation on a classwide basis" cannot be established. (Id. (citing Padmanaban Dec. ¶¶ 7.1-7.4; App'x 1-4).)  Further, Defendants argue that the timing chain system's problems do not make the vehicles unsafe; rather, when the problem manifests, it is merely as engine noise.  (Id.) Defendants point out that the named Plaintiffs responded differently to the engine noise, and none had serious safety issues.  (Id. at 16.)  Lastly, Defendants claim that whether a class member was injured would be an individual determination, as would the timeliness of the claims brought; Defendants claim that the implied warranty of merchantability is limited to the duration of the express warranty.  (Id. at 17-18.)

23

1    Plaintiffs respond that there is the same defect for all the
2    alleged class vehicles when they left Nissan's factory, and this
3    common defect — not the further manifestation of engine failure —
4    is sufficient for showing common questions of fact and law
5    predominate.  (Reply at 17-18.)  The timing chain system problem
6    was a latent defect, Plaintiffs argue, that made the engine
7    "susceptible to premature wear."  (Id. at 17.)  For the timeliness
8    issue, Plaintiffs point to California and Ninth Circuit precedent
9    holding that the implied warranty can extend longer than an
10   express warranty for latent defects that otherwise would not
11   appear in the express warranty time period.  (Id. at 17-19 (citing
12   Daniel v. Ford Motor Co., 806 F.3d 1217, 1222-23 (9th Cir. 2015);
13   Mexia, 174 Cal. App. 4th at 1305-06).)

14       The Court finds that the breach of the implied warranty of
15   merchantability claim is predominated by common questions of fact
16   and law.  The court in Keegan illustrated how the manifestation of
17   the defect was a "merits inquiry" that was "particularly suited to
18   resolution as a class action."  284 F.R.D. at 537.  If Defendants
19   can show that the allegedly defective design is not "substantially
20   certain" to result in the manifestation of "premature wear" on the
21   engine, as Plaintiffs claim it will, then Defendants will prevail
22   in this cause of action as against the class.  Since this merits
23   question would be answered either way in a manner common to the
24   class, the Court holds this question suitable for class
25   certification.

26              **(b)  Fraud**

27       Common law fraud in California requires Plaintiffs to show:
28   "a false representation, knowledge of its falsity, intent to

                                 24

1  defraud, justifiable reliance, and damages." <u>Vess v. Ciba-Geigy</u>
2  <u>Corp. USA</u>, 317 F.3d 1097, 1105 (9th Cir. 2003)(internal quotation
3  omitted).

4      Plaintiffs claim common evidence will show classwide fraud.
5  (Mot. at 18-19.)  "Evidence showing that Nissan refused to timely
6  correct the defective timing chain system and, instead, knowingly
7  sold Class Vehicles containing the defective system to the public
8  is applicable classwide." (<u>Id.</u> at 18.)  Further, Plaintiffs argue
9  that there is a presumption of reliance here because the claim is
10  based on a material fraudulent omission by Nissan. (<u>Id.</u> at 19
11  (citing <u>Plascencia v. Lending 1st Mortg.</u>, 259 F.R.D. 437, 447
12  (N.D. Cal. 2009).)  Plaintiffs claim that they will use common
13  evidence to show: "(a) Nissan was aware that the timing chain
14  system was defective and dangerous; (b) Nissan deliberately
15  withheld such information; and, if so, whether (c) a reasonable
16  person would find such information important in deciding whether
17  to purchase a Class Vehicle." (<u>Id.</u>)

18      Defendants address the common law fraud claim with the same
19  arguments as were brought against the California statutory class
20  discussed above.  Particular to this claim, Defendants argue that
21  "[a] common law fraud claimant must establish actual reliance upon
22  the alleged representation or omission" and that there is no
23  presumption of reliance applicable here because such a presumption
24  is limited to certain claims, such as securities fraud. (Opp'n at
25  18-19 (citing <u>Desai v. Deutsche Bank Secs. Ltd.</u>, 573 F.3d 931,
26  941-42 (9th Cir. 2009); <u>Mirkin v. Wasserman</u>, 5 Cal. 4th 1082, 1093
27  (1993).)

28

The Court holds the common law fraud class is appropriate to
determine on a classwide basis.  The California Supreme Court in
Mirkin noted that there are instances of consumer class actions
where the Court found the presumption appropriate because "[t]he
plaintiffs in each case specifically pled that the defendants had
made identical representations to each class member." Mirkin, 5
Cal. 4th at 1094.  Further, Plaintiffs have cited other cases
besides securities cases where the presumption applied. (See
Reply at 20.)  Thus, Plaintiffs can overcome the causation and
reliance common proof hurdle.  Plaintiffs' other arguments of
common proof for Defendants' knowledge and concealment of the
defect, and that such a defect was material to the class members,
apply with equal force here as for their other causes of action,
making this cause of action appropriate for class certification.

### iii. Washington Class

The Washington Consumer Protection Act ("CPA") class must
show "(1) an unfair or deceptive act or practice; (2) occurring in
trade or commerce; (3) that impacts the public interest; (4) and
causes injury to the plaintiff in his or her business or property;
and (5) such injury is causally linked to the unfair or deceptive
act." Pierce v. NovaStar Mortg., Inc., 238 F.R.D. 624, 626 (W.D.
Wash. 2006). Courts have held that causation and reliance can be
presumed in cases where there is an allegation that the defendant
made a material omission. Id. at 629-30; see also Grays Harbor
Adventist Christian Sch. v. Carrier Corp., 242 F.R.D. 568, 573
(W.D. Wash. 2007).

Plaintiffs argue here, just as they did with the California
classes, that all evidence will be common regarding whether Nissan

1  withheld the defect from the public.  (Mot. at 20-21.)  Plaintiffs

2  claim that there will also be common proof of injury because the

3  defect is common across all class vehicles.  (<u>Id.</u>)  Lastly,

4  Plaintiffs rely on the presumption of reliance for common proof of

5  causation.  (<u>Id.</u>)

6       Defendants' Opposition does not provide any argument that the

7  Washington class fails the predominance test; however, it does

8  note that the CPA requires proof of causation.  (Opp'n at 19.)

9       The Court finds that there are common issues of fact and law

10 present for the Washington class, particularly as Defendants have

11 failed to provide any argument to counter Plaintiff's arguments

12 and alleged evidence of common defects.  Just as with the

13 California classes, there is common evidence of defect, knowledge,

14 and materiality of Defendants' omission cited by Plaintiffs in the

15 Pifko declaration.  Further, the presumption of reliance based on

16 the identical material omission is sufficient basis of common

17 proof for reliance and causation.   Therefore, there are common

18 issues among the class.

19                    **iv.  Classwide Damages**

20      In <u>Comcast Corp. v. Behrend</u>, 133 S. Ct. 1426, 1433 (2013),

21 the Supreme Court clarified the standard for establishing

22 classwide damages.  The Ninth Circuit has explained that <u>Comcast</u>

23 requires that "plaintiffs must be able to show that their damages

24 stemmed from the defendant's actions that created the legal

25 liability."  <u>Leyva v. Medline Indus., Inc.</u>, 716 F.3d 510, 514 (9th

26 Cir. 2013).

27      Plaintiffs first argue that "[t]he fact that some Class

28 Vehicles have not yet experienced problems associated with the

defective timing chain system is, on its own, insufficient to defeat commonality or predominance," citing <u>Wolin</u>, 617 F.3d at 1773, and <u>Keegan</u>, 284 F.R.D. at 524, as drawing a distinction between "the nature of the defect and [the defect's] consequences." (Mot. at 21-22.) Plaintiffs acknowledge that manifestation of the alleged defect would be relevant to the extent of potential damages after trial. (<u>Id.</u> at 22-23.)

Plaintiffs also argue that they allege two damages models that comply with the Supreme Court's requirements in <u>Comcast</u>. (<u>Id.</u> at 23.) Plaintiffs claim the California Statutory class and the Washington class are entitled to restitution for amounts spent to diagnose and repair the defective timing chain systems. (<u>Id.</u>) Plaintiffs argue this model complies with <u>Comcast</u> because "it is consistent with Plaintiffs' theory and calculating the amount of money expended in connection with the diagnosis and/or repair of the defective timing chain system can be accomplished by applying economic principles to common, classwide evidence." (<u>Id.</u> at 23-24 (citing Pifko Decl., Ex. 26 at 232-7).)

Plaintiffs argue that the California Fraud and Breach of Warranty class is entitled to "benefit of the bargain damages." (<u>Id.</u> at 24.) Plaintiffs' theory is that "Nissan's fraudulent behavior induced them to purchase Class Vehicles that did not comport with their safety expectations, and had Nissan disclosed the existence of the defective timing chain system or the high costs of repair, they would have paid less." (<u>Id.</u>) The class members "who have not yet paid to repair the timing chain defect will receive the benefit of the bargain if the defective timing chain system is repaired." (<u>Id.</u> at 24-25.) Thus, Plaintiffs

28

claim, "under the benefit of the bargain or cost of repair model, damages consist of the average amount each member can expect to pay to have the defective timing chain system repaired at an authorized Nissan dealership." (Id. (citing Pifko Decl., Ex. 26 at 232-7).)

Defendants argue that the California Statutory and Washington classes' proposed damages — the costs of diagnosis and repair of the defect — are rife with individual issues. (Opp'n at 21-22.) Defendants also object to the proposed damages for the California Fraud and Breach of Warranty class, claiming that Plaintiffs' expert made a flawed model by "applying some sort of average repair costs" as the measure of damages. (Id. at 22.) This "benefit of the bargain" is the wrong measure of damages because class members never bargained for a vehicle free of all defects, Defendants argue, and the end of the express warranty period shifts the risk of repairs from Defendants to consumers. (Id. at 22-23.)

Further, Defendants argue that restitution is not the same as the costs of actual or average repairs; instead, it is measured by the difference between the amount paid and the value received. (Id. at 23.) Because class members have a wide variety of individual scenarios for this damages measure caused by different prices paid, different levels of value received, and different repair costs, there is no single formula that could be applied to the classes. (Id.)

Plaintiffs maintain that the presence of individualized damages alone does not defeat class certification. (Reply at 24 (citing Pulaski & Middleman, LLC v. Google, Inc., 802 F.3d 979,

987 (9th Cir. 2015).)  Plaintiffs explain that their damages expert, after further discovery, can perform a classwide remedies analysis for the right part numbers[3] in order to show average repair costs.  (Id. & n.26 (citing Dkt. No. 135, Pifko Decl., Ex. 26).)  Plaintiffs further argue that their measure of "benefit of the bargain" damages is appropriate because "[m]embers of this Class bargained for vehicles that were safer than they were at the time of sale, and overpaid by the amount of money necessary to make the vehicles conform (i.e., the cost of repairs)." (Id. at 25.)  Lastly, Plaintiffs rely on Pulaski to show that "[w]here plaintiffs are 'deceived by misrepresentations into making a purchase,' restitution is based on 'what a purchaser would have paid at the time of purchase had the purchaser received all the information.'" (Id. (quoting Pulaski, 802 F.3d at 988-89).)

     Here, the Court finds that Plaintiffs have sufficiently alleged common damages formulas for the three classes.  The class vehicles are alleged to have a common defect that the California Statutory and Washington classes all had repaired, thus spending money that they would not have needed to spend had Nissan either disclosed the defect or repaired itself.  Thus, return of the average cost of repair would provide restitution to these class members because they have already spent that money to repair or diagnose their vehicles.  The same is true for the California Fraud and Breach of Warranty classes.  By receiving restitution in

---

     [3]   Plaintiffs acknowledge Defendants' objection that Plaintiffs' expert included the wrong vehicle parts in her analysis, but argue that "Thompson is able to perform a classwide remedies analysis once the proper experts and/or trier of facts provides her with the pertinent part numbers." (Reply at 24 n.26.)

the amount of average repairs, the class would be getting the

benefit of their bargain because they would be put in the same

position they would have been had the car not been sold with the

defective timing chain system — it is the cost necessary to make

the vehicles conform to the value Plaintiffs thought they were

getting in the price tendered.

### 2.   Superiority

Rule 23(b)(3) also requires a class action to be "superior to

other available methods for fairly and efficiently adjudicating

the controversy."  Fed. R. Civ. P. 23(b)(3).  The Rule further

provides four factors the Court must consider in Rule 23(b)(3)(A)

through (D):

> (A)   the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B)   the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C)   the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D)   the likely difficulties in managing a class action.

Plaintiffs primarily argue that "recovery on an individual

basis would be dwarfed by the cost of litigating on an individual

basis."  (Mot. at 25.)

Defendants argue that Plaintiffs do not "seriously consider"

the four factors from the Federal Rules of Civil Procedure.

(Opp'n at 24.)  Particularly, Defendants argue that the practical

problems for the class suit are "overwhelming."  (Id.)  Defendants

give a host of questions Defendants claim are individual and

require specific, individual facts to answer.  (Id.)  Also,

Defendants argue they may assert individual defenses, although

1   they do not provide an example of any.  (Id.)  Lastly, Defendants

2   claim that small damages are insufficient to make a class action

3   appropriate, particularly because individual actions are a viable

4   alternative here.  (Id. at 25.)  Defendants claim that, for

5   example, CLRA cases are litigated on an individual basis

6   regularly, and attorneys' fees are available in those actions.

7   (Id.)

8       Plaintiffs maintain that the factors in the Rule are all met

9   and the class action is the superior litigation choice based on

10  the size of the class and the potentially small individual

11  damages.  (Reply at 25.)  Plaintiffs argue "it is unreasonable to

12  expect Class Members who cannot afford to repair the timing chain

13  system defect can undertake the burden of pursuing . . . the

14  matter in smalls claims court" in courts of general jurisdiction

15  without fee-shifting.  (Id.)  Further, Plaintiffs claim that

16  "Nissan's litany of questions that make the case individual are

17  assuming false facts."  (Id.)  Namely, Plaintiffs maintain that

18  "[a]ll Class Vehicles exhibited the same timing chain system

19  defect that created the same risks of catastrophic engine failure

20  and bodily harm" and that "Nissan knew of the defect throughout

21  the Class Period, but consistently failed to divulge this

22  information."  (Id.)

23      The Court finds that the class action is a superior

24  litigation vehicle for this case.  The class members have an

25  interest in prosecuting the case, particularly because it involves

26  vehicle safety, but there is little incentive to do so

27  individually with small potential damages available.  And

28  prosecuting this case as a class would provide notice to other

32

1   class members regarding potentially needed repairs and safety

2   concerns.  Further, there is no evidence of pre-existing

3   litigation by or against the class members.  Concentrating the

4   claims in one forum is desirable because it resolves common legal

5   and factual issues, thus reducing inefficiencies in the use of

6   judicial resources.  Lastly, these kinds of vehicle consumer

7   defect class action cases are brought fairly regularly, and there

8   are no particular difficulties in managing such class actions when

9   appropriate.  Therefore, the Court holds this requirement is met.

10      **C.   Ascertainability**

11      Although not strictly a part of the requirements of Rule 23,

12  courts have held that a threshold requirement for class

13  certification is that the class, as defined, "must be adequately

14  defined and clearly ascertainable before a class action may

15  proceed." Wolph v. Acer Am. Corp., 272 F.R.D. 477, 482 (N.D. Cal.

16  2011) (quoting Schwartz v. Upper Deck Co., 183 F.R.D. 672, 679-80

17  (S.D. Cal. 1999)).  The class definition should be "precise,

18  objective and presently ascertainable" such that "it is

19  administratively feasible to determine whether a particular person

20  is a class member." Id. (quotation marks and citations omitted).

21      However, the Manual for Complex Litigation indicates that the

22  concerns that motivate the ascertainability inquiry are less

23  pressing in an action under Rule 23(b)(1) or 23(b)(2) as compared

24  to a Rule 23(b)(3) action: "[b]ecause individual class members

25  must receive the best notice practicable and have an opportunity

26  to opt out, and because individual damage claims are likely, Rule

27  23(b)(3) actions require a class definition that will permit

28  identification of individual class members, while Rule 23(b)(1) or

1   (b)(2) actions may not."  Federal Judicial Center, <u>Manual for</u>

2   <u>Complex Litigation, Fourth</u>, § 21.222 (2004).

3         This action is brought under Rule 23(b)(3); therefore,

4   Plaintiffs must show how individual class members will be

5   identifiable.  Plaintiffs here claim that class members are

6   ascertainable through ownership and lease records from Nissan,

7   dealerships, and the Department of Motor Vehicles.  (Mot. at 10.)

8   Further, Plaintiffs claim that class members will be identifiable

9   through records concerning diagnosis and repair of the defective

10  timing chain system.  (<u>Id.</u>)

11        Defendants claim that there is a problem with

12  ascertainability because class membership depends on whether an

13  owner or lessee of a class vehicle paid for repairs and

14  diagnostics and there is no administratively feasible way to

15  identify those persons.  (Opp'n at 9.)  This is complicated,

16  Defendants claim, because "repairs may, and frequently do, occur

17  after the vehicle's written warranty has expired," and Nissan

18  would not have records for such post-warranty repairs because they

19  could take place in any repair shop.  (<u>Id.</u>)  Additionally,

20  Defendants argue that causation is also a problem for

21  ascertainability because a repair must be made as a result of the

22  alleged defect, so the Court would have to determine cause in fact

23  for each class member.  (<u>Id.</u>)

24        Plaintiffs respond that identification of the California

25  statutory and Washington classes is feasible through class

26  members' "own records concerning the diagnosis or repair of the

27  defective chain system."  (Reply at 13.)  Plaintiffs claim that

28  "[c]ommon experience and logic demonstrate that individuals are

34

typically meticulous about keeping records of the repairs made to their cars."  (<u>Id.</u>)  In addition, Plaintiffs claim that Department of Motor Vehicle records, rather than repair records, can suffice for the California fraud and breach of warranty class.  (<u>Id.</u>)

In <u>Keegan</u>, a class of "all purchasers or lessees" of two Honda models was ascertainable because "the definitions rely on objective criteria that are verifiable through documentation of a purchase or lease of a class vehicle."  284 F.R.D. at 521-22.

Here, the Court finds that the presence of repair and ownership or lease records is strong basis for determining membership in all three classes.  Further, the materiality of Nissan's alleged omission can also be shown on a classwide basis. A reasonable consumer would consider the presence of a defect in the timing chain system an important consideration in deciding whether to buy or lease a vehicle because of the safety concerns and also potential repair costs — particularly as the repairs would likely arise after the warranty period ended.  Therefore, the Court finds ascertainability met for all three classes.

## IV.  CONCLUSION

For all the above reasons, the Court GRANTS Plaintiffs' Motion for Class Certification.


IT IS SO ORDERED.


Dated: April 5, 2016

DEAN D. PREGERSON
United States District Judge

35