Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Mark Pifko (SBN 228412)
mpifko@baronbudd.com
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, California  91436
Telephone:  (818) 839-2333
Facsimile:  (818) 986-9698

Jordan L. Lurie (SBN 130013)
Jordan.Lurie@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
**CAPSTONE LAW APC**
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:  (310) 556-4811
Facsimile:  (310) 943-0396

Payam Shahian (SBN 228406)
PShahian@slpattorney.com
**STRATEGIC LEGAL PRACTICES APC**
1840 Century Park East, Suite 430
Los Angeles, California 90067
Telephone:  (310) 277-1040
Facsimile:  (310) 943-3838

Attorneys for Plaintiffs and the Classes

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA -- WESTERN DIVISION

| | |
|---|---|
| KOBE FALCO, JOEL SEGUIN, ALFREDO PADILLA, and ROBERTO GALVAN, individually, and on behalf of other members of the public similarly situated,<br><br>　　　　Plaintiffs,<br><br>　　vs.<br><br>NISSAN NORTH AMERICA, INC. a California corporation, and NISSAN JIDOSHA KABUSHIKI KAISHA d/b/a NISSAN MOTOR CO., LTD., a publicly traded company in Japan,<br><br>　　　　Defendants. | Case No.:  2:13-cv-00686-DDP-MANx<br><br>**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:　　July 16, 2018<br>Time:　　10:00 a.m.<br>Place:　　Courtroom 9C<br><br><br>Dist. Judge:　　Hon. Dean D. Pregerson<br>Magistrate:　　Hon. Margaret A. Nagle<br>Action Filed: January 31, 2013<br>Trial Date:　　October 10, 2017 (vacated) |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 16, 2018, at 10:00 a.m., in Courtroom 9C of the above-captioned Court, located at 350 West 1st Street, Los Angeles, California 90012, the Honorable Dean D. Pregerson presiding, Plaintiffs Kobe Falco, Joel Seguin, Alfredo Padilla, and Roberto Galvan, on behalf of themselves and all others similarly situated, will, and hereby do, move this Court to:

1.      Finally approve the settlement described in the Settlement Agreement, attached as Exhibit A to the original Declaration of Roland Tellis in support of Plaintiffs' Motion for Preliminary Approval;

2.      Finally certify the California and Washington classes under Rule 23; and

3.      Enter a final judgment to dismiss the action.

This Motion is based upon:  (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Final Approval of Class Action Settlement; (3) the Declarations of Roland Tellis, Jordan Lurie, and Payam Shahian; (4) the Declaration of Cameron R. Azari; (5) the Settlement Agreement and attached exhibits thereto; (6) the [Proposed] Order Granting Final Approval of Class Action Settlement; (7) the [Proposed] Judgment; (8) the records, pleadings, and papers filed in this action; and (9) such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

///

///

///

Dated:  June 1, 2018                     Respectfully submitted,


                                  By: */s/ Roland Tellis*
                                        _____
                                        Roland Tellis
                                        Mark Pifko
                                        **Baron & Budd, P.C.**
                                        15910 Ventura Boulevard, Suite 1600
                                        Encino, California 91436
                                        Telephone: (818) 839-2333

                                        Jordan L. Lurie
                                        **Capstone Law APC**
                                        1875 Century Park East, Suite 1000
                                        Los Angeles, California 90067
                                        Telephone: (310) 556-4811

                                        Payam Shahian
                                        **Strategic Legal Practices APC**
                                        1840 Century Park East, Suite 430
                                        Los Angeles, California 90067
                                        Telephone: (310) 277-1040

                                        *Attorneys for Plaintiffs and the Classes*

1

**TABLE OF CONTENTS**

2  I.   INTRODUCTION ...................................................................................1

3  II.  FACTS AND PROCEDURAL HISTORY ..........................................2

4        A.   Overview of the Litigation and Procedural History .......................2

5        B.   Plaintiffs' Extensive Investigation and Discovery..........................6

6        C.   The Parties' Protracted Arm's Length Settlement Negotiations .................7

7        D.   Terms of the Proposed Class Action Settlement ............................8

8        E.   The Court Granted Preliminary Approval.....................................10

9        F.   Implementing the Class Notice Program .....................................10

10 III. ARGUMENT ......................................................................................11

11       A.   The Parties Have Met Their Obligations Under Preliminary Approval

12            Order....................................................................................................11

13            1.   CAFA Notice Requirements Were Satisfied.......................11

14            2.   Rule 23(c) Notice Requirements Were Satisfied ...............12

15       B.   The Court Need Not Revisit Class Certification ..........................13

16       C.   This Post-Certification Settlement, Negotiated At Arms'-Length, Is

17            Procedurally And Reasonable And Entitled To A Presumption of

18            Fairness...............................................................................................13

19       D.   The Court Should Grant Final Approval of the Class Settlement ..............15

20            1.   The Strength of Plaintiffs' Case Balanced with the Risk,

21                 Expense, Complexity, and Duration of Continued Litigation,

22                 Including Maintaining Class Certification Through Trial ..................16

23            2.   The Amount Offered in the Settlement Supports Final Approval ......19

24            3.   The Extent of Discovery and Stage of Proceedings...........21

25            4.   Views of Counsel Should Be Accorded Substantial Weight..............22

26            5.   The Reaction of Class Members to the Proposed Settlement..............23

27 IV.  CONCLUSION ...................................................................................23

28

1

# **TABLE OF AUTHORITIES**

2

## CASES

3   *Aarons v. BMW of N. Am. LLC*, No. 11-7667, 2014 U.S. Dist. LEXIS

4      118442 (C.D. Cal. Apr. 29, 2014) ...................................................................18

5   *Adoma v. Univ. of Phoenix, Inc.,* 913 F. Supp. 2d 964 (E.D. Cal. 2012) ...................16

6   *Asghari v. Volkswagen Grp. Of America*, No. 13-02529-MMM, 2015

7      WL 12732462 (May 29, 2015) .....................................................................14

8   *Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877 (C.D. Cal. 2016)........... 13, 18, 19

9   *Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534 (C.D. Cal.

10      2012)...........................................................................................................17

11   *Churchill Village v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)....................................15

12   *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ..............................13

13   *Coba v. Ford Motor Co.*, No. 12-1622-KM, 2017 WL 3332264 (D.N.J.

14      Aug. 4, 2017) ............................................................................................18

15   *Collado v. Toyota Motor Sales, U.S.A., Inc.*, No. 10-3113, 2011 U.S.

16      Dist. LEXIS 133572 (C.D. Cal. Oct. 17, 2011).........................................20

17   *Corson v. Toyota Motor Sales U.S.A.*, No. 12-8499-JGB, 2016 WL

18      1375838 (C.D. Cal. Apr. 4, 2016) .............................................................19

19   *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ....................................................12

20   *Eisen v. Porsche Cars North American, Inc.,* No. 11-09405-CAS, 2014

21      WL 439006 (C.D. Cal. Jan. 30, 2014).................................... 18, 20, 21, 23

22   *Franklin v. Kaypro*, 884 F.2d 1222 (9th Cir. 1989) ..................................................13

23   *Grodzitsky v. Am. Honda Motor Co.*, No. 2-01142-SVW, 2014 U.S.

24      Dist. LEXIS 24599 (C.D. Cal. Feb. 19, 2014)..........................................17

25   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ...........................................15

26   *Hartless v. Clorox Co.*, 273 F.R.D. 630 (S.D. Cal. 2011) ...........................................12

27   *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015)........................12

28   *In re Toys "R" Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438 (C.D. Cal.

2014)..................................................................................................... 14, 18

*Linney v. Cellular Alaska Partnership*, 151 F.3d 1234 (9th Cir. 1998)......................21

*Mendoza v. Hyundai Motor Co.*, No. 15-01685-BLF, 2017 WL 342059

    (N.D. Cal. Jan. 23, 2017)........................................................................................19

*Milligan v. Toyota Motor Sales, U.S.A.*, No. 09-05418-RS, 2012 U.S.

    Dist. LEXIS 189782 (N.D. Cal. Jan. 6, 2012) ........................................................23

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D.

    Cal. 2004)..................................................................................................... 15, 18

*Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615 (9th Cir.

    1982)........................................................................................................... 15, 19

*Philips v. Ford Motor Co.*, No. 14-02989, 2016 WL 7428810 (N.D. Cal.

    Dec. 22, 2016)........................................................................................................17

*Rannis v. Recchia*, 380 F. App'x 646 (9th Cir. 2010)...................................................12

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ............................... 15, 19

*Rodriguez v. West Pub. Corp.*, 463 F.3d 948 (9th Cir. 2009)....................................16

*Seifi v. Mercedes-Benz USA*, No. 12-05493-THE, 2015 WL 12964340

    (N.D. Cal. Aug. 18, 2015) .....................................................................................20

*Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980 (N.D. Cal. 2010) .............................16

*Warner v. Toyota Motor Sales U.S.A.*, No. 15-02171-FMO (C.D. Cal.

    May 21, 2017).........................................................................................................19

*Zakskorn v. Am. Honda Motor Co.*, No. 11-02610-KJM, 2015 WL

    3622990 (E.D. Cal. June 9, 2015) .........................................................................19

**OTHER AUTHORITIES**

28 U.S.C. § 1332(d) Class Action Fairness Act (CAFA))................................... 10, 11

28 U.S.C. § 1715(d).....................................................................................................11

Fed. R. Civ. P. 23(a) .............................................................................................. 10, 13

Fed. R. Civ. P. 23(b)(3)...............................................................................................10

Fed. R. Civ. P. 23(c)(2) ...............................................................................................12

1     NO TABLE OF AUTHORITIES ENTRIES FOUND.

## I.      INTRODUCTION

After more than four years of hard-fought litigation, including certifying three classes through contested motion, and only days before the scheduled October 10, 2017 trial date, Plaintiffs Kobe Falco, Joel Seguin, Alfredo Padilla, and Roberto Galvan, on behalf of themselves and all others similarly situated, reached a settlement with Defendants Nissan North America, Inc. ("Nissan USA") and Nissan Jidosha Kabushiki Kaisha d/b/a/ Nissan Motor Co., Ltd. ("Nissan Japan") (collectively, "Defendants").  The proposed settlement (the "Settlement") confers substantial relief on all Class Members and resolves Plaintiffs' claims that Defendants designed, manufactured, distributed, marketed, sold, and warranted a defective timing chain tensioning system, including the primary timing chain tensioner, primary timing chain guide, secondary timing chain tensioners, and secondary timing chain tensioner shoes (the "Timing Chain Tensioning System" or "System") installed in certain Nissan vehicles (collectively, the "Class Vehicles"[1]).

Finalized well after the Court certified the classes on contested motion, the Settlement is free of any badges of collusion.  Indeed, the Settlement is the result of prolonged, arms' length negotiations between the Parties who participated in numerous mediation sessions with the Honorable Howard B. Wiener (Ret.), a distinguished California appellate judge and mediator respected by California courts. The procedure by which the Settlement was reached is fair and reasonable.

The Settlement is also substantively fair, reasonable and adequate under the Ninth Circuit's factors for approving class action settlements.  Under the Settlement, Class Members are entitled to partial reimbursement for money spent in connection with the diagnosis of, repair to, or replacement of the primary or secondary timing

---

[1] The Class Vehicles are the 2004-2008 model year Nissan Maxima, 2004-2009 model year Nissan Quest, 2004-2006 model year Nissan Altima (equipped with a VQ35 engine), 2005-2007 model year Nissan Pathfinder, 2005-2007 model year Nissan Xterra, and 2005-2007 model year Nissan Frontier (equipped with a VQ40 engine).

chain systems or components in a Class Vehicle (a "Qualifying Repair").[2] Alternatively, in lieu of a cash payment, Class Members, at their sole election, may opt to receive a voucher to be used toward the purchase of a new Nissan vehicle (the "Voucher").  Even Class Members who incur expenses *after* the effective date of the Settlement are entitled to benefits under the Settlement's ongoing claims procedure.

By providing direct relief to Class Members who have suffered, or will suffer, out-of-pocket costs due to the alleged timing chain defect, the Settlement is fair and adequate in light of the risks of litigation.  In particular, two fully briefed dispositive motions—a motion to decertify the classes and a motion for summary judgment— were pending at the time of settlement.  Even if Plaintiffs were to prevail, they would have immediately proceeded to a high-stakes class-wide trial, where the outcome was uncertain.  The risks of further litigation are acute, and Ninth Circuit policy expressly defers to the views of experienced counsel weighing such risks, particularly in the late-stages of litigation.

Accordingly, the Parties respectfully request that the Court enter an order (a) granting final approval of the Settlement and overruling any objections that may be filed on or before June 11, 2018, (b) granting Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards, and (c) entering the concurrently-filed proposed Judgment.

## II.     FACTS AND PROCEDURAL HISTORY

### A.     Overview of the Litigation and Procedural History

On December 27, 2012, Plaintiff Kobe Falco filed a putative class action complaint against Defendants in the Superior Court of the State of California for the County of Los Angeles (Case No. BC498238).  Mr. Falco's action alleged that certain Nissan vehicles contained timing chain defects, in violation of the California

---

[2] As discussed in detail below, reimbursement percentages are based on the mileage of the vehicle at the time of repair, and vehicles with more than 120,000 miles at the time of repair are not entitled to reimbursement.  In its Motion for Summary Judgment, Nissan argued that 120,000 miles is the full life expectancy of a vehicle.

Consumer Legal Remedies Act ("CLRA"), the Unfair Business Practices Act ("UCL"), and the Song-Beverly Consumer Warranty Act for Breach of Implied Warranty.  In response, on January 31, 2013, Nissan USA filed a Notice of Removal.  (Dkt. 1.)  A few days later, Plaintiff Joel Seguin filed a related action against Defendants, alleging violations of the CLRA, the UCL, the Song-Beverly Consumer Warranty Act for Breach of Implied Warranty, Fraud, and Unjust Enrichment.  *Seguin v. Nissan North America, Inc.*, Case No. 2:13-cv-00761-DDP-MAN (C.D. Cal. Feb. 4, 2013).

On May 6, 2013, Plaintiff Falco filed a Motion to Consolidate Related Cases and Appoint Interim Class Counsel, and on June 12, 2013, the Court issued an order dismissing the *Seguin* matter without prejudice, and granting leave to Plaintiffs to file an amended complaint which could include claims asserted on behalf of Plaintiff Seguin.  (Dkts. 15, 19 & 21.)  Plaintiffs then filed a First Amended Complaint ("FAC") on June 26, 2013, seeking relief on behalf of California and Washington state classes.  (Dkt. 22.)  The FAC added Plaintiffs Padilla and Galvan, and alleged violations of the CLRA, the UCL, the Washington Consumer Protection Act ("WCPA"), the Song-Beverly Consumer Warranty Act for Breach of Implied Warranty, Fraud, and Unjust Enrichment.  Plaintiffs alleged that the Class Vehicles contained one or more defects in the Timing Chain Tensioning System, which made it prone to premature failure, could not be reasonably repaired, presented a safety concern for drivers and occupants, and caused consumers to suffer significant monetary damages.

On July 31, 2013, Nissan Japan filed motions to dismiss Plaintiffs' FAC based on insufficient service of process and lack of personal jurisdiction, under Rules 12(b)(5), 4(c), and 12(b)(2).  (Dkts. 27 & 28.)  Also on that date, Nissan USA filed a motion to dismiss under Rule 12(b)(6).  (Dkt. 29.)  Plaintiffs attempted to cure purported deficiencies concerning their initial service of process, which resulted in Nissan Japan filing an additional Motion to Dismiss, which was again based on

1   insufficient service of process, on September 13, 2013.  (Dkt. 42.)  Defendants'

2   motions were opposed.  (Dkts. 37-41, 56.)

3       On October 10, 2013, the Court issued an Order denying Nissan USA's

4   motion to dismiss Plaintiffs' FAC under Rule 12(b)(6) as to Plaintiffs' CRLA,

5   implied warranty, UCL, WCPA, and fraud claims, and granting the dismissal of the

6   unjust enrichment claim.  (Dkt. 51.)  Nissan Japan's motion to dismiss Plaintiffs'

7   FAC based on insufficient service of process was denied on December 12, 2013.

8   (Dkt. 64.)

9       On that same day, the Court entered an order concerning Nissan Japan's

10  motion to dismiss for lack of jurisdiction, which permitted Plaintiffs to conduct

11  jurisdictional discovery concerning Nissan Japan's contacts with California and the

12  nature of the relationship between the Defendants.  (Dkt. 65.)

13      On March 14, 2016, Nissan Japan filed a motion for reconsideration to modify

14  the Court's order regarding its motion to dismiss for lack of personal jurisdiction in

15  light of a new decision by the United States Supreme Court. (Dkt 78).  Plaintiffs

16  opposed the motion.  (Dkts. 78 & 81.)  The motion was vacated by the Court on April

17  7, 2014, pursuant to a stipulation to dismiss Nissan Japan, and an order granting

18  Plaintiffs permission to file an amended complaint adding Nissan Japan as a party

19  without leave of the Court.  (Dkts. 83, 86 & 89.)

20      On October 31, 2014, Plaintiffs timely filed their Second Amended Complaint

21  ("SAC"), adding additional factual allegations to support their claims against Nissan

22  Japan.  (Dkt. 90.)  Nissan Japan then filed motions to dismiss for lack of personal

23  jurisdiction and failure to state a claim on December 8, 2014.  (Dkts. 99 & 100.)

24  Both motions were denied on April 6, 2015, with the exception that Plaintiffs' fraud

25  claim against Nissan Japan was dismissed.  (Dkt. 114.)

26      Nissan Japan filed a motion to certify the Court's order for interlocutory

27  appeal on May 11, 2015, which Plaintiffs opposed.  (Dkts. 118 & 121.)  On June 3,

28  2015, the Court denied the motion, with leave for Nissan Japan to renew the motion

if appropriate given the full factual record regarding jurisdiction at the close of discovery.  (Dkt. 124.)  On July 1, 2015, Nissan Japan proceeded to file a petition for writ of mandamus with the Ninth Circuit Court of Appeals, which was ultimately denied on September 15, 2015.  *In re Nissan Motor Co. Ltd.*, Case No. 15-72009, Dkt. 7 (9th Cir. Sept. 15, 2015).

Subsequently, after conducting substantial discovery, Plaintiffs filed their motion for class certification on August 17, 2015.  (Dkt. 130.)  Plaintiffs sought certification of the following three classes: (1) the "California Statutory Class," consisting of all California residents who purchased or leased a Class Vehicle in California and who have incurred actual expenses in connection with either the diagnosis or repair of the defective timing chain system; (2) the "California Fraud and Breach of Warranty Class," consisting of all California residents who currently own or lease a Class Vehicle in California and who have not yet had the defective timing chain system fully repaired; and (3) the "Washington Class," consisting of all Washington residents who purchased or leased a Class Vehicle in Washington and who have incurred actual expenses in connection with either the diagnosis or repair of the defective timing chain system.  Defendants opposed certification.  (Dkts. 139 & 147.)  Defendants also filed objections to Plaintiffs' expert reports (Susan Thompson, addressing damages, and Murat Okcuoglu, addressing automotive engineering), which were filed in support of class certification.  (Dkts. 142 & 143.)

Plaintiffs' motion for class certification was granted, in its entirety, on April 5, 2016.[3]  (Dkt. 166.)  Defendants filed a petition for permission to appeal the order, under Rule 23(f) in the Ninth Circuit, which was opposed by Plaintiffs.  Defendants' petition was denied.  (Dkts. 167 & 169.)

On May 8, 2017, Plaintiffs filed a motion to exclude the opinion testimony of

---

[3] The Court's Order modified the proposed Washington Class definition to be construed as:  "All purchasers or lessors of a Class Vehicle who purchased or leased the vehicle in Washington and who have incurred expenses in connection with either the diagnosis or repair of the defective timing chain system."  (Dkt. 166 at 13-15.)

Defendants' statistics expert, Jeya Padmanaban, which Defendants opposed and the Court denied on June 19, 2017. (Dkts. 203, 217 & 232.)

Defendants filed a motion for summary judgment on July 3, 2017, and a motion to decertify the classes on July 5, 2017, both of which were opposed by the Plaintiffs. (Dkts. 236, 239, 245 & 252.) The parties exchanged pre-trial documents, including jury instructions, deposition designations, and stipulations of fact on August 21, 2017, and then, held their in-person pre-trial meeting of counsel at Baron & Budd's California office on August 22, 2017. After the pre-trial meeting, the parties agreed to engage in settlement discussions with a mediator. (Dkts. 266, 278, 280, 282 & 292.) After reaching a settlement on October 6, 2017, Plaintiffs filed a notice of settlement and the Court vacated all pending dates as of October 10, 2017. (Dkts. 295, 297 & 298.)

### B.      Plaintiffs' Extensive Investigation and Discovery

This Settlement did not come quickly, nor was it easy. Both prior to and after the filing of this action, Plaintiffs thoroughly investigated and vigorously litigated this case. (*See*, *e.g.*, Declaration of Roland Tellis ["Tellis Decl."] ¶¶ 10-23.) Among other things, Plaintiffs fielded inquiries from prospective Class Members; consulted and retained automotive experts; researched publicly available materials and information provided by the National Highway Traffic Safety Administration ("NHTSA") concerning consumer complaints about the Timing Chain Tensioning System; reviewed and researched consumer complaints and discussions of Timing Chain Tensioning System failures in articles and forums online; reviewed various manuals and technical service bulletins discussing the alleged Timing Chain Tensioning System defect; conducted research into the various causes of actions; served third party subpoenas to produce documents on various authorized Nissan dealers in the United States; and drafted oppositions to Defendants' numerous motions as discussed above. (*Id.* ¶ 10.)

Plaintiffs also propounded extensive discovery on Defendants during the

1   course of litigation.  (*Id.* ¶ 10.)  In response, Defendants produced over 32,000 pages

2   of documents, including:  owners' manuals, maintenance and warranty manuals,

3   design documents (*e.g.*, technical drawings), technical service bulletins, field reports,

4   customer comments detail reports, internal emails, and other documents.  (*Id.* ¶ 11.)

5   Class Counsel also succeeded in acquiring discovery from Nissan Japan, after

6   defeating its motion to dismiss and motion for reconsideration to modify the Court's

7   order regarding its motion to dismiss for lack of personal jurisdiction.  (*Id.*)

8        In addition to reviewing Defendants' documents, Plaintiffs also conducted

9   their own testing, which included the hiring of experts, purchasing of an exemplar

10  Class Vehicle for expert analysis, as well as an engine from a Class Vehicle, and

11  conducting extensive testing regarding the alleged Timing Chain Tensioning System

12  defect. (*Id.* ¶ 12.)

13       Plaintiffs prepared for, took, and defended the depositions of over a dozen

14  witnesses in this case. For example, Plaintiffs successfully moved *ex parte* to take the

15  depositions of Shiho Kobayashi and Defendant Nissan Japan in Japan.[4] (Dkts. 76 &

16  80) Plaintiffs also deposed Defendants' Rule 30(b)(6) corporate representatives,

17  designated experts, and other witnesses, and defended the depositions of Plaintiffs

18  Falco, Seguin, Padilla, and Galvan, and Plaintiffs' designated experts.  (Tellis Decl.

19  ¶ 13.)

20       Finally, Plaintiffs prepared this case for trial.  A settlement was not reached

21  until after the parties had exchanged pre-trial documents, held the in-person pre-trial

22  meeting of counsel, and drafted motions *in limine*. (*Id.* at ¶¶ 20, 22-23.) The MOU

23  was signed only days before the October 10, 2017 trial date.  (*Id.* at ¶ 23.)

24       **C.      The Parties' Protracted Arms' Length Settlement Negotiations**

25       The proposed Settlement was the culmination of protracted discussions

26  between the Parties, voluminous discovery, and thorough analysis of the pertinent

27

28  _____

[4] These depositions eventually took place within the United States.

facts and law at issue. On July 7, 2017, the Parties attended a mediation in San Diego with the Honorable Howard B. Wiener (Ret.).  (Tellis Decl. ¶ 22.)  However, the Parties did not reach a final agreement at that time, and the Parties continued to litigate the case. (Dkts. 245 & 252.) After Defendants' motions for summary judgment and to decertify the classes were fully briefed, further efforts at settlement resumed.  On October 6, 2017, only 4 days before the scheduled trial, the Parties reached agreement on material terms for a settlement. (Tellis Decl. ¶ 23.) Subsequently, the parties spent six weeks negotiating the settlement agreement and related exhibits, including the notice to the class and the claim form. (*Id.*)

### D.     Terms of the Proposed Class Action Settlement

The Parties seek certification for purposes of settlement of the following two classes:  (1) All former or current owners or lessees of Class Vehicles who purchased or leased the vehicle in Washington, (the "Washington Class"); and (2) All former or current owners or lessees of Class Vehicles who purchased or leased the vehicle in California, except for the Excluded Parties (the "California Class").  Under the terms of the Settlement, Class Members who submit valid claims establishing out-of-pocket payment for Qualifying Repairs may elect to receive, subject to the limitations below, cash reimbursement or a Voucher, subject to the following:

a.     For Qualifying Repairs on Class Vehicles that are made after the Powertrain Coverage under the New Vehicle Limited Warranty has expired, but at fewer than 80,001 miles:  (i) reimbursement of 80% of the first $900 of Qualifying Repair costs actually paid by the Settlement Class Member; or (ii) a Voucher in the amount of $1,500.00.

b.     For Qualifying Repairs performed on Class Vehicles that exceed 80,000 miles but fewer than 100,001 miles at the time of repair: (i) reimbursement of 50% of the first $900 of the Qualifying Repair costs actually paid by the Settlement Class Member; or (ii) a Voucher in the amount of $1,000.00.

c.      For Qualifying Repairs performed on Class Vehicles that exceed 100,000 miles but do not exceed 120,000 miles: (i) reimbursement of 20% of the first $900 of the Qualifying Repair costs actually paid by the Settlement Class Member; or (ii) a Voucher in the amount of $500.00.

Class Vehicle mileage shall be determined as of the date of the Qualifying Repair reflected in the Appropriate Contemporaneous Documentation for Qualifying Repairs performed on or before the notice date, or  a repair order from an authorized Nissan dealer for a Qualifying Repair performed after the notice date.  Class Members will be able to apply for reimbursement for Repair costs, or a Voucher, by completing and submitting a claim form to the administrator, along with the basic, necessary documentary proof discussed above.

The Settlement Agreement also provides two levels of protection to ensure that the claims of Class Members are fairly and adequately processed and administered. If a claim is determined to be incomplete, the claims administrator will contact the Class Member one time by mail or e-mail, or both if available, to obtain additional information or supporting documentation.  If, following this contact, the Class Member's claim still does not meet the requirements set forth in this Settlement Agreement, or fails to include all required supporting documentation, then the claim will be rejected.

A Class Member who wishes to contest the Claim Administrator's rejection of the claim must do so within twenty (20) calendar days after the date of mailing of the notice of the rejection by serving a notice and statement of reasons indicating the claimant's grounds for contesting the rejection, along with any supporting documentation, and requesting review.

If the dispute concerning a claim cannot otherwise be resolved by Defendants' Counsel, Class Counsel, and the claims administrator within forty-five (45) calendar days of the request for review, the dispute shall be submitted to the Court for final decision.  The Court shall have no responsibility for determining, adjudicating or

1   resolving any claims until after a rejected claim has been contested.  Prior to a claim

2   being contested, the claims administrator shall have the sole responsibility for

3   evaluating whether a claim meets the criteria for a validated claim.  Nissan USA will

4   pay for all expenses related to claims administration.

5          **E.**       **The Court Granted Preliminary Approval**

6          Class Counsel filed Plaintiffs' Motion for Preliminary Approval of the Class

7   Action Settlement on December 1, 2017.  (Dkt. 303.)  Following the hearing on

8   January 12, 2018, the Court granted preliminary approval on February 1, 2018. (Dkt.

9   317.)  In its Order Granting Preliminary Approval, this Court determined that the

10  Settlement Class, as defined, satisfies the requirements of Federal Rules of Civil

11  Procedure 23(a) and 23(b)(3). (*Id*. ¶1.) The Court designated Plaintiffs Falco, Seguin,

12  Padilla, and Galvan as Class Representatives. (*Id*. ¶ 8.) The Court also appointed

13  Baron & Budd P.C., Capstone Law APC, and Strategic Legal Practices as Class

14  Counsel.  (*Id*. ¶ 9.)

15         Upon review of the Settlement terms, this Court also found that the

16  Settlement's "terms appear sufficiently fair, reasonable, and adequate" for the

17  purposes of preliminary approval.  (*Id*. ¶ 2.)  The Court approved the form of the

18  notice.  (*Id*. ¶ 6.) The Court also appointed Epiq as Claims Administrator to

19  administer the notice and claims process. (*Id*. ¶ 5(a).)

20         **F.**       **Implementing the Class Notice Program**

21         Pursuant to the Settlement Agreement and the Preliminary Approval Order,

22  Epiq and the Parties successfully implemented the Class Notice plan. On December

23  11, 2017, Epiq sent out notices to the Attorney Generals of California and

24  Washington, as well as the United States Department of Justice pursuant to the Class

25  Action Fairness Act ("CAFA"). (Declaration of Cameron R. Azari ["Azari Decl."] ¶

26  9.).  Epiq then obtained the contact information for Class Members from Defendants

27  and a third-party vendor, Polk. (*Id*. ¶¶ 10-12.)

28         On April 2, 2018, Epiq sent over 500,000 Class Notices to Class Members.

(*Id.* ¶ 12.) The Court-approved Class Notice advises Class Members about their rights under the Settlement and the Settlement's benefits, including the deadline to object, opt-out, or opt-in (for those with pending suits). The Class Notice also provides Epiq's toll-free number and the Settlement's website address https://www.falcovnissan.com/en, which serves as the primary claims portal. The Settlement website provides extensive information regarding the Settlement, including FAQs for Class Members, and maintains important documents for Class Members to review.  Over 21,000 mailed Class Notices were returned as undeliverable.  After performing an additional search through a third-party locator service to update addresses, Epiq promptly re-mailed 14,862 Class Notices.  (*Id.* ¶ 16.)

The deadline for opt-outs, objections, and opt-ins (for those with pending lawsuits) is June 11, 2018.  Thus far, 3 Class Members have opted out.  (Azari Decl ¶ 22.)  And, to date, no class members have objected. (*Id.*)  Pursuant to the Court's order, Plaintiffs will submit updated information regarding the final reaction of Class Members and respond to each objection (if any) in a supplemental brief.

## III.   ARGUMENT

### A.   The Parties Met their Obligations under the Preliminary Approval Order

In its Order Granting Preliminary Approval (Dkt. 317), the Court set forth certain obligations that needed to be satisfied, including the CAFA Notice and the Class Notice requirements. Both requirements have been satisfied.

#### 1.   CAFA Notice Requirement Has Been Satisfied

Notice under CAFA, 28 U.S.C. § 1715, has been satisfied.  A court is precluded from granting final approval of a class action settlement until CAFA notice requirements are met.  28 U.S.C. § 1715(d) ("An order giving final approval of a proposed settlement may be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State officials are served

with the notice required under [28 U.S.C. § 1715(b)].”).

On December 11, 2017, 2018, the Claims Administrator timely and properly sent notices to the Attorney General of the United States and the Attorney Generals of California and Washington informing them of the proposed Settlement. (Azari Decl. ¶ 9.) At this time, no governmental authority has indicated that it will object to the Settlement. *See In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) (finding that “CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures”).

## 2. Rule 23(c) Notice Requirement Has Been Satisfied

The Court “must direct to class members the best notice that is practicable under the circumstances.” Fed. R. Civ. P. 23(c)(2). Notice serves to afford class members due process, providing them with the opportunity to be excluded from the class action and not be bound by any subsequent judgment. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974). However, “due process requires reasonable effort to inform affected class members through individual notice, not receipt of individual notice.” *Rannis v. Recchia*, 380 F. App’x 646, 650 (9th Cir. 2010).

As detailed above, Notice was provided in accordance with the Court-approved Notice program. As detailed in Mr. Azari’s declaration, Epiq undertook considerable effort to collect the names and contact information of the owners and lessees of Class Vehicles. (Azari Decl. ¶¶10-12.) After compiling this information, Epiq mailed over 500,000 individual Class Notices. (*Id.* ¶ 12.) This Notice, approved by this Court, provides basic information about the case and its allegations, the Settlement’s benefits, Class Members’ rights, the opt-out and objection deadlines, and identifies the Settlement website address and Epiq’s toll-free number. *See*, *e.g.*, *Hartless v. Clorox Co*., 273 F.R.D. 630, 636 (S.D. Cal. 2011) (granting final approval of class action settlement where the notice contained a description of the lawsuit and settlement relief, a description of class members’ rights, and the settlement website

1  and toll-free number).

2      The Settlement website maintained by Epiq provides detailed information

3  about the case and the Settlement Agreement, including a FAQ section and a Claims

4  Portal.  (Azari Decl. ¶ 18-19.)  Based on the foregoing, the notice requirement has

5  been satisfied.

6      **B.      The Court Need Not Revisit Class Certification**

7      In its Order Granting Preliminary Approval, this Court determined that the

8  Settlement Class, as defined, satisfies the requirements of Federal Rules of Civil

9  Procedure 23(a) and 23(b)(3). (Dkt. 317 at  ¶1.)  This comes after the Court certified

10  three classes on contested motion. (Dkt. 166.)  Nothing has changed since the

11  Preliminary Approval Order was entered that would affect the Court's rulings on

12  class certification. *See Chambers v. Whirlpool Corp*., 214 F. Supp. 3d 877 (C.D. Cal.

13  2016) (reconfirming the certification set forth in the preliminary approval order

14  "[b]ecause the circumstances have not changed" since that order).  Therefore, the

15  Court should grant final certification of the settlement classes.

16      **C.      This Post-Certification Settlement, Negotiated at Arms'-Length, Is**

17          **Reasonable and Entitled to a Presumption of Fairness**

18      Federal courts favor settlements, particularly in class actions, where the costs,

19  delays and risks of continued litigation might otherwise overwhelm any potential

20  benefit the class could hope to obtain.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d

21  1268, 1276 (9th Cir. 1992) (noting the "strong policy that favors settlements,

22  particularly where complex class action litigation is concerned").  As one court put it,

23  "[t]he economics of litigation are such that pre-trial settlement may be more

24  advantageous for both sides than expending the time and resources inevitably

25  consumed in the trial process."  *Franklin v. Kaypro*, 884 F.2d 1222, 1225 (9th Cir.

26  1989).

27      Animated by this strong, pro-settlement policy, courts in the Ninth Circuit

28  have "long deferred to the private consensual decision of the parties," and review

1    "must be limited to the extent necessary to reach a reasoned judgment that the

2    agreement is not the product of . . . collusion between the[] negotiating parties and

3    that the settlement, taken as a whole, is fair, reasonable and adequate to all

4    concerned." *Rodriguez v. West Publishing*, 563 F.3d 948, 965 (9th Cir. 2009).

5    (citation omitted).  Accordingly, when the parties' negotiations are non-collusive and

6    involve a respected mediator, the resulting settlement is entitled to "a presumption of

7    fairness." *In re Toys "R" Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 450 (C.D.

8    Cal. 2014).

9            Because this Settlement was reached after three classes were certified on

10   contested motion, the Settlement is presumptively non-collusive and the Court need

11   not engage in heightened scrutiny of the settlement or the fee provisions for signs of

12   collusion.  *See In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 946 (9th

13   Cir. 2011) (expressly applying heightened scrutiny to precertification settlements); *In*

14   *re Ferrero Litig.*, 583 F. App'x 665, 668 (9th Cir. 2014) (rejecting application of

15   heightened scrutiny for a post-certification settlement).

16           Moreover, the Settlement is the product of prolonged settlement discussions

17   that took place over numerous mediation sessions before a respected mediator and,

18   retired justice of the California Court of Appeal, Hon. Howard B. Weiner (Ret.).

19   (Tellis Decl. ¶ 22.)  Justice Wiener has served as mediator in a number of class

20   actions, including automotive defect cases finally approved in this district.[5]

21   Meaningful and informed negotiations continued between the Parties after the final

22   mediation occurred on September 7, 2017, with both sides ultimately agreeing to the

23   final terms of the Settlement just days before the scheduled trial date.  (Tellis Decl. ¶¶

24   _____

25   [5] *Asghari v. Volkswagen Grp. Of America*, No. 13-02529-MMM, 2015 WL 12732462 (May 29, 2015) (class action settlement resolving allegations of oil consumption defect); *Sadowska v. Volkswagen Grp. of Am., Inc.*, No. CV 11-00665-BRO AGRX, 2013 WL 9600948, at *10 (C.D. Cal. Sept. 25, 2013) (class action settlement resolving allegations of transmission defect); *see also, In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007) ($10 million securities settlement).

26
27
28

22-23.)

In short, this post-certification Settlement, reached through arms'-length negotiations, is procedurally fair and entitled to a presumption of fairness.

### D.     The Court Should Grant Final Approval of the Class Settlement

Upon final approval, the Court's duty is to determine whether the proposed Settlement is "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  In doing so, the Court may consider some or all of the following factors in evaluating the reasonableness of a settlement: (1) the strength of the plaintiff's case and the risk, expense, complexity, and likely duration of further litigation; (2) the risk of maintaining class action status throughout trial; (3) the amount offered in settlement; (4) the extent of discovery completed and the stage of proceedings; (5) the participation of a governmental participant; (6) the experience and views of counsel; and (7) the reaction of class members.  *See Churchill Village v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) ("*Churchill* factors").  "[O]ne factor alone may prove determinative in finding sufficient grounds for court approval." *Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525-526 (C.D. Cal. 2004).

In determining the overall fairness, reasonableness and adequacy of the Settlement, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice." *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (internal quotation omitted).  The Court should also "defer[] to the private consensual decision of the parties," as they are best positioned to understand the risks to both sides.  *See Rodriguez*, 563 F.3d at 965.

**1.  The Strength of Plaintiffs' Case Balanced with the Risk, Expense, Complexity, and Duration of Continued Litigation, Including Maintaining Class Certification Through Trial**

The first two *Churchill* factors (the strength of the plaintiff's case balanced against the risk, expense, complexity and likely duration of further litigation and the risk of maintaining class certification through trial) overlap and are both satisfied here.  In evaluating these considerations, a court assesses "objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach [a settlement]." *Adoma v. Univ. of Phoenix, Inc.,* 913 F. Supp. 2d 964, 975 (E.D. Cal. 2012).  However, while there is "no single formula" to be applied, the court may presume that the parties' counsel and the mediator arrived at a reasonable settlement by considering the plaintiffs' likelihood of recovery. *Rodriguez*, 463 F.3d at 965.  The risks presented here—including the difficulty of prevailing, the future expenses that must be incurred, and the duration of litigation—strongly favor approving the Settlement.

First, the difficulty of the litigation, including successfully opposing a motion to decertify the classes and a motion for summary judgment, and then prevailing at trial, favors approval.  While Plaintiffs believe that their allegations have merit, Defendants raised numerous substantive defenses that present serious risks to Plaintiffs' case.  These defenses include, among others, that no timing chain systemic defect exists, or that, even if such a defect existed, Plaintiffs would not be able to show that it constitutes a safety concern.  As a threshold matter, the existence of a defect may not lead to legal liability under federal or state statutes. *See*, *e.g.*, *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 991-92 (N.D. Cal. 2010) (granting defendant's motion for summary judgment and finding alleged ignition-lock defect not a safety risk), *aff'd*, 462 F. App'x 660 (9th Cir. 2011).  Accordingly, Plaintiffs must meet a high burden to establish violations of their consumer protection, warranty, and common law claims.

1    Indeed, Plaintiffs may well have been unable to maintain class status through

2  trial.  In their Motion to Decertify the Classes, Defendants contended that Plaintiffs'

3  average-cost-of-repair damages model is invalid and cannot satisfy Rule 23 under

4  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).  (*See* Dkt. 269.)  Defendants also

5  argued that individual issues on causation predominate, requiring decertification.

6  While Plaintiffs vigorously disputed these arguments, consumers bringing

7  automotive defect actions face an uphill battle and are frequently denied class

8  certification due to lack of common proof or an invalid damages model.[6]  *See Nguyen*

9  *v. Nissan N. Am., Inc.*, No. 16-CV-05591-LHK, 2018 WL 1831857, at *7 (N.D. Cal.

10  Apr. 9, 2018) (denying certification due to a perceived damages model problem);

11  *Philips v. Ford Motor Co.*, No. 14-02989, 2016 WL 7428810, at *17 (N.D. Cal. Dec.

12  22, 2016) (same).  *Nguyen* and *Philips* underscore the heightened litigation risk for

13  plaintiffs seeking to maintain certification through trial.  *See also In re Volkswagen*

14  *"Clean Diesel" Mktg. Sales Practices, and Prod. Liab. Litig.*, 229 F.Supp.3d 1052,

15  1066 (N.D. Cal. 2017) (recognizing that even if the court certified the class, there is a

16  risk if could later de-certify it, which factors in favor of settlement).

17    Plaintiffs also faced the termination of their action at summary judgment or at

18  trial.  In their Motion for Summary Judgment, Defendants argued that, among other

19  issues, Plaintiffs failed to present evidence of a nexus between the alleged defects and

20  an unreasonable safety risk. (Dkt. No. 255.)  Again, while Plaintiffs strongly disputed

21  Defendants' argument, and believed there is a triable issue of material fact on each

22  issue presented in Defendants' summary judgment motion, victory was not assured as

23  courts have granted summary judgment motions on similar grounds.  *See*, *e.g.*, *Coba*

24

25  ――――――――――――

25  [6] *See*, *e.g.*, *Grodzitsky v. Am. Honda Motor Co.*, No. 2-01142-SVW, 2014 U.S. Dist.
26  LEXIS 24599 (C.D. Cal. Feb. 19, 2014) (denying certification due to lack of
   evidence that common materials were used for all defective "window regulators" in
27  the class); *Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534, 553 (C.D. Cal.
   2012) ("There is also no evidence that a single design flaw that is common across all
28  of the drains in question is responsible for the alleged water leak defect….").

1    *v. Ford Motor Co*., No. 12-1622-KM, 2017 WL 3332264 (D.N.J. Aug. 4, 2017)

2    (granting summary judgment in favor of defendant after years of litigation).

3         Moreover, even if Plaintiffs cleared the summary judgment hurdle, they would

4    still have needed to prove the existence of a systemic defect at trial.  The risk of

5    losing at trial—and recovering for the classes—is particularly compelling and weighs

6    heavily in favor of settlement.

7         Furthermore, the additional expenses that must be incurred also support final

8    approval.  *See Chambers*, 214 F. Supp. 3d at 888 ("In assessing the risk, expense and

9    complexity of further litigation, the court evaluates the time and cost required."

10   [citation omitted]).  Here, Plaintiffs have shouldered exceedingly high financial risks

11   in pursuing this action.  Over $800,000 has already been spent on the case, and with

12   trial looming, the costs will only grow.  This class action against a major automotive

13   manufacturer, where Plaintiffs allege that over 500,000 vehicles suffer a serious

14   defect, will further engulf Plaintiffs and Class Counsel in protracted, resource-

15   draining court battles.  This weighs in favor of settlement.  *See Aarons v. BMW of N.*

16   *Am. LLC*, No. 11-7667, 2014 U.S. Dist. LEXIS 118442, at *29-31 (C.D. Cal. Apr.

17   29, 2014) (approving a settlement on a transmission defect and observing that "it is

18   the very uncertainty of outcome in litigation and avoidance of wasteful and expensive

19   litigation that induce consensual settlements." [citation omitted]; *In re Toys "R" Us-*

20   *Del FACTA Litig*., 295 F.R.D. at 451 (observing that the "substantial risk of incurring

21   the expense of a trial without any recovery" supports approval).

22        In short, "unless the settlement is clearly inadequate, its acceptance and

23   approval are preferable to lengthy and expensive litigation with uncertain results."

24   *Eisen v. Porsche Cars North American, Inc.,* No. 11-09405-CAS, 2014 WL 439006,

25   at *3 (C.D. Cal. Jan. 30, 2014) (quoting *Nat'l Rural Telecom. Coop*., 221 F.R.D. at

26   526).  Here, the risk of continuing litigation, including the risk of decertification

27   and/or an adverse judgment on the merits, coupled with increased costs and

28   protracted litigation, weighs heavily in favor of settlement.

## 2. The Amount Offered in the Settlement Supports Final Approval

The Court must also consider the relief or remedy offered in the Settlement in granting final approval. In assessing the value of a settlement, courts are instructed to take into account that "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624 (citations omitted). The Ninth Circuit has explained, in light of the vagaries of litigation, "the proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id*. at 625. Courts in this Circuit "put a good deal of stock in the product of an arms-length, non-collusive negotiated resolution, and have never prescribed a particular formula by which that outcome must be tested." *Rodriguez*, 563 F.3d at 965 (internal citations omitted; emphasis added).

Accordingly, the Ninth Circuit does not require the plaintiff to present speculative measures of the maximum value of the action upon a successful trial.[7] *See Lane v. Facebook, Inc*., 696 F.3d 811, 823 (9th Cir. 2012) (the court "need not include a specific finding of fact as to the potential recovery for each of the plaintiffs' causes of action"). Thus, a settlement may be fair, reasonable and adequate even if it provides only a "fraction of the potential recovery." *Mendoza v. Hyundai Motor Co*., No. 15-01685-BLF, 2017 WL 342059, at *6 (N.D. Cal. Jan. 23, 2017).

Here, the Settlement offers a substantial reimbursement to Class Members for

---

[7] *See, e.g., Chambers*, 214 F. Supp. 3d at 888-89 (no valuation required to approve consumer class action settlement); *Warner v. Toyota Motor Sales U.S.A*., No. 15-02171-FMO (C.D. Cal. May 21, 2017), Dkt. No. 140, at *13 (granting final approval without a maximum valuation, noting that settlements involve "abandoning of highest hopes"); *Corson v. Toyota Motor Sales U.S.A*., No. 12-8499-JGB, 2016 WL 1375838, *7 (C.D. Cal. Apr. 4, 2016) (granting final approval, based in part, on "substantial recovery" that class members would receive as a result of the settlement); *Zakskorn v. Am. Honda Motor Co*., No. 11-02610-KJM, 2015 WL 3622990, at *8 (E.D. Cal. June 9, 2015) (finding that settlement provides adequate compensation without requiring extensive valuation); *Sadowska*, 2013 WL 9500948, at *4 (same).

1    the out-of-pocket costs associated with the alleged Timing Chain Tensioning System

2    defect. The Settlement generously covers Class Members who fall well outside of the

3    Powertrain Coverage period.  Even though car parts dramatically depreciate in value,

4    the Settlement provides 80% reimbursement (of the first $900 in out-of-pocket costs)

5    for Class Vehicles with mileage up to 80,001 miles, and reimbursements, under the

6    same terms, of 50% for Class Vehicles within 80,000 and 100,001 miles and 20% for

7    Class Vehicles within 100,00 to 120,000 miles.

8         Moreover, the Settlement also provides for an unusually lengthy claims period

9    for the benefit of Class Members.  Under the Settlement, Class Members may

10   continue to obtain a Qualifying Repair well after receiving the Class Notice so long

11   as mileage does not exceed 120,000. (Settlement Agreement ¶ 32.) And they can

12   continue to submit claims for reimbursement well after judgment has been entered, so

13   long as the claims are submitted within 90 days of the Qualifying Repair. (*Id.* ¶ 5.)

14   With the inclusion of this ongoing claims period, which provides continuing relief to

15   Class Members, a Class Member who currently owns or leases a Class Vehicle that

16   has not yet had a Qualifying Repair may elect to receive, subject to the limitations

17   *supra*, partial cash reimbursement or a Voucher for a Qualifying Repair completed

18   *after* the effective date of the Settlement.

19        In short, the Settlement provides direct cash relief to those who have suffered,

20   or will suffer, out-of-pocket costs as a result of the alleged Timing Chain Tensioning

21   System defect, and approaches what Class Members would have obtained had they

22   prevailed at trial.  As a whole, the Settlement's benefits are comparable to other

23   settlements that offer reimbursement for out-of-pocket costs. *See*, *e.g*., *Seifi v.*

24   *Mercedes-Benz USA*, No. 12-05493-THE, 2015 WL 12964340 (N.D. Cal. Aug. 18,

25   2015) (providing reimbursement); *Eisen*, 2014 WL 439006, at *2-3 (reimbursement

26   program with limitations); *Collado v. Toyota Motor Sales, U.S.A., Inc*., No. 10-3113,

27   2011 U.S. Dist. LEXIS 133572 (C.D. Cal. Oct. 17, 2011), *fee order rev'd*, 550 Fed.

28   Appx. 368 (9th Cir. Cal. 2013) (limited reimbursement program for out-of-pocket

1   expenses for repairs).

2   　　Accordingly, the amount offered in the Settlement strongly favors final

3   approval.

4   ### 3.  The Extent of Discovery and Stage of Proceedings

5   　　Courts may also consider the extent of discovery and the current stage of the

6   litigation to evaluate whether parties have sufficient information to make an informed

7   decision to settle the action.  *See Linney v. Cellular Alaska Partnership*, 151 F.3d

8   1234, 1239 (9th Cir. 1998).  Even a settlement negotiated at an earlier stage in the

9   litigation will not be denied so long as sufficient investigation has been conducted.

10  *Eisen*, 2014 WL 439006, at *13 (finding that counsel had "ample information and

11  opportunity to assess the strengths and weaknesses of their claims" despite

12  "discovery [being] limited because the parties decided to pursue settlement

13  discussions early on.").

14  　　As explained *supra*, Plaintiffs engaged in extensive investigation and

15  discovery for more than four years, including reviewing tens of thousands of

16  documents produced by Defendants, retaining experts and conducting their own

17  testing, and preparing for, defending, and taking over a dozen depositions, including

18  those of Defendants' corporate representatives, experts, and third parties.  (*See, e.g.,*

19  Tellis Decl. ¶¶ 10-14.)

20  　　"A court is more likely to approve a settlement if most of the discovery is

21  completed because it suggests that the parties arrived at a compromise based on a full

22  understanding of the legal and factual issues surrounding the case."  *Spann v. J.C.*

23  *Penny Corp.*, 211 F. Supp. 3d 1244, 1256 (C.D. Cal. 2016) (quoting *Nat'l Rural*, 221

24  F.R.D. at 527).  In addition to the substantial discovery conducted to date, the Parties

25  engaged in extensive motion practice, including multiple motions to dismiss, a

26  motion for summary judgment, and motions for class certification and decertification.

27  Given the work done by both sides in this action over more than four years, the

28  Parties entered the settlement discussions with a substantial understanding of the

factual and legal issues from which they could advocate their respective positions.
*See Nat'l Rural*, 221 F.R.D. at 527-528; *see also Barbosa v. Cargill Meat Solutions
Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013) (stating it is required that "sufficient
discovery has been taken, or investigation completed, to enable counsel and the court
to act intelligently.") (internal quotations and citations omitted).

### 4. Views of Counsel Should Be Accorded Substantial Weight

The fact that sophisticated parties with experienced counsel have agreed to
settle their dispute should be given considerable weight by the Court, since "parties
represented by competent counsel are better positioned than courts to produce a
settlement that fairly reflects each party's expected outcome in the litigation." *In re
Pacific Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Where "[b]oth Parties are
represented by experienced counsel," the recommendation of experienced counsel to
adopt the terms of the proposed settlement "is entitled to great deal of weight." *Low
v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1302 (S.D. Cal. 2017) (internal citations
omitted). In particular, "[t]he recommendations of plaintiffs' counsel should be given
a presumption of reasonableness." *Id.* at 1302-1303 (internal citations omitted); *aff'd
Low v. Trump University, LLC*, 881 F.3d 1111 (9th Cir. 2018); *Nat'l Rural,* 221
F.R.D. at 528 ("'[g]reat weight' is accorded to the recommendation of counsel, who
are most closely acquainted with the facts of the underlying litigation") (citation
omitted).

Plaintiffs were represented by experienced counsel with significant experience
in automotive defect and class action matters. (*See* Dkt. 304-2 (Baron & Budd, P.C.
Firm Resume); Dkt. 305-1 (Capstone Law APC Firm Resume); Dkt. 306.) Class
Counsel believes that this Settlement, following a thorough investigation and
evaluation, is not only fair, reasonable, and adequate, but also is in the best interest of
the Settlement Class in light of all known facts and circumstances, including the risk
of significant delay and uncertainty associated with litigation of this type, and the
various defenses asserted by Defendants. Class Counsels' views should be given

1  substantial weight, which further favors granting final approval.

2  **5. The Reaction of Class Members to the Proposed Settlement[8]**

3  The objection, opt-out, and opt-in deadline is June 11, 2018, ten days after the

4  filing of this Motion. Per the Preliminary Approval Order, the parties will file

5  supplemental briefs on June 25, 2018. These briefs, which will include responses to

6  any objections, will also provide a full report on the number of opt-outs. To date,

7  only 3 Class Members, out of the 575,013 Class Notices mailed, have chosen to opt

8  out. (Azari Decl. ¶ 22.) No Class Member has yet objected. (*Id*). This small

9  percentage of exclusions and objections demonstrate that Class Members have

10 reacted favorably to the Settlement, supporting final approval. *See, e.g., Eisen*, 2014

11 WL 439006, at *5 ("Although 235,152 class notices were sent, 243 class members

12 have asked to be excluded …."); *Milligan v. Toyota Motor Sales, U.S.A.*, No. 09-

13 05418-RS, 2012 U.S. Dist. LEXIS 189782, at *25 (N.D. Cal. Jan. 6, 2012) (finding

14 favorable reaction where 364 individuals opted out [0.06%] following a mailing of

15 613,960 notices).

16 **IV.  CONCLUSION**

17 The Parties have negotiated a fundamentally fair, adequate, and reasonable

18 settlement. Accordingly, Plaintiffs respectfully move the Court to enter an order: (1)

19 finally approving the Settlement Agreement and finally certifying the California and

20 Washington Classes; (2) granting Plaintiffs' Motion for Attorneys' Fees, Costs, and

21 Service Awards; and (3) for entry of a final judgment concurrently filed herewith.

22 ///

23 ///

24 ///

25

26

27

28 ─────────────────
[8] There is no governmental participant in this case, and so this factor is neutral.

1 | Dated:  June 1, 2018

2

Respectfully submitted,

3

By:   /s/ *Roland Tellis*

4

Roland Tellis
Mark Pifko
**Baron & Budd, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone: (818) 839-2333

5

6

7

Jordan L. Lurie
**Capstone Law APC**
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone: (310) 556-4811

8

9

10

Payam Shahian
**Strategic Legal Practices APC**
1840 Century Park East, Suite 430
Los Angeles, California 90067
Telephone: (310) 277-1040

11

12

13

*Attorneys for Plaintiffs and the Classes*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28