Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Mark Pifko (SBN 228412)
mpifko@baronbudd.com
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698

Payam Shahian (SBN 228406)
PShahian@slpattorney.com
**STRATEGIC LEGAL PRACTICES APC**
1840 Century Park East, Suite 430
Los Angeles, California 90067
Telephone: (310) 277-1040
Facsimile: (310) 943-3838

Jordan L. Lurie (SBN 130013)
Jordan.Lurie@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
**Capstone Law APC**
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:   (310) 556-4811
Facsimile:   (310) 943-0396

Attorneys for Plaintiffs and the Classes

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

| | |
|---|---|
| KOBE FALCO, JOEL SEGUIN, ALFREDO PADILLA, and ROBERTO GALVAN, individually, and on behalf of other members of the public similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NISSAN NORTH AMERICA, INC. a California corporation, and NISSAN JIDOSHA KABUSHIKI KAISHA d/b/a NISSAN MOTOR CO., LTD., a publicly traded company in Japan,<br><br>Defendants. | Case No.:  2:13-cv-00686-DDP-MANx<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:    July 16, 2018<br>Time:    10:00 a.m.<br>Place:   Courtroom 9C<br><br>Dist. Judge:   Hon. Dean D. Pregerson<br>Magistrate:    Hon. Margaret A. Nagle<br>Action Filed:  January 31, 2013<br>Trial Date:    October 10, 2017 (vacated) |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 16, 2018, at 10:00 a.m., in Courtroom 9C of the above-captioned Court, located at 350 West First Street, Los Angeles, CA 90012, the Honorable Dean D. Pregerson presiding, Plaintiffs, on behalf of themselves and all others similarly situated, will, and hereby do, move this Court to enter an award of attorneys' fees, expenses, and class representative incentive awards.  Plaintiffs seek reasonable attorneys' fees in the amount of $5,200,000, reimbursable litigation costs in the amount of $800,000, and service awards of $5,000 for each of the named Plaintiffs. The requested fees are reasonable under the lodestar method for calculating fees, as Class Counsels' lodestar is based on reasonable hours multiplied by reasonable rates. Moreover, the requested fees are reasonable because they are less than the total lodestar incurred by Class Counsel, who prevailed on multiple dispositive motions, certified three class through contested motion, and prosecuted this action to the eve of trial.

This Motion is based on:  (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Attorneys' Fees, Costs, and Service Awards incorporated herewith; (3) the Declarations of Roland Tellis, Jordan Lurie, Payam Shahian and Dara Tabesh, and exhibits thereto, filed concurrently herewith; (4) the records, pleadings, and papers filed in this action; and (6) on such other documentary and oral evidence or argument as may be presented to the Court at the hearing of this Motion.

///

///

///

1   Dated:  June 1, 2018                    Respectfully submitted,

2

3                                    By:  /s/ *Roland Tellis*

4                                          Roland Tellis
                                           Mark Pifko
5                                          **Baron & Budd, P.C.**
                                           15910 Ventura Boulevard, Suite 1600
6                                          Encino, California 91436
                                           Telephone: (818) 839-2333

7                                          Jordan L. Lurie
8                                          **Capstone Law APC**
                                           1875 Century Park East, Suite 1000
9                                          Los Angeles, California 90067
                                           Telephone: (310) 556-4811

10                                         Payam Shahian
11                                         **Strategic Legal Practices APC**
                                           1840 Century Park East, Suite 430
12                                         Los Angeles, California 90067
                                           Telephone: (310) 277-1040

13
14                                         *Attorneys for Plaintiffs and the Classes*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.  INTRODUCTION ...........................................................................................1

II.  ARGUMENT .................................................................................................3

    A.  The Parties Have Separately Negotiated Fees That Will Not Affect Class Benefits ..............................................................................3

    B.  State Law Authorizes Reasonable Fees to Successful Parties Enforcing Consumer Protection Statutes ................................................4

    C.  The Fee Request is Reasonable Under the Lodestar Method ..............5

        1.  The Hours Expended Are Reasonable ......................................6

        2.  The Hourly Rates are Reasonable.............................................12

        3.  Class Counsel's Fee Request Is Reasonable Since It Requires The Application of a Negative Risk Multiplier ......................................................................................15

    D.  The Expenses Advanced by Class Counsel Should be Reimbursed......................................................................................18

    E.  Service Payments of $5,000 Should be Awarded to Each of the Named Plaintiffs .........................................................................19

III.  CONCLUSION.............................................................................................20

# TABLE OF AUTHORITIES

CASES

*Asghari v. Volkswagen Grp. Of America*, No. 13-02529-MMM, 2015 WL 12732462 (May 29, 2015) .......................................................... 14

*Blum v. Stenson*, 465 U.S. 886 (1984) .......................................................... 12

*Bravo v. Gale Triangle, Inc.*, No. 16-03347 BRO, 2017 WL 708766 (C.D. Cal. Feb. 16, 2017) .......................................................... 13

*Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877 (C.D. Cal. 2016) ................ 13, 17

*Charlebois v. Angels Baseball, LP*, 993 F. Supp. 2d 1109 (C.D. Cal. 2012) .............. 10

*Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848 (N.D. Cal. 2010) ............. 16

*Etter v. Thetford Corporation*, No. 13-00081-JLS, 2017 WL 1433312 (C.D. Cal. Apr. 14, 2017) .......................................................... 13

*Fadhl v. City and County of San Francisco*, 859 F.3d 649 (9th Cir. 1988) ............... 17

*Fox v. Vice*, 131 S. Ct. 2205 (2011) .......................................................... 6

*Hensley v. Eckehart*, 461 U.S. 424 (1983) .......................................................... 3

*In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) .......................................................... 3, 5, 6

*In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007) .............. 19

*In re Volkswagen & Audi Warranty Extension Litig.*, 89 F. Supp. 3d 155 (D. Mass. 2015) .......................................................... 17

*In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994) .......................................................... 17

*Johnson v. General Mills, Inc.*, No. 10-00061-CJC, 2013 U.S. Dist. LEXIS 90338 (C.D. Cal. June 17, 2013) .......................................................... 19

*Kearney v. Hyundai Motor Am.*, No. 09-1298, 2013 U.S. Dist. LEXIS 91636 (C.D. Cal. June 28, 2013) .......................................................... 13

*Keegan v. Am. Honda Motor Co, Inc.*, No. 10-09508-MMM, 2014 WL

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

12551213 (C.D. Cal. Jan. 21, 2014)...........................................................19

*Klee v. Nissan N. Am., Inc.,* 2015 U.S. Dist. LEXIS 88270 (C.D. Cal. July

    7, 2015) ........................................................................................................14

*Laguna v. Coverall North America,* 753 F.3d 918 (9th Cir. 2014).................3

*MacDonald v. Ford Motor Co.,* No. 13 -02988-JST, 2016 WL 3055643

    (May 31, 2016) ............................................................................................14

*Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470 (9th Cir. 1995)...................4

*Moore v. Verizon Communications*, No. 09-1823-SBA, 2014 WL 288035

    (N.D. Cal. Feb. 14, 2014)............................................................................11

*Parkinson v. Hyundai Motor America*, 796 F. Supp. 2d 1160 (C.D. Cal.

    2010).......................................................................................................4, 13

*Rodriguez v. W. Pub. Corp.*, 563 F.3d 948 (9th Cir. 2009)...........................19

*Seifi v. Mercedes-Benz USA, LLC*, No. 12-CV-05493-TEH, 2015 WL

    12952902 (N.D. Cal. Aug. 18, 2015) .........................................................19

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003).......................................3

*Steiner v. American Broad. Co.*, 248 Fed. Appx. 780 (9th Cir. 2007) .........16

*Trs. of the Constr. Indus. and Laborers Health and Welfare Trust v.*

    *Redland Ins. Co.*, 460 F.3d 1253 (9th Cir. 2006)......................................19

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) ...............15

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ..................4, 15

*Vizzi v. Mitsubishi Motors N. Am., Inc.,* No. 08-00650-JVS, 2010 WL

    11508375 (C.D. Cal. Mar. 29, 2010) .........................................................19

*Winterrowd v. Am. Gen. Annuity Ins. Co.,* 556 F.3d 815 (9th Cir. 2009) ...................7

*Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536 (9th Cir. 2016).........................5

**STATUTES**

*Building a Better Redondo, Inc. v. City of Redondo Beach*, 203 Cal. App. 4th 852 (2012) ....................................................................................15

*Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43 (2008) ...........................16

*Children's Hospital and Med. Center v. Bonta*, 97 Cal. 4th 740 (2002).....................12

*Ctr. for Biological Diversity v. County of San Bernardino*, 185 Cal. App. 4th 866 (2010) ....................................................................................15

*Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553 (2004).........................................16

*Horsford v. Board of Trustees of California State Univ.*, 132 Cal. App. 4th 359 (2005)....................................................................................17

*Horsford v. Board of Trustees*, 132 Cal. App. 4th 359 (2005)...................................12

*In re Consumer Privacy Cases*, 175 Cal. App. 4th 545 (2009) ...............................15

*Ketchum v. Moses*, 24 Cal. 4th 1122 (2001) ..................................................5, 6, 16

*Kim v. Euromotors West/The Auto Gallery*, 149 Cal. App. 4th 170 (2007) ...............4

*Margolin v. Regional Planning Com.*, 134 Cal. App. 3d 999 (1982).........................12

*PLCM Group, Inc. v. Drexler*, 22 Cal. 4th 1084 (2000) .........................................7

*Serrano v. Priest*, 20 Cal. 3d 25 (1977) ....................................................................5

*Serrano v. Unruh*, 32 Cal. 3d 621 (1982) ..................................................................6

*Sutter Health Uninsured Pricing Cases*, 171 Cal. App. 4th 495 (2009) .....................16

*Vo v. Las Virgenes Municipal Water Dist.*, 79 Cal. App. 4th 440 (2000)....................6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(h) .............................................................................................3

**RULES**

Cal. Civ. Code §§ 1750 *et seq*. (Cons. Legal Remedies Act (CLRA)) .........................4

Cal. Civ. Code §§ 1790-1795.7 (Song-Beverly Consumer Warranty Act) .................4

**TREATISES**

*Posner, Economic Analysis of Law* (4th ed. 1992) .......................................................10

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

After more than four years of hard-fought litigation, Plaintiffs Kobe Falco, Joel Seguin, Alfredo Padilla, and Roberto Galvan ("Plaintiffs") delivered valuable Settlement benefits for the Settlement Class.[1]  For that reason, Plaintiffs respectfully seek an award of $5.2 million in attorneys' fees and reimbursement of $800,000 in litigation costs, for successfully prosecuting this action.

As detailed in the concurrently-filed Motion for Final Approval, under the Settlement between Plaintiffs and Defendants Nissan North America, Inc. ("Nissan USA") and Nissan Jidosha Kabushiki Kaisha d/b/a/ Nissan Motor Co., Ltd. ("Nissan Japan") (collectively, "Defendants"), Class Members will be entitled to a partial reimbursement of money spent in connection with the diagnosis of, repair to, or replacement of the primary or secondary timing chain systems or components in a Class Vehicle that Plaintiffs allege to be defective, or, at the Class Member's election, a voucher toward the purchase of a new vehicle. ***Importantly, Class Members will continue to qualify for reimbursement and submit claims well after the Settlement has been approved and judgment has been entered.***

This Settlement comes after Class Counsel successfully obtained class certification of three classes through contested motion, and then, litigated the action through summary judgment, a motion to decertify the classes, and to the eve of trial, ultimately forcing Defendants to the negotiating table.  Class Counsels' vigorous litigation included a deep and wide-ranging investigation of the claims and successful motion practice at various stages of this action.  Class Counsel defeated numerous dispositive motions filed by Defendants, including multiple motions to dismiss, as well as jurisdictional motions filed by Nissan Japan, and a motion for reconsideration.  Class Counsel also devoted considerable time and resources preparing for trial, including

---

[1] The capitalized terms in this brief shall have the same meaning as the terms defined in the proposed Settlement Agreement. (Dkt. No. 121-1.)

hosting an in-person pre-trial meeting of counsel in Los Angeles, California, negotiating and drafting motions in *limine*, preparing and filing pre-trial documents, and engaging with experts, while simultaneously preparing opposition briefs to Defendants' motion for summary judgment and motion to decertify the classes.  The motion for summary judgment and motion to decertify the classes were fully-briefed and pending before the Court when this action settled just days before the October 10, 2017 trial date.

All told, Class Counsel incurred a combined lodestar of $6,018,221.50 in this hotly contested class action.  Because Class Counsels' lodestar dramatically outstrips the requested fees, the Court must apply a negative multiplier, confirming  the reasonableness of the requested fees under the lodestar method, which is the primary method of calculating fees in this action due to the lack of a common fund or easily ascertainable value. Class Counsels' lodestar is based on reasonable hours multiplied by reasonable rates, enhanced by a multiplier, if necessary.  Class Counsel have expended a collective 9,987.55 hours prosecuting this case.

Class Counsels' hourly rates are reasonable and within the range of rates recently approved by this District and other courts around the country.  The requested service awards of $5,000 to each named Plaintiff are similarly reasonable and should be approved.

Finally, the attorneys' fees requested were separately mediated by a well-respected neutral, the Hon. Howard B. Wiener (Ret.), only after the Parties agreed on the Settlement benefits for the Class.  The fees will be paid by Defendants, not by Class Members or from a common fund.  Awarding the negotiated fees in full will not affect the benefits for Class Members and will fairly compensate Class Counsel for their work in this case, as confirmed under the lodestar method for calculating fees.

## II.     ARGUMENT

### A.     The Parties Separately Negotiated Fees that Will Not Affect Class Benefits

At the conclusion of a successful class action, the plaintiff may apply to the Court for an award of "reasonable attorneys' fees and non-taxable costs that are authorized by law or the parties' agreement." Fed. R. Civ. P. 23(h).   In considering the fee application, courts must ensure that the fees awarded are reasonable. *See In re Bluetooth Headset Products Liab. Litig*., 654 F.3d 935, 941 (9th Cir. 2011).  In their evaluation, however, district courts must account for the fact that "the parties are compromising to avoid litigation." *Laguna v. Coverall North America*, 753 F.3d 918, 922 (9th Cir. 2014) *vac'd as moot*, 2014 U.S. App. LEXIS 21950 (9th Cir. Nov. 20, 2014).  Accordingly, "the district court need not inquire into the reasonableness of the fees even at the high end with precisely the same level of scrutiny as when the fee amount is litigated." *Id*. (quoting *Staton v. Boeing Co*., 327 F.3d 938, 966 (9th Cir. 2003)).  This standard is consistent with the strong policy discouraging a "second major litigation" arising from a request for attorneys' fees. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee").

Here, the agreed-upon attorneys' fees and expenses in the amount of $5,200,000 (*see* Settlement Agreement, ¶ 94) are the product of a non-collusive adversarial negotiation, facilitated by a respected mediator and retired justice of the California Court of Appeal, Hon. Howard B. Wiener (Ret.). (Declaration of Roland Tellis ["Tellis Decl."] ¶ 24.) With Justice Wiener's guidance, the Parties negotiated and resolved attorneys' fees well after relief for the classes had been finalized, and on the eve of trial.  (*Id*.)  Therefore, the Court does not need to engage in enhanced scrutiny of the settlement or the fee provisions for signs of collusion. *See In re Bluetooth*, 654 F.3d at 946 (expressly applying heightened scrutiny to precertification settlements); *In re Ferrero Litig*., 583 F. App'x 665, 668 (9th Cir. 2014) (rejecting application of heightened scrutiny for a post-certification settlement).

**B.      State Law Authorizes Reasonable Fees to Successful Parties Enforcing Consumer Protection Statutes**

"In diversity actions, federal courts look to state law in determining whether a party has a right to attorneys' fees and how to calculate those fees." *Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995).  The state law governing the underlying claims in a diversity action "also governs the award of fees." *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047 (9th Cir. 2002).  Here, Plaintiffs brought suit under both California consumer protection statutes, including the Consumer Legal Remedies Act ("CLRA"), Calif. Civ. Code sections 1780 *et seq*. and the Unfair Competition Law ("UCL"), Bus. & Prof. Code sections 17200 *et seq*., as well as the Washington Consumer Protection Act ("WCPA"), Wash. Rev. Code sections 19.86 *et seq*.  The Court ultimately certified two Classes alleging violations of California law and one Class alleging violations of Washington law.  Because the Settlement resolves these state law claims in the Classes' favor, California and Washington law would both govern.

As prevailing parties, Plaintiffs are entitled to fees under the one-way fee-shifting provision of both California and Washington consumer protection laws.  Under the mandatory fee-shifting provision of the CLRA, the Court "shall award court costs and attorneys' fees to a prevailing plaintiff in a litigation" under that section. Cal. Civ. Code § 1780(e).  "[A]n award of attorney fees to 'a prevailing plaintiff' in an action brought pursuant to the CLRA is mandatory, even where the litigation is resolved by a pre-trial settlement agreement." *Kim v. Euromotors West/The Auto Gallery*, 149 Cal. App. 4th 170, 178-179 (2007).  There is no dispute that Plaintiffs, having obtained the relief they sought when they filed suit, are the prevailing party.  *See Parkinson v. Hyundai Motor America*, 796 F. Supp. 2d 1160, 1171 (C.D. Cal. 2010) (authorizing fees under CLRA when the plaintiff obtained relief sought by way of a class action settlement).  Plaintiffs are also entitled to fees under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1794(d).  And, Plaintiffs are entitled to reasonable

8

1    attorneys' fees for prevailing under the WCPA.  *See* Wash. Rev. Code § 19.86.090.

2          **C.     The Fee Request is Reasonable Under the Lodestar Method**

3          Under California law, the lodestar method is the "starting point of every fee

4    award." *Serrano v. Priest*, 20 Cal. 3d 25, 48 n.23 (1977) ("*Serrano III*").  For any fee

5    application subject to a statutory award, courts should "presume that the Legislature

6    intended courts to use the prevailing lodestar adjustment method."  *Ketchum v. Moses*,

7    24 Cal. 4th 1122, 1136 (2001); *accord In re Bluetooth*, 654 F.3d at 941 ("The 'lodestar

8    method' is appropriate in class actions brought under fee-shifting statutes.").  This is

9    because the lodestar method most effectively compensates successful counsel for "all

10   the hours reasonably spent."  *Ketchum*, 24 Cal.4th at 1133. "Anchoring the analysis to

11   [the lodestar] is the only way of approaching the problem that can claim objectivity, a

12   claim which is obviously vital to the prestige of the bar and the courts." *Serrano III*, 20

13   Cal. 3d at 48 n.23.

14         While courts applying California law are permitted to depart from the lodestar

15   method if a common fund has been created, this limited exception does not apply in

16   non-common fund settlements.  *See Laffitte v. Robert Half Int'l*, 1 Cal. 5th 480, 503-04

17   (2016) (expressly permitting use of the percentage method only when the settlement

18   "establishes a monetary fund for the benefit of the class members").  The State of

19   Washington likewise authorizes courts to calculate fees using the lodestar method, with

20   the lodestar method being preferred when no common fund is created.  *See Bowers v.*

21   *Transamerica Title Ins. Co.,* 100 Wash. 2d 581, 597-599 (1983).[2]  Under both

22   California and Washington law, the lodestar method is the proper method for

23   calculating attorneys' fees following a non-common fund settlement.

24         To determine lodestar, the Court must first multiply "the number of hours

25   _____

26   [2] The lodestar method is also appropriate under Ninth Circuit case law "where the relief
     sought and obtained is not easily monetized, ensuring compensation for counsel who
27   undertake socially beneficial litigation." *Yamada v. Nobel Biocare Holding AG*, 825
     F.3d 536, 546 (9th Cir. 2016) (quoting *In re Bluetooth*, 654 F.3d at 941–42).
28

reasonably expended on the litigation . . . by a reasonable hourly rate." *In re Bluetooth*, 654 F.3d at 941; *Bowers*, 100 Wash. 2d at 598 ("The total number of hours reasonably expended is multiplied by the reasonable hourly rate of compensation."). However, because the base lodestar does not capture the full market value of the services rendered, judicial policy encourages "a fee-enhancement reflecting the risk that the attorney will not receive payment if the suit does not succeed." *Ketchum*, 24 Cal. 4th at 1138 (citing Posner, Economic Analysis of Law (4th ed. 1992), at 534, 567) (emphasis added); *see Bowers*, 100 Wash. 2d at 599–600 (authorizing a risk adjustment to the lodestar because "lawyers generally will not provide legal representation on a contingent basis unless they receive a premium for taking that risk.").

### 1.      The Hours Expended Are Reasonable

In evaluating the reasonableness of the hours Class Counsel expended, courts must "focus on providing an award of attorneys' fees reasonably designed to fully compensate plaintiffs' attorneys for the services provided." *Horsford v. Board of Trustees of California State Univ.*, 132 Cal. App. 4th 359, 395 (2005); *Bowers*, 100 Wash. 2d 581, 599–600 ("The starting point for the calculation of the lodestar is the number of hours reasonably expended."). Courts do so by looking at "the entire course of the litigation, including pretrial matters, settlement negotiations, discovery, [and] litigation tactics . . . " *Vo v. Las Virgenes Municipal Water Dist.*, 79 Cal. App. 4th 440, 445 (2000). The general principle is that "the attorney who takes [a statutory fee-shifting] case can anticipate receiving full compensation for every hour spent litigating a claim even against the most polemical opponent." *Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128, 1175 (1998). However, courts should not be "enmeshed in a meticulous analysis of every detailed facet of the professional representation." *Serrano v. Unruh*, 32 Cal. 3d 621, 642 (1982) ("*Serrano IV*"). Rather, "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011).

Class Counsel have expended 9,987.55 hours thus far to prosecute this action

and secure substantial benefits for the Class.  As discussed in detail in section C.3. *infra*, the requested fees for the hours worked by Class Counsel would constitute a negative multiplier on Class Counsels' lodestar.

In addition, Class Counsels' calculation of hours worked, and requested fees, do not include the hours that will be spent preparing further briefing (including finalizing the supplemental brief in support of final approval) and the expected hundreds of additional hours guiding Class Members through the settlement process.  Class Counsel have reviewed billing entries describing tasks performed that attorneys entered contemporaneously into Class Counsels' billing program.[3]  (*See* Tellis Decl. ¶ 28; Declaration of Jordan L. Lurie ["Lurie Decl."] ¶ 3; Declaration of Payam Shahian ["Shahian Decl."] ¶ 11; Declaration of Dara Tabesh ["Tabesh Decl."] ¶ 9.)

Following the review of the voluminous records, Class Counsel sorted the entries by task categories, summarizing those tasks for the Court's convenience.  (*Id*.) The hours incurred reflect Class Counsels' exceptional efforts in surmounting numerous obstacles, including strong resistance from well-financed defendants, who are represented by highly experienced and skilled counsel, to secure a strong settlement for the classes.  Indeed, Class Counsel was faced with opposing numerous motions filed by Defendants.  The following are the most time-intensive categories:

---

[3] California law does not require actual billing records; courts may award statutory fees based on declarations and summaries.  *See PLCM Group, Inc. v. Drexler*, 22 Cal. 4th 1084, 1098 (2000); *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 827 (9th Cir. 2009) (applying California law and determining that the "testimony of an attorney as to the number of hours worked on a particular case is sufficient evidence to support an award of attorney fees, even in the absence of detailed time record."). Washington law likewise does not require billing records. *See Bowers*, 100 Wash. 2d at 597 (holding that the documentation for hours worked "need not be exhaustive or in minute detail, but must inform the court, in addition to the number of hours worked, of the type of work performed and the category of attorney who performed the work."). Accordingly, Class Counsel have prepared detailed time summaries of the contemporaneously-entered time entries. (Tellis Decl. ¶ 27; Lurie Decl ¶ 4; Shahian ¶ 12.) However, Class Counsel stands ready to provide the complete billing records upon the Court's request.

**Discovery**.  Class Counsel expended a reasonable 2,643.8 hours in thoroughly investigating the claims at issue, conducting both pre and post-certification discovery in gearing up for trial.  Among other tasks, Class Counsel:  (1) fielded inquiries from prospective Class Members; (2) consulted and retained automotive experts and researched publicly available materials and information provided by NHTSA; (3) reviewed and researched consumer complaints and discussions of Timing Chain problems in articles and forums online, in addition to various manuals and technical service bulletins discussing the alleged Timing Chain Tensioning System defect; and (4) conducted research into the applicable causes of action and other similar automotive actions. Class Counsel also propounded extensive discovery on Defendants during the course of litigation, both at the pre-certification stage and in the merits stage. (Tellis Decl. ¶ 10.)

In response, Defendants produced over 32,000 pages of documents, including: owners' manuals, maintenance and warranty manuals, design documents (*e.g.*, technical drawings), technical service bulletins, field reports, customer comments detail reports, internal emails, and other documents.  (*Id.* at ¶ 11.)  Plaintiffs also succeeded in acquiring discovery from Nissan Japan, after defeating its motion to dismiss and motion for reconsideration to modify the Court's order regarding its motion to dismiss for lack of personal jurisdiction.  (*Id.*)  Plaintiffs also conducted their own testing, which included the hiring of experts, purchasing of an exemplar Class Vehicle for expert analysis, as well as an exemplar engine from a Class Vehicle, and conducting extensive testing regarding the alleged Timing Chain Tensioning System defect.  (*Id.* at ¶ 12.)

Finally, Class Counsel prepared for, took, and defended the depositions of over a dozen witnesses in this case.  (*Id.* at ¶ 13.)  Class Counsel prepared for and deposed Defendants' Rule 30(b)(6) corporate representatives, Defendants' designated experts, and other witnesses, and defended the depositions of Plaintiffs Falco, Seguin, Padilla, and Galvan, and Plaintiffs' designated experts, and successfully moved *ex parte* to take

the depositions of Shiho Kobayashi and Defendant Nissan Japan in Japan.[4]  (*Id.*)

The hours expended on this extensive investigation, which enabled Plaintiffs to gear up for a class-wide trial, are reasonable.

**Pleadings, Motion Practice, and Appellate Practice**.  Class Counsel also spent 3,293.7 hours on pleadings, legal and factual analysis, and motion practice.  This time included drafting detailed complaints subsequently consolidated by the Court, and successful oppositions to Defendants' multiple motions to dismiss.  (Dkt. Nos. 37-41, 56, 103).  Class Counsel also successful opposed Defendants' reconsideration motion (Dkt. No. 81) and motion to certify order for interlocutory appeal (Dkt. No. 121).

After prevailing in the pre-certification stage, Plaintiffs moved to certify three classes, two under California law and one under Washington law.  (Dkt. No. 130).  Plaintiffs' motion was hotly contested, with Defendants strenuously arguing that there was not one timing chain defect common across the class, that reliance cannot be presumed, and attacking Plaintiffs' damages model, among other arguments.  Alongside its opposition, Defendants moved to strike Plaintiffs' expert reports, which Plaintiffs' successfully opposed.  (Dkt. Nos. 154, 155.)  Plaintiffs, for their part, moved to strike Defendants' expert report. (Dkt. No. 171)  Following oral argument, where Defendants brought three partners for the argument, in contrast to a single attorney for Plaintiffs, the Court granted Plaintiffs' class certification motion in its entirety.  (Dkt. No. 166.)  Defendants then petitioned to the Ninth Circuit under Rule 23(f), which Plaintiffs successfully opposed.  (9th Cir. Case No. 16-80052, Dkt. No. 4.)  The Ninth Circuit denied Defendants' petition on July 19, 2016.  (*Id.*, Dkt. No. 5.)

Finally, Class Counsel devoted considerable time to opposing Defendants' motion for summary judgment (Dkt. No. 245) and motion to decertify the classes (Dkt. No. 254), either of which would have extinguished the class claims had Defendants succeeded.  While the Court did not ultimately rule on these motions, Plaintiffs' strong

---

[4] These depositions eventually took place within the United States.

briefing helped preserve the classes negotiating position, resulting in valuable settlement benefits. The hours expended by Class Counsel in prevailing on challenging, high-stakes motion practice is reasonable. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 908 (9th Cir. 2002) (affirming fee applicant's reported hours for brief that is "detailed, thorough, and apparently reliable"); *Charlebois v. Angels Baseball, LP*, 993 F. Supp. 2d 1109, 1124-25 (C.D. Cal. 2012).

**Trial Preparation.** Class Counsel undertook tremendous effort to position this action for trial on a class-wide basis, expending over 990.5 hours in pre-trial work. Indeed, a settlement of this matter was not reached until four days before the scheduled trial. The time in this category includes Plaintiffs' motion to exclude the opinion testimony of Defendants' statistics expert, Jeya Padmanaban, which Defendants opposed and the Court denied on June 19, 2017. (Dkt Nos. 203, 217 & 232.) The parties also exchanged pre-trial documents pursuant to Rule 16, which included jury instructions, deposition designations, and stipulations of fact on August 21, 2017. The parties also exchanged Memoranda of Contentions of Fact and Law and then held an in-person pre-trial meeting of counsel at Baron & Budd's California office on August 22, 2017. Following the meeting, the parties exchanged additional pre-trial documents including witnesses lists, deposition counter designations and joint exhibit list. The hours expended to gear up for the then-impending trial is reasonable. *See Lopez v. San Francisco Unified Sch. Dist.*, 385 F. Supp. 2d 981, 996 (N.D. Cal. 2005) (awarding fees for all pretrial work while parties were attempting to settle).

**Advising Class Members**. Class Counsel also responded to inquiries from hundreds of Class Members. During the litigation itself, Class Counsel advised many hundreds of Class Members as to the status of the litigation, reviewed their repair orders, and provided feedback on their claims. Following preliminary approval and the dissemination of over 500,000 Class Notices, Class Members have sought out Class Counsel seeking further explanation and advice regarding the Settlement and how to claim benefits. The hours expended by Class Counsel to advise Class Members is

reasonable and should be approved.  *See Moore v. Verizon Communications*, No. 09-1823-SBA, 2014 WL 288035, at \*\*12-14 (N.D. Cal. Feb. 14, 2014) (awarding counsel all fees associated with class member communications amounting to over 10,000 hours).

**Settlement Negotiations and Settlement Motions**.  Class Counsel also spent 473 hours on preparing the Settlement and Settlement motions.  This expenditure is reasonable and necessary given the nature of the Settlement negotiations and the Settlement drafting process.  The proposed Settlement was the culmination of protracted discussions between the Parties, voluminous discovery, and thorough analysis of the pertinent facts and law at issue.  On October 6, 2017, just four days before to the commencement of trial, the Parties reached agreement on material terms for a class-wide settlement.  (Tellis Decl. ¶ 23.)  Subsequently, the parties spent six weeks negotiating the settlement agreement and related exhibits, including the notice to the class and the claim form.  (*Id.*)  Class Counsel also spent considerable time preparing the Motion for Preliminary Approval, this Motion, and the Motion for Final Approval.

All told, Class Counsels' base lodestar of $6,018,221.5[5] reflecting 9,987.55 hours worked, is reasonable.  This figure is not excessive, and Class Counsel efficiently divided up the work among the three firms, assigning discrete tasks to each firm, to avoid duplication.[6]  Indeed, courts should defer to successful counsel's judgment as to

---

[5] The aggregate lodestar includes Baron & Budd's lodestar of $6,018,221.50 (Tellis Decl. ¶ 27); Capstone's lodestar of $1,140,430 (Lurie Decl. ¶ 4); SLP's lodestar of $482,762,50 (Shahian Decl. ¶ 12); and EcoTech's lodestar of $87,524.50. (Tabesh Decl. ¶ 9.)  Class Counsel have entered into an agreement concerning the allocation of any Court-awarded fees in this case.  In accordance with California Rule of Professional Conduct 2-200, such agreement has been disclosed to the named Plaintiffs and all such Plaintiffs have consented to it.  Attached to the Tellis Declaration as Ex.A is a true and correct copy of such agreement.

[6] To be sure, the firms also sometimes collaborate on particularly important tasks, and courts recognize that litigating complex statutory cases often require a team structure, and so work demonstrating a collaborative effort will not be penalized.  *See Horsford v.*

---

how much work was needed to succeed:

> [L]awyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain as to both the result and the amount in fee . . . By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all he won and might not have, had he been more of a slacker.

*Moreno*, 534 F.3d at 1112. As Class Counsel succeeded at every stage of the litigation, prevailing in multiple rounds of motion practice and skillfully positioning the case for a high-stakes trial, the time devoted by Class Counsel in prosecuting Plaintiffs' case is reasonable and should be approved.

### 2.    The Hourly Rates are Reasonable

Class Counsels' hourly rates, which range from $295 to $550 for associates and from $600 to $895 for senior attorneys and partners, are also reasonable. (*See* Tellis Decl. ¶ 27-30; Lurie Decl. ¶¶ 4-8; Shahian Decl. ¶¶ 11-15; Tabesh Decl. ¶ 7 [documenting firm qualifications, hourly rates of attorneys, and orders approving rates].) Counsel are entitled to their requested hourly rates if those rates are within the range of rates charged by and awarded to attorneys of comparable experience, reputation, and ability for similar work, *i.e.*, complex class action litigation. *Children's Hospital and Med. Center v. Bonta*, 97 Cal. 4th 740, 783 (2002) (affirming rates that were "within the range of reasonable rates charged by, judicially awarded to, comparable attorneys for comparable work"); *accord Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) (determining reasonable rate by examining the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation"). Prior judicial orders are probative evidence of market rates. *See Margolin v. Regional Planning Com.*, 134 Cal. App. 3d 999, 1005 (1982) (rejecting the

---

*Board of Trustees,* 132 Cal. App. 4th 359, 396 (2005) (reversing a trial court's order reducing fees for work done by multiple attorneys on the same document due to collaborative nature of the legal practice).

defendant's attacks on prior court orders and deeming such orders to be highly probative of rates).

Class Counsels' rates are wholly consistent with rates approved by courts in this District for major consumer class actions.[7]  *See Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 899 (C.D. Cal. 2016) (approving rates of $485 to $750 for consumer class action attorneys on a contested fee motion); *Etter v. Thetford Corporation*, No. 13-00081-JLS, 2017 WL 1433312 (C.D. Cal. Apr. 14, 2017) (approving $275 to $775 for attorneys on a contested fee motion); *Bravo v. Gale Triangle, Inc.*, No. 16-03347 BRO, 2017 WL 708766, at *17 (C.D. Cal. Feb. 16, 2017) (approving rates between $350 and $700); (*see also* Lurie Decl. ¶ 36.)

Baron & Budd's fees, consistent with rates requested here, have been approved by numerous California district courts.  *See In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, Case No. 3:15-md-02672-CRB (N.D. Cal. Jul. 21, 2017) (Dkt. 3489); *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, Case No. 3:15-md-02672-CRB (N.D. Cal. May, 17, 2017) (Dkt. 3231); *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, Case No. 3:15-md-02672-CRB (N.D. Cal. Mar. 17, 2017) (Dkt. 3053); *Bias, et al. v. Wells Fargo & Company, et al.*, Case No. 4:12-cv-00664-YGR  (N.D. Cal. Apr. 13, 2017) (Dkt. 274); *Aarons v. BMW of North America*, No. 11-7667-PSG, 2014 WL 4090564, at *16 (C.D. Cal. Apr. 29, 2014).

---

[7] *See also*, *Kearney v. Hyundai Motor Am.*, No. 09-1298, 2013 U.S. Dist. LEXIS 91636 (C.D. Cal. June 28, 2013) (approving hourly rates of $650-$800 for senior attorneys in consumer class action); *Parkinson v. Hyundai Motor America*, 796 F. Supp. 2d 1160, 1172 (C.D. Cal. 2010) (approving hourly rates between $445 and $675); *Richard v. Ameri-Force Mgmt. Servs., Inc.* (San Diego Super. Ct., August 27, 2010, No. 37-2008-00096019) ($695 to $750 an hour for partners; $495 an hour for associates); *Barrera v. Gamestop Corp.* (C.D. Cal. Nov. 29, 2010, No. CV 09-1399) ($700 an hour for partners; $475 an hour for associates); *Anderson v. Nextel Retail Stores, LLC* (C.D. Cal. June 20, 2010, No. CV 07-4480) ($655 to $750 an hour for partners; $300 to $515 an hour for associates).

Capstone Law APC's ("Capstone") rates have specifically been approved by California district courts in approving settlements involving automotive defects. *See, e.g.*, *Vargas v. Ford Motor Co.*, No. CV12-08388 AB (FFMX), 2017 WL 4766677, at *4 (C.D. Cal. Oct. 18, 2017) (awarding requested fees in full to Capstone with rates ranging from $245 to $725); *MacDonald v. Ford Motor Co.*, No. 13 -02988-JST, 2016 WL 3055643, *9 (May 31, 2016) (approving rates of $370 to $695 for many of the same attorneys as here on a contested catalyst motion); *Klee v. Nissan N. Am., Inc.,* 2015 U.S. Dist. LEXIS 88270, *38 (C.D. Cal. July 7, 2015) (approving rates of $370 to $695 for Capstone attorneys in an automotive defect case); *Asghari v. Volkswagen Grp. Of America*, No. 13-02529-MMM, 2015 WL 12732462 (May 29, 2015) (same); *Aarons*, 2014 WL 40490564, at *16 (same).

Finally, Strategic Legal Practices and Dara Tabesh EcoTech Law Group PC have had their rates approved numerous times by California district courts approving automotive defect settlements. *See Asghari,* 2015 WL 12732462 (affirming SLP and EcoTech's rates); *Sadowska v. Volkswagen Grp. of Am., Inc.*, No. CV 11-00665-BRO AGRX, 2013 WL 9600948, at *10 (C.D. Cal. Sept. 25, 2013) (same); *Meyer v. Bebe Stores, Inc.*, Case No. 14-00267, Dkt. No. 165 (N.D. Cal. December 6, 2017)) (same); *Haghayeghi v. Guess?, Inc.*, Case No. 14-cv-00020, Dkt. No. 100 (S.D. Cal. Apr. 25, 2017) (same); *Aarons*, 2014 WL 40490564, at *16 (approving SLP's rates); *Zakskorn v. Am. Honda Motor Co.*, No. 2:11-CV-02610-KJM, 2015 WL 3622990, at *12 (E.D. Cal. June 9, 2015) (same).[8] In *Keegan v. Am. Honda Motor Co, Inc.*, No.10-09508-MMM, 2014 WL 12551213, at *23 (C.D. Cal. Jan. 21, 2014), the court approved SLP's rates after finding that has many years of experience in consumer class action litigation involving automobiles, products liability, and the specific causes of action asserted in this case."

---

[8] *See also, Gray v. BMW of North America, LLC*, Case No. 13-3417, Dkt. Nos. 85-87 (D.N.J. Aug. 24, 2017) (approving SLP and EcoTech's rates).

Class Counsel also regularly litigates against prominent defense firms in Los Angeles and San Francisco, including Sheppard, Mullin, Richter & Hampton ($490 to $875 for partners and senior counsel; $275 to $535 an hour for associates), Cooley ($660 to $ 990 for partners, $525 average rate for associates), and Morrison & Forester ($595 to  $1195 for partners, $525 average rate for associates), as collected in a survey conducted by the National Law Journal ("NLJ") in 2013.  (*See* Lurie Decl. ¶ 37; Ex. 2.) The NLJ survey is widely accepted as evidence of reasonable market rates.  *See Building a Better Redondo*, *Inc. v. City of Redondo Beach*, 203 Cal. App. 4th 852, 871 (2012) (affirming rates for contingency fee attorneys in Southern California based, in part, on the NLJ survey, which has partner rates of "$475 to $850 and associate rates from $275 to $505"); *Ctr. for Biological Diversity v. County of San Bernardino*, 188 Cal. App. 4th 603, 615 (2010) (awarding market rates and crediting the NLJ survey for, among other evidence, establishing the market rate).

In short, Class Counsels' hourly rates are within the range of hourly rates charged by comparable attorneys and approved by multiple jurisdictions, including by courts in the Central District of California.  The requested rates are reasonable and should be approved.

### 3.    Class Counsels' Fee Request Is Reasonable Because it Requires the Application of a Negative Risk Multiplier

The requested fees would constitute a negative multiplier on Class Counsels' lodestar, further supporting the reasonableness of the fees.  To be sure, Class Counsel would otherwise be entitled to the application of a positive multiplier for bearing contingent risk of the litigation, the success achieved, and for the quality of the representation.  *See Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1048-50 (9th Cir. 2002); *accord In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 551 (2009).[9]

[9] A multiplier of 2.0 or above is frequently applied.  *See Van Vranken v. Atlantic Richfield Co*., 901 F. Supp. 294, 298 (N.D. Cal. 1995) (stating the existence of a "3-4 range [of] common" multipliers for sophisticated class actions); *Steiner v. American*

Under California law, a risk multiplier is meant to compensate the contingency

attorney for the risk he or she undertakes to enforce important public rights:

> A lawyer who both bears the risk of not being paid and
> provides legal services is not receiving the fair market value
> of his work if he is paid only for the second of these
> functions.  If he is paid no more, competent counsel will be
> reluctant to accept fee award cases.

*Ketchum*, 24 Cal. 4th at 1132-33; *see Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th

553, 580 (2014) (explaining California's policy of adjusting the lodestar upward to

account for contingent risk).  Washington law also authorizes a multiplier of 1.5 or

greater to compensate for contingent risk.  *See Bowers*, 100 Wash. 2d at 601 (affirming

a 1.5 multiplier based on contingent risk).

Here, the requested fee amount of $5,200,000 represents an application of a

substantial ***negative*** multiplier of 0.864 to the base lodestar of $6,018,221.50, making it

*prima facie* reasonable.  When plaintiffs seek an amount in fees that is less than what

they actually billed, the requested fee amount is generally considered reasonable.  *See*,

*e.g.*, *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010)

(finding that, if the court is asked to apply a negative multiplier, it "suggests the

negotiated fee award is a reasonable and fair valuation of the services rendered to the

class by Plaintiff's Counsel.").  When a fee request "represents a significant reduction

compared to Class Counsel's lodestar number, [] courts [will] view self-reduced fees

favorably."  *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 690 (N.D.

Cal. 2016).

In *Aarons*, Judge Gutierrez awarded the requested fees to Class Counsel (which

included Baron & Budd, Capstone, and SLP) in full after noting that the court would

---

*Broad. Co.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (affirming fee award where the
lodestar multiplier was 3.65).  *See also, Graham*, 34 Cal. 4th at 581 (affirming a 2.25
multiplier for work on the merits); *Sutter Health Uninsured Pricing Cases*, 171 Cal.
App. 4th 495, 512 (2009) (applying a 2.52 multiplier in an antitrust class action);
*Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 60 (2008) (applying a 2.5 multiplier in a
consumer class action).

"ordinarily consider granting an upward lodestar" but "Class Counsel's conservative request makes the Court's analysis much simpler" given the application of a negative multiplier and counsel's voluntary "haircut." *Aaron*s, 2014 WL 4090564, *18.

A *positive* risk multiplier, had Class Counsel sought one, would comport with the "established practice in the private legal market to reward attorneys for taking the risks of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994). This risk is particularly acute for contingency fee attorneys because they "must use savings or incur debt to keep their offices afloat and their families fed during the years-long litigation." *Horsford*, 132 Cal. App. 4th at 400. Because attorneys pursuing claims in contingency will sometimes lose after expending thousands of hours and advancing tens of thousands of dollars in expenses, despite litigating diligently and expertly, an enhancement ensures that the risks do not outweigh the incentive to pursue claims on behalf of consumers. This is the case for all three firms, which have undertaken the case on a purely contingent basis.

Class Counsel faced the prospect that they would be left uncompensated after devoting thousands of attorney hours, and advancing hundreds of thousands in expenses, to secure benefits for the classes. To be sure, they still faced certification risk presented by Defendants' pending motion to decertify the classes as well as termination of their action at summary judgment or at trial. If Class Counsel were to defeat Defendants' motion for summary judgment *and* motion to decertify the classes, they still would have to prevail in a high-stakes, class-wide trial.

For this type of contingent risk, courts have applied a multiplier of 1.5 or more to account for the "return expected by lawyers." *Fadhl v. City and County of San Francisco*, 859 F.3d 649, 650 (9th Cir. 1988) (awarding a 2.0 multiplier); *see also Chambers*, 214 F. Supp. 3d at 904 (applying a 1.68 multiplier on a contested fee motion); *In re Volkswagen & Audi Warranty Extension Litig.*, 89 F. Supp. 3d 155, 170-71 (D. Mass. 2015) (applying a 2.0 multiplier in awarding fees to successful plaintiff's

counsel in an action involving defectively-designed engines).  A positive risk multiplier would be warranted, had Class Counsel sought one.

Separately, because "the lodestar award is de-coupled from the class recovery, the lodestar assures counsel undertaking socially beneficial litigation (as legislatively identified by the statutory fee shifting provision) an adequate fee irrespective of the monetary value of the final relief achieved for the class." *See Tait v. BSH Home Appliances Corp.*, No. SACV10-0711-DOC, 2015 WL 4537463, at *14 (C.D. Cal. Jul. 27, 2015).  In cases "where classwide benefits are not easily monetized," the Court is not required to conduct a percentage cross-check. *Yamada*, 825 F.3d at 547.

A cross-check is inappropriate here because Class Counsel negotiated a lengthy claims period for the benefit of Class Members, which extends well after final approval and entry of judgment.  Under the Settlement, Class Members may continue to obtain a Qualifying Repair well after receiving the Class Notice so long as mileage does not exceed 120,000.  (Settlement Agreement ¶ 32.)  And they can continue to submit claims for reimbursement well after judgment has been entered, so long as the claims are submitted within 90 days of the Qualifying Repair. (*Id*. ¶ 5.) With the inclusion of this ongoing claims period, which provides continuing relief to Class Members, a Class Member who currently owns or leases a Class Vehicle that has not yet had a Qualifying Repair may elect to receive, subject to the limitations discussed *supra*, partial cash reimbursement or a Voucher for a Qualifying Repair completed *after* the effective date of the Settlement.  Therefore, final figures would be established many years later, when nearly all the Class Vehicles have exceeded the mileage limitation.

In short, the requested fees of $5,200,000, representing a negative multiplier of 0.864 on Class Counsels' lodestar of $6,018,221.50, is reasonable and should be approved.

### D.   The Expenses Advanced by Class Counsel Should Be Reimbursed

For litigation expenses, the rule is that prevailing parties may recover, as part of statutory attorneys' fees, "litigation expenses . . . when it is 'the prevailing practice in

the given community' for lawyers to bill those costs separate from their hourly rates."
*Trs. of the Constr. Indus. and Laborers Health and Welfare Trust v. Redland Ins. Co.*,
460 F.3d 1253, 1258 (9th Cir. 2006) (citation omitted).  Attorneys are reimbursed for
out-of-pocket expenses "such as '1) meals, hotels, and transportation; 2) photocopies;
3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6)
online legal research; 7) class action notices; 8) experts, consultants, and investigators;
and 9) mediation fees.'"  *Johnson v. General Mills, Inc*., No. 10-00061-CJC, 2013 U.S.
Dist. LEXIS 90338, *20-*21 (C.D. Cal. June 17, 2013) (quoting *In re Immune
Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) (both courts
awarding the requested expenses, including for expert witnesses, mediation,
photocopying and computerized research).

Here, Class Counsel have expended $856,875.79 in recoverable litigation costs
in this case.  The costs are documented in Class Counsels' respective declarations.
(Tellis Decl. ¶ 32; Lurie Decl., ¶ 14; Shahian Decl., ¶ 36.)  Such costs, advanced on
behalf of, and for the benefit of, the Class are reimbursable.

### E.     Service Payments of $5,000 Should Be Awarded to Each of the Named Plaintiffs

Payment of a service award to a putative class representative is routinely
awarded as compensation for undertaking the risk and expense of litigation to advance
the class' interests.  *See Rodriguez v. W. Pub. Corp.*, 563 F.3d 948, 958-59 (9th Cir.
2009).  In light of the valuable benefits conferred to Class Members, the sum of $5,000
to each named Plaintiff—Falco, Seguin, Padilla and Galvan—are reasonable and
approved in similar cases.  *See, e.g., Seifi v. Mercedes-Benz USA, LLC*, No. 12-CV-
05493-TEH, 2015 WL 12952902, at *3 (N.D. Cal. Aug. 18, 2015) (awarding incentive
award of $9,000 to named plaintiffs); *Keegan*, 2014 WL 12551213, at *32 (awarding
$5,000 incentive payments to multiple plaintiffs); *Vizzi v. Mitsubishi Motors N. Am.,
Inc.,* No. 08-00650-JVS, 2010 WL 11508375, at *11 (C.D. Cal. Mar. 29, 2010)
("Because this case could not have proceeded without the participation of Vizzi, the

1    Court grants him $10,000").

2        Plaintiffs are entitled to class representative payments for their time and effort to

3    support a case in which they had a modest personal interest but which provided

4    considerable benefits to Class Members—a commitment undertaken without any

5    guarantee of recompense.  (*See generally*, Declaration of Kobe Falco; Declaration of

6    Joel Seguin; Declaration of Alfred Padilla; and Declaration of Roberto Galvan.)  Each

7    Plaintiff was deposed by Defendants, and provided documents to, and consulted with,

8    Class Counsel about the claims in this case and assisted throughout the course of the

9    litigation.  Plaintiffs also reviewed the allegations and kept in constant contact with

10   Class Counsel regarding the status of the case.  Plaintiffs have also stayed abreast of

11   Settlement negotiations, reviewed the Settlement terms, and approved the Settlement

12   on behalf of the Class.  (*Id.*)

13   **III.    CONCLUSION**

14       For the foregoing reasons, Plaintiffs respectfully request that the Court grant

15   Plaintiffs' motion and award fees of $5,200,000, costs in the amount of $800,000, and

16   service payments of $5,000 for each of the named Plaintiffs.

17

18   Dated:  June 1, 2018                     Respectfully submitted,

19

20                              By: */s/ Roland Tellis*

21                                  Roland Tellis
                                     Mark Pifko
22                                  **Baron & Budd, P.C.**
                                     15910 Ventura Boulevard, Suite 1600
23                                  Encino, California 91436
                                     Telephone: (818) 839-2333
24
                                     Jordan L. Lurie
25                                  **Capstone Law APC**
                                     1875 Century Park East, Suite 1000
26                                  Los Angeles, California 90067
                                     Telephone: (310) 556-4811
27

28

Payam Shahian
**Strategic Legal Practices APC**
1840 Century Park East, Suite 430
Los Angeles, California 90067
Telephone: (310) 277-1040

*Attorneys for Plaintiffs and the Classes*

25